# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

Carolina Uribe Borrero.

Debtor.

Case No. 26-40008

Chapter 13

RECEIVED

FEB 2 7 2026

TIME: 1000

CLERK, U.S. BANKRUPTCY COURT
MINNEAPOLIS, MINNESOTA

# LIMITED OBJECTION OF PAWEL RZECZKOWSKI TO DEBTOR'S MOTION FOR ORDER AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF LIENS, ENCUMBRANCES AND INTERESTS (DOC. 11)

Pawel Rzeczkowski (the "Objector"), a creditor and party in interest, files this Limited Objection to the Debtor's Motion (Doc. 11) and states as follows:

1. Objector **does not oppose the sale** of the property located at 2814 West 41st Street, Minneapolis, Minnesota (the "Property"). The proposed sale may generate net proceeds that can improve plan funding and creditor protection.

2. Objector **objects narrowly** to the relief requested in Doc. 11 to the extent it seeks authority for the Debtor to apply net sale proceeds to the

1

mortgage on the Debtor's current homestead (2608 West 45th Street) rather than preserving such proceeds for plan funding and/or distribution under Chapter 13.

3. The Debtor's motion seeks authority to (i) sell the Property for $425,000; (ii) pay Keen Bank at closing; (iii) pay realtor commission; and (iv) apply remaining net proceeds to the current homestead mortgage or, alternatively, toward funding the Chapter 13 plan.

The Debtor has also obtained authorization to employ Coldwell Banker Realty for the sale.


## A. Relief Requested

4. Objector requests that the Court approve the sale, **but** condition any sale order to require that net proceeds (after payment of the Keen Bank mortgage, taxes, and approved closing costs/commission) be:

   o  paid to the Chapter 13 Trustee and held pending confirmation; and/or

   o  applied to plan funding and the payment of allowed priority obligations,

and **not** applied to pay down the Debtor's current homestead mortgage absent the Trustee's express consent or further order of this Court.

**B. Grounds: Need for safeguards based on documented history of inconsistent financial representations and high-risk plan assumptions**

5. Chapter 13 reorganization rests on reliable financial disclosure and credible performance. Where there is documented reason to doubt the Debtor's financial representations and future compliance, the Court should avoid authorizing the conversion of liquid proceeds into exempt homestead equity before plan feasibility and compliance are established.

6. Objector has personal knowledge from the dissolution proceedings and can provide documentary support showing a pattern of materially inconsistent sworn financial representations relevant to evaluating reliability and future performance under a reorganization plan, including:

**(i) Budget inflation pattern**

The Debtor has repeatedly advanced very high monthly household budgets in sworn dissolution filings as part of a claimed "hardship" narrative. In September 2020, her retained Baker Tilly expert stated he was provided a

3

monthly budget for the Debtor and the children totaling **$18,899**, and he

calculated a purported monthly budget shortfall of **($11,091)**. (Exhibit 1)

In September 2023, the Debtor again stated under oath that her "monthly

budget" was **$19,149.94** and that she was running a "deep deficit," while

noting she does not include attorney fees in that monthly budget

figure. (Exhibit 2)

These sworn budget presentations are relevant because they were advanced

to demonstrate asserted inability to satisfy financial obligations. The

magnitude and repetition of those claimed monthly deficits bear directly on

whether the Debtor's present restructuring assumptions warrant heightened

scrutiny.

### (ii) Mortgage-payment inconsistency chronology

During the same period in which the Debtor advanced sworn budget

narratives reflecting substantial mortgage burden, contemporaneous records

establish that regular mortgage payments had been suspended under a

COVID-19 forbearance program. Yet the mortgage was presented in sworn

filings as an ongoing paid monthly obligation.

On April 14, 2020, Wells Fargo Home Mortgage issued written confirmation placing the Debtor's loan into short-term payment suspension (forbearance), pausing regular loan payments effective April 1, 2020. (Exhibit 3.)

On September 16, 2020, the Debtor submitted an affidavit supported by Thomas W. Harjes, CPA (Baker Tilly), presenting a monthly household budget of $18,899 and asserting a substantial monthly cash-flow shortfall. (Exhibit 1.)

On January 5, 2021, the District Court (Hon. Michael E. Burns) entered Findings of Fact stating that "She pays mortgage, tax and insurance payments for the marital home in the amount of $5,924 monthly." (Exhibit 4.)

Subsequent written communication from opposing counsel acknowledged that the mortgage balance discrepancy at sale was attributable to COVID-related payment suspension/relief. (Exhibit 5.)

Exhibit 6 provides an illustrative comparison of scheduled amortization versus payoff balance during the payment-suspension period.

The purpose of presenting this chronology is not to re-litigate dissolution issues. Rather, it demonstrates that material financial representations concerning mortgage burden were advanced under oath during a period in

which regular mortgage payments had been suspended. This pattern of inconsistent financial narratives is relevant to whether liquid sale proceeds should be preserved for plan performance and creditor protection rather than immediately converted into additional exempt homestead equity.

**(iii) Post-petition discretionary-expense conduct inconsistent with constrained reorganization and relevant to proceeds protection**

After the petition date (January 2, 2026), the Debtor initiated steps toward enrolling the parties' child in a private school (Breck School) with published tuition of approximately $39,000 for the 2025–2026 school year (Exhibit 7).

In an OurFamilyWizard message dated January 10, 2026, the Debtor states that she attended a Breck open house with the child, spoke privately with Breck's Director of Admissions and Financial Aid "regarding my 2025 income and bankruptcy," and "intend[s] to start the application process." (Exhibit 8)

In response on January 12, 2026, Objector expressly withheld consent to initiating applications to alternative schools, noted that applications are not "neutral steps," and requested confirmation whether any application materials had already been submitted and, if so, that the application be withdrawn.

On January 13, 2026, the Debtor sent an additional OurFamilyWizard
message describing various public-safety events and stated that she was
providing "additional context ... when we eventually revisit conversations
about Aurora's schooling, including considerations such as Breck," while not
withdrawing the Breck direction.  (Exhibit 9)

Within three weeks of filing Chapter 13, the **debtor advanced an
application** to a private school with tuition of approximately $39,000
annually, including securing a current teacher recommendation dated
January 22, 2026 (Exhibit 10). This post-petition conduct is relevant to
assessing whether liquid sale proceeds should be preserved for plan funding
rather than converted into additional exempt homestead equity.

These post-petition actions are relevant to the Court's discretion in
authorizing the **use** of net sale proceeds. They reflect pursuit of a significant
discretionary financial commitment shortly after commencement of this
Chapter 13 case, and support Objector's request that net proceeds be
preserved for plan funding/priority obligations, rather than being converted
into additional exempt homestead equity absent Trustee consent or further
order.

**(iv) Extraordinary Litigation Expenditures Undermine Feasibility and Good-Faith Requirements Under Chapter 13**

The Debtor has sworn that she incurred approximately three-quarters of a million dollars in attorney's fees in the dissolution proceedings[1], while the marital estate dispute was quantified at approximately $523,970[2]. The scale and proportionality of those expenditures bear directly on whether the Court should assume disciplined, sustainability-focused financial conduct in the administration of this Chapter 13 plan.

7. The foregoing facts are not submitted for this Court to adjudicate the dissolution proceeding. They are submitted solely because they bear directly on whether the Court should permit immediate diversion of liquid sale proceeds into exempt homestead equity, or instead preserve those proceeds for plan performance and creditor protection.

These documented inconsistencies and proportionality concerns are relevant to the Court's evaluation of feasibility and good faith under 11 U.S.C. § 1325(a).

---

[1] Affidavit of Carolina Uribe Borrero ¶ 13, Case No. 27-FA-19-6324, In re the Marriage of Rzeczkowski and Uribe Borrero (Minn. Dist. Ct., Hennepin Cnty. Dec. 29, 2025).
[2] Affidavit of Pawel Rzeczkowski ¶ 1, Case No. 27-FA-19-6324, In re the Marriage of Rzeczkowski and Uribe Borrero (Minn. Dist. Ct., Hennepin Cnty. Apr. 21, 2023).

## C. Requested order

8. Accordingly, Objector requests that the Court:

- o   approve the sale of 2814 West 41st Street; **but**

- o   require net sale proceeds be remitted to the Chapter 13 Trustee and preserved for plan funding and/or distribution consistent with the Bankruptcy Code; and

- o   prohibit application of net proceeds to the Debtor's current homestead mortgage absent Trustee consent or further order after notice and opportunity to be heard.

Dated: February 25, 2026

Respectfully submitted,

Pawel Rzeczkowski

2166 HWY 29 N
Newnan, Ga. 30265
prz.global@gmail.com

## List of Exhibits

| Exhibit 1 | Affidavit of Thomas W. Harjes, CPA (Sept. 16, 2020) with Budget Worksheet |
| Exhibit 2 | Affidavit of Carolina Uribe Borrero (Sept. 8, 2023) with Monthly Budget |
| Exhibit 3 | Wells Fargo Home Mortgage Letter re Payment Suspension (Apr. 14, 2020) |
| Exhibit 4 | Order on Request for Need-Based Attorney Fees (Jan. 5, 2021), Finding #20 |
| Exhibit 5 | Email from Counsel Regarding COVID-19 Mortgage Relief |
| Exhibit 6 | Illustrative Comparison of Scheduled Amortization and Payoff Balance During Payment Suspension Period |
| Exhibit 7 | Breck School Published Tuition Schedule (2025–2026) |
| Exhibit 8 | OurFamilyWizard Message from Debtor (Jan. 10, 2026) |
| Exhibit 9 | OurFamilyWizard Message from Debtor (Jan. 13, 2026) |
| Exhibit 10 | Teacher Recommendation Letter (Jan. 22, 2026) (Redacted) |

STATE OF MINNESOTA

COUNTY OF HENNEPIN

# Exhibit 1

Case No. 26-40008

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

FAMILY COURT DIVISION

IN RE THE MARRIAGE OF:

Pawel Dominik Rzeczkowski,

      Petitioner,

  and

Carolina Uribe Borrero,

      Respondent.

Court File No. 27-FA-19-6324

**AFFIDAVIT OF
THOMAS W. HARJES, CPA**

| STATE OF MINNESOTA | ) | |
|---|---|---|
| | ) SS | |
| COUNTY OF HENNEPIN | ) | |

Thomas W. Harjes, CPA, being first duly sworn on oath, deposes and states as follows:

1) I am a certified public accountant with the firm of Baker Tilly, licensed to practice in the State of Minnesota. I specialize in the area of family law and the various financial issues involved in divorces, including property settlement, non-marital tracing, forensic accounting, income and cash flow analysis, and income tax planning. A copy of my curriculum vitae is attached as **Exhibit A**.

2) Our firm was retained by Ms. Uribe Borrero to assist with various financial issues in her divorce. For purposes of this affidavit, I was asked to prepare a monthly after-tax cash flow schedule for Ms. Uribe Borrero based on her 2019 self-employment income of $160,466. It's my understanding she is projecting a similar amount of self-employment income for 2020. It's also my understanding she is currently paying Mr. Rzeczkowski $2,500 per month in temporary support.

3) **Exhibit B** shows Ms. Uribe Borrero's after-tax monthly cash flow is $7,808 after paying $2,500 per month to Mr. Rzeczkowski (line 7). I was provided a monthly budget for her and the children totaling $18,899 (line 8). Line 9 shows a monthly budget shortfall for Ms. Uribe Borrero of ($11,091).

FURTHER YOUR AFFIANT SAITH NOT.

I declare under penalty of perjury that everything I have stated in this document is true and correct.

*Thomas Harjes*

Thomas W. Harjes, CPA

Signed this 16th day of September, 2020, in Hennepin County, Minnesota.

EXHIBIT A

**THOMAS W. HARJES, CPA/ABV/CFF, CVA**
**Baker Tilly Virchow Krause, LLP**
**225 South Sixth Street, Suite 2300**
**Minneapolis, MN 55402**
**612-876-4500**

**EDUCATIONAL BACKGROUND:**

- Graduated with a B.A. from Gustavus Adolphus College, St. Peter, Minnesota, with a major in accounting (1989)

**PROFESSIONAL EXPERIENCE:**

- Partner – Baker Tilly Virchow Krause, LLP (1989 to present)

**PROFESSIONAL CREDENTIALS:**

- Certified Public Accountant (1991)

- Certified Valuation Analyst (1997)

- Accredited in Business Valuation (1999)

- Certified in Financial Forensics (2009)

**PROFESSIONAL ASSOCIATIONS:**

- Member, American Institute of Certified Public Accountants

- Member, Minnesota Society of Certified Public Accountants

- Member, National Association of Certified Valuators and Analysts

**FACULTY AND TEACHING:**

- Speaker, "COVID-19 Tax Updates," The American Academy of Matrimonial Lawyers: Minnesota Chapter (2020)

- Speaker, "Differentiating Active vs. Passive Appreciation of a Business Interest," Minnesota Continuing Legal Education (2019)

- Speaker, "Financial Issues in Family Law Cases," University of MN Law School (2019)

- Speaker, "Proper Role of the Financial Expert in Divorce Litigation," Minnesota Continuing Legal Education (2018)

- Speaker, "Tax Reform and its Impact on Divorce Litigation," 18th Annual MNCPA Business Valuation Conference (2018)

- Speaker, "The Family Law Professional's Guide to the 2018 Tax Reform," Olmstead County Family Bar (2018)

- Speaker, "How the New Tax Law Impacts Your Family Law Clients," Minnesota State Bar Association (2018)

- Speaker, "The Process of Spousal Maintenance," Family Law Institute (2018)

- Speaker, "Practice Tips," Family Law Institute (2018)

Thomas W. Harjes, CPA/ABV/CFF, CVA
Page 2 of 5

**FACULTY AND TEACHING (continued):**

- Speaker, "Tax Cuts & Jobs Act," The American Academy of Matrimonial Lawyers: Minnesota Chapter (2018)

- Panel, "Play A Poor Hand Well," The American Academy of Matrimonial Lawyers: Minnesota Chapter (2017)

- Speaker, "Tricky Financial Issues in a Divorce: How to Handle Them Like an Expert," Family Law Institute (2017)

- Speaker, "Divorce Attorney's Guide to Financial Documents and Tax Returns," National Business Institute (2017)

- Panel, "Mediation Tips," Family Law League (2016)

- Speaker, "Neutral Work: Best Practices, Tips and Pitfalls," 16th Annual MNCPA Business Valuation Conference (2016)

- Speaker, "Spousal Maintenance: Permanent Doesn't Mean Forever, or Does It? " The American Academy of Matrimonial Lawyers: Minnesota Chapter (2016)

- Speaker, "Top Ten Ways to Work With Your Expert," Family Law Institute (2016)

- Speaker, "Financial Issues in Family Law Cases," University of Minnesota Law School (2016)

- Speaker, " Divorcing Couples, Divorcing Finances," The American Academy of Matrimonial Lawyers: Minnesota Chapter (2015)

- Webcast, "When Corporate Equity Interests are Marital Assets – Treatment in Divorce," Minnesota CLE (2015)

- Speaker, "Non-Marital Claims and Tracing," Minnesota State Bar Association (2014)

- Speaker, "Walking the Neutral Tightrope," Family Law Institute (2014)

- Speaker, "How to Establish Standard of Living for Spousal Maintenance," Minnesota State Bar Association (2013)

- Speaker, "Effective Use of Financial Experts," The American Academy of Matrimonial Lawyers: Minnesota Chapter (2013)

- Speaker, "Common Sense Approaches to Budgets," Olmstead County Family Bar (2013)

- Speaker, "Spousal Maintenance, Income Taxes and Budgets," Family Law Institute (2013)

- Speaker, "Property Division in Family Law Cases," William Mitchell Law School (2012)

- Speaker, "Update on Nonmarital Claims and Tracing," Minnesota State Bar Association (2012)

- Speaker, "The Danger of the Double Dip," Family Law Institute (2012)

- Speaker, "Top 10 Tricky Tax Topics in a Divorce," Minnesota State Bar Association (2011)

- Speaker, "Top 10 Tricky Tax Topics in a Divorce," Family Law Institute (2011)

- Speaker, "Tax Issues and Divorce," Olmsted County Family Law Bar (2011)

- Speaker, "Financial Issues in Family Law," The Minnesota Legal Services Coalition (2011)

Thomas W. Harjes, CPA/ABV/CFF, CVA
Page 3 of 5

**FACULTY AND TEACHING (continued):**

- Speaker, "Non-Marital Claims and Tracing 2010 Update," Minnesota CLE (2010)

- Speaker, "Effective Use of Neutrals," Family Law Institute (2010)

- Speaker, "2010 Non-Marital Case Law Update," Family Law Institute (2010)

- Speaker, "Non-Marital Tracing in a Post-Baker World," Hennepin County Bar Association (2010)

- Panel, "How CPA's and Other Financial Experts Can Effectively Work Together in Family Law Cases," American Academy of Matrimonial Lawyers: Minnesota Chapter (2009)

- Webcast, "Nonmarital Claims and Tracing," Minnesota CLE (2008)

- Panel, "Rethinking Zealousness: A Fresh Look at Family Advocacy," William Mitchell College of Law (2008)

- Speaker, "Non-Marital Claims and Tracing," Minnesota State Bar Association (2008)

- Speaker, "How to Evaluate and Divide Employee Benefits," The American Academy of Matrimonial Lawyers: Minnesota Chapter (2007)

- Speaker, "Protecting Family Wealth in the Event of Divorce," Probate and Trust Law Section Conference (2007)

- Speaker, "Nonmarital Claims and Nonmarital Tracing," Minnesota State Bar Association (2007)

- Speaker, "Forensic Basics: Using Income Tax Returns to Your Advantage," Family Law Institute (2007)

- Speaker, "Protecting Family Wealth in the Event of Divorce," Hennepin County Bar Association (2006)

- Faculty, "Familyopoly - The Game of Family Law Skills," The American Academy of Matrimonial Lawyers: Minnesota Chapter (2006)

- Faculty, "Family Law Adjudicative Processes," Mediation Center for Dispute Resolution (2006)

- Speaker, "Calculating Income for the Employed and the Self-Employed," Family Law Institute (2006)

- Speaker, "Valuation Issues in a Divorce," 16th Annual Business Valuation Conference (2006)

- Speaker, "Financial Issues Surrounding Divorce," Allied professional meeting (2005)

- Faculty, "Family Law Adjudicative Skills," Mediation Center for Dispute Resolution (2005)

- Speaker, "Spousal Maintenance, Uncle Sam, and You," Family Law Institute (2005)

- Speaker, "2004 Nonmarital Property Update," Family Law Institute (2004)

- Panel, "The Emerging Role of the Financial Neutral," DivorceChoice.com (2004)

- Faculty, "Transforming Family Law - Designing Our Future," The American Academy of Matrimonial Lawyers: Minnesota Chapter (2003)

- Speaker, "Top Ten Tax Mistakes Committed by Family Law Attorneys," Family Law Institute (2003)

Thomas W. Harjes, CPA/ABV/CFF, CVA
Page 4 of 5

**FACULTY AND TEACHING (continued):**

- Speaker, "Nonmarital Property Update," Family Law Institute (2003)

- Speaker, "Top Ten Tax Mistakes Committed by Family Law Attorneys," Minnesota Institute of Legal Education (2002)

- Speaker, "Breaking Up is Hard to Do: Divorce and Tax Issues," Minnesota State Bar Association Tax Institute (2002)

- Faculty, "Effective Advocacy," The American Academy of Matrimonial Lawyers:  Minnesota Chapter (2002)

- Speaker, "Let Money Be Money: Taking the Emotion Out of Financial Issues," The American Academy of Matrimonial Lawyers:  Minnesota Chapter (2001)

- Speaker, "Spousal Maintenance:  Traps and Opportunities," Family Law Institute (2001)

- Speaker, "Support and Maintenance Payments:  Income vs. Property," Minnesota Institute of Legal Education (2001)

- Speaker, "Spousal Maintenance, Accounting and Tax Issues," Minnesota Institute of Legal Education (2000)

- Speaker, "Calculating Income for Self-Employed Individuals," Family Law Institute (2000)

- Speaker, "Alternative Views on the Financial Aspects of a Divorce Case," The American Academy of Matrimonial Lawyers Minnesota Chapter (1999)

- Speaker, "Analyzing the Financial Aspects of a Marriage Dissolution," Family Law for the Minnesota Judiciary (1999)

- Speaker, "Spousal Maintenance, An In-Depth Analysis," Minnesota Institute of Legal Education (1999)

- Speaker, "Creative Approaches to Financial Settlements," Collaborative Law Institute (1999)

- Speaker, "Income Tax Update," Family Law Institute (1999)

- Speaker, "Marital Dissolution Services CPA's Can Provide," The American Academy of Matrimonial Lawyers Minnesota Chapter (1999)

- Speaker, "Marital vs. Non-Marital – Whose Asset is it Anyway?," Family Law Institute (1998)

- Speaker, "Appraisal of Intangible Assets," Minnesota Institute of Legal Education (1997)

- Speaker, "Basic Principles of Business Valuation," Minnesota Judiciary Program of Family Law (1997)

- Speaker, "Funding the Bifurcated Family," The American Academy of Matrimonial Lawyers Minnesota Chapter (1997)

- Speaker, "Basics of Valuing a Small Business," Hennepin County Volunteer Lawyers Network (1995)

- Speaker, "Divorce Tax Issues," House, Nezerka & Froelich, P.A. seminar (1995)

Thomas W. Harjes, CPA/ABV/CFF, CVA
Page 5 of 5

## PUBLICATIONS:

- Speaker, "Business Valuations," House, Nezerka & Froelich, P.A. seminar (1994)

- <u>Family Law Financial Deskbook,</u> "Nonmarital Claims and Tracing," (2008)

- <u>Family Law Forum,</u> "Locating Income and Assets Through Individual Income Tax Returns," (2001)

## SPECIALIZED EDUCATION:

- Attended Family Law Institute (1997-2001, 2003-2007, 2010-2018)

- Attended Annual Business Valuation Seminar (1993-1997, 2002, 2006, 2009, 2011, 2015)

- Attended Annual MNCPA Business Valuation Conference (2005-2006, 2008-2019)

- Attended AAML (MN Chapter) "Divorce Camp" (1999, 2001-2019)

- Attended AICPA/AAML National Conference on Divorce (2002, 2004, 2006, 2008, 2010, 2012, 2014, 2016)

- Attended BVR/AAML National Conference on Divorce (2019)

- Attended NACVA Minnesota State Chapter Educational program (2009, 2011-2013, 2015, 2018)

- Attended AICPA National Business Valuation Conference (2003)

- Attended NACVA's Business Valuation Conference (1999, 2001)

- Attended AICPA National Conference on Divorce (1995, 2000)

- Attended NACVA's Certified Valuation Analyst Training Center (1997)

- Attended "Dodging the Deal Breakers" seminar presented by the Small Business Advisory Network, LLC (1996)

- Completed AICPA Business Valuation Certificate of Educational Achievement program (1995)

- Completed NACVA course "Business Valuations: Fundamentals & Techniques for Small Businesses" (1994)

- Completed MNCPA course "Tax Consequences of Marriage, Separation, and Divorce" (1994)

- Completed AICPA course "Business Valuation Methods" (1993)

- Attended MNCPA seminar "Valuing Closely Held Businesses and Professional Practices" (1993)

**Exhibit B**

## Carolina Uribe Borrero and Pawel Rzeczkowski Dissolution
### Projected Cash Flow
### 2020 Tax Rates Applied

### Cash Flow Calculation

| | | | Case One | |
|---|---|---|---|---|
| | | | **Carolina** | **Pawel** |
| 1 | Self-employment income | | 160,466 | 0 |
| 2 | Temporary support | 2,500 | (30,000) | 30,000 |
| 3 | **Annual Pre-tax Cash Flow** | | **130,466** | **30,000** |
| 4 | Income taxes (see below) | | (15,397) | 0 |
| 5 | Self-employment taxes | | (21,372) | 0 |
| 6 | **Annual After-tax Cash Flow** | | **93,697** | **30,000** |
| 7 | **Monthly After-tax Cash Flow** | 10,308 | 7,808 | 2,500 |
| 8 | **Monthly Budget** | | (18,899) | |
| 9 | **Over/(Under) Budget** | | **(11,091)** | |

### Income Tax Calculation

| | | Carolina | Pawel |
|---|---|---|---|
| 10 | Marital Status ("S" or "HH") | HH | S |
| 11 | MN dependency exemptions/child tax credit | 2 | 0 |

**Adjusted Gross Income:**

| | | Carolina | Pawel |
|---|---|---|---|
| 12 | Self-employment income | 160,466 | 0 |
| 13 | Less: SE tax deduction (50%) | (10,686) | 0 |
| 14 | Total | 149,780 | 0 |

**Allowable Deductions:**

| | | Carolina | Pawel |
|---|---|---|---|
| 15 | State taxes paid | 6,634 | 0 |
| 16 | Real estate taxes | 17,376 | 0 |
| 17 | (Limitation - $10,000) | (14,010) | 0 |
| 18 | Home mortgage interest | 35,147 | 0 |
| 19 | Charitable contributions | 0 | 0 |
| 20 | Greater, standard or itemized ded. | 45,147 | 12,400 |
| 21 | Qualified business income deduction | 20,927 | 0 |
| 22 | Total | 66,074 | 12,400 |
| 23 | **Taxable Income** | **83,706** | **(12,400)** |

**Income Taxes**

| | | Carolina | Pawel |
|---|---|---|---|
| 24 | **Federal Tax** | 12,763 | 0 |
| 25 | **Federal Child Tax Credit** | (4,000) | 0 |
| 26 | **Federal Additional Medicare Tax** | 0 | 0 |
| 27 | **State Tax** | 6,634 | 0 |
| 28 | **Total Income Taxes** | **15,397** | **0** |

STATE OF MINNESOTA                           DISTRICT COURT

COUNTY OF HENNEPIN                    FOURTH JUDICIAL DISTRICT

---

In the Marriage of:                          Court File No.:  27-FA-19-6324

Pawel Dominik Rzeczkowski,

     Petitioner,                              **AFFIDAVIT OF**
  and                                     **CAROLINA URIBE BORRERO**

Carolina Uribe Borrero,

     Respondent.

> **Exhibit 2**
> Case No. 26-40008

---

CAROLINA URIBE BORRERO, being first duly sworn upon oath, states and

deposes as follows:

1.    My name is Carolina Uribe Borrero and I am the Respondent in this court

proceeding and I am making this Affidavit to provide the Court with an update from

my Affidavit dated April 24, 2023 filed with the Court of Appeals. As outlined in my

prior Affidavit, my financial circumstances have changed significantly since our trial.

2.    As an update to my cash flow for 2023, I am still running a deep deficit in my

income as compared to my monthly expenses.  I have confirmed earnings of $167,355

through August of this year.  This is pre-expenses and pre-taxes.  Based on my

contracts for the remainder of this year, I expect that my year end income will be

around $253,901.50 gross, which is prior to expenses and taxes.

3.    My business expenses are estimated at around $17,500 per year, giving

earnings after expenses of approximately $236,401.50 for the full year of 2023. My

tax rate will yield taxes to be paid of approximately $66,192.42 meaning I will likely

have after-tax earnings of approximately $170,209 this year. That is a deficit in earnings vs the year prior to my divorce (2021), when I had earnings after taxes and expenses of $235,000.

4.    My monthly budget has also increased since our trial from $16,848.28 to $19,149.94 per month. Given that I now have the children 100% of the time since September of 2022 my childcare expenses have increased significantly. I have also been solely responsible for their medical and dental insurance premiums, any uninsured/unreimbursed medical/dental costs, as well as clothing/shoes, school supplies and tutoring. Additionally, I recently purchased a home that needs significant upkeep, given it is older and has not been remodeled. This includes, but is not limited to, removing the popcorn ceiling, painting, unclogging the sewer line, repairing the toilet in the basement's bathroom, installing smoke and CO2 detectors, completing an inspection that is currently in progress on the electric system and any work that is identified as required, abating asbestos in the machinery room, fixing the boiler system (and potentially installing a new boiler), insulating the attic, repairing two plumbing leaks, updating the bathtub water system, removing the carpet, fixing (and potentially replacing) the garage door, and finishing the hardwood floor. **See Exhibit 1, current monthly budget.** Please note that my monthly budget does not include my attorney fees for three separate attorneys that I have continued to incur since our divorce.

5.    In 2023 I have paid my attorneys a total of $30,574 up until today, and I currently owe my attorneys a total of $56,791.24 ($28,333 to Mr. DeWalt's firm and

$28,458.24 to Mr. Janochoski's firm). This figure does not include ongoing work on my case, which should continue to increase until the cases are closed. Additionally, I was just notified that the Petitioner filed a new legal process against me, for which I am yet to be served, which will likely require additional legal representation.

6.      To cover the shortfall between my income and my monthly budget, I continue to use my life long savings, and pay for the deficit from my investment and retirement accounts.

7.      As the Court can see, from my filings filed with the Court of Appeals in April of this year, as well as my updated submissions, I do not have the ability to also pay for Petitioner's costs and fees and I am asking that Petitioner's request that I do so, be denied.

FURTHER YOUR AFFIANT SAYETH NOT

Pursuant to Minn. Stat. Sec. 358.116, I declare under penalty of perjury that everything I have stated in this document is true and correct. This document was signed in the County of Hennepin, State of Minnesota, on September 8, 2023.

/s/ Carolina Uribe Borrero
Carolina Uribe Borrero

**EXHIBIT 1**



## MONTHLY BUDGET (*please note budget subject to change)

| BUDGET TYPE: | Current |
|---|---|

| HOUSEHOLD EXPENSES | |
|---|---|
| Mortgage: | $2,771.21 |
| Home/Rental Insurance: | $147.52 |
| Property Taxes: | $494.93 |
| Subtotal: | $3,413.66 |

| UTILITIES | |
|---|---|
| Electricity: | $163.72 |
| Gas: | $143.96 |
| Water: | $50.00 |
| Cell Phone: | $161.25 |
| Netflix, Disney+, HBOMax, Preschool app, Homer app, etc. | $80.32 |
| Internet: | $128.81 |
| Subtotal: | $728.06 |

| HOME MAINTENANCE | |
|---|---|
| Interior Repairs (plumber, electrician, etc.): | $2,000.00 |
| Exterior Repairs (house painting, gutters, roof, etc.): | $1,000.00 |
| Home Supplies (cleaning, TP, papertowls, soap, etc.): | $200.00 |
| Cleaning Service: | $500.00 |
| Yard Care (snow removal, mowing, tree trimming, etc.): | $200.00 |
| Security System: | $24.99 |
| Subtotal: | $3,924.99 |

| FOOD | |
|---|---|
| Dining Out: | $392.14 |
| Groceries: | $750.00 |
| Subtotal: | $1,142.14 |

| PERSONAL EXPENSES | |
|---|---|
| Clothing/Shoes: | $300.00 |
| Haircuts: | $44.84 |
| Beauty Supplies (makeup, hair products, etc.): | $50.00 |
| Manicure/Pedicure: | $152.50 |
| Dry Cleaning: | $60.00 |
| Other: | $113.25 |
| Subtotal: | $720.59 |

| TRANSPORTATION | |
|---|---|
| Car Insurance: | $163.17 |
| Fuel: | $120.00 |
| Maintenance/Repairs: | $79.00 |
| Vehicle Tabs: | $60.00 |
| Car Washes: | $20.00 |
| Parking Fees: | $240.00 |
| Subtotal: | $682.17 |

| MEDICAL | |
|---|---|
| Health Insurance: | $702.55 |
| Dental Insurance: | $66.02 |
| Unreimbursed Medical: | $501.45 |
| Unreimbursed Dental: | $121.41 |
| Eyeglasses/Contacts: | $50.00 |
| Pharmacy/Medications: | $25.00 |
| Vitamins/Supplements: | $100.00 |
| OTC Items: | $50.00 |
| Subtotal: | $1,616.43 |

| RECREATION | |
|---|---|
| Vacation: | $958.33 |
| Entertainment: | $150.00 |
| Camper rent: | $343.35 |
| Subtotal: | $1,451.68 |

| EDUCATION/EXTRA CURRICULAR ACTIVITIES | |
|---|---|
| Kids swimming classes | $208.25 |
| Polish classes | $225.00 |
| Minneapolis Kids School care | $1,037.27 |
| Tutor for kids | $392.14 |
| Subtotal: | $1,862.66 |

| MEMBERSHIPS | |
|---|---|
| Health/Fitness Club: | $100.00 |
| Amazon Prime + Shipt: | $19.91 |
| Subtotal: | $119.91 |

| MISCELLANEOUS | |
|---|---|
| Life Insurance: | $67.05 |
| Disability Insurance: | $791.67 |
| Financial advisory and Tax Consulting/Preparation: | $666.67 |
| Postage: | $27.12 |
| Gifts (holidays, birthdays, graduations, etc.): | $333.33 |
| Books/Magazines: | $36.67 |
| Alcohol: | $40.85 |

| | |
|---|---|
| Furniture/Décor: | $200.00 |
| Pet Expenses: | $278.58 |
| Subtotal: | $2,441.94 |

| OTHER | |
|---|---|
| A: Nanny for kids | $1,045.71 |
| Subtotal: | $1,045.71 |

| | |
|---|---|
| RESPONDENT'S MONTHLY EXPENSES: | $19,149.94 |

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368



April 14, 2020

DCML1SDTCX 005238
ılļıllıllĮıllıĮlıŀlĮŀŀllıılĮllĮıllılĮılļılillılļılĮılliiļll
CAROLINA URIBE BORRERO
4208 BEARD AVE S
MINNEAPOLIS, MN 55410-1426

| Account Information | |
| --- | --- |
| Online: | wellsfargo.com |
| Fax: | 1-866-590-8910 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon.- Thu., 7 a.m. - 9 p.m., |
| | Fri., 7 a.m. - 8 p.m., |
| | Sat., 8 a.m. - 4 p.m., CT |
| Loan number: | 0504816331 |
| Property address: | 4208 Beard Ave S |
| | Minneapolis MN 55410 |

# Exhibit 3

Case No. 26-40008

**Subject: You have payment suspension for this account**

Dear Carolina Uribe Borrero:

We know that this is a challenging time as you work to protect what matters most: your health and the health and safety of the people you care for. You let us know about a financial hardship you're facing. We want you to know that we're here to help.

You may not know how you'll be affected by the spread of coronavirus (COVID-19), so we want to help by providing you with time to assess your situation. For this reason, we're providing the following short-term payment suspension for your account.

**Your short-term payment suspension (forbearance)**
This payment relief is an immediate payment suspension - a temporary pause of your loan payments for an initial three months. Unless you receive further relief, you'll need to resume your regular mortgage payment schedule beginning on July 1, 2020.

During payment suspension:
• We won't charge late fees or report additional missed payments to the credit bureaus.
• If the account is past-due, we won't refer the account to foreclosure at this time.

Please contact us if you need assistance but don't think this short-term payment suspension is right for you.

**Note:** If you find that you don't need this short-term payment suspension, please continue to make your normal payments. Take advantage of this payment suspension only when you really need it, because you may need to repay any missed payments at the end of the short-term payment suspension period.

This payment suspension option is based on an incomplete application for assistance. Other payment assistance options may be available. If you would like a review for all available assistance options, you may submit a complete application, which would include information about your income and expenses. This review is available whether or not you accept this short-term payment suspension. Please contact us for more information.

**After the payment suspension period ends**

HP646 936 0011

<table>
<tr><td colspan="2"><b>Account Information</b></td></tr>
<tr><td>Loan number:</td><td>0504816331</td></tr>
<tr><td>Property address:</td><td>4208 Beard Ave S<br>Minneapolis MN 55410</td></tr>
</table>

If you need more time at the end of your initial three-month payment suspension period, depending on the type of loan you have, you may have the option to extend the payment suspension up to an additional three months, for a total of six months. If you choose to extend your payment suspension period, you will still need to repay all missed payments. When it comes time for you to repay, we'll review your financial situation and discuss options with you.

Depending on the type of loan you have and your situation, your options may include:

- **An additional payment suspension:** You may be able to continue the six-month payment suspension for up to an additional six months.
- **A lump-sum payment:** If you can, you repay the entire amount due at once.
- **A repayment plan:** We'll divide the amount due from the amount of missed payments into manageable amounts, spread out over time.
- **Payment deferral:** We'll move the amount of the suspended payments to the end of your loan term.
- **A loan modification:** We may be able to change certain terms of your loan - such as the interest rate or the time allowed for repayments to make payments more manageable. Your modified payment amount is based on your current financial situation and takes any hardship into account.

After the payment suspension period ends, reporting the past-due status to the consumer reporting agencies, late fees, and possible foreclosure activities may begin or resume.

### What you need to know about automatic payments

- If you're making automatic payments from bill pay on *Wells Fargo Online*® or with any other financial institution, you'll need to stop them.
- If you have a plan with us to withdraw your mortgage payments directly from your checking or savings account, we'll stop that for you.
- Once the payment suspension period ends or when you're able to make payments, you'll need to set up any automatic payments or plans again.

### Ending the payment suspension early

You can end the payment suspension at any time. If you decide to shorten the plan, or if you decide later that this is not the right solution for you, please contact us.

### Short-term payment suspension impacts

- If you have an escrow account, we'll continue to make your tax and insurance payments during this time. However, the suspension of payments may result in a shortage because your escrow account won't receive ongoing funds.
- You'll continue to receive statements every 30 days that show an amount due. We're legally required to do so. The statement will refer to your short-term payment suspension under Important Messages.
- If the loan was modified under the Home Affordable Modification Program (HAMP) or Second Lien Modification Program (2MP) and you don't make a payment during this time, you could lose the pay-for-performance incentives. This is because you must remain in good standing with HAMP and 2MP.
- If you have a loan modification that offers principal forgiveness that requires you to be current on your loan, you risk losing that benefit. Contact us to discuss your situation.

| Account Information | |
|---|---|
| Loan number: | 0504816331 |
| Property address: | 4208 Beard Ave S |
| | Minneapolis MN 55410 |

- If you would like to refinance your current mortgage loan or obtain a new mortgage loan or home equity, the forbearance plan must be resolved in advance.

**We're here to help**
If you have questions about the information in this letter, please call us at the phone number in the account information box at the top of this letter. Thank you.

**Note:** As we support those impacted by COVID-19, we are experiencing longer than usual call volumes and wait times. We apologize for any inconvenience and ask for your understanding as we work to serve all of our customers. Go to wellsfargo.com/mortgageassist for up-to-date information you may need to manage your account during these challenging times.

Home Preservation Department
Wells Fargo Home Mortgage

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of this account, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include the account number with all correspondence.

**Get free counseling to help manage expenses and avoid foreclosure.**
Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

**Contact other servicers**
As a reminder, it's important to consider contacting the servicers of any other mortgage loans that are secured by this property to discuss mortgage assistance options.

**An appraisal may be required as part of this process.**
When you apply for assistance on a home that is secured by a first lien, we may need to appraise the home. If we do, you'll receive a copy of any written appraisals related to this application.

Our acceptance and posting of your payments during the short-term payment assistance plan will not be deemed a waiver of the right to accelerate or foreclosure actions, and related activities, and shall not constitute a cure of any default under your loan unless such payments are sufficient to completely cure the entire default under your loan.

All terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms. Nothing in this assistance shall be understood or

DOML1SDTCX 005238  NNNNNNNNN NNN NNN 003 004   038401   216165395.1

| Account Information | |
| --- | --- |
| Loan number: | 0504816331 |
| Property address: | 4208 Beard Ave S Minneapolis MN 55410 |

construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

Where appropriate, Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2020 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801





| Account Information | |
|---|---|
| **Loan number:** | 0504816331 |
| **Property address:** | 4208 Beard Ave S<br>Minneapolis MN 55410 |

construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

Where appropriate, Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2020 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801



DCML1SDTCX 005238  NNNNNNNNN NNN NNN 004 004    03S403    216T6S95.1

HP846 936 0011

STATE OF MINNESOTA                                      DISTRICT COURT
COUNTY OF HENNEPIN                                FOURTH JUDICIAL DISTRICT

In the Marriage of:                                      Case No. 27-FA-19-6324

Pawel Dominik Rzeckowski,                        **Order on Request for Need-Based
                                                                Attorney Fees**

              Petitioner,

and

Carolina Uribe Borrero,

              Respondent.

| **Exhibit 4** |
| Case No. 26-40008 |

          This matter came before the Honorable Michael E. Burns, Judge of District Court, by
affidavit and submissions filed on September 8, 2020 and September 16, 2020.

          Petitioner Pawel Dominik Rzeczkowski is represented by Valerie A. Arnold, Esq.[1]

          Respondent Carolina Uribe Borrero is represented by John W. DeWalt, Esq.

          Based upon the files, proceedings and records herein, the Court makes the following:

                                    **<u>Findings of Fact</u>**

1.    The parties were married on October 1, 2011 in the City of Cali in the Republic of
      Colombia.

2.    The parties are the parents of the following joint minor children (the "children"): Aurora
      Margarita Rzeczkowski-Uribe, born March 2, 2015 and Sebastian Adam Rzeczkowski-
      Uribe, born March 2, 2015.

3.    Petitioner initiated this case with service of the Summons and Petition served on
      Respondent on September 20, 2019, and filed with the Court on September 20, 2019.
      Respondent filed an Answer and Counterpetition on February 13, 2020.

4.    This Court denied Father's motion for need-based attorney fees in its Findings of Fact,
      Conclusions of Law, and Order on Temporary Relief filed on August 12, 2020 (the
      "Temporary Order").

---

[1] Ms. Arnold filed a notice of withdrawal on January 5, 2021.

1

5.    On September 8, 2020, Father's attorney filed a correspondence requesting need-based attorney fees.

6.    On September 16, 2020, Mother filed a responsive motion and supporting affidavit.

## Father's Attorney Fees

7.    In the Affidavit of Attorney filed on September 9, 2020, Ms. Arnold states that Father has incurred $41,243.69 in attorney fees since April 1, 2020. (Aff. of Attorney at 2.) Father provided copies of his invoices to support that amount. (Aff. of Attorney, Ex. 12.)

8.    In his affidavit, Father states that he has paid a total of $25,459 in attorney fees during these proceedings. (Aff. of Pet. at 1.) He has paid these fees "through borrowed funds or by incurring credit card debt." (Id.)

9.    The Court initially addressed need-based attorney fees in the Temporary Order. Father requested need-based attorney fees in the amount of $24,563.18. The Court denied Father's motion for need-based attorney fees because Father had "already paid a substantial portion—if not all—of his attorney fees." (Temporary Order at 17.)

10.   The parties last appeared in court on May 14, 2020 for a motion hearing. Since then, counsel for the attorneys appeared for a telephone conference in August. The parties have had several review hearings scheduled, but the hearings have been rescheduled in anticipation of either settlement of the issues or pending the custody and parenting time evaluation.

11.   In the June 2020 invoice, Father incurred an additional $2,792.32 in attorney fees. (Aff of Attorney, Ex. 12 at 9–10.) In July, Father incurred another $958.14 in fees. (Id. at 11.) In August, he incurred $3,918.02 in fees. (Id. at 14–15.) Finally, he incurred $2,748.50 in attorney fees in September. (Id. at 16.)   In sum, Father has incurred an additional **$10,416.98** in fees since the hearing in May.

12.   In a correspondence to the Court, Father requests need-based attorney fees in the amount of $15,000 for the good faith assertion of his rights as to child custody, parenting time, child support, spousal support, and property division.

## Father's Financial Circumstances

13.   Father remains unemployed. (Aff. of Pet. at 2.) In the Temporary Order, the Court awarded Father temporary support in the amount of $2,500 per month. The Court previously found that "Father has shown some capacity to obtain limited employment based on his education and training." (Temporary Order at 16.) The Court also raised concern that temporary support "may encourage freeriding." (Id.)

2

14. To be sure, Father's continued unemployment is a cause for concern for this Court. However, the Court is mindful of the unique economic circumstances created by the COVID-19 pandemic—a fact also noted by Mother. See (Aff. of Resp. at 4.)

15. In addition to a lack of income, Father has not have access to the parties' joint marital funds since March 2019. (Aff. of Pet. at 2.)

16. Father states that he does not have a sufficient income to pay for attorney fees after his monthly expenses. To support his position, he submitted a budget. (Aff. of Pet., Ex. 3.) That budget shows that Father incurs monthly expenses of $2,421. That leaves Father with a surplus of $79 each month.

17. The Court notes that Mother pays for Father's health insurance, phone, and vehicle and vehicle insurance. Father budgets $60 per month for the children's clothing and $62 for entertainment subscriptions. While Father's budget of $380 for food is not outlandish, the Court is concerned that Father chooses to purchase food from Whole Foods and Trader Joe's while facing tight financial circumstances. He also spends $25 on "[s]pirits." (Aff. of Pet., Ex. 3.)

18. In total, Father should have approximately $200 in extra surplus if he made prudent adjustments to his budget.

**Mother's Financial Circumstances**

19. In contrast to Father, Mother has a pre-tax net income is $160,300. (Resp. Aff. of Respondent at 4.) She states that she had to use a "significant portion of [her] savings, averaging $22,318 per month." (Resp. Aff. of Respondent at 5.) She characterizes her professional situation as "very unstable." (Id. at 4.)

20. Mother also has significantly higher expenses than Father. She pays mortgage, tax and insurance payments for the marital home in the amount of $5,924 monthly. (Aff. of Resp., Ex. 3 at 1.) She also incurs about $5,000 in additional expenses. Thomas Harjes, CPA, prepared a monthly after-tax cash flow to support Mother's affidavit. (Aff. of Thomas W. Harjes, CPA.) After reviewing Mother's financial information, Mr. Harjes concluded that Mother has an after-tax monthly cash flow of $7,808 and a monthly budget for her and the children of $18,899. So, Mother has a monthly budget shortfall of $11,091.

21. The Court notes that Mother expends over $2,000 on food, including $1,891 per month on groceries. (Id.) Comparatively, Father spends less than a fourth of that amount. Mother also lists personal expenses such as clothing ($300), manicures ($152.50) and other ($113.25). (Id.) These costs could be reduced, especially discretionary spending labeled other. Mother also reserves over $958 for vacations per month. (Id.) This is item stands out during this unprecedented pandemic era. Overall, Mother's budget includes approximately $2,000 in unnecessary expenses.

3

22.    Even with that reducing Mother's budget by that amount, Mother would still have a monthly budget shortfall of $9,000.

### Marital Funds

23.    A core issue in this proceeding is the nature of the parties' financial assets. Mother contends that the parties are economically divorced and, as a result, there are no marital assets. (Aff. of Resp. at 7–8.) Father has argued throughout these proceedings that he was not aware of the economic divorce. The parties were originally working on a schedule to brief this issue for this Court. (Correspondence from Valerie Arnold dated September 25, 2020.) However, the parties were unable to agree on a briefing schedule and the matter has not been fully litigated.

### Conclusions of Law

24.    As a preliminary matter, this Court only considers Father's request for need-based attorney fees since June 2020. Fees incurred prior to that were the subject of this Court's Temporary Order. Father was not invited to renew his request for those fees, as he himself noted. (Aff. of Pet. at 1.)

25.    Under Minn. Stat. § 518.14, subd. 1, a court shall award need based attorney fees if it finds:

> (1) that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;
>
> (2) that the party from whom fees, costs, and disbursements are sought has the means to pay them; and
>
> (3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.
>
> Minn. Stat. § 518.14, subd. 1.

26.    First, this Court considers whether the fees are necessary for the good faith assertion of Father's rights in the proceedings and will not contribute unnecessarily to the length and expense of the proceedings. Here, the Court finds that attorney fees are necessary for Father's good faith assertion in these proceedings. The matter of the economic divorce will continue to be litigated and has been the central issue throughout these proceedings. To be sure, Mother does not agree with Father's position on the matter. But that does not mean that Father's assertion is not in good faith.

27.    His assertion of those arguments will not contribute unnecessarily to the length and expense of the proceedings. On the contrary, it is necessary that the Court resolve that issue in order to proceed with the dissolution. The Court would be unable to proceed without a determination on the parties' marital property.

4

28.   To be sure, the Court raised concern that "the parties are essentially requesting a dissolution through a temporary motion." (Temporary Order at 8.) However, both parties brought extensive motions and provided the Court with voluminous documents. Now, the matter before the Court is more limited than the temporary motion—the Court expects that these proceedings will be focused on the issue of economic divorce before proceeding to other issues in the case. As a result, the Court finds that fees will not contribute unnecessarily to the length and expense of the proceedings.

29.   Next, the Court considers whether Mother has the means to pay for the fees. To be sure, Mother has greater financial assets than Father—including her income and access to funds. However, Mother incurs a monthly negative cash flow and has used her savings to fund the litigation. The Court finds that Mother does not have the means to pay for fees.

30.   Finally, the Court considers Father's financial ability to pay. As discussed above, Father remains unemployed. It is not clear that Father has made any effort to obtain employment. Mother pays for Father's health insurance, vehicle, and phone. Despite his budget showing a surplus of $79, the Court believes that Father has additional room in his budget, approximately $200 extra.

31.   To be sure, even if Father were to make that adjustment to his budget, he would still face tight financial constraints to pay his ongoing attorney fees without incurring additional debt. This is true even though Father receives $2,500 in temporary support. Accordingly, the Court finds that Father does not have the means to pay for his attorney fees.

32.   However, as discussed above, Mother does not have the ability to pay Father's need-based attorney fees. Even if Father is unable to pay for his attorney fees, he must still show that Mother is able to pay his fees. See In re Marriage of Sammons, 642 N.W.2d 450, 458 (Minn. Ct. App. 1989). The Court is sympathetic to Father's need for financial support to pay for an attorney. But Mother has a negative monthly cash flow and is unable to afford his attorney fees.

33.   Accordingly, the Court finds that Father's request for need-based attorney fees should be **DENIED**.

34.   Father requests conduct-based attorney's fees and costs. A court has discretion to award conduct-based attorney fees against "a party who unreasonably contributes to the length or expense of the proceeding." Minn. Stat. § 518.14, subd. 1. Father contends that Mother has increased the length and expense of these proceedings by failing to respond to discovery and contending that the parties are economically divorced. The Court finds that Father has not shown that Mother has increased the length and expenses of these proceedings. Accordingly, the Court finds that Father's request for conduct-based attorney fees should be **DENIED**.

5

35.    In the alternative, Father requests that the Court grant him an advance of $54,247 from the parties' marital estate to pay his outstanding attorney fees and costs. Mother objects to this request because this request was not raised at the August telephone conference. At that conference, the Court gave the parties permission to provide the Court with supplemental affidavits to support additional claims for need-based attorney fees.

36.    The Court is sympathetic to Mother's objection. However, Father's request in the alternative may lead to an equitable result given the financial circumstances of the parties. To promote fairness and equity in this matter, the Court considers Father's request that the Court advance him part of the marital estate to pay his attorney fees.

37.    Under Minnesota law, "[a]ll property acquired by either spouse subsequent to the marriage and before the valuation date is presumed to be marital property regardless of whether title is held individually or by the spouse . . . ." Minn. Stat § 518.003, subd. 3b. Mother contests this presumption that the parties have marital assets. This Court agrees with Mother that ordering an advance could "creat[e] [an] extraordinarily complicated issue[] to untangle in the future."

38.    However, the Court must balance this concern against the fairness of Father having assets to fund an adequate defense. An advance would permit Father to fully litigate the issue without permanently disadvantaging Mother's financial positions—unlike an award of need based attorney fees. Furthermore, both parties have had an opportunity to litigate the issue of economic divorce before the Court. Both parties have failed to do so—not just Father. So, the Court presumes that the parties have marital assets.

39.    A district court has broad discretion in dividing marital property. <u>Servin v. Servin</u>, 345 N.W.2d 754, 758 (Minn. 1984). Here, ordering an advance to Father will permit him to properly litigate the complicated issues in this matter. If, after litigation, the Court finds that the parties do not have marital assets, the Court will order that Father repay Mother in order to make Mother whole. If, however, this Court concludes that the parties have marital assets, then an advance will be accounted for in any division of marital property, including any proceeds from a sale of the parties' homestead.

40.    Accordingly, the Court finds that Father shall be provided with access to **$15,000** in funds from the parties' marital assets.

NOW, THEREFORE, based upon the files, proceeding herein, the Court makes the following:

## <u>Order</u>

1.    Father's motion for need-based attorney is **DENIED**.

2.    Father's request for conduct-based attorney fees is **DENIED**.

3.   Mother shall provide Father with access to $15,000 in funds from the parties' marital assets within thirty (30) days of this Order.

4.   All other provisions of prior and consistent orders shall remain in full force and effect.

5.   **Attorneys Using E-Filing**. When e-filing into this case, attorneys shall email a courtesy copy to 4thJudgeBurnsStaff@courts.state.mn.us.

6.   **Service**. Service of a copy of this order shall be made upon pro-se parties by first class U.S. mail at their last known addresses, or to attorneys by e-service, which shall be due and proper service for all purposes.

**It is so ordered.**

Burns, Michael
2021.01.12
14:36:18
-06'00'

_____

*Michael E. Burns*
Judge of District Court

7

Filed in District Court
State of Minnesota
11/22/2023 3:13 PM

**Exhibit 5**

Case No. 26-40008

**From:** Jack DeWalt <jack.dewalt@dcsfamilylaw.com>
**Sent:** Monday, September 27, 2021 1:56 PM
**To:** Robert W. Due <rwd@dewittllp.com>
**Cc:** Casey Poltiske <casey.poltiske@dcsfamilylaw.com>
**Subject:** QCD

Hello Rob,

I spoke with Ms. Uribe Borrero and the difference in the mortgage amounts is due to Ms. Uribe Borrero being on a COVID-19 relief program she qualified for. It is my understanding the regular mortgage payments of $4,309.40 per month for 17 months were waived for the time being and show up as unpaid interest.

I believe that answers all questions your client had; will you email over the signed QCD?

Thank you,
Jack

**Jack DeWalt**
**Attorney at Law**

**612-886-3775 - Direct Dial**
**612-361-6180 - Main**
jack.dewalt@dcsfamilylaw.com
**330 2nd Avenue South | Suite 760**
**Minneapolis, MN 55401**
www.dcsfamilylaw.com

# Exhibit 6

Case No. 26-40008





<div style="border: 2px solid black; padding: 10px;">

# Exhibit 7

Case No. 26-40008

</div>

## Screenshot of Breck School Published Tuition (2025–2026)

### Tuition Rates for 2025-2026

| Division/Grade | Tuition/Fees |
|---|---|
| Preschool Half Days | $25,920 |
| Preschool Full Days | $33,685 |
| Kindergarten Full Days | $34,805 |
| Grades 1-4 | $37,930 |
| Grades 5-8 | $39,385 |
| Grades 9-11 | $39,940 |
| Grade 12 | $39,990 |

Source: https://www.breckschool.org/admissions/financialaid

# Message Report

 **OurFamilyWizard**®

**Generated:** 02/24/2026 at 01:11 PM by Pawel Rzeczkowski

**Timezone:** America/New_York

**Format:** mm/dd/yyyy

**Parents:** Carolina Uribe Borrero, Pawel Rzeczkowski

**Child(ren):** Aurora Rzeczkowski-Uribe, Sebastian Rzeczkowski-Uribe

**Date Range:** 01/10/2026 — 01/12/2026

**Contains:** 1 selected messages

**Order:** Chronological (oldest first, most recent last)

OurFamilyWizard, LLC.
ourfamilywizard.com
info@ourfamilywizard.com
+1 (866) 755-9991

## Exhibit 8
Case No. 26-40008

---

Message 1 of 1

| | |
|---|---|
| Sent: | 01/12/2026 at 03:03 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 01/12/2026 at 03:03 PM)* |
| Subject: | Re: Aurora's Middle School – Confirmation of Agreed Plan |

Pawel,
I acknowledge receipt and I will reply to you later.

Just FYI, this was in mprnews today:
10:50 a.m. | Minneapolis school says it's in lockout mode after 'non-credible' bomb threat
Anthony Middle School in Minneapolis increased its security level Monday after receiving a bomb threat
deemed "non-credible" by police. The school said it will "continue to operate in lockout for the remainder of
the day" Monday, meaning all exterior doors are locked and monitored and unplanned visitors cannot enter
the building.

| | |
|---|---|
| Sent: | 01/12/2026 at 10:35 AM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 01/12/2026 at 10:36 AM)* |
| Subject: | Re: Aurora's Middle School – Confirmation of Agreed Plan |

Carolina,

I support strong educational opportunities for Aurora.

As documented in our November 2025 exchange, we jointly agreed that Aurora would attend
Anthony Middle School, and you confirmed that enrollment was completed. I continue to

believe Anthony is a strong and appropriate choice for her.

I am not comfortable initiating applications to alternative schools at this time. Applications are not neutral steps; they can create expectations and future pressures that effectively pre-decide outcomes. Given ongoing legal and financial matters, I do not believe that is appropriate or in Aurora's best interest.

Accordingly, I do not consent to moving forward with applications beyond the agreed-upon plan. Doing so risks creating new long-term obligations or pressures to revisit an already settled decision.

If circumstances materially change in the future, we can discuss them together in a structured way. For now, I believe it is in Aurora's best interest to proceed with the plan we mutually approved.

I also need to address that Aurora was taken to the Breck open house before we had reached joint agreement on pursuing alternative schools. By the time Aurora and I spoke that afternoon, she was already discussing Breck as a potential option and had begun forming expectations around it. Introducing a specific school to her at this stage places her in the middle of an unresolved parental decision and creates emotional pressure that is difficult for a child to navigate. My concern here is about process and impact on Aurora, regardless of the merits of any particular school.

If you believe a change from our agreed plan is necessary, that discussion should occur with full transparency and, if appropriate, court guidance. I am not consenting to unilateral steps that could later be presented as a fait accompli or as having effectively decided the issue.

For clarity, please confirm whether any application materials have already been submitted to Breck. If so, I am requesting that any such application be withdrawn, as I do not consent to pursuing alternative schools at this time.

_____

Pawel

**See Attachments:** 20260112_Aurora_School_Placement_– _Objection_to_Alternative_Applications.pdf (75.6 KB)

Sent:       01/10/2026 at 05:15 PM
From:       Carolina Uribe Borrero
To:         Pawel Rzeczkowski *(First Viewed: 01/10/2026 at 05:15 PM)*
Subject:    Schools information and Breck

Hi Pawel,
Aurora is currently registered to attend Anthony Middle School. To gather information on other options, we attended an open house at Breck today, and a Minneapolis School Fair. We both loved it. It is AMAZING.

I briefly spoke privately with the Director of Admissions and Financial Aid regarding my financial situation. Based on my 2025 income and bankruptcy, he indicated that Aurora would qualify for financial aid and encouraged us to apply.

I intend to start the application process since there is no downside to applying. Please note that this is NOT a decision, as I know we need to make that decision together. We would only reach a decision point if: 1). She is admitted (only 50% of kids are admitted), and, 2). She is offered substantial financial aid.

I hope we can work together on this in Aurora's best interest.

Best,

Carolina

# Message Report



**Generated:** 02/24/2026 at 01:14 PM by Pawel Rzeczkowski

**Timezone:** America/New_York

**Format:** mm/dd/yyyy

**Parents:** Carolina Uribe Borrero, Pawel Rzeczkowski

**Child(ren):** Aurora Rzeczkowski-Uribe, Sebastian Rzeczkowski-Uribe

**Date Range:** 01/13/2026 — 01/13/2026

**Contains:** 1 selected messages

**Order:** Chronological (oldest first, most recent last)

OurFamilyWizard, LLC.
ourfamilywizard.com
info@ourfamilywizard.com
+1 (866) 755-9991

## Exhibit 9

Case No. 26-40008

---

Message 1 of 1

| | |
|---|---|
| Sent: | 01/13/2026 at 05:59 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 01/13/2026 at 06:00 PM)* |
| Subject: | Minneapolis under siege |

Hi Pawel,

I wanted to share some context about what has been happening recently in Minneapolis, as it has been affecting our community and, directly, Aurora.

Today I picked Aurora up early because her school went into lockdown due to ICE activity reported nearby in Loring Park. Many families are currently choosing not to send their children to school in person because they do not feel safe. Aurora was very scared today.

There have also been several incidents close to our community that have heightened concerns. Last week, ICE agents went to Roosevelt High School, where both students and staff were detained, and individuals were reportedly placed in handcuffs on school grounds. This has understandably caused significant fear among students and families across the district.

These incidents are not happening at a distance; they are happening to people that we know within our community. For instance, a family from church recently had their neighbor deported, leaving behind his wife and three children, including a newborn, without their sole breadwinner. Another white-red hair individual from our church, who is not an immigrant, was detained after peacefully observing and documenting an ICE operation from inside his car; he was released within 24 hours without charges.

As I previously shared, there was also a bomb alert at Anthony Middle School, where Aurora is currently registered to attend.

Given that ICE activity has occurred in, near or around public schools, many families are understandably concerned about children's safety and emotional well-being. These events have been unsettling for Aurora and for many students.

I am sharing this simply as additional context for you to have when we eventually revisit conversations about Aurora's schooling, including considerations such as Breck. I am not asking for a response now.

My intention is to approach these discussions later in a calm, collaborative, and child-centered way, focused on what is in Aurora's best interest. For now, I would prefer to pause the conversation.

Best,
Carolina

PS - here is another article on the subject: https://www.mprnews.org/story/2026/01/13/students-walk-out-decry-ice-as-surge-continues

Aurora Rzeczkowski-Uribe — Math Teacher Recommendation Form



# Exhibit 10

Case No. 26-40008

**MATH TEACHER RECOMMENDATION**

**Please complete by Feb 1st, unless that date has passed, please send in as soon as possible.**

| | | | |
|---|---|---|---|
| **Student/Applicant Name** | Aurora Margarita Rzeczkowski-Uribe | **Class Information: Title of course** | 5th Grade Mathematics |
| **Applicant for grade** | 6th | **# students in class** | 26 students |
| **Years/months known** | September 2025-January, 2026 | **Class meets # days per week** | 5 |
| **Teacher/Respondent name** | Mr. Eugenio Coronado (Eugenio/ Geno) | **Class meets # minutes per session** | 60 |
| **Relationship to student** | Math Teacher/Homeroom Teacher | | |

**Briefly describe your course. It is especially helpful to know what texts are used and if the students are grouped by ability.** At Emerson Dual Language we use the Bridges math curriculum in English and Spanish. Lessons are in English, during independent work time students choose the language they prefer to work in, and small groups are led in the language students are most comfortable working in. In class we use the classroom student book, Bridges math games, and at home students review unit objectives in a homework student book called Home Connections. Students also use the Dreambox math application that helps them grow in math at their specific level of understanding.

**Is this course part of a tracking system or designated as an honors or accelerated course?** no

**Next year, what math course would be the most appropriate placement for this student?** on grade level to advanced

**To the Teacher/Respondent:** The Breck Admissions Committee is in the process of establishing the appropriateness of our program for the above-mentioned student. Please know that all recommendations are confidential and will **not** become part of a student's permanent record. Thank you, in advance, for your willingness to help with our Admissions process.

| | Excellent (top 10%) | Above average | Average | Below Average | No basis for judgment |
|---|---|---|---|---|---|
| **Knowledge of Basic Skills** | | ✓ | | | |
| **Accuracy in Use of Basic Skills** | | ✓ | | | |
| **Understanding and Appreciation for Underlying Ideas and Concepts** | | ✓ | | | |
| **Problem Solving Ability** | | ✓ | | | |
| **Creativity** | | ✓ | | | |
| **Intellectual curiosity** | | ✓ | | | |
| **Academic potential** | | ✓ | | | |
| **Effort/determination** | | ✓ | | | |
| **Completes Assignments on Time** | | ✓ | | | |
| **Demonstrates Ability to Work Independently** | | ✓ | | | |
| **Demonstrates Ability to Work Cooperatively** | | ✓ | | | |
| **Willingness to Accept Challenges of More Difficult Problems/Exercises** | | ✓ | | | |
| **Responds Positively to Constructive Criticism** | | ✓ | | | |

|  | Excellent (top 10%) | Above average | Average | Below Average | No basis for judgment |
|---|---|---|---|---|---|
| **Is Respectful to Faculty** |  | ✓ |  |  |  |
| **Is Respectful to Peers** |  | ✓ |  |  |  |
| **Concern for others** |  | ✓ |  |  |  |
| **Maturity (relative to age)** |  | ✓ |  |  |  |
| **Self-esteem** |  | ✓ |  |  |  |
| **Honesty/integrity** |  |  | ✓ |  |  |
| **Conduct** |  |  | ✓ |  |  |

**What words come to mind to describe this student?**

    1  patient           3  responsible

    2  diligent

**If the student is relatively weak or strong in any areas listed on the previous page, please elaborate:**

    **Response:**  Aurora is a student that stays the course in her classwork. She desires to understand by asking lots of questions. She is really interested in growing as a math student. It is evident she does her best work as she exceeds 5th grade math standards in Spanish as well as in English.

**Please comment on this student's character, citizenship, and contributions to your community:**

    **Response:**  Aurora is a model student when it comes to academics. She takes pride in doing good work and her student habits are an example of how important doing a job well done is.  Aurora needs support handling peer pressure, but she generally makes good decisions, is responsible, respectful, and is ready to solve problems on a daily basis.

**Please comment on the family as a cooperative, supportive partner in your educational program:**

    **Response:**  Aurora's family is involved in her education and growth as a person. It is evident that they challenge Aurora. They are in frequent communication with me to discuss behavior, academics, and always clarifying rules and expectations as it relates to the success of their student.

**Please provide any additional information that will give us a more complete picture of the student:**

    **Response:**  I definitely recommend Aurora for Breck for 6th grade and beyond.

**Teacher/Respondent Information**

**Teacher/Respondent Signature**  Full Name: Eugenio Coronado
Email Address: eugenio.coronado@mpls.k12.mn.us
✓ To the best of my knowledge, the information given above is accurate.
Signed on 01/22/2026 09:16AM from IP 205.215.177.158

**School Name**  Emerson Dual Language School    **Teacher/Respondent Phone #**  612 668 3610 (Work)

**School Address**  120 15th St. W
Minneapolis, MN 55403
United States