# EXHIBIT 1

Filed in District C
State of Minne
8/12/2020 5:14

STATE OF MINNESOTA
COUNTY OF HENNEPIN

DISTRICT COURT
FOURTH JUDICIAL DISTRICT

---

In the Marriage of:

Pawel Dominik Rzeczkowski,

Petitioner,

and

Carolina Uribe Borrero,

Respondent.

Case No. 27-FA-19-6324

**Findings of Fact, Conclusions
of Law, and Order on Temporary Relief**

---

This matter came before the Honorable Michael E. Burns, Judge of District Court, on a Motion Hearing on May 14, 2020 by Zoom.

Petitioner Pawel Dominik Rzeczkowski ("Father") appeared and was represented by Valerie A. Arnold, Esq. and Micaela Wattenbarger, Esq.

Respondent Carolina Uribe Borrero ("Mother") appeared and was represented by Brittany Stephens Pearson, Esq.

Based upon the files, proceedings and records herein, the Court makes the following:

## **Findings of Fact**

1.    The parties were married on October 1, 2011 in the City of Cali in the Republic of Colombia.

2.    The parties are the parents of the following joint minor children (the "children"): Aurora Margarita Rzeczkowski-Uribe, born March 2, 2015 and Sebastian Adam Rzeczkowski-Uribe, born March 2, 2015.

3.    Petitioner initiated this case with service of the Summons and Petition served on Respondent on September 20, 2019, and filed with the Court on September 20, 2019. Respondent filed an Answer and Counterpetition on February 13, 2020.

4.    On April 24, 2020, Father filed a Notice of Motion and Motion for Temporary Relief. In his motion, he requested that the Court order the following relief:

    a.    Award Father temporary primary physical residence of the children, with parenting time for Mother every other weekend from Friday at 5:00 p.m. until Monday at

9:00 a.m. and one midweek overnight per week (Thursday during the week following her weekend and Tuesday on the week where she does not have weekend time) from 5:00 p.m. until 9:00 a.m. or to Kindercare/Lake Harriet Elementary (or Armatage if children are admitted) subject to conditions in the motion.

b.    Award Father temporary sole occupancy of the homestead. In the alternative, award to the parties temporary joint occupancy of the homestead, with the parties exercising a nesting arrangement as described by Father's motion.

c.    Father shall have exclusive use and possession of the 2017 Toyota minivan. Respondent shall have exclusive use and possession of the 2018 Nissan SUV.

d.    The children's beds in the children's room and Father's bedroom furniture shall remain at the homestead.

e.    Father shall have exclusive use of one of the safes that the couple purchased together in the U.S. Mother shall retain exclusive use of the safe she brought with her from Colombia.

f.    The children's passports shall be held by the Court and shall not be released absent a court order.

g.    Order that Mother pay temporary support to Father in the amount of $2,000 per month, payable in equal installments on the 1st and 15th of each month.

h.    Mother shall continue to pay the household expenses including the mortgage and utility for the homestead, the family's health insurance premiums, the Toyota car payment, car insurance for both vehicles, Kindercare and Polish school payments once re-opened following the COVID-19 stay-at-home order, the parties' cell phone costs without cancellation, as well as any required car maintenance or repairs.

i.    Order Hennepin County Domestic Relations to conduct a custody and parenting time study and make recommendations to the Court.

j.    Order Mother to comply with informal discovery requests and that Mother immediately sign releases for Dr. Feldman and Dr. Schaeffer records.

k.    Order that Mother cease and desist from disparaging Father professionally or personally on social media or via other electronic communication or otherwise interfere with or attempt to sabotage Father's ability to seek employment.

l.    Mother shall pay to Father no later than May 15, 2020 the sum of $24,563.18 for past need-based attorney's fees and costs and granting Father's counsel ten (10) days leave of Court to submit a supplemental affidavit of attorney's fees and costs relative to the present motions and for ongoing attorney's fees and costs; and

m.    For such other relief as the Court deems just, fair, and equitable.

5.    Father filed an Affidavit of Pawel Rzeczkowski on April 24, 2020 ("Affidavit of Petitioner"). He also filed an Affidavit of Sam Hazen and Affidavit of Attorney.

6.    On May 4, 2020, Father filed a Notice of Responsive Motion and Responsive Motion. In his motion, he requested that the Court order the following relief:

a.    Grant Father's motion filed on April 24, 2020 in its entirety;

b.    Deny Mother's request for temporary exclusive use of the Homestead;

c.    Deny Mother's request for sole authority to decide when to sell the Homestead;

Filed in District C
State of Minnes
8/12/2020 5:14

    d.    Grant Mother's request that the Court reserve the issue of temporary custody designations;

    e.    Deny Mother's requested temporary parenting time schedule;

    f.    Deny Mother's requested temporary holiday, vacation, and travel schedule;

    g.    Grant Mother's request for a right of first refusal, but order that it apply if a parent is unable to care for the minor children for any amount of time;

    h.    Grant Mother's request on parenting time exchanges;

    i.    Grant Mother's request that the off-duty parent have FaceTime calls with the children;

    j.    Grant Mother's request to communicate by Our Family Wizard;

    k.    Grant Mother's request to pay for the mortgage payment, property taxes, homeowners' insurance, utilities for the Homestead, vehicle payments, vehicle insurance, mobile phone service for the parties, and her life insurance premiums;

    l.    Deny Mother's request that Father be ordered to pay the cost of his own temporary housing, groceries, gasoline, and other spending;

    m.    Grant Mother's request that Father engage in a good faith effort to become employed and earn an income;

    n.    Grant Mother's request that she pay the family's health insurance;

    o.    Deny Mother's request that the parties arrange and pay for child care;

    p.    Deny Mother's request for temporary use and possession of the 2017 Toyota Sienna;

    q.    Grant Mother's request that she be awarded temporary exclusive possession of her premarital dog;

    r.    Deny Mother's request for permission to amend her Answer and Counter-Petition;

    s.    Grant Mother's request that both parties be prohibited from harassing vilifying, mistreating, molesting, disturbing the peace, or restraining the liberty of the other party;

    t.    Grant Father's request for need-based attorney's fees; and

    u.    For such other relief as the Court deems just, fair and equitable.

7.    Father filed a Responsive Affidavit of Pawel Rzeczkowski on May 4, 2020 ("Second Affidavit of Petitioner"). He also filed a Memorandum of Law, an Affidavit of Jessica Fuller, and an Affidavit of Translation.

8.    On April 24, 2020, Mother filed Respondent's Notice of Motion and Motion for Temporary Relief. In her motion, she requested that the Court order the following relief:

    a.    Commencing not less than 14 days following filing of an order for temporary relief, granting to Respondent temporary exclusive use of the real property located at 4208 Beard Avenue South, Minneapolis, Minnesota 55410, and requiring Petitioner to vacate said property;

    b.    In order to preserve assets, authorizing Respondent to solely determine when to sell said real property, and ordering Petitioner to cooperate by signing any and all required documentation to facilitate the sale of the real property, including but not limited to signing requested listing agreements, purchase agreements, and closing documents. In the event that Respondent opts to sell the real property, the net sales

Filed in District C
State of Minne
8/12/2020 5:14

proceeds after payment of all costs of sale, mortgages, and any other required expenses to be paid at or before the closing on the sale can be held in escrow or a trust account pending agreement of the parties or order of the court concerning disposition of said proceeds;

c. Reserving the issue of temporary custody;

d. Awarding temporary parenting time according to Mother's motion

e. Awarding the following temporary holiday and vacation parenting time schedule according to Mother's motion;

f. Ordering that a Right of First Refusal shall apply such that if a party is unavailable to parent overnight during his or her scheduled parenting time, said party shall first offer the parenting time to the other before arranging for a third party to care for the children;

g. Directing the parenting time exchanges to occur at the children's school or child care, when they are attending, and that the parent whose parenting time is beginning should pick up the children from school, child care, or the other parent's home;

h. Authorizing the off-duty parent to have FaceTime calls with the children one time each day and additional times at the request of the children;

i. Directing the parties to communicate via Our Family Wizard except that, in the case of an emergency involving the children, the parties should communicate by phone or text immediately;

j. Ordering Respondent to pay for the following expenses the mortgage payment, property taxes, homeowners' insurance, utilities for the 4208 Beard Avenue South property, vehicle payment, vehicle insurance, mobile phone service for both parties, and her life insurance premium, in addition to her own groceries, gasoline and other expenses;

k. Awarding Petitioner temporary family support of $2,500 per month and ordering Petitioner to pay the cost of his own temporary housing, groceries, gasoline and all other spending;

l. Ordering Petitioner to engage in a good faith effort to become employed and earn income;

m. Ordering Respondent to pay for the family's COBRA health insurance until the earlier of: further agreement of the parties, order of the court, or expiration of the COBRA policy in August 2020. By the end of July 2020, the parties should be directed to assess whether options for family medical insurance exist through a group policy and shall secure said insurance, if available. If neither party has a group policy available, Petitioner should be ordered to obtain and pay for his own medical insurance and Respondent should be ordered to obtain and pay for medical insurance for herself and the children;

n. Directing each party to arrange and pay for the cost of a nanny or other child care expenses during his or her own parenting time;

o. Awarding to Respondent the temporary and exclusive use and possession of the 2017 Toyota Sienna minivan, subject to her responsibility to make payments on the loan encumbering the same; and awarding to Petitioner the temporary and exclusive use and possession of the 2018 Nissan Rogue vehicle, which is unencumbered;

p. Awarding to Respondent the temporary exclusive possession of her premarital dog;

q.    Permitting Respondent to amend her Answer and Counter-Petition dated February 13, 2020;

r.    Restraining both parties from harassing, vilifying, mistreating, molesting, disturbing the peace, or restraining the liberty of the other party; and

s.    For such other and further relief for Respondent as the Court deems just and equitable.

9.    Mother filed an Affidavit of Carolina Uribe Borrero on April 24, 2020 ("Affidavit of Respondent").

10.    On May 4, 2020, Mother filed Respondent's Responsive Notice of Motion and Motion for Temporary Relief. In her motion, she requested that the Court:

a.    Grant Father's request for a custody and parenting time evaluation, but appoint a private evaluator rather than Hennepin County Family Court Services;

b.    Grant Father's request that each party shall have temporary exclusive use of a safe;

c.    Deny Father's request for need-based attorneys' fees;

d.    Deny all other motions set forth in Petitioner's Notice of Motion and Motion for Temporary Relief dated April 24, 2020; and

e.    For such other and further relief as the Court deems just and equitable.

11.    Mother filed a Responsive Affidavit of Carolina Uribe Borrero on May 4, 2020 ("Second Affidavit of Respondent"). She also filed an Affidavit of Nelly Tatiana Tapia.

### The Parties' Financial Circumstances

12.    The central issue of the parties' motions is the parties' financial circumstances. Father contends that Mother should bear a significant financial burden of supporting him on a temporary basis because he is destitute and Mother is not. The Court reviews the parties' financial circumstances in turn.

<u>Father's Income and Employment History</u>

13.    Father is not employed. Father has an Executive MBA from Columbia Business School and London Business School. Father has not had full-time paid employment for several years. His last employment was with Thrivent from July 2018 to December 2018. (<u>Aff. of Resp.</u> at 12.) He earned approximately $130,000 in gross income for his work with Thrivent.

14.    At the beginning of the marriage, the parties lived in Colombia. During that time, Mother was employed with Pfizer in Colombia. The parties moved in New York in 2013. Mother continued to work for Pfizer in their New York office. While in New York, Father mainly networked and built contacts for potential job opportunities. Then, Mother lost her job at Pfizer.

Filed in District C
State of Minne:
8/12/2020 5:14

15.   Then, when Mother lost her job with Pfizer, Mother obtained employment at Brambles in Atlanta. (Aff. of Pet. at 24.) Father states that he did not want to move to Atlanta because he "was beginning to become established in New York, and given the overwhelming majority of our professional contacts were in NYC." (Aff. of Pet. at 24.) However, the parties only lived in New York for about one year. So, although uprooting Father may have impacted his career contacts, he did not have a substantial period of time to build a network.

16.   Around 2014, the parties moved to Atlanta. The parties lived in Atlanta for about three years. While in Atlanta, Father states that he "developed a professional network around Finance Technology known as FinTech, and became part of the emergent FinTech community." (Aff. of Pet. at 25.) During this time, Father earned some income working for various companies: $36,000 from work with an oil exploration startup in Nigeria, $4,000 for his work as CFO with a healthcare startup, and $6,000 for work grading papers. (Aff. of Pet. at 25–26.) Father worked for other start-ups, but he did not earn an income for that work. (Id. at 25.)

17.   In June 2015, Mother lost her job at Brambles. (Aff. of Resp. at 12.) She did consulting work for Coca-Cola in 2016 until the parties moved to Minnesota. (Id.) In 2017, the parties moved to Minnesota because Mother began employment at Cargill.

18.   Beginning in 2017 through June 2018, Father worked at Thrivent Financial. Father earned approximately $130,000 in 2018. (Aff. of Pet. at 27–28.) Father believed that he was going to convert that position to a full-time position, but changes in the company's leadership interrupted that pursuit. (Aff. of Pet. at 28.) Father has not been employed since losing that job.

19.   Father characterizes himself as a constant seeker of employment, frequently on the cusp of employment. In Father's opinion, he would be gainfully employed but for Mother's sabotage.[1] Father also blames his role as the children's caregiver as a reason for his unemployment. In 2019, when Ms. Tapia left her role as the children's caregiver, Father states that he "took over her role as primary caregiver for the kids." (Aff. of Pet. at 28.) He states that "this new role was a significant time and emotional drain, which hindered [his] job search efforts." (Id.) Father states that Mother has "tr[ied] to sabotage my ongoing job search efforts by requiring me to be available to care for the kids." (Aff. of Pet. at 29.)

20.   Father believes that the constant moving "sabotage[ed] [hi]s job search efforts". (Second Aff. of Pet. at 19.) But the record is not replete with a history of employment for Father. Instead, based on the affidavits and evidence presented, Father has been searching for a job for the entirety of the parties' marriage. Perhaps, he has been unable to obtain employment solely because the parties have moved frequently. But it is equally plausible that Father has substantially contributed to his own inability to obtain employment.

---

[1] It does not go unnoticed by the Court that Father requested that the Court order that Mother cease from interfering with or attempting to sabotage Father's ability to seek employment. Given Father's extensive history of unemployment and lack of full-time employment, it is perverse to this Court that Father places the entirety of the responsibility on Mother.

Filed in District C
State of Minne:
8/12/2020 5:14

### Mother's History of Income and Employment

21.     Mother is not currently employed full-time. She works on consulting projects to earn income. She earned approximately $160,000 in 2019. (Aff. of Resp. at 24.) Mother was previously employed as the Director of Corporate Strategy and Business Development with Cargill, but lost her job in 2018. (Aff. of Resp. at 12.)

22.     In contrast to Father, Mother has an extensive history of earning a substantial income. According to Mother's tax returns and W-2s, she has the following history of gross annual income:

         2014: $281, 527
         2015: $282,075
         2016: $229,547
         2017: $269, 127
         2018: $130,567

23.     In addition to her income, Mother also has access to substantial financial assets. Father contends that Mother has access to "over $700K dollars [sic] in assets." (Aff. of Pet. at 31.)

24.     In her affidavit, Mother states that she is willing to pay the following monthly expenses on a temporary basis: the mortgage payment, property taxes for the Homestead, homeowners' insurance, utilities for the Homestead, Toyota Sienna vehicle payment, car insurance for the Toyota and Nissan vehicles, health insurance, mobile phone service, and her life insurance policy premium. (Aff. of Resp. at 29.) Those expenses cost $8,576 per month. (Id.)

25.     Mother agreed to pay the initial cost of the custody and parenting time evaluation, but requested that the Court reserve the distribution of cost.

### The Parties' Homestead

26.     The parties are owners of a homestead located at 4208 Beard Avenue South, Minneapolis, Minnesota (the "Homestead"). The Homestead is titled solely in Mother's name.

27.     The cost of maintaining the Homestead is $5,924 per month. The principal and interest payment on the Homestead is $4,309 per month. (Aff. of Resp., Ex. 5.) Real estate tax are $17,376.28 annually, or $1,448 monthly. (Aff. of Resp., Ex. 6.) Homeowners' insurance costs approximately $167 per month.

28.     Since 2018, Mother has tried to sell the Homestead because she does not believe that the parties could afford the house. (Aff. of Resp. at 26–27). However, Mother states that she has been unable to sell the house because Father is uncooperative and combative with the real estate agents. (Aff. of Resp. at 27.)

### School for the Children

29.    The children attended KinderCare until Mother withdrew the children in March 2020. Mother chose to withdraw the children because the parties could not afford the KinderCare expenses, which were nearly $3,000 per month. (Aff. of Resp. at 29.)

## Conclusions of Law

30.    As is evident from the voluminous nature of the parties' motions, the parties are essentially requesting a dissolution through a temporary motion. Whereas a court would normally have an opportunity to hear extensive testimony and review evidence on each of these issues prior to making findings for a dissolution, the parties are attempting to shoehorn a lengthy dissolution process into one hearing. So, the Court is cautious about the breadth of the remedy provided in this Order.

31.    Further complicating the issue is the nature of the divorce. Mother contends that the parties are economically divorced—in other words, Father does not have a marital interest in Mother's financial assets. However, the purpose of this motion is not to resolve the issue of the parties' economic divorce. That matter should be determined by the dissolution proceeding—not a temporary motion hearing. Instead, the Court addresses the parties' request for temporary relief.

32.    In a proceeding for dissolution, a party may request by motion and the court may grant a temporary order pending the final disposition of the proceeding. Minn. Stat. § 518.131, subd. 1. Here, the parties have requested the following temporary relief on parenting time, property division, and financial support. The Court addresses each relief in turn.

## I.    Temporary Parenting Time.

33.    To determine a temporary parenting time schedule, the Court evaluates the best interest factors under Minn. Stat. § 518.17.

34.    **Factor 1.** *A child's physical, emotional, cultural, spiritual, and other needs, and the effect of the proposed arrangements on the child's needs and development.* The children's first language is Spanish. (Aff. of Resp. at 13.) The Court notes that Spanish is Ms. Tapia's, the children's nanny, first language and, so, she communicated with the children in Spanish. See (Aff. of Nelly Tatiana Tapia at 4.) The children speak to each of the parents in their native language—Spanish for Mother and Polish for Father. Both parties are able to provide for the children's cultural needs.

35.    Mother suggests that Father is unable to provide for the physical needs of the children. She highlights safety concerns with Father's parenting time with the children. (Aff. of Resp. at 19–20.) She describes Father as an unsanitary person. (Id. at 20.) Mother is concerned that Father's unsanitary habits would be exacerbated by caring for the children by himself with neither Mother nor a caretaker to help. (Aff. of Resp. at 20–21.) Father contends that Mother has an obsession with sanitizers. (Second Aff. of Pet. at 7.)

Filed in District Court
State of Minnes:
8/12/2020 5:14

36. Father believes that Mother is unable to meet the children's emotional and spiritual needs. To support this conclusion, Father highlights Mother's interactions *with him* rather than with the children. See (Aff. of Pet. at 6–7.) Father conflates Mother's highly contentious interpersonal relationship with him with her ability to have a healthy relationship with the children.

37. Mother contests Father's characterization. Mother states that she has a close relationship with the children. (Aff. of Resp. at 13.) She states that she provides emotional support to Aurora, which leads to Aurora confiding in Mother. (Id. at 15.) Sebastian also has a close relationship with Mother and is able to talk openly with Mother. (Id.) Ms. Tapia agrees that Mother is capable of providing emotional and spiritual support for the children. (Aff. of Nelly Tatiana Tapia at 2.)

38. The Court finds that both parties are able to meet the children's emotional and spiritual needs.

39. **Factor 2**. *Any special medical, mental health, or educational needs that the child may have that may require special parenting arrangements or access to recommended services.* The parties do not have any special medical, mental health, or educational needs that require special parenting arrangements or access to recommended services.

40. **Factor 3**. *The reasonable preference of the child, if the court deems the child to be of sufficient ability, age, and maturity to express an independent, reliable preference.* The children are five years old. The Court finds that the children are not of a sufficient age or maturity to express an independent, reliable preference.

41. **Factor 4**. *Whether domestic abuse, as defined in section 518B.01, has occurred in the parents' or either parent's household or relationship; the nature and context of the domestic abuse; and the implications of the domestic abuse for parenting and for the child's safety, well-being, and developmental needs.* To be sure, Father alleges acts of domestic abuse. There is a related domestic abuse file, 27-DA-FA-20-1626. In that file, Father filed a Petition for Order for Protection on March 13, 2020. The Court denied Father's Petition in an Order Denying Petition for *Ex Parte* Order for Protection filed on March 16, 2020.

42. In this file, Father alleges that Mother has committed domestic abuse against him "throughout [the parties'] marriage." (Aff. of Pet. at 8–9.) He states that Mother has hit him several time between 2017 and 2019, including hitting him in the head with a metal lamp. (Id. at 9.)[2] Mother denies hitting Father with a lamp. (Second Aff. of Resp. at 9.) Mother alleges that Father has been the one to escalate conflicts physically. (Id. at 12–13.)

43. There is little doubt that the parties' relationship is one of constant verbal, emotional, and sometimes physical conflict. Father characterizes the relationship as a one-way street of aggression by Mother against him. On the other hand, Mother characterizes the relationship as a two-way street, where the parties "have both been aggressive towards one another." (Second Aff. of Resp. at 11.) Similarly, she admits that she has been "a part of conflicts

---

[2] This incident was the basis of Father's Petition for Order for Protection.

State of Minne
8/12/2020 5:14

that have escalated." (Aff. of Resp. at 4.) The Court finds that it is likely that both parties equally contribute to the highly volatile nature of the parties' conflict.

44.   Father again conflates the impact of the high conflict nature of his relationship with Mother with an impact on the children. He suggest that "it hurts [the children] to listen to Ms. Uribe's constant criticisms of me, which I believe is emotionally abusive to them." (Aff. of Pet. at 10.) Although the Court does not doubt that the parties' conflict negatively impacts Father, the Court finds that Father has not shown that the parties' conflict has negatively impacted the children.

45.   Even if the parties' conflict does have a negative impact on the children, the impact would be substantially mitigated by separating the parties' living situation. There is no evidence or testimony that shows that Mother is emotionally or verbally abusive to the children. Father only alleges that the children are collaterally impacted when the parties' themselves have a conflict.

46.   The Court finds that the alleged domestic abuse does not risk the children's safety, well-being, and development. The temporary parenting time plan ordered below will separate the parties from each other. Based on the affidavit and evidence, the propensity for conflict and escalation of that conflict can be limited by the parties living separately.

47.   **Factor 5.** *Any physical, mental, or chemical health issue of a parent that affects the child's safety or developmental needs.* The parties do not have any physical or chemical health issues that affect the children's safety or developmental needs. Each party, however, contends that the other parent has a mental health issue that negatively impacts the children.

48.   Father is diagnosed with Attention Deficit Disorder. Mother contends that this diagnosis negatively impacts Father's ability to care for himself. (Second Aff. of Resp. at 18.) The Court finds that Mother's concerns are not substantiated. To be sure, Father must manage his ADD. But there is no evidence that Father's ADD negatively impacts the safety of the children. Instead, Mother bases her fear on speculation. See (Second Aff. of Resp. at 18 ("I would not be surprised to find out that the quantities of his ADD medicine do not fully cover his needs due to this mismanagement of his condition."))

49.   Father's claims that Mother's mental health is impacts the children's safety or developmental need does not have support. He believes that Mother has "mood swings, extensive anger, physical and emotional abuse, and need to control." (Aff. of Pet. at 11.) To support this position, Father points to Mother's preference on "washing dishes, folding laundry, raking the yard, or preparing for an interview." (Id.) He further substantiates Mother's mental health issue by *speculating* that Mother's personality is responsible for her frequent changing employment. (Id. at 12.) A review of Father's affidavit suggests that he views Mother's work relationship through the lens of his own personal and volatile experience with Mother. However, he does not have a strong basis for this conclusion.

50.   There issue of mental health shows the high conflict nature of the parties' relationship. The parties will zero-in on each other's perceived flaws and characterize that flaw as a danger

Filed in District C
State of Minne:
8/12/2020 5:14

to the children. No issue makes that tendency clearer than the parties' assessment of the other parent's mental health.

51.   The Court does not believe that either party has a mental health issue that negatively affects the children's safety or development.

52.   **Factor 6.** *The history and nature of each parent's participation in providing care for the child.* Traditionally, the children are cared for by a nanny, Nelly Tatiana Tapia. Ms. Tapia worked as their nanny from the children's birth until the end of 2018. (Aff. of Nelly Tatiana Tapia at 1.) During this time, she lived with the parties. (Id.) As a result, Ms. Tapia has had an opportunity to observe the parties with the children "extensively over the last five years." (Id.) Although Ms. Tapia was responsible for "the direct daily child care," Mother also cared for the children when Ms. Tapia "was off of work and not the one doing it." (Id. at 2.)

53.   The parties paint different stories about the children's care since Ms. Tapia left in August 2018. Father contends that he is the parent that "has managed the vast majority of care responsibilities." (Aff. of Pet. at 2.) He characterizes himself as "the caregiver and homemaker." (Second Aff. of Pet. at 11.) Both Mother and Ms. Tapia dispute this characterization. Mother states that "[a]side from times of isolated work travel, Pawel provided no more physical care for the children." (Aff. of Resp. at 21.) Mother believes that the parties "equally share daily parenting responsibilities." (Aff. of Resp. at 22.) Ms. Tapia states that Mother—not Father—"has filled the role of many of the things [she] used to do" and "[Mother] is involved with every task for the kids." (Aff. of Nelly Tatiana Tapia at 3.)

54.   The Court finds that it is more likely that the parties equally shared the child care responsibilities. For example, Mother is actively involved in scheduling the children's appointments. (Aff. of Resp. at 17.) Father may be responsible for taking the children to those appointments. (Id.) Father admits that Mother is actively involved in the children's life. He stated that Mother "created a home-schooling schedule she has posted on the wall in the family room." (Aff. of Pet. at 4.) The totality of the evidence supports that the parties are equally responsible for the children's care rather than one party being the sole caretaker of the children.

55.   Even if Father was the primary caretaker, that role would not carry significant weight because Father's involvement with the children is recent. Father's alleged increased role in the children's day-to-day care coincided with the loss of his job in 2019. (Aff. of Pet. at 6.) Prior to that, Ms. Tapia was the primary day-to-day caretaker of the children. To the extent that each party has participated in the children's daily care since Ms. Tapia left, one parent did not gain a significant amount of experience in the children's daily care compared to the other.

56.   Furthermore, it appears that Mother—not Father—is responsible for managing the big picture decisions in the children's lives. Mother states that she "maintain[s] a routine for the children" and is "the parent who organizes their lives and handles all of the management

Filed in District C
State of Minnes
8/12/2020 5:14

of their lives." (<u>Aff. of Resp.</u> at 15–16.) Ms. Tapia agrees with this assessment. She states that Mother is "the *batuta* for the children's lives, which is a Spanish word for a conductor's baton." (<u>Aff. of Nelly Tatiana Tapia</u> at 2.) In other words, Mother is responsible for enrolling the children in school or planning extracurricular activities for the children.

57.     **Factor 7**. *The willingness and ability of each parent to provide ongoing care for the child; to meet the child's ongoing developmental, emotional, spiritual, and cultural needs; and to maintain consistency and follow through with parenting time*. Both parents are willing to provide for the ongoing care of the children and meet the children's ongoing developmental, emotional, spiritual, and cultural needs. There is no evidence or testimony to suggest that the parties cannot maintain consistency or follow through with parenting time. The Court finds that the parties are able to follow a temporary parenting time schedule as ordered below.

58.     **Factor 8**. *The effect on the child's well-being and development of changes to home, school, and community*. The temporary parenting schedule outlined below, in combination with the award of temporary possession of the Homestead, will limit the changes to the children's home, school and community. The children will continue to live primarily in the Homestead. As a result, the children's school district and community will not change.

59.     The Court notes that the parties disagree about the children's kindergarten school. The issue of legal custody—which implicates the parties' decision-making for the children's education—is reserved pending the custody and parenting time evaluation. Similarly, the Court is not ordering the children to attend any particular kindergarten school. The Court hopes that the parties will be able place the children's best interest first and cooperate on selecting the children's school.

60.     **Factor 9**. *The effect of the proposed arrangements on the ongoing relationships between the child and each parent, siblings, and other significant persons in the child's life*. The temporary parenting time arrangement will improve the children's relationship with each of the parents. The primary source of conflict between the parties is their proximity to each other in the residence. By separating the parties, conflict between the parties should decrease. As a result, the children will be exposed to less parental conflict.

61.     Under the arrangement, both the parties and the children will be able to continue to build a relationship with Ms. Tapia. Recently, Ms. Tapia assisted Father with childcare of the children. (<u>Second Aff. of Resp.</u> at 29.) Both parties are supportive of Ms. Tapia's involvement in the children's lives.

62.     **Factor 10**. *The benefit to the child in maximizing parenting time with both parents and the detriment to the child in limiting parenting time with either parent*. The parenting time arrangement below balances maximizing parenting time with both parents against providing a stable environment for the children. The children should primarily reside in the Homestead with Mother. Father's parenting time will allow him to still spend time with the children.  It is important that the parties are able to spend time with the children, even if they are separated. Each party will have the children on alternating weekends. Father

Filed in District C
State of Minnes
8/12/2020 5:14

will have the children every Monday and Tuesday as well. The off-duty parent will also have access to the children via FaceTime. The Court finds that the temporary parenting time arrangement will allow the children to benefit from parenting time with each party.

63.    **Factor 11**. *Except in cases in which domestic abuse as described in clause (4) has occurred, the disposition of each parent to support the child's relationship with the other parent and to encourage and permit frequent and continuing contact between the child and the other parent.* Both parties state that they are supportive of their children's relationship with the other parent. However, Father states that Mother is often disparaging of him in front of the children. He also suggests that Mother is attempting to influence the children to her side of the dissolution. Both parties, however, agree that the off-duty parent should be able to contact the children via FaceTime. The Court is hopeful that the parties will be able to be more supportive of the other parent during their separation.

64.    **Factor 12**. *The willingness and ability of parents to cooperate in the rearing of their child; to maximize sharing information and minimize exposure of the child to parental conflict; and to utilize methods for resolving disputes regarding any major decision concerning the life of the child.* This case is one of high conflict between the parties. This conflict negatively impacts the parties' ability to cooperate in the rearing of the children, maximize sharing information, and minimize exposure of the children to parental conflict.

65.    The parties' ability to cooperate with each other on the rearing of the children is negatively impacted by the toxic nature of the parties' relationship. The parties are unable to state facts to this Court without taking an opportunity to use those facts to attack the other parties' character. This toxic environment is two-sided. This back and forth is not isolated, but instead is numerous and occurs throughout the parties' affidavits.

66.    Additionally, the parties are unable to minimize the exposure of the children to parental conflict. Although there is no indication that the children are the target of the parties' conflict, the children are often exposed to the parental conflict. Father states that Mother frequently yells at him in front of the children. See (Aff. of Pet. at 5.) Father characterizes Mother as intentionally pursuing conflict with him in front of the children. As discussed above, the parties' conflict is likely a two-way street. It is highly unlikely that Father's characterization of the parties' relationship is accurate Instead, it is likely that both parties are responsible for exposing the children to parental conflict.

67.    The temporary arrangement will minimize the children's exposure to the parental conflict in two ways. First, the parties will have separate living places. So, the risk of conflict in front of the children will be substantially reduced. Second, the parties agree to use Our Family Wizard for communication about the children. The Court hopes that OFW will contribute to deescalating the parties' vitriolic communication pattern.

68.    Based upon the totality of the factors discussed above, the Court finds that the parties should be awarded the following temporary parenting time schedule:

Filed in District C
State of Minne
8/12/2020 5:14

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|--------|--------|---------|-----------|----------|--------|----------|
| Mother | Father | Father | Mother | Mother | Mother | Father |
| Father | Father | Father | Mother | Mother | Mother | Mother |

Parenting time exchanges shall occur at 9:00 a.m. on days where the parents swap the children. Parenting time exchanges should occur at the children's school or child care if the children are attending, otherwise the exchange should occur at the on-duty parent's residence. The off-duty parent is responsible for picking up the children.

69.    Mother shall pay for the family's COBRA health insurance or replacement family health insurance when COBRA health insurance expires. Mother has the financial means to provide the parties and the children with health insurance coverage.

70.    Mother requests that this Court set a temporary holiday schedule. The Court finds that the parties should use the parenting time ordered below without an additional holiday schedule. The parties' holiday schedule should be addressed as part of the dissolution proceeding generally instead with temporary relief. Accordingly, the Court finds that Mother's motion for a temporary holiday schedule should be denied.

## II.    Temporary Relief Related to Property.

71.    Next, the Court considers the request for temporary relief related to property. As a preliminary matter, the district court has broad discretion in dividing marital property. Servin v. Servin, 345 N.W.2d 754, 758 (Minn. 1984). The contested issues of property at issue in these motions are the Homestead and the parties' vehicles. Other motions on property are granted below.

72.    Although the parties do not agree on whether the Homestead is marital property, the Court considers the Homestead as marital property for the purpose of this motion. Whether it should be considered non-marital property may be decided in the proceeding generally, not in this motion. Both parties request exclusive use of the Homestead. They agree that the parties must live separately because of the high conflict nature of their relationship.

73.    Father contends that he should be awarded temporary occupancy of the Homestead because Mother is financially capable of obtaining new housing. Yet, at the same time, he requests $2,500 in temporary financial support while also requesting that Mother pay for the cost of the Homestead if he resides there. Temporary financial support ordered below will ensure that Father will have a place to live. So, the question is solely whether that place should be the Homestead. Mother has extensive experience maintaining the Homestead and managing the associated costs and services. Comparatively, Father has less experience maintaining the Homestead. Furthermore, the Homestead costs about $6,000 per month to maintain. Based on the affidavits and evidence presented, neither party is likely able to afford the Homestead, but Mother is the party who is most able to bear the financial cost of the Homestead.

74. Father also suggests that he should be awarded temporary occupancy of the Homestead if he is awarded his parenting time schedule. As discussed above, the Court is not granting Father's parenting time schedule.

75. Next, the Court addresses Father's request to create a "nesting" arrangement. The Court finds that Father's request is inefficient and wasteful. Father's alternative plan would require the parties to pay for a two-bedroom apartment rather than a one-bedroom apartment. Of course, Father expects Mother to bear that cost. The nesting arrangement would also increase the amount of travel required by the parties. It will require the parties to share two living spaces.[3] Both parties would be responsible for the upkeep and cleanliness of both residences. As a result, if one party was to free riding on the cleaning habits of the other, that party would be disproportionately impacted by the arrangement. For those reasons, the Court finds that Father's request in the alternative for a nesting arrangement should be denied.

76. Accordingly, the Court finds that Mother should be awarded temporary sole exclusive use of the marital home.

77. The parties are the owners of two vehicles, a 2018 Nissan Rogue and a 2017 Toyota Sienna. Both vehicles are titled in Mother's name. The Toyota Sienna is "historically the vehicle used to transport the kids." (Aff. of Pet. at 21.) Father claims that the Toyota is his primary vehicle. (Id.) Mother states that the Toyota Sienna would accommodate her dog better than the Nissan. (Aff. of Resp. at 32.) Both parties request that the Court award temporary use and possession of the Toyota Sienna to themselves and award the use of the Nissan Rogue to the other party.

78. The Court finds that Mother should be awarded the temporary use and possession of the 2017 Toyota Sienna and that Father should be awarded the temporary use and possession of the 2018 Nissan Rogue. Mother will reside in the Homestead and will have the children during the majority of the week. So, Mother should be awarded the vehicle that is primarily used to transport the children.

## III. Temporary Financial Support.

79. The next issue is temporary financial support of Father. Father requests that the Court order Mother to pay $2,000 in temporary financial support and cover the parties' various financial obligations including the mortgage and utilities for the homestead, the family's health insurance premiums, car payments, car insurance payments, the children's school payments, and the parties' cell phone cost. Mother requests that the Court order her to pay $2,500 per month to Father in temporary financial support and have Father cover all of his other costs.

---

[3] Given the COVID-19 pandemic, both of these concerns is reason enough to pause at the idea of a "nesting" arrangement.

Filed in District Court
State of Minnes
8/12/2020 5:14

80.   Because Mother agrees to pay Father $2,500 in temporary financial support, the Court finds that Mother's motion should be granted. The remaining issue is whether Mother should cover the parties' various obligation listed in his motion.

81.   The financial disparity between the parties is large. Mother has a history of making a significant amount of money over the last six years. Although Mother does not have full-time employment, the Court finds that Mother is capable of earning an income based on her consulting work in 2019. To be sure, Mother is not guaranteed to obtain additional consulting work, but Mother also has significant financial assets in the event that she is unable to obtain employment.

82.   In contrast, Father has not held full-time employment during that period. However, Father has shown some capacity to obtain limited employment based on his education and training. Father also has limited financial assets.

83.   However, the Court is concerned that Father's motion for financial support may encourage freeriding. He is requesting temporary financial support, ostensibly because he cannot cover his necessary expenses. At the same time, he is also asking the Court to have Mother cover a significant portion—seemingly all—of his necessary expenses. The Court wonders what Father intends to spend the temporary financial support on.

84.   If Father receives $2,500 per month in financial support, it would not be equitable that Mother covers all of Father's requested expenses. Temporary financial support should not be used to permit Father to live a life of luxury. Mother has agreed to pay for the vehicle payments, vehicle insurance, health insurance, and mobile phone service—all payments that Father would otherwise have had to cover. Father can use the temporary financial support to pay for necessary expenses such as housing, groceries, attorney fees, and debt. If Father wants the children to attend Polish school, he can pay the $120 per month to enroll the children with the financial support.

85.   Mother also agreed to provide Father with furnishing for his new residence if required. Father would have temporary possession and use of certain bedroom and living room furniture as ordered below.

86.   Accordingly, Mother shall pay Father $2,500 per month in temporary financial support. Mother shall also pay the mortgage payment for the Homestead, property taxes, homeowners' insurance, utilities for the Homestead, vehicle payments, vehicle insurance, mobile phone service for both parties, and her life insurance premium.

**IV.   Father's Motion for Needs Based Attorney Fees Should Be Denied.**

87.   Minn. Stat. § 518.14 requires that a court award need-based attorney fees if it finds: (1) that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding; (2) that the party from whom fees, costs, and disbursements are sought has the means to pay them;

State of Minne:
8/12/2020 5:14

and (3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.

88.     To be sure, there is a disparity between the financial capacities of the two parties. However, the requesting party must show a need for attorney fees—and not solely a financial disparity.

89.     To show need, Father must show that he does not have the means to pay his attorney fees. The affidavits and evidence presented shows that Father has incurred fees of $24,563.18. (Aff. of Attorney at 2.) However, he has not shown whether those fees are paid or unpaid. Ms. Arnold does not state in her affidavit whether those attorney fees are unpaid either in part or in whole. On the other hand, Father's affidavit and accompanying exhibits suggest that he has been able to pay the fees at least in part. Father states that he has maxed out his credit card to pay his attorney fees and costs. (Aff. of Pet. at 34.) Although Father's April 2020 credit card statement does not show a payment for attorney fees, it shows that Father has spent at least to his $7,500 credit limit. (Aff. of Pet., Ex. 32.)

90.     Additionally, Father has received a loan of $10,000 from David Ordman to pay his attorney fees. In the promissory note, Mr. Ordman only asked for the return of the principal $10,000, with no interest. (Aff. of Pet., Ex 33.) Of particular note, Father does not have to make monthly payments on the loan until two days after a divorce settlement or until Father obtains employment.

91.     Based on the affidavits and evidence presented, it appears that Father has already paid a substantial portion—if not all—of his attorney fees. Even if he has outstanding fees, Father could have the means to pay them with the loan from Mr. Ordman and temporary financial support. This Order awards Father $2,500 per month in temporary financial support. He will spend some of that support on housing, but there is no evidence to support other costs Father may incur. Father did not provide the Court with a monthly budget. Of particular note, Mother agreed to make payments on the insurance for the parties' vehicle and the parties' cell phones. Accordingly, the Court finds that Father has not shown that he would be unable to pay his attorney fees with the addition of that temporary financial support.

92.     Accordingly, the Court finds that Father's motion for need based attorney fees should be denied.

    NOW, THEREFORE, based upon the files, proceeding herein, the Court makes the following:

## Order

1.     The issue of temporary legal and temporary physical custody of the children is **RESERVED**.

2.     **Parenting Time**. The parties shall have the following temporary parenting time schedule:

Filed in District 0
State of Minne:
8/12/2020 5:14

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|--------|--------|---------|-----------|----------|--------|----------|
| Mother | Father | Father | Mother | Mother | Mother | Father |
| Father | Father | Father | Mother | Mother | Mother | Mother |

Parenting time exchanges shall occur at 9:00 a.m. on days where the parents swap the children. Parenting time exchanges should occur at the children's school or child care if the children are attending, otherwise the exchange should occur at the on-duty parent's residence. The off-duty parent is responsible for picking up the children.

3.  **Right of First Refusal**. The parties shall have a right of first refusal if a party is unavailable for their overnight parenting time during their schedule parenting time. The on-duty parent shall offer the parenting time to the other parent before arranging for a third-party to care for the children.

4.  **FaceTime/Telephone Contact**. The off-duty parent shall have FaceTime or telephone calls with the children one time each day. The parties may agree on additional FaceTime or telephone contact. The children may initiate contact with the off-duty parent by telephone at any reasonable time.

5.  **Health Insurance**. Mother shall continue to pay for health insurance coverage for the parties and the children.

6.  **Childcare Cost**. Each party shall be responsible for obtaining child care during their parenting time and shall be responsible for the associated cost.

7.  **Polish School**. Father's motion to have Mother pay for Polish school is **DENIED**.

8.  **The Homestead**. Mother shall be awarded temporary exclusive use and possession of the Homestead. ***Neither party shall sell the Homestead unless the parties agree in writing or by further Court order.***

9.  **Expenses**. On a temporary basis, Mother shall be responsible for and pay the expenses associated with the Homestead, including mortgage payments, property taxes, homeowners' insurance, and utilities, vehicle insurance for the parties' vehicles, the vehicle payment on the 2017 Toyota Sienna, each party's cell phone services, and her life insurance premium.

10. **Our Family Wizard**. The parties shall use Our Family Wizard to communicate about the children and parenting time-related issues. If there is an emergency involving the children, a party may contact the other party by telephone or text message. The parties shall activate their subscription to Our Family Wizard within fourteen (14) days of this Order. Each party shall be responsible for their own cost of Our Family Wizard.

11. **No Disparaging Comments**. The parties are restrained from harassing, vilifying, mistreating, or disparaging the other party, including in front of the children.

12.  **Restraint from Destroying Property**. The parties are restrained from removing, destroying or selling marital or personal property of the other party unless the parties agree in writing or by further court order.

13.  **Temporary Financial Support**. Beginning August 1, 2020, Mother shall pay Father $2,500 per month in temporary financial support. For August 2020, Mother shall pay Father $2,500 within fourteen (14) days of this Order. For all subsequent months, Mother shall make two payments of $1,250 on the 1st and 15th of each month. The parties may modify the amount or duration of this temporary financial support by written agreement.

14.  **Employment**. Both parties shall engage in a good faith effort to become employed and earn income.

15.  **Vehicles**. Mother shall have temporary exclusive use of the 2017 Toyota Sienna. Father shall have temporary use and possession of the 2018 Nissan Rogue.

16.  **The Dog**. Mother shall be awarded temporary exclusive possession of the dog, Lorenzo.

17.  **Safes**. Each party shall have temporary exclusive use of one safe owned by the parties located at the Homestead. Prior to moving out of the Homestead, Father may select one of the safes and Mother shall make it available to him. Mother shall provide Father the code to that safe.

18.  **Furniture**. In the event Petitioner's new residence is not furnished, Petitioner is granted temporary possession and use of the bedroom furniture in the guest room where he currently sleeps, the two black sofas and a coffee table in the living room at the entrance of the house, and the dining set in the basement. These furnishings belong to Respondent's parents and shall be returned to Respondent upon further Order of the Court, or two months after Petitioner secures employment, whichever first occurs. Respondent is awarded temporary use and possession of all other furniture located in the parties' home.

19.  **Need-Based Attorney Fees**. Father's motion for need-based attorney fees is **DENIED**.

20.  **Passports**. Father's motion on the children's passport is **DENIED**.

21.  **Informal Discovery**. The parties shall cooperate with regard to the ongoing exchange of discovery.

22.  **Amended Counterpetition and Answer**. The issue of whether Mother may amend her Counterpetition and Answer is **RESERVED** pending the parties' Review Hearing on October 28, 2020.

23.  **Other Motions**. All motions not specifically addressed in this Order are **DENIED**.

24.  All other provisions of prior and consistent orders shall remain in full force and effect.

Filed in District C
State of Minne
8/12/2020 5:14

25.    Appendix A is attached and incorporated herein.

26.    **Attorneys Using E-Filing**. When e-filing into this case, attorneys shall email a courtesy copy to 4thJudgeBurnsStaff@courts.state.mn.us.

27.    **Service**. Service of a copy of this order shall be made upon pro-se parties by first class U.S. mail at their last known addresses, or to attorneys by e-service, which shall be due and proper service for all purposes.

**It is so ordered.**

Burns, Michael
2020.08.12
17:10:43 -05'00'

_Michael E. Burns_
Judge of District Court

## APPENDIX A

**NOTICE IS HEREBY GIVEN TO THE PARTIES:**

**I. PAYMENTS TO PUBLIC AGENCY.** According to Minnesota Statutes, section 518A.50, payments ordered for maintenance and support must be paid to the Minnesota child support payment center as long as the person entitled to receive the payments is receiving or has applied for public assistance or has applied for support and maintenance collection services. Parents mail payments to: P.O. Box 64326, St. Paul, MN 55164-0326. Employers mail payments to: P.O. Box 64306, St. Paul, MN 55164.

**II. DEPRIVING ANOTHER OF CUSTODIAL OR PARENTAL RIGHTS -- A FELONY.** A person may be charged with a felony who conceals a minor child or takes, obtains, retains, or fails to return a minor child from or to the child's parent (or person with custodial or parenting time rights), according to Minnesota Statutes, section 609.26. A copy of that section is available from any court administrator.

**III. NONSUPPORT OF A SPOUSE OR CHILD -- CRIMINAL PENALTIES.** A person who fails to pay court-ordered child support or maintenance may be charged with a crime, which may include misdemeanor, gross misdemeanor, or felony charges, according to Minnesota Statutes, section 609.375. A copy of that section is available from any district court clerk.

**IV. RULES OF SUPPORT, MAINTENANCE, PARENTING TIME.**

A. Payment of support or spousal maintenance is to be as ordered, and the giving of gifts or making purchases of food, clothing, and the like will not fulfill the obligation.

B. Payment of support must be made as it becomes due, and failure to secure or denial of parenting time is NOT an excuse for nonpayment, but the aggrieved party must seek relief through a proper motion filed with the court.

C. Nonpayment of support is not grounds to deny parenting time. The party entitled to receive support may apply for support and collection services, file a contempt motion, or obtain a judgment as provided in Minnesota Statutes, section 548.091.

D. The payment of support or spousal maintenance takes priority over payment of debts and other obligations.

E. A party who accepts additional obligations of support does so with the full knowledge of the party's prior obligation under this proceeding.

F. Child support or maintenance is based on annual income, and it is the responsibility of a person with seasonal employment to budget income so that payments are made throughout the year as ordered.

G. A *Parental Guide to Making Child-Focused Parenting-Time Decisions* is available from any court administrator.

H. The nonpayment of support may be enforced through the denial of student grants; interception of state and federal tax refunds; suspension of driver's, recreational, and occupational licenses; referral to the department of revenue or private collection agencies; seizure of assets, including bank accounts and other assets held by financial institutions; reporting to credit bureaus; interest charging, income withholding, and contempt proceedings; and other enforcement methods allowed by law.

I. The public authority may suspend or resume collection of the amount allocated for child care expenses if the conditions of Minnesota Statutes, section 518A.40, subdivision 4, are met.

J. The public authority may remove or resume a medical support offset if the conditions of section 518A.41, subdivision 16, are met.

K. The public authority may suspend or resume interest charging on child support judgments if the conditions of section 548.091, subdivision 1a, are met.

**V. MODIFYING CHILD SUPPORT.** If either the obligor or obligee is laid off from employment or receives a pay reduction, child support may be modified, increased, or decreased. Any modification will

State of Minne:
8/12/2020 5:14

only take effect when it is ordered by the court, and will only relate back to the time that a motion is filed. Either the obligor or obligee may file a motion to modify child support, and may request the public agency for help.  UNTIL A MOTION IS FILED, THE CHILD SUPPORT OBLIGATION WILL CONTINUE AT THE CURRENT LEVEL.    THE COURT IS NOT PERMITTED TO REDUCE SUPPORT RETROACTIVELY.

**VI.    PARENTAL RIGHTS FROM MINNESOTA STATUTES, SECTION 518.17, SUBDIVISION 3.** UNLESS OTHERWISE PROVIDED BY THE COURT:

A.    Each party has the right of access to, and to receive copies of, school, medical, dental, religious training, police reports, and other important records and information about the minor children.  Each party has the right of access to information regarding health or dental insurance available to the minor children.  Presentation of a copy of this order to the custodian of a record or other information about the minor children constitutes sufficient authorization for the release of the record or information to the requesting party.

B.    Each party has the right to be informed by the other party as to the name and address of the school of attendance of the minor children. Each party has the right to be informed by school officials about the children's welfare, educational progress and status, and to attend school and parent teacher conferences.  The school is not required to hold a separate conference for each party.

C.    Each party has the right to be notified by the other party of an accident or serious illness of a minor child, including the name of the health care provider and the place of treatment.

D.    Each party has the right to be notified by the other party if the minor child is the victim of an alleged crime, including the name of the investigating law enforcement officer or agency.  There is no duty to notify if the party to be notified is the alleged perpetrator.

E.    Each party has the right of reasonable access and telephone contact with the minor children.

**VII. WAGE AND INCOME DEDUCTION OF SUPPORT AND MAINTENANCE.**  Child support and / or spousal maintenance may be withheld from income, with or without notice to the person obligated to pay, when the conditions of Minnesota Statutes, section 518A.53, have been met.  A copy of that section is available from any court administrator.

**VIII. CHANGE OF ADDRESS OR RESIDENCE.**  Unless otherwise ordered, each party shall notify the other party, the court, and the public authority responsible for collection, if applicable, of the following information within ten days of any change: residential and mailing address, telephone number, driver's license number, social security number, and name, address, and telephone number of the employer.

**IX. COST OF LIVING INCREASE OF SUPPORT AND MAINTENANCE.**  Basic support and / or spousal maintenance may be adjusted every two years based upon a change in the cost of living (using the U.S. Department of Labor, Bureau of Labor Statistics, consumer price index Mpls. St. Paul, for all urban consumers (CPI-U), unless otherwise specified in this order) when the conditions of Minnesota Statutes, section 518A.75, are met.  Cost of living increases are compounded.  A copy of Minnesota Statutes, section 518A.75, and forms necessary to request or contest a cost of living increase are available from any court administrator.

**X. JUDGMENTS FOR UNPAID SUPPORT; INTEREST.**  According to Minnesota Statutes, section 548.091:

A.    If a person fails to make a child support payment, the payment owed becomes a judgment against the person responsible to make the payment by operation of law on or after the date the payment is due, and the person entitled to receive the payment or the public agency may obtain entry and docketing of the judgment **without notice** to the person responsible to make the payment.

B.    Interest begins accruing on a payment or installment of child support whenever the unpaid amount due is greater than the current support due.

Filed in District C
State of Minne
8/12/2020 5:14

**XI.    JUDGMENTS FOR UNPAID MAINTENANCE.**    A judgment for unpaid spousal maintenance may be entered and docketed when the conditions of Minnesota Statutes, section 548.091, are met.  A copy of that section is available from any court administrator.

**XII.  ATTORNEY FEES AND COLLECTION COSTS FOR ENFORCEMENT OF CHILD SUPPORT.**  A judgment for attorney fees and other collection costs incurred in enforcing a child support order will be entered against the person responsible to pay support when the conditions of Minnesota Statutes, section 518A.735, are met.  A copy of that section and forms necessary to request or contest these attorney fees and collection costs are available from any court administrator.

**XIII.  PARENTING TIME EXPEDITOR PROCESS.**  On request of either party or on its own motion, the court may appoint a parenting time expeditor to resolve parenting time disputes under Minnesota Statutes, section 518.1751.  A copy of that section and a description of the expeditor process is available from any court administrator.

**XIV.  PARENTING TIME REMEDIES AND PENALTIES.**  Remedies and penalties for wrongful denial of parenting time are available under Minnesota Statutes, section 518.175, subdivision 6. These include compensatory parenting time; civil penalties; bond requirements; contempt; and reversal of custody.  A copy of that subdivision and forms for requesting relief are available from any court administrator.



# EXHIBIT 2

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                         FOURTH JUDICIAL DISTRICT
                                                     FAMILY COURT DIVISION

_____

In Re the Marriage of:                        Case Type: Dissolution without Children
                                                     Court File No. 27-FA-19-6324
Pawel Dominik Rzeczkowski,

                    Petitioner,
                                                     **FINDINGS OF FACT, CONCLUSIONS
and                                                  OF LAW, ORDER FOR JUDGMENT,
                                                     AND JUDGMENT AND DECREE**

Carolina Uribe Borrero,

                    Respondent.

_____

        The above-entitled matter came before the Honorable Michael E. Burns, Judge of District
Court, for an Evidentiary Hearing held on January 5, 2022, January 6, 2022, and January 7, 2022,
remotely by Zoom.

        Petitioner Pawel Dominik Rzeczkowski appeared and is represented by Robert W. Due,
Esq. and James R. Todd, Esq., of DEWITT LLP.

        Respondent Carolina Uribe Borrero appeared and is represented by John "Jack" DeWalt,
of DEWALT, CHAWLA, & SAKSENA, LLC.

        Based upon the testimony heard, the evidence received, arguments of counsel or pro-se
parties, and upon all the files, records and proceedings herein, the Court makes the following:

## FINDINGS OF FACT

1.      The parties were married on October 1, 2011, in the City of Cali, Department of Valle del
        Cauca in the Republic of Columbia, and since that time have been and now are husband
        and wife.

2.      Prior to the marriage, the parties entered into a prenuptial agreement dated September 30,
        2011, in accordance with Colombian law and immediately after the parties' marriage, the
        parties entered into a "Disolucion y Liquicidacion de la Sociedad Conyugal" which under
        Columbian law, dissolved and liquidated their marital estate, thereby separating their
        respective property rights, with the intent to assure the parties' assets, debts, and financial

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

resources remained separate. An order was issued on August 7, 2021 stating these documents shall be effective in this proceeding.

3.    These proceedings were initiated by Petitioner with service of the Summons and Petitioner on, or around, September 20, 2019. Respondent files an Answer and Counter-Petition for Dissolution of Marriage on, or around, February 13, 2020.

4.    **Valuation Date.** The Court held an Initial Case Management Conference on <u>November 13 2019</u>, which is the valuation date for this matter.

5.    **Parties.** The true and correct names, former names, addresses, and dates of birth of Petitioner and Respondent are as follows:

> Petitioner:    Pawel Dominik Rzeczkowski
> Prior Names: None
> 3131 Excelsior Blvd., Apt. 210
> Minneapolis, MN 55416
> Date of Birth: December 9, 1970

> Respondent:    Carolina Uribe Borrero
> Prior names: None
> 4105 Upton Ave. South, Unit 1
> Minneapolis, MN 55410
> Date of Birth: October 10, 1975

The Petitioner is also referred to as "Father" and the Respondent is also referred to as "Mother" in this decree.

The Social Security numbers of the parties have been filed as confidential information.

6.    **Representation**. Husband is represented in this proceeding by Robert W. Due, Attorney at Law, and James R. Todd, Attorney at Law, of DEWITT LLP, 2100 AT&T Tower, 901 Marquette Avenue, Minneapolis, MN 55402. Wife is represented in this proceeding by John "Jack" DeWalt, Attorney at Law, of DEWALT, CHAWLA + SAKSENA, LLC, 330 Second Ave. South, Suite 760, Minneapolis, MN 55401.

7.    **Irretrievable Breakdown**. There has been an irretrievable breakdown of the marriage relationship of the parties hereto pursuant to Minn. Stat. §518.06, as amended.

8.    **Jurisdiction**. For more than 180 days immediately preceding the commencement of the within proceeding, Petitioner has been and now is a resident of the State of Minnesota. Petitioner is a resident of Hennepin County. Respondent's current residency is unknown.

9.    **Military Service**. Neither party was, at the time of the service of the Summons and Petition, nor is a member of the United States armed forces and neither party is entitled to any relief under the Servicemembers Civil Relief Act.

10. **No Separate Proceeding**. No separate proceeding for dissolution of the parties' marriage, legal separation, or custody is pending in any Court in this state or elsewhere.

11. **Order for Protection**. There are no Orders for Protection that govern the parties under Minn. Stat. Chapter 518B.

12. **Minor Children**. The parties are the parents to two joint minor children, namely, Aurora Margarita Rzeczkowski-Uribe, born March 2, 2015 ("Aurora"), and Sebastian Adam Rzeczkowski-Uribe, born March 2, 2015 ("Sebastian"), both age 7. There are no other minor children or dependent children affected by this proceeding. The minor children are not under the jurisdiction of a juvenile court.

13. **Pregnancy**. Mother is not now pregnant.

14. **Public Assistance**. Mother does not receive public assistance. Father receives SNAP benefits through the State of Minnesota.

15. **Income and Expenses**. Father is currently unemployed. Mother is self-employed full time as the owner of Growth Possibilities, LLC, a consulting business. Mother's gross earnings after businesses expenses in 2021 were approximately $350,920.

16. **Name Change**. Neither party is seeking a name change.

17. **Estate, Assets, Debts, and Financial Resources**. The parties' marriage estate, assets, debts, and financial resources shall be divided according to the parties' prenuptial agreement and "Disolucion y Liquicidacion de la Sociedad Conyugal".

18. **Custody and Parenting Time**. The parties engaged in a Custody and Parenting Time Evaluation conducted by Mr. Zak Chesson. The parties agree to share joint physical custody of the minor children and to exercise an equal 5-2-2-5 parenting time schedule, as recommended in their custody evaluation. The Court finds this agreement to be in the best interests of the children. The parties do not have an agreement on legal custody of the children. This issue will be evaluated and ordered by the Court below.

19. **Spousal**. Father is seeking spousal maintenance from Mother. Mother has a temporary spousal maintenance obligation is currently in place in the amount of $2,500 per month. The parties do not have an agreement on spousal maintenance.

20. **Child Support**. The parties do not have an agreement on child support.

21. **Need-Based Attorney's Fees**. Father is seeking need-based attorney's fees from Mother. The parties do not have an agreement on Need-Based Attorney's Fees.

NOW, THEREFORE, based upon the above Findings of Fact, the Court makes the following:

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

## CONCLUSIONS OF LAW

### I.    Custody and Parenting Time

22.    Here, the Petitioner is seeking joint legal custody and Respondent is seeking sole legal custody.

23.    Minnesota Statute § 518.17, subd. 1 requires the Court to evaluate the "best interests of the children" when determining issues of custody and parenting time. Minn. Stat. § 518.17, subd. 1. Further, the Court should presume that it is in the best interests of the children to promote a safe, stable, nurturing relationship with ***both*** parents; and that the Court should presume that ***both*** parents have the capacity to develop and sustain such a relationship [emphasis added]. Minn. Stat. § 518.17, subd. 1 (b)(2) and (3). To defeat that presumption, the Court must be provided "substantial reasons to believe otherwise." Minn. Stat. § 518.17, subd. 1 (b)(3). In the evaluation of determining issues of custody and parenting time, the court must consider and evaluate all relevant factors.

24.    ***A child's physical, emotional, cultural, spiritual, and other needs, and the effect of the proposed arrangements on the child's needs and development.*** Prior to the separation of homes, Mr. Chesson reported that the children had been experiencing "behavioral challenges beyond what is to be expected at their age since the commencement of the divorce proceedings" but that some of these behaviors subsided after the Petitioner moved out of the family home. *Custody Evaluation,* pg. 3. The Court notes that there are some difficulties between parties to come to an agreement on services for the children, but that both parties seem to have a general concern for their children's health and wellbeing. There are no other credible concerns regarding the parties' ability to meet the physical, emotional, cultural, and spiritual or other needs of the children. Mr. Chesson noted that "the children are both in good physical health, and both parents put a priority on celebrating their rich cultural backgrounds. *Id.* The Court considers this factor to weigh in favor of joint custody.

25.    ***Any special medical, mental health, or educational needs that the child may have that may require special parenting arrangements or access to recommended services.*** The Court finds that there are no credible concerns raised regarding the parties' inability to meet the medical, mental, or educational needs of the children. The children have been enrolled in play therapy, per the recommendations of Mr. Chesson and Sebastian is being screened for ADD/ADHD per the recommendation of his doctor. While the Court notes that the parties were not easily agreeable as to how to move forward, both parties were willing to move forward and seek the necessary care for the children. The Court considers this factor to weigh in favor of joint custody.

26.    ***The reasonable preference of the child, if the court deems the child to be of sufficient ability, age, and maturity to express an independent, reliable preference.*** The children are not old enough to express an independent, reliable preference, so this factor is neutral regarding legal custody.

27.  *Whether domestic abuse has occurred in the parents' or either parent's household or relationship; the nature and context of the domestic abuse; and the implications of the domestic abuse for parenting and for the child's safety, well-being, and developmental needs.* The Court notes that domestic abuse has occurred in the shared home, but since separating, no other instances of domestic abuse have occurred. The Court finds that the instances of domestic abuse were situational and were based on rising conflict of the relationship. According to the custody evaluation, Mr. Chesson notes that "little indicates that ongoing physical violence will be a concern" and that he has "no concerns about the children's safety and well-being now that the parties no longer live in the same home". *Custody Evaluation,* pg. 7. The Court does not discredit the seriousness of the domestic violence incident that took place in April of 2019 where Mother struck Father in the head with a lamp while the children were present. The Court recognizes the severe impact an incident of this nature will have on the children, but ultimately finds that the situation does not present a risk for future domestic violence to occur between the parties. The Court finds this factor weighs in favor of joint legal custody.

28.  *Any physical, mental, or chemical health issue of a parent that affects the child's safety or developmental needs.* The Court finds that neither parent presents with any physical, mental, or chemical health issue affecting the children's safety or developmental needs. The Court finds this factor weighs in favor of joint legal custody.

29.  *The history and nature of each parent's participation in providing care for the child.* The Court adopts Mr. Chesson's statements as it relates to the parties' participation in providing care, stating, "it is abundantly clear that both parents have participated fully in providing care for the children" and "the children have appropriate attachments and bonds to both of their parents". *Custody Evaluation,* pg. 8.Mr. Chesson also noted that he witnessed "genuine warmth, humor, vulnerability, and love displayed between the children and both parents. Pawel and Caroline were able to give both Aurora and Sebastian equal amounts of guidance, nurturing, and encouragement." *Id.* The Court finds that this factor weighs in favor of joint legal custody.

30.  *The willingness and ability of each parent to provide ongoing care for the child; to meet the child's ongoing developmental, emotional, spiritual, and cultural needs; and to maintain consistency and follow through with parenting time.* Per testimony from both parents, as well as the opinion of Mr. Chesson, the Court finds that there are no credible concerns about the willingness and ability of each parent to provide ongoing care for the child. This factor weighs in favor of joint legal custody.

31.  *The effect on the child's well-being and development of changes to home, school, and the community.* The parties have both expressed their intent to maintain the children's current home and community. Father expressed concern regarding a change to the children's schooling. The parties were required to choose a new school as the one the children were attending was no longer in the school district. The parties disagreed as to which school the children should attend, resulting in the school district ultimately making the choice in favor of Mother's school preference. Father expresses concerns about the children's performance at the current school. Father's concerns centered on Sebastian's

performance in reading and writing English, as well as behavioral problems. The Court notes Father's concerns but feels that behavioral problems were already presently addressed and likely do not directly correlate to the specific school in which the children attend. The Court finds that no other credible concerns exist and that this factor weighs in favor of joint legal custody.

32.    ***The effect of the proposed arrangements on the ongoing relationships between the child and each parent, siblings, and other significant persons in the child's life.*** The parties have agreed to equal parenting time and joint physical custody. The Court finds this factor to be neutral in regard to legal custody.

33.    ***The benefit to the child in maximizing parenting time with both parents and the detriment to the child in limiting parenting time with either parent.*** The parties have agreed to equal parenting time and joint physical custody. The Court finds this factor to be neutral in regard to legal custody.

34.    ***Except in cases in which domestic abuse as described in clause (4) has occurred, the disposition of each parent to support the child's relationship with the other parent and to encourage and permit frequent and continuing contact between the child and the other parent.*** The Court notes that domestic abuse has occurred in this case but agrees with Mr. Chesson's assessment that there is a "low risk of future violence and the parents have greatly benefited from their separation with improved communication and cooperation over daily care of the children." *Custody Evaluation,* pg. 12. The biggest concern to the Court is the apparent difficulties for the parties to develop a healthy co-parenting relationship. The Court acknowledges that both parties have contributed to the conflict and that this conflict has created difficulties in making positive choices for the children. Mr. Chesson noted, "[Mother] was more capable of making sure that the kids' needs were met and was not as caught up in the conflict, not that she didn't participate in it, but that she was able to put their interpersonal conflicts to the side to focus on the children and I thought Father had more difficulty doing that." *TT,* at 88. The Court also notes that throughout these proceedings, care for the children in various aspects has been delayed due to the parties' unwillingness to agree, with issues such as play therapy enrollment and ADD/ADHD screening becoming delayed due specifically to Father's unwillingness to cooperate and efficiently resolve disputes. The Court finds that this factor weighs more favorably for sole legal custody to Mother.

35.    ***The willingness and ability of parents to cooperate in the rearing of their child; to maximize sharing information and minimize exposure of the child to parental conflict; and to utilize methods for resolving disputes regarding any major decision concerning the life of the child.*** The Court has already noted that the difficult relationship between the parties has led to difficulty in the parties' ability to effectively co-parent the children. The Court notes that while this difficulty has presented previous instances of delay in care and decision making, that decisions were ultimately made in each instance of disagreement and that there are no current, pending concerns for the children as it relates to the parties' inability to agree. This concern will decrease dramatically as the parties continue to work

towards a healthy co-parenting relationship for the benefit of their children. The Court finds that this factor weighs in favor of joint legal custody.

36.     The Court greatly values and considers the input from the Custody and Parenting Time Evaluation and the opinions and findings of Mr. Chesson. The Court acknowledges that a preliminary draft of Mr. Chesson's evaluation called for joint legal custody, where his final draft recommended sole legal custody to Mother, but that this was a "close call". The Court understands Mr. Chesson's concerns and finds them to be deeply rooted in co-parenting conflicts, rather than individual parenting conflicts. The parties should continue to work towards a healthier co-parenting relationship that is in the best interest of the children.

37.     In considering the weight of all factors, the Court finds that there are no credible concerns to warrant against the statutory presumption of joint legal custody. The Court finds that joint legal custody is in the best interests of the children.


## II.     Child Support

38.     Child support laws codified in Minn. Stat. § 518A (2019) are composed of three elements: (1) Basic Child Support; (2) Work-Related or Education- Related Childcare Costs; and (3) Medical and Dental Expenses, including both the premium cost for insurance and the cost of uninsured or unreimbursed medical and dental expenses.

39.     **Basic Child Support**. Basic child support is based on Parental Income for Determining Child Support ("PICS"). Mother has a reported monthly income of $15,810. Father is voluntarily underemployed. Father has a potential income of $8,333, based on the lower end of the estimation of Mr. Mark Raderstorf, Mother's vocational expert, that Father could be earning between $100,000 and $125,000 annual based on education, skill, and previous employment. The total monthly PICS income is $24,143. Mother has a PICS percentage of 65% and Father has a PICS percentage of 35%. This results in Mother's basic child support obligation of $410.[1]

40.     **Work-Related or Education-Related Childcare Costs.** Mother is the only parent who incurs work-related childcare costs and has expressed her intent to be solely responsible to cover those costs.

41.     **Medical and Dental Expenses.** Mother currently pays $443 per month in medical insurance costs for the joint minor children, and $39 per month in dental insurance costs. According to Father's combined PICS percentage of 35%, Father is responsible for reimbursing Mother $169 per month for medical and dental insurance costs for the joint minor children. Mother will be responsible for 65% of all medical and dental costs not covered by insurance, Father will be responsible for 35% of all medical and dental costs not covered by insurance.

---

[1] See attached Minnesota Child Support Guidelines Worksheet.

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

42. **Total Child Support.** Mother's basic child support obligation to Father is $410 per month. Father's obligation to Mother for medical and dental insurance reimbursement is $169 per month. This reduces Mother's total child support obligation to Father to $241 per month.

### III.    Spousal Maintenance

43. Father is requesting temporary, rehabilitative maintenance for a period of five years from the date of entry of this Judgment and Decree, in the amount of $5,000 per month. Mother is requesting that no spousal maintenance be ordered on the basis that Father has the ability to be self-supporting. Mother has acknowledged that $5,000 is below the martial standard of living. Both parties agree that the marriage was not long enough to support a claim of permanent spousal maintenance.

44. In a proceeding for dissolution of marriage or legal separation, the court may grant a maintenance order for either spouse if it finds that the spouse seeking maintenance lacks sufficient property to provide for reasonable needs of the spouse or is unable to provide adequate self-support after considering all relevant factors. Minn. Stat. 518.552.

45. The Court has previously ordered through an Order for Temporary Relief filed on August 12, 2020, that Mother pay Father $2,500 per month in temporary financial support, in addition to Mother paying the mortgage payment on the Homestead, property taxes, homeowner's insurance, utilities for the Homestead, vehicle payments, vehicle insurance, mobile phone service for both parties, and her life insurance premium. In this order, the Court noted it's concern that this temporary relief would encourage "freeloading" and was not intended for Father to live a life of luxury, but rather, to lessen the financial burden while Father became stable in his new living situation. The Court ordered this relief, in part, because Father stated that the constant moving for Mother's employment made it difficult to obtain employment and his assets were limited, but also in part because Mother had agreed to the temporary relief, in addition to agreeing to help furnish his new living space and covering the shared expenses.

46. Since the Order of Temporary Relief, nearly two years have passed. Father remains unemployed. The Court finds that this should have been sufficient time for Father to gain employment, and that Father has not shown credible evidence of his attempts to gain sufficient employment, noting Father had only attended two interviews by the time of trial. The Court finds that Father is capable of gaining employment, that no further education or training would be necessary, and that his history of employment supports this position. The Court would like to emphasize the difference that exists between sufficient employment and Father's preferred employment. Based on this information, the Court finds that Father is voluntarily underemployed.

47. Based on Father's lack of evidence to support that his inability to be self-sufficient was not due to his unwillingness to gain employment, the Court finds that Father has not met his burden of proof and no spousal maintenance will be ordered.

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

## IV. Need-Based Attorney's Fees

48. Here, Father is requesting that the Court order Mother to pay Father's need-based attorney's fees in the amount of $111,542. Mother requests that each party be responsible for their own attorney's fees.

49. Except as provided in section 518.735, the court shall award attorney fees, costs, and disbursements in an amount necessary to enable a party to carry on or contest the proceeding, provided it finds: 1) the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding; 2) that the party from whom the fees, costs, and disbursements are sought has the means to pay them; and 3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them. Minn. Stat. §1518.14, subd. 1.

50. In the Court's Order on Request for Need-Based Attorney Fees dated January 12, 2021, the Court found that attorney fees were necessary for the good-faith assertion of Petitioner's rights. However, in the Court's Order Enforcing the Colombian Documents dated August 7, 2021, the Court found that "the Court does not find Father's statements to be credible because he has given this Court reason to believe that he would mislead the Court or distort facts in a self-serving manner". *Order Enforcing the Colombian Documents,* pg. 8. Additionally, that "Father's statements lack reliability, consistency with other facts, and are permeated with Father's self-interest to use the economic divorce when it suits him and disavow it when it does not." *Id,* pg. 10. Based on these previous findings, the Court finds that Father's legal proceedings were not necessarily in the furtherance of a good-faith assertion of Petitioner's rights.

51. The Court recognizes that Father does not currently have the means to pay the attorney's fees due to his unemployment and his lack of assets. However, the Court has already stated that Father's inability to pay the attorney's fees is in part due to Father's unwillingness to gain employment. The Court finds that Father willingly does not have the means to pay the attorney's fees.

52. The Court has previously addressed in its Order for Need-Based Attorney's fees that Mother did not have the means to pay for Father's attorney's fees. The Court recognizes that Mother's means have increased based on her earned income in 2021, her sale of the Beard Avenue property, and an increase in liquid assets. The Court finds that Mother does have the ability to pay need-based attorney's fees.

53. To award need-based attorney's fees, the Court must find that the fees are necessary for the good-faith assertion of Father's rights, that Father does not have the means to pay the attorney's fees, and that Mother does have the means to pay the attorney's fees. While Mother does have the means to pay the attorney's fees, and Father does not have the means to pay the attorney's fees, whether due to his own unwillingness, the Court finds that the attorney's fee were not necessary for the good-faith assertion of Father's rights as Father has acted in bad faith during these dissolution proceedings.

54. Accordingly, the Court finds that both parties with be responsible for their own attorney's fees.

## ORDER

55.    **Dissolution of Marriage.** The bonds of matrimony existing between the parties are hereby dissolved.

56.    **Estate, Assets, Debts, and Financial Resources.** Pursuant to the Findings and Order Enforcing the Colombian Documents dates August 7, 2021, the assets and liabilities of the parties are allocated according to the prenuptial agreement and the "Disolucion y Liquicidacion de la Sociedad Conyugal".

57.    **Custody.** The parties shall have joint physical and joint legal custody.

    a.    **Access to Information.** Under Minn. Stat. §518.17, Subd. 3, each parent has the right of access to, and to receive copies of school, medical, dental, religious training, and other important records and information about the minor children. Each parent has equal rights to access of information regarding the children, and rights to be informed by school and medical officials about the children. Each parent will be responsible for communicating any concerns with a child's wellbeing or any accidents or serious incidents to the other parent. Each parent has the right to reasonable access and telephone contact with the children in the form of at least one FaceTime or telephone call per day. The children may initiate contact with the off-duty parent by telephone at any reasonable time.

    b.    Presentation of a copy of the Judgment and Decree to the custodian of records or other information regarding the minor children constitutes sufficient authorization for the release of the record of information to the requesting parent.

58.    **Parenting Time.** Parties shall have equal parenting time in the form of a 5-2-2-5 schedule as follows:

| Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|
| Father | Father | Father/Mother | Mother | Mother | Mother | Mother |
| Mother/Father | Father | Father/Mother | Mother | Mother/Father | Father | Father |

Exchanges shall occur by drop off at school and pickup after school on Mondays, Wednesdays, and alternating Fridays. If there is no school, exchanges shall occur by 9:00am at the on-duty parent's residence with the parent beginning their parenting time responsible for pick-up.

**a.**  **Holidays.** Mother and Father shall spend holidays with the minor children as follows:

| Holiday | Odd Years | Even Years | Notes |
|---|---|---|---|
| New Year's | Father | Mother | Includes New Year's Eve and New Year's Day |
| Easter | | | With "on-duty" parent. |
| Mother's Day | Mother | Mother | |
| Memorial Day | | | With "on-duty" parent. |
| Father's Day | Father | Father | |
| Fourth of July | | | With "on-duty" parent. |
| Labor Day | | | With "on-duty" parent. |
| Thanksgiving | Mother | Father | |
| Christmas Eve | Mother | Father | |
| Christmas Day | Mother | Father | |
| Spring Break | Father | Mother | |
| MEA Weekend | | | With "on-duty" parent. |
| Dia De Las Velitas | Mother | Mother | Father shall have compensatory overnight with the children. |
| Winter Break | Mother/Father | Father/Mother | Split in half to accommodate accompanying holiday. |

**b.**  **Vacations.** Both parties are entitled to up to 14 days per year. If either party is going to travel internationally, that party may use the full fourteen days for one trip. If the travel is domestic, then their vacation may be used in two seven-day blocks. For international travel, the parties will follow United States State Department guidelines regarding travel restrictions.

**c.**  **Priority.** Holiday time shall take priority over vacation time, which shall take priority over the access schedule.

**d.**  **Alterations to Parenting Time Schedule.** The parties may mutually alter the parenting time schedule. Neither parent may unilaterally change the parenting schedule. Requests for changes must be made with as much notice as possible. The parents shall not advise the children of any changes or negotiations until the matter is settled.

**e.**  **Overnight Parent Responsibility.** Unless otherwise agreed upon between the parties, the parent who is scheduled to have the child in his or her care overnight is the parent responsible for the child's care in the event of a school release day not otherwise assigned to either party, or if the child is ill or needs to leave school or child care early.

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

    f.    **Right of First Refusal.** The parties shall have a right of first refusal is a party is unavailable for their overnight parenting time during their scheduled parenting time. The on-duty parent shall offer the parenting time to the other parent before arranging for a third-party to care for the children.

59.    **Extracurricular Activities.** The parties shall communicate and cooperate regarding the child's enrollment and participation in sports and extracurricular activities. If an activity impacts the other parent's schedule, the parent seeking to enroll the child must first obtain the other parent's agreement before enrolling the child in the activity. That agreement shall not be unreasonably withheld. Each parent is welcome at all activities and events and both will respect the other parent's attendance. Each party shall be responsible for 50% of any fees or costs associated with extracurricular activities.

60.    **Communication.** In case of emergency regarding the children, the parties will either call or text each other. Otherwise, the parties will continue to utilize Our Family Wizard for child related issues. When either party has a proposal regarding a child related issue, the other party must acknowledge receipt of the message at their first opportunity. A substantive answer must be given within 48 hours. If no response is provided, the parent making the request will be authorized to follow through with their request.

61.    **Non-Disparagement of Other Party.** The parties shall refrain from making any derogatory comments, either orally or in writing, about the other party, or allowing their parties to make such comments, in the presence of the minor children.

62.    **Residency.** Neither party shall remove the minor children from the State of Minnesota for the purpose of changing their place of residence without the written consent of the other party or until further Order of the Court, so long as either party is a resident of the State of Minnesota for the purpose of changing their place of residence, the provisions of Minn. Stat. §518.175, sub. 3 shall control.

63.    **Child Support.** Mother shall have a monthly child support obligation to Father of $241 per month, payable on the 1st of every month. This amount is Mother's basic child support amount, less Father's obligation for health and dental insurance reimbursement. Mother's child support obligation is subject to cost-of-living adjustments as provided for in Minn. Stat. §518A.75. Mother's child support obligation shall continue at the above rate until the minor children attain the age of eighteen (18).

64.    **Health Insurance for the Minor Children.** Mother shall maintain health and dental insurance coverage for the joint minor children. Parties will be responsible for their own health and dental coverage and any health and dental expenses.

65.    **Dependency Claims.** Each party shall be entitled to claim one of the two minor children as a dependent for state and federal income tax purposes, commending for the tax year 2022.

66. **Spousal Maintenance.** Neither party is awarded any spousal maintenance. The right to spousal maintenance has not been waived.

67. **Attorney's Fees.** Parties shall be responsible for their own separate attorneys' fees.

68. **Name Change.** Neither party is seeking a name change.

69. **Resolution of Conflict.** Any claim or controversy arising under this document that cannot be resolved by the parties through direct communication without mediation, shall be promptly submitted to mediation.

    a. <u>Definition of Mediation</u>. Mediation shall be a voluntary process entered into by the parties. In this process, the parties shall continue direct communication but with the assistance of a neutral person who is the mediator, which mediator has no authority to require any concession or agreements. A good faith effort shall be made to resolve any claim or controversy arising between the parties.

    b. <u>Selection of Mediator</u>. The mediator shall be obtained through Hennepin County Family Court Services or an agreed upon mediator.

    c. <u>Duties and Responsibilities of Mediator</u>. The mediator shall have the duty and responsibility to assist the parties in resolving all issues submitted for mediation.

    d. <u>Duties of Parties</u>. Both parties shall cooperate and operate in good faith to resolve the matter(s) in dispute with the assistance of the mediator.

    e. <u>Confidentiality and Privilege</u>. Within the limits of the law, the mediator will accord confidentiality and privilege to all communications with the parties.

    f. <u>Restrictions</u>. The mediator shall not participate as a witness, collateral contact, or attorney in a parenting time study or inquiry involving either party. Further, neither party may ever call the mediator as a witness to testify in any proceeding involving their children or the subject matter of the mediation.

    g. <u>Compromise or Offers to Compromise During Mediation</u>. State statute shall be applicable throughout the entire process of mediation.

    h. <u>Applicability of Dispute Settlement Procedures</u>. The above procedures shall apply to any claims or controversies arising under this document.

    i. <u>Exhaustion of Remedies</u>. The above procedure shall be followed before either party may apply to the Court for relief.

70. **Appendix A.** This document is subject to the provisions of Appendix A, attached hereto and incorporated herein by reference.

71. **Service of Judgment and Decree.** Service of a copy of this order shall be made upon pro-se parties by first class U.S. mail at their last known addresses, or to attorneys by e-service, which shall be due and proper service for all purposes.

72. **Execution and Exchange of Documents.** To implement the terms and provisions contained herein, each of the parties shall make, execute and deliver to the other party instruments of conveyance, assignment and other documents as may be required. In the event either party fails to do so, the Judgment and Decree shall operate as said conveyance.

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

73.    **Retention of Jurisdiction.** If there are assets or income that have not been disclosed and/or divided herein, the Court hereby retains jurisdiction over said income and/or assets for the purpose of making an equitable division thereof.  The party failing to disclose said income and/or assets shall pay the reasonable attorneys' fees and costs of the other party incurred in enforcing this provision.

74.    **Waiver of Stay of Judgment.** The thirty day stay of Judgment is hereby waived.

27-FA-18-6324

Filed in District Court
State of Minnesota
6/21/2022 8:20 AM

### ORDER FOR JUDGMENT

### LET JUDGMENT BE ENTERED ACCORDINGLY.

BY THE COURT

Burns, Michael
2022.06.15
11:32:13 -05'00'

*Michael E. Burns*
Judge of District Court

### JUDGMENT

I certify the above *Conclusions of Law* are the Judgment of the Court and Judgment is hereby entered.

_____
Court Administrator

_____
Deputy

Filed in District Court
State of Minnesota

Dated:  Jun 21, 2022 9:01 am

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

## APPENDIX A

**NOTICE IS HEREBY GIVEN TO THE PARTIES:**

**I. PAYMENTS TO PUBLIC AGENCY.** According to Minnesota Statutes, section 518A.50, payments ordered for maintenance and support must be paid to the Minnesota child support payment center as long as the person entitled to receive the payments is receiving or has applied for public assistance or has applied for support and maintenance collection services. Parents mail payments to: P.O. Box 64326, St. Paul, MN 55164-0326. Employers mail payments to: P.O. Box 64306, St. Paul, MN 55164.

**II. DEPRIVING ANOTHER OF CUSTODIAL OR PARENTAL RIGHTS -- A FELONY.** A person may be charged with a felony who conceals a minor child or takes, obtains, retains, or fails to return a minor child from or to the child's parent (or person with custodial or parenting time rights), according to Minnesota Statutes, section 609.26. A copy of that section is available from any court administrator.

**III. NONSUPPORT OF A SPOUSE OR CHILD – CRIMINAL PENALTIES.** A person who fails to pay court-ordered child support or maintenance may be charged with a crime, which may include misdemeanor, gross misdemeanor, or felony charges, according to Minnesota Statutes, section 609.375. A copy of that section is available from any district court clerk.

**IV. RULES OF SUPPORT, MAINTENANCE, PARENTING TIME.**

A.  Payment of support or spousal maintenance is to be as ordered, and the giving of gifts or making purchases of food, clothing, and the like will not fulfill the obligation.

B.  Payment of support must be made as it becomes due, and failure to secure or denial of parenting time is NOT an excuse for nonpayment, but the aggrieved party must seek relief through a proper motion filed with the court.

C.  Nonpayment of support is not grounds to deny parenting time. The party entitled to receive support may apply for support and collection services, file a contempt motion, or obtain a judgment as provided in Minnesota Statutes, section 548.091.

D.  The payment of support or spousal maintenance takes priority over payment of debts and other obligations.

E.  A party who accepts additional obligations of support does with the full knowledge of the party's prior obligation under this proceeding.

F.  Child support or maintenance is based on annual income, and it is the responsibility of a person with seasonal employment to budget income so that payments are made throughout the year as ordered.

G.  A *Parental Guide to Making Child-Focused Parenting-Time Decisions* is available from any court administrator.

H.  The nonpayment of support may be enforced through the denial of student grants; interception of state and federal tax refunds; suspension of driver's, recreational, and occupational licenses; referral to the department of revenue or private collection agencies; seizure of assets, including bank accounts and other assets held by financial institutions; reporting to credit bureaus; interest charging, income withholding, and contempt proceedings; and other enforcement methods allowed by law.

I.  The public authority may suspend or resume collection of the amount allocated for child care expenses if the conditions of Minnesota Statutes, section 518A.40, subdivision 4, are met.

J.  The public authority may remove or resume a medical support offset if the conditions of section 518A.41, subdivision 16, are met.

K.  The public authority may suspend or resume interest charging on child support judgments if the conditions of section 548.091, subdivision 1a, are met.

---

**V.  MODIFYING CHILD SUPPORT.** If either the obligor or obligee is laid off from employment or receives a pay reduction, child support may be modified, increased, or decreased. Any modification will only take effect when it is ordered by the court, and will only relate back to the time that a motion is filed. Either the obligor or obligee may file a motion to modify child support, and may request the public agency for help. UNTIL A MOTION IS FILED, THE CHILD SUPPORT OBLIGATION WILL CONTINUE AT THE CURRENT LEVEL. THE COURT IS NOT PERMITTED TO REDUCE SUPPORT RETROACTIVELY.

**VI.  PARENTAL RIGHTS FROM MINNESOTA STATUTES, SECTION 518.17, SUBDIVISION 3.** UNLESS OTHERWISE PROVIDED BY THE COURT:

A.  Each party has the right of access to, and to receive copies of, school, medical, dental, religious training, police reports, and other important records and information about the minor children. Each party has the right of access to information regarding health or dental insurance available to the minor children. Presentation of a copy of this order to the custodian of a record or other information about the minor children constitutes sufficient authorization for the release of the record or information to the requesting party.

B.  Each party has the right to be informed by the other party as to the name and address of the school of attendance of the minor children. Each party has the right to be informed by school officials about the children's welfare, educational progress and status, and to attend school and parent teacher conferences. The school is not required to hold a separate conference for each party.

C.  Each party has the right to be notified by the other party of an accident or serious illness of a minor child, including the name of the health care provider and the place of treatment.

D.  Each party has the right to be notified by the other party if the minor child is the victim of an alleged crime, including the name of the investigating law enforcement officer or agency. There is no duty to notify if the party to be notified is the alleged perpetrator.

E.  Each party has the right of reasonable access and telephone contact with the minor children.

**VII.  WAGE AND INCOME DEDUCTION OF SUPPORT AND MAINTENANCE.** Child support and / or spousal maintenance may be withheld from income, with or without notice to the person obligated to pay, when the conditions of Minnesota Statutes, section 518A.53, have been met. A copy of that section is available from any court administrator.

**VIII.  CHANGE OF ADDRESS OR RESIDENCE.** Unless otherwise ordered, each party shall notify the other party, the court, and the public authority responsible for collection, if applicable, of the following information within ten days of any change: residential and mailing address, telephone number, driver's license number, social security number, and name, address, and telephone number of the employer.

**IX.  COST OF LIVING INCREASE OF SUPPORT AND MAINTENANCE.** Basic support and / or spousal maintenance may be adjusted every two years based upon a change in the cost of living (using the U.S. Department of Labor, Bureau of Labor Statistics, consumer price index Mpls. St. Paul, for all urban consumers (CPI-U), unless otherwise specified in this order) when the conditions of Minnesota Statutes, section 518A.75, are met. Cost of living increases are compounded. A copy of Minnesota Statutes, section 518A.75, and forms necessary to request or contest a cost of living increase are available from any court administrator.

**X.  JUDGMENTS FOR UNPAID SUPPORT; INTEREST.** According to Minnesota Statutes, section 548.091:

A.  If a person fails to make a child support payment, the payment owed becomes a judgment

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

against the person responsible to make the payment by operation of law on or after the date the payment is due, and the person entitled to receive the payment or the public agency may obtain entry and docketing of the judgment **without notice** to the person responsible to make the payment.

B.  Interest begins accruing on a payment or installment of child support whenever the unpaid amount due is greater than the current support due.

**XI.  JUDGMENTS FOR UNPAID MAINTENANCE.** A judgment for unpaid spousal maintenance may be entered and docketed when the conditions of Minnesota Statutes, section 548.091, are met. A copy of that section is available from any court administrator.

**XII.  ATTORNEY FEES AND COLLECTION COSTS FOR ENFORCEMENT OF CHILD SUPPORT.** A judgment for attorney fees and other collection costs incurred in enforcing a child support order will be entered against the person responsible to pay support when the conditions of Minnesota Statutes, section 518A.735, are met. A copy of that section and forms necessary to request or contest these attorney fees and collection costs are available from any court administrator.

**XIII.  PARENTING TIME EXPEDITOR PROCESS.** On request of either party or on its own motion, the court may appoint a parenting time expeditor to resolve parenting time disputes under Minnesota Statutes, section 518.1751. A copy of that section and a description of the expeditor process is available from any court administrator.

**XIV.  PARENTING TIME REMEDIES AND PENALTIES.** Remedies and penalties for wrongful denial of parenting time are available under Minnesota Statutes, section 518.175, subdivision 6. These include compensatory parenting time; civil penalties; bond requirements; contempt; and reversal of custody. A copy of that subdivision and forms for requesting relief are available from any court administrator.

**In addition to the Notices on pages 1 and 2, the following NOTICE applies to all orders addressing custody pursuant to Minn. Stat. § 518.17, subd. 3a.**

**NOTICE**
**EACH PARTY IS GRANTED THE FOLLOWING RIGHTS:**
a.  Right of access to, and to receive copies of, school, medical, dental, religious training, police reports, and other important records and information about the minor children.
b.  Right of access to information regarding health or dental insurance available to the minor children.
c.  Right to be informed by the other party as to the name and address of the school of attendance of the minor children.
d.  Right to be informed by school officials about the children's welfare, educational progress and status, and to attend school and parent-teacher conferences. The school is not required to hold a separate conference for each party, unless attending the same conference would result in violation of a court order prohibiting contact with a party.
e.  Right to be notified by the other party of an accident or serious illness of a minor child, including the name of the health care provider and the place of treatment.
f.  Right to be notified by the other party if the minor child is the victim of an alleged crime, including the name of the investigating law enforcement officer or agency. There is no duty to notify if the party to be notified is the alleged perpetrator.
g.  Right to reasonable access and telephone or other electronic contact with the minor children.

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

Minnesota Child Support Online        DHS Public Web Site

Glossary

Support Guidelines      Parenting Expense Adjustment        Child Care Obligation      Summary

## Child Support Guidelines Worksheet

[Printable Version]

**Parent A:** Pawel
**Parent B:** Carolina

**IV-D Case Number:** 1463M
**Court File Number:** 27-FA-19-

**Number of Joint Children:** 2
**Date:** 6/12/2022 6324

|  |  | Parent A | Parent B | Combined |
|---|---|---|---|---|
| **Income** | 1a. Monthly Income Received | $0 | $15810 | ---- |
|  | 1 b. Child(ren)'s Social SecurityNeterans' Benefits Derived From a Parent's Eligibility | $0 | $0 | ---- |
|  | 1c. Potential Income | $8333 | $0 | ---- |
|  | 1d. Spousal Maintenance Orders Obligated to be Paid | $0 | $0 | ---- |
|  | 1e. Child Support Order(s) Obligated to be Paid for Nonjoint Child(ren) | $0 | $0 | ---- |
|  | 1f. Monthly Gross Income (1a+1b+1c-1d-1e) | $8333 | $15810 | ---- |
| **Adjustments** | 2a. Number of Nonjoint Child(ren) in the Home (Maximum number allowed is 2) | 0 | 0 | ---- |
|  | 2b. Deduction for Nonjoint Child(ren) in the Home | $0 | $0 | ---- |
|  | 3. Parental Income for Determining Child Support (PICS) | $8333 | $15810 | $24143 |
|  | 4. Percentage Share of Combined PICS | 35% | 65% | ---- |
|  | 5. Combined Basic Support Obligation | ---- | ---- | $2727 |
|  | 6. Pro Rata Basic Support Obligation | $954 | $1773 | ---- |
| **Basic Child Support Obligation** | 7. Basic Support Obligation After Parenting Expense Adjustment (if applicable) |  | $410 | ---- |
| **Child Care Obligation** | 8. Child Care Support Obligation for Joint Child(ren) |  |  | ---- |
| **Medical Support Obligation** | 9a. Monthly Cost of Health Care Coverage for Joint Child(ren) | $0 | $443 | ---- |
|  | 9b. Pro Rata Share of Health Care Coverage Costs | $155 | $288 | ---- |

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

| | | | | |
|---|---|---|---|---|
| **Appropriate Coverage Available** | 9c. Contribution to Health Care Coverage | $155 | | ---- |
| | 9d. Monthly Cost of Dental Coverage for Joint Child(ren) | $0 | $39 | ---- |
| | 9e. Pro Rata Share of Dental Coverage Costs | $14 | $25 | ---- |
| | 9f. Contribution to Dental Coverage | $14 | | ---- |
| | 9g. Medical Support Obligation-Appropriate Coverage Available | $169 | | ---- |
| **No Appropriate Insurance Available** | 10. Medical Support Obligation for Public Coverage | | | ---- |
| **Uninsured/Unreimbursed Expenses** | 11. Share of Uninsured and/or Unreimbursed Medical Expenses | 35% | 65% | ---- |
| | 12. Net Child Support Obligation | $169 | $410 | |
| **Benefits Adjustment** | 13. Child(ren)'s Social SecurityNeterans' Benefits Derived from Parent's Eligibility | | | ---- |
| **Computing a Final Obligation** | 14. Total Child Support Obligation | $169 | $410 | ---- |
| | 15a. Monthly Gross Income | $8333 | $15810 | ---- |
| **Ability to Pay Calculation** | 15b. Income Available for Support | $6974 | $14451 | ---- |
| | 16. Monthly Child Support Obligation - No Adjustment Necessary | $169 | $410 | ---- |
| | 17. Amount of Reduction | $0 | $0 | ---- |
| **Child Support Obligation Adjustment** | 18. Medical Support | | | |
| | Original Obligation | | | |
| | Amount of Reduction | | | ---- |
| | New Obligation | | | ---- |
| | 19. Child Care Support | | | |
| | Original Obligation | | | ---- |
| | Amount of Reduction | | | ---- |
| | New Obligation | | | ---- |
| | 20. Basic Support Original | | | |
| | Obligation Amount of | | | ---- |
| | Reduction | | | ---- |
| | New Obligation | | | ---- |
| | 21. Monthly Child Support Obligation After Adjustment | | | ---- |
| **Presumptive Minimum Order/Basic Support** | 22a. Presumptive Minimum Order for 1 or 2 Joint Children | | | ---- |

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

| Only | 22b. Presumptive Minimum Order for 3 or 4 Joint Children | | | ---- |
| | 22c. Presumptive Minimum Order for 5 or More Joint Children | | | ---- |

**Calculated by the Minnesota Child Support Guidelines Calculator on 6/12/2022 at 9:56 PM**

# EXHIBIT 3

2023 WL 2762442
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS
UNPUBLISHED AND MAY NOT BE CITED
EXCEPT AS PROVIDED BY MINN. ST. SEC.
480A.08(3).

*This opinion is nonprecedential except as provided
by Minn. R. Civ. App. P. 136.01, subd. 1(c).*
Court of Appeals of Minnesota.

In re the Marriage of: Pawel Dominik
RZECZKOWSKI, petitioner, Appellant,
v.
Carolina Uribe BORRERO, Respondent.

A22-0954
|
Filed April 3, 2023

Hennepin County District Court, File No. 27-FA-19-6324

**Attorneys and Law Firms**

Robert W. Due, James R. Todd, DeWitt LLP,
Minneapolis, Minnesota (for appellant)

John DeWalt, Melissa Chawla, DeWalt, Chawla +
Saksena, LLC, Minneapolis, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge;
Segal, Chief Judge; and Bryan, Judge.

**NONPRECEDENTIAL OPINION**

SEGAL, Chief Judge

**\*1** In this marital-dissolution dispute, appellant argues
that the district court erred by enforcing the terms of a
document purporting to dissolve and liquidate the marital
estate executed under Colombian law. Appellant also
challenges the district court's denial of spousal
maintenance, calculation of respondent's income for

child-support purposes, and denial of need-based attorney
fees. We affirm in part, reverse in part, and remand.

**FACTS**

Appellant-husband Pawel Rzeczkowski and
respondent-wife Carolina Borrero met at a retreat in New
York in the summer of 2010. Borrero was living in her
home country of Colombia, in an apartment in Bogota,
and Rzeczkowski was living in Newnan, Georgia, where
his parents lived, when the two met. The parties began a
romantic relationship shortly after meeting and, by
August 2010, Rzeczkowski moved to Bogota to live with
Borrero in her apartment. During the parties' time in
Colombia, Borrero experienced professional success as an
executive for Pfizer. Rzeczkowski was not employed, but
had recently received a Global Executive Masters in
Business Administration (MBA) through a joint program
of Columbia University and the London Business School.

In June 2011, the parties became engaged. Borrero was
excited to get married, but had serious concerns about
Rzeczkowski's "lack of employment and apparent
unwillingness to accept anything less than his ideal job."
Rzeczkowski's career aspiration was to pursue start-up
companies and, in his words, to "swing for the fences and
take risks by chasing unicorns (start-ups with
billion-dollar potential)." Rzeczkowski had also
accumulated a significant amount of student-loan debt
and had liquidated and spent his 401(k) assets accrued
from a prior job. Borrero thus wanted to protect her assets
from his creditors and from the uncertainty of whether he
would contribute fairly toward their financial futures.
And, at least according to Borrero, Rzeczkowski was also
interested in protecting his anticipated future assets from
being part of the marital estate.

Borrero consulted a Colombian family-law attorney, who
recommended that the parties enter into a series of
agreements to keep their assets and obligations separate.
Specifically, the attorney recommended that the parties
enter into three agreements under Colombian law: (1) a
prenuptial agreement so that none of their preexisting
assets or debts would become part of the marital estate;
(2) a marriage contract; and (3) an agreement to
immediately dissolve and liquidate the marital estate
following the marriage, a "dissolution and liquidation of
marital partnership" agreement (the DLMP). According to
the family-law attorney, these agreements would, under
Colombian law, allow the parties to enter into a legally
valid marriage, but would keep their finances and

property separate. Borrero offered evidence that these types of agreements are not novel under Colombian law; she submitted affidavits from two Columbian-law experts explaining that the agreements are specifically provided for under Colombian law.

**\*2** Borrero then spoke with her aunt, who is described by Borrero as a "well-known Colombian attorney." The aunt drafted the agreements based on the advice from the family-law attorney. To prepare the agreements, Borrero and Rzeczkowski needed to gather a number of documents, including bank statements and other information about their individual assets, investments, liabilities, and debts.

The parties signed the prenuptial agreement on September 30, 2011. Borrero's premarital assets, kept separate by the agreement, "included property worth 500,000 Colombian pesos, her real property, her vehicle, her investment accounts, her retirement savings account, and various savings and bank accounts." Rzeczkowski's premarital "assets included property worth 500,000 Colombian pesos and the balance of [a credit union account]." The parties were married on October 1, 2011. The DLMP was also signed by the parties. The DLMP is dated October 3, 2011; the parties' signatures, however, are not separately dated. The marriage records of the parties in Colombia show that a Colombian notary public executed the prenuptial agreement on September 30, 2011, and the DLMP on October 3, 2011.

In 2013, the parties moved to the United States at Rzeczkowski's request. Prior to the move, they consulted with multiple attorneys to ensure that the prenuptial and DLMP agreements would be enforceable in the United States. As part of that process, Rzeczkowski emailed an attorney based in New York City in December 2011 and indicated that one of the major concerns the parties had was "making our prenuptial agreement and separation of assets agreement legal in [the United States]."

Following the move to the United States, Borrero continued to primarily support the parties. The parties lived in New York and Borrero continued to work for Pfizer; Rzeczkowski built his professional network but was not employed. Borrero, however, lost her job at Pfizer and subsequently accepted employment at Brambles in Atlanta. The parties then moved to Atlanta and lived there for approximately three years.[i] Borrero worked at Brambles and then did consulting work for Coca Cola; Rzeczkowski continued to build his professional network and had intermittent employment at startup companies. Rzeczkowski received some income from a few of the startup companies, but received no

compensation from others. In March 2015, while the parties lived in Atlanta, Borrero gave birth to twins.

In 2017, Borrero accepted employment at Cargill and the parties moved to Minnesota. Rzeczkowski worked at Thrivent Financial for approximately six months until December 2018, when he lost his position due to changes in management at Thrivent. He earned approximately $130,000 during his six months with Thrivent. Rzeczkowski remained unemployed between December 2018 and the dissolution trial in 2022. Borrero also lost her position at Cargill in 2018, but has worked on various consulting projects to earn income since losing that position. Despite Borrero's position changes, she has continually earned a "substantial income" and has considerable financial assets. The parties' homestead and vehicles are titled solely in Borrero's name.

In September 2019, Rzeczkowski petitioned for dissolution of marriage. The parties both filed motions for temporary relief. In August 2020, the district court established a temporary parenting-time schedule and ordered Borrero to pay Rzeczkowski $2,500 per month in financial support and to pay the mortgage, insurance, and other costs of the homestead and to pay the loans and insurance for their vehicles, along with their mobile phone bills, among other expenses. In doing so, the district court noted that "[t]he financial disparity between the parties is large" and that Borrero had "significant financial assets." In contrast, the district court noted that Rzeczkowski had "limited financial assets" but had "shown some capacity to obtain limited employment." The district court ordered that the parties "engage in a good faith effort to become employed and earn income" and expressed its concern that Rzeczkowski not engage in "freeriding" while receiving temporary financial support from Borrero.

**\*3** During the dissolution proceedings, Borrero brought a motion to enforce the prenuptial agreement and the DLMP. She argued that, based on the DLMP, the vast majority of the assets acquired during the marriage—including the homestead, vehicles, and savings—were her nonmarital assets. Rzeczkowski moved the district court to declare the DLMP invalid, arguing that he did not understand the ramifications of the document at the time and that it was invalid under Colombian and Minnesota law. The district court received submissions on the issue, including opinions from Borrero's two experts on Colombian law and one from a Colombian law expert offered by Rzeczkowski.

Based on those submissions, the district court ruled that the documents were enforceable as foreign judgments

under the principles of comity. The district court reasoned that, even if the documents were treated as contracts instead of foreign judgments, the principles of comity are still applicable under the "general rule that a contract made in one state will be enforced in another state." *Seamans v. Christian Bros. Mill Co.*, 68 N.W. 1065, 1066 (Minn. 1896).

After analyzing the evidence surrounding the parties' knowledge at the time the documents were signed, their reliance on the documents following the marriage, and the expert opinions, the district court rejected Rzeczkowski's arguments against enforcement. The district court found that there was "an abundance of circumstantial evidence that suggests that [Rzeczkowski] knew about the details of the Colombian Documents" and also that Rzeczkowski had "given [the] Court reason to believe that he would mislead the Court or distort facts in a self-serving manner." The district court further found that, because the DLMP was drafted to comport with Colombian law, the document could be enforced in Minnesota even though it did not comport with Minnesota's statute governing postnuptial agreements, Minn. Stat. § 519.11 (2022). Finally, the district court found that the DLMP did not violate the public policy against allowing a divorced spouse to become a "public charge."

The district court's findings of fact, conclusions of law, order for judgment, and judgment and decree finalizing the dissolution was issued a number of months later. Relevant to this appeal, the district court ordered that the assets and liabilities of the parties be allocated as provided in the prenuptial agreement and the DLMP. As a result, most of the property and assets at issue were deemed to be Borrero's nonmarital property. The district court ordered that the parties have joint legal and joint physical custody of the children, with equal parenting time, and ordered Borrero to pay Rzeczkowski $241 per month for child support. The district court also denied Rzeczkowski's requests for spousal maintenance and need-based attorney fees.

## DECISION

On appeal, Rzeczkowski challenges the district court's decision to enforce the terms of the DLMP on several grounds. First, he argues that the DLMP is not entitled to enforcement under the principles of comity as a foreign judgment because the DLMP is a contract, not a judgment. Second, he argues that the DLMP cannot be enforced because it is not valid under Colombian law for the following reasons: (1) the DLMP was signed by the

parties before they were married and, to be effective under Colombian law, it needed to be signed after their wedding; and (2) he was fraudulently induced to sign the DLMP and did not understand what he was signing because the DLMP was in Spanish, a language that he is not fluent in, and he was not offered a translator as required by Colombian law. Third, Rzeczkowski argues that the DLMP cannot be enforced under the principles of comity because enforcement would violate Minnesota's public policies against rendering a divorced spouse a public charge and against unconscionable contracts.

**\*4** In addition, Rzeczkowski challenges the district court's decision to deny him spousal maintenance, its calculation of Borrero's income for purposes of child support, and its decision to deny his claim for need-based attorney fees.

**I. The principles of comity are applicable, but we remand to the district court to analyze whether enforcement of the DLMP would violate the public policy against unconscionable contracts.**

*Applicability of the Principles of Comity*
We will address first the issue of whether the district court erred by applying the principles of comity in determining whether to enforce the terms of the DLMP. The application of comity

> is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895). "We review a district court's application of the principle of comity for an abuse of discretion." *In re Civ. Commitment of Hand*, 878 N.W.2d 503, 506 (Minn. App. 2016), *rev. denied* (Minn. June 21, 2016). A court may decline to recognize a foreign judgment as a matter of comity if it is "contrary to the public policy of Minnesota." *Nicol v. Tanner*, 256 N.W.2d 796, 802 n.11 (Minn. 1976).

At the outset, Rzeczkowski argues that the district court erred by applying the principles of comity because the DLMP is a contract, not a foreign judgment. We

disagree.[2] Under Colombian law, the DLMP is akin to a judgment even though it reflects an agreement reached between the parties. The DLMP was entered into based on specific provisions of Colombian law cited in the document. Those provisions require that, to be valid under Colombian law, the DLMP had to be recorded in a public deed executed by a "notary public." Thus, an agreement between the parties but not executed by a Colombian notary public or recorded in a public deed—a mere contract—would not be enforceable as a DLMP. And here, because the DLMP signed by the parties was recorded in a public deed executed by a Colombian notary public, it had greater legal significance than a contract.

Additionally, as the district court explained, notaries in Colombia are different from, and have more authority than, notaries in the United States. In support of her request to enforce the DLMP, Borrero submitted a petition to the notary office in the district in which the parties were married in Colombia. The petition requested information about the role of notaries public in Colombia and how their role and authority differed from notaries in the United States. The response from the acting head of the notary office explained that "to be appointed as Notary Public in Colombia, there is a set of requirements, related to professional experience and education, which are more demanding than those established for Circuit Judge appointments."[3] The response states that the requirements to be a "notary public" in Colombia include having a law degree and at least one of the following: six years of experience as a judge or university professor; ten years of legal practice; or four years as a notary, registrar or commissioner of public instruments. As to the scope of authority of a Colombian notary public, the acting head of the notary office stated that, under Colombian law, notaries are empowered to "authoriz[e] ... acts with declarations that constitute juridical situations, if there is agreement and no controversy between the parties." The response further explained that "these juridical situations shall have the same legal effects as if legally decreed in an adversarial or voluntary jurisdiction proceeding."

**\*5** The acting head of the notary office noted that, when the parties are in agreement on the terms, a marriage in Colombia may be legally dissolved when "processed before any Notary Public" and "formalized through a public deed." The response also stated that "Notaries Public are competent to authorize the dissolution and liquidation of the marital estate, even when, by mutual agreement, the parties decide to continue their marriage, with the civil effects of marriage still in force." The acting head of the notary office commented that the dissolution and liquidation of the marital estate in this case "was granted immediately after the marriage proceeding and in

definite manner dissolved and liquidated the marital estate." The response stated that "the spouses remain[ed] married but without marital partnership and without common or joint property."

As set out in the response summarized above, the role of a Colombian notary public is very different from a Minnesota notary public whose role is limited to verifying the identity of a person signing a document and that the signature is of that person. *See* Minn. Stat. § 358.55 (2022) (describing duties of a notarial officer). As described by the acting head of the notary office, the act of a Colombian notary public in granting documents like the DLMP is akin to a judicial officer issuing an order or decree based upon a stipulated agreement. We conclude that the DLMP is therefore comparable to a judgment and that the district court did not err in applying the principles of comity in determining whether the DLMP was enforceable.

*Validity of the DLMP under Colombian Law*
Rzeczkowski, however, argues that the district court nevertheless erred in enforcing the DLMP because the DLMP is not valid under Colombian law. Rzeczkowski contends that the DLMP is not valid because the document was signed by the parties before they were legally married. He bases his argument on the assertion that he and Borrero signed the DLMP on September 30, 2011—the day before their wedding. He argues that the DLMP was then "falsely notarized" on October 3, 2011, and is therefore invalid because at the time it was signed there was no marital estate to dissolve and liquidate.

As the district court found, however, the DLMP does not state that it was signed on October 3, 2011. Rather, the agreement states that the parties, in accordance with Colombian law, "proceed to dissolve and liquidate their marital partnership without any property borne by the partnership *at the date of execution* of this public instrument." (Emphasis added.) The date listed on the agreement is October 3, 2011, the date the DLMP was executed by the notary public and the public deed was recorded. The district court's finding on this issue is supported in the record by Borrero's two experts on Colombian law who opined that the DLMP was executed as of October 3 and is valid and enforceable under Colombian law.[4] We therefore discern no error by the district court in its finding that there was no falsification by the notary public, and in its determination that the DLMP is valid under Colombian law because it became effective, according to its terms, as of October 3,

2011—after the parties were married.

*Claim of Fraudulent Inducement and Failure to Offer a Translator*
**\*6** Rzeczkowski further argues that he was fraudulently induced into signing the document because it was in Spanish and he did not fully understand the consequences of entering into the document. *See Nicol*, 256 N.W.2d at 802 (noting that one of the requirements to recognize a foreign judgment is that "there is nothing to show ... fraud in procuring the judgment" (quotation omitted)). He also asserts that he was not offered a translator, as required by Colombian law, despite the fact that he was not fluent in Spanish. The district court rejected these arguments based on credibility determinations, and we defer to those determinations. *Sefkow*, 427 N.W.2d at 210.

The district court thoroughly analyzed the evidence surrounding Rzeczkowski's knowledge about and understanding of the terms of the DLMP, including emails with attorneys prior to entering into the agreements, email exchanges with attorneys only months later in preparation for the parties' return to the United States, and other communications in which the DLMP was discussed. The district court determined that not only was Rzeczkowski aware of the consequences of entering into the agreements, but that Rzeczkowski's "statements lack reliability, consistency with other facts, and are permeated with [Rzeczkowski's] self-interest to use the [DLMP] when it suits him and disavow it when it does not." The district court determined that Rzeczkowski demonstrated bad faith during the proceedings relating to his knowledge of the DLMP. And despite Rzeczkowski's assertion that he was not offered a translator, the district court found "there is credible evidence that he was offered a translator." Specifically, the record contains a sworn statement from the acting head of the notary office in Colombia averring that the notary public who authorized the DLMP asked Rzeczkowski if he needed a translation or for the agreements to be read in English, that he declined that offer, and that he indicated he understood the agreements. Accordingly, we discern no error in the district court's findings that the DLMP was valid under Colombian law.[5]

*Public-Policy Exception*
Finally, Rzeczkowski argues that the DLMP should not

be recognized as a matter of comity because the terms of the DLMP are such that they would violate the public policy of Minnesota. A court may decline to recognize a foreign judgment as a matter of comity if it would be "contrary to the public policy of Minnesota" to enforce that judgment. *Nicol*, 256 N.W.2d at 802 n.11.

Rzeczkowski argues that the DLMP violates Minnesota's public policy because enforcement of the document would render him a public charge. *See Abbott v. Abbott*, 282 N.W.2d 561 (Minn. 1979). In *Abbott*, a party petitioned for modification of spousal maintenance on the ground that his former spouse was living with and being supported by a new romantic partner. *Id.* at 564. In reviewing the district court's decision to modify maintenance, the supreme court observed: "It is in the public interest that [maintenance] be paid, since without such a postdivorce provision for support, there is a substantial likelihood that a divorced spouse will become a public charge." *Id.* at 565. Rzeczkowski argues that enforcement of the DLMP would similarly render him a public charge because under the agreements nearly all of the property acquired during the marriage would belong solely to Borrero and Rzeczkowski would be unable to support himself. But the district court determined that Rzeczkowski is capable of supporting himself and meeting his reasonable monthly expenses through appropriate employment. As will be discussed in greater detail in the next section of the analysis, the record supports this determination. Enforcement of the DLMP therefore would not render Rzeczkowski a public charge, and his public-policy argument on this ground fails.

**\*7** Rzeczkowski, however, also argued to the district court—although not articulated as clearly as his public-charge argument—that enforcement of the DLMP would be unconscionable. There is no Minnesota caselaw addressing whether the public-policy exception to the application of comity encompasses unconscionability. Minnesota does, however, have a policy against enforcing unconscionable contracts.[6] *See Holland v. Sheehan*, 122 N.W. 1, 3 (Minn. 1909) ("Public policy requires of courts of equity protection from unjust and unconscionable bargains ...."), *abrogated in part by Maslowski v. Prospect Fundings Partners LLC*, 944 N.W.2d 235 (Minn. 2020); *see also Kauffman Stewart, Inc. v. Weinbrenner Shoe Co.*, 589 N.W.2d 499, 502 (Minn. App. 1999) ("If a court determines that a contract contains an unconscionable clause, it may refuse to enforce the contract, enforce it without the offending language, or limit application of the unconscionable clause to avoid any unconscionable result." (quotation omitted)). And, in the context of antenuptial agreements, our supreme court has held that such agreements "must be fair, both

procedurally and substantively." *Kremer v. Kremer*, 912 N.W.2d 617, 621 (Minn. 2018). The court stated that "[t]he common-law standard for substantive fairness is whether an agreements' terms are unconscionable or oppressive." *Id.* We also note that the legislature has expressed similar standards for postnuptial agreements in subdivision 1a of Minn. Stat. § 519.11. That statute provides that to be "valid and enforceable," the agreement must be "procedurally and substantively fair and equitable."[8] Minn. Stat. § 519.11, subd. 1a.

Consequently, we can presume that there is a clear policy in this state against the enforcement of unconscionable postnuptial agreements. And because "[c]omity is not a formal rule but rather an informal policy of deference," we also conclude that it is valid to consider whether the DLMP is unconscionable regardless of whether Colombia would judge the DLMP against the same standard. *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 449 (Minn. App. 2001). As such, we conclude that the public-policy exception to the application of comity encompasses a prohibition on the enforcement of unconscionable provisions in postnuptial agreements.[9]

**\*8** The district court here, however, did not address whether the provisions of the DLMP are unconscionable. The district court limited its public-policy analysis to whether enforcement of the DLMP would render Rzeczkowski a public charge, which in fairness to the district court was Rzeczkowski's most clearly articulated claim. We conclude that it is therefore appropriate to remand this issue to the district court to determine whether enforcement of the DLMP would be unconscionable, and we refrain from expressing any opinion on the merits of this question at this time.

## II. The district court did not err in determining that Rzeczkowski is not entitled to temporary spousal maintenance.

Rzeczkowski next argues that the district court should have awarded him temporary spousal maintenance.[10] We review a district court's spousal-maintenance decision for an abuse of discretion. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). A district court abuses its discretion if it reaches a "conclusion that is against logic and the facts on record." *Curtis v. Curtis*, 887 N.W.2d 249, 252 (Minn. 2016) (quoting *Dobrin*, 569 N.W.2d at 202). The court reviews legal questions de novo, but reviews findings of fact for clear error. *Kampf v. Kampf*, 732 N.W.2d 630, 633 (Minn. App. 2007), *rev. denied* (Minn. Aug. 21, 2007). Findings are clearly erroneous if

"they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* (quotation omitted).

A district court may order spousal maintenance if it finds that the spouse requesting maintenance either:

> (a) lacks sufficient property ... to provide for reasonable needs of the spouse considering the standard of living established during the marriage ... or

> (b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment.

Minn. Stat. § 518.552, subd. 1 (2022); *see also Lyon v. Lyon*, 439 N.W.2d 18, 22 (Minn. 1989) (stating that an award of spousal maintenance requires a showing of need). The district court may award spousal maintenance "in amounts and for periods of time, either temporary or permanent," as it deems just after considering "all relevant factors." *Id.*, subd. 2 (2022).

"If a party requests spousal maintenance, a district court must engage in a two-step analysis." *Madden v. Madden*, 923 N.W.2d 688, 695 (Minn. App. 2019). The first step is to consider "whether the party seeking maintenance has demonstrated a showing of need." *Id.* (quotation omitted). A party demonstrates a showing of need if "the party is unable to provide for his or her reasonable expenses through employment income or investment income or a combination of both." *Id.* If a party makes the threshold showing of need, the second step is for the district court to consider the appropriate amount and duration of maintenance. *Id.*

Rzeczkowski argues that the district court abused its discretion in denying his request for temporary spousal maintenance because the district court "did not make detailed findings reflecting consideration of the factors listed in Minn. Stat. § 518.552, subd. 2," which sets forth relevant factors to be considered when determining the amount and duration of maintenance. But such consideration is to be undertaken *only if* the party requesting maintenance first makes a showing of need that demonstrates "the party is unable to provide for his or her reasonable expenses through employment." *Id.*; *see also* Minn. Stat. § 518.552, subd. 1(b). Here, the district court determined that Rzeczkowski is capable of providing for his reasonable expenses through employment. The district court thus determined that Rzeczkowski failed to make the threshold showing of need and as such the court was not required to make findings on the second step of the analysis. *Cf. Tuthill v. Tuthill*, 399 N.W.2d 230, 232 (Minn. App. 1987) (ruling,

in the maintenance-modification context, that the movant's failure to show the statutorily required change of circumstances was fatal to the motion to modify maintenance, and hence that "it is not necessary for the trial court to make findings regarding any other factors addressed in the statute"). Accordingly, we turn our attention to a review of the district court's determination that Rzeczkowski is capable of meeting his reasonable monthly expenses from employment.

**\*9** Rzeczkowski was unemployed at the time of trial and submitted an itemized list of expenses totaling $4,999 per month. In his written final argument, Rzeczkowski indicated that in addition to the listed expenses he also had a monthly expense of $300 for his health-insurance premium. He requested spousal maintenance in the amount of $4,550 per month for a period of five years and argued that, "[t]ogether with child support, this amount of temporary spousal maintenance will afford [Rzeczkowski] the opportunity to meet his budget of approximately $5,300 per month." The district court denied Rzeczkowski's request for temporary spousal maintenance after determining that Rzeczkowski could and should be able to obtain appropriate employment that would allow him to meet his monthly budget.

In the initial order granting temporary relief issued in August 2020, the district court ordered "[b]oth parties [to] engage in a good faith effort to become employed and earn income." The initial order also required Borrero to pay temporary financial support to Rzeczkowski in the amount of $2,500 per month in addition to paying for the mortgage, property taxes, homeowner's insurance, and utilities for the homestead, along with covering the vehicle payments, auto-insurance premiums, and mobile-phone bills for her and Rzeczkowski.[11]

In an attempt to demonstrate that he had conducted a serious job search during the year and a half between the initial order and trial, Rzeczkowski submitted an exhibit indicating that he had applied for 55 jobs between July 2020 and December 2021, an 18-month period. Approximately two-thirds of the total applications were submitted in just two months—March and November 2021—and there were several months when Rzeczkowski seemingly did not apply for any jobs. Moreover, many of the positions were high-level director or vice-president positions at large companies, and Rzeczkowski received interviews for only two positions, neither of which resulted in an offer of employment.

The district court found that, in the period of time between the initial order and trial, Rzeczkowski should have been able to gain employment and that he "has not

shown credible evidence of his attempts to gain sufficient employment." The district court found that Rzeczkowski "is capable of gaining employment, that no further education or training would be necessary, and that his history of employment supports this position." The district court then explicitly stated that it "would like to emphasize the difference that exists between sufficient employment and [Rzeczkowski's] preferred employment."

We discern no clear error in the district court's findings. The record shows that Rzeczkowski has an impressive educational background, including an MBA from Columbia University and the London Business School. After receiving his joint degree, instead of seeking employment with established companies, Rzeczkowski pursued start-up opportunities in hopes of finding a "unicorn" that never materialized. Rzeczkowski did work for Thrivent Financial in 2018 and was able to make approximately $130,000 in his six months of employment there. And Rzeczkowski received vocational placement coaching while they were living in Minnesota, paid for by Borrero's employer.

The record also contains testimony from a vocational expert retained by Borrero who reviewed Rzeczkowski's education and employment history. The expert testified that, in his opinion, Rzeczkowski was immediately employable and capable of earning $100,000 to $125,000 per year.[12] This supports the district court's determination that Rzeczkowski is capable of obtaining suitable employment but, because he chooses to apply for only his ideal positions, is voluntarily unemployed.

**\*10** Rzeczkowski cites to *Carrick v. Carrick* as support for his argument that the district court denied spousal maintenance to punish him for failing to obtain employment during the proceedings. 560 N.W.2d 407 (Minn. App. 1997). But that case is thoroughly distinguishable. First, the district court in this case found Rzeczkowski voluntarily unemployed in the dissolution judgment only after the court had ordered him in the temporary order to engage in a "good faith" search for employment. There was no such temporary order to seek employment in *Carrick*. Second, "*Carrick* addressed only the period between the parties' separation and the dissolution judgment"; district courts "read *Carrick* too broadly" if they "apply [*Carrick*] to the post-judgment period." *Passolt v. Passolt*, 804 N.W.2d 18, 24 (Minn. App. 2011), *rev. denied* (Minn. Nov. 15, 2011). *Carrick* thus addresses a different question (need of a potential maintenance recipient to seek a job before entry of a dissolution judgment) in a different context and lacks persuasive weight here.

Rzeczkowski v. Borrero, Not Reported in N.W. Rptr. (2023)

Third, *Carrick* is also factually distinguishable from this case. In *Carrick*, the parties were married for more than 21 years. *Id.* at 411. The wife did not work outside of the home for the first ten years of the parties' marriage, but rather "was a full-time homemaker and caretaker" of the parties' child and the husband's three children from a prior marriage. *Id.* The wife then worked on a part-time basis for the last ten years of the marriage and continued her part-time employment after the parties separated. *Id.* The district court in *Carrick* awarded the wife spousal maintenance but did so only after imputing additional income to her. The district court imputed the income based on its determination that the wife "acted in bad faith by remaining intentionally underemployed" because she remained employed only in a part-time, instead of a full-time, status between the parties' separation and the dissolution of their marriage. *Id.* at 410.

In *Carrick*, this court reversed the imputation of additional income to the wife, noting that "[t]here is no authority for finding bad faith underemployment ... merely because a potential obligee has not yet rehabilitated when the record indicates the obligee has continued in the same employment and there is no evidence of an intent to reduce income for the purposes of obtaining maintenance." *Id.* at 410-11. This court went on to note that "the evidence indicated that [the wife] earned a reasonable income from [her] position, enjoyed working ... and was very committed emotionally to the job." *Id.* at 411.

Here, Rzeczkowski petitioned for dissolution of marriage after the parties had been married for just eight years. This is significantly less than the 21-year marriage in *Carrick*. And unlike the wife in *Carrick*, Rzeczkowski was not a "full-time homemaker and caretaker." The record is clear that both parties expected Rzeczkowski to work full-time outside the home. While both parties have been actively involved in the parenting of the twins, the parties had a live-in nanny from the time of the children's birth in March 2015 until the end of 2018. In the order granting temporary relief, the district court found that "[t]he totality of the evidence supports that the parties are equally responsible for the children's care rather than one party being the sole caretaker of the children." This further distinguishes the facts of this case from *Carrick*.

Finally, we note that this court observed in *Carrick* that the wife continued her pre-separation employment, earned a reasonable income, and was committed to her job, and there was no evidence that the wife had attempted to reduce her income to obtain maintenance. Here, the record supports that Rzeczkowski has limited his job

search to his ideal jobs despite the district court's order in August 2020 that both parties engage in a good-faith effort to obtain employment. In that order, the district court also explicitly stated that "the Court is concerned that [Rzeczkowski's] motion for financial support may encourage freeriding." And in the final order denying Rzeczkowski's request for spousal maintenance, the district court found a "lack of evidence" that Rzeczkowski's "inability to be self-sufficient was not due to his unwillingness to gain employment."

**\*11** On this record, we discern no clear error by the district court in finding that Rzeczkowski was voluntarily unemployed and was capable of meeting his reasonable monthly expenses through suitable employment. Because the record supports the determination that Rzeczkowski did not demonstrate a need for spousal maintenance, the district court did not err in failing to make findings related to the duration and amount of maintenance. *See Tuthill,* 399 N.W.2d at 232.

**III. The district court did not err in calculating child support.**

Rzeczkowski argues that the district court erred in calculating child support because it understated Borrero's income and overstated his own. Generally, the "determination of income must be based in fact and will stand unless clearly erroneous." *Newstrand v. Arend,* 869 N.W.2d 681, 685 (Minn. App. 2015) (quotation omitted), *rev. denied* (Minn. Dec. 15, 2015).

In calculating the parties' child-support obligations, the district court found that Borrero had a monthly income of $15,810 and that Rzeczkowski had a potential monthly income of $8,333 based on the lower end of the estimation made by Borrero's vocational expert. Rzeczkowski argues that both income determinations are clearly erroneous. The district court based its determination of Borrero's monthly income on her 2020 income of $189,724. Rzeczkowski argues that the district court should have instead found Borrero's annual income to be $350,920—the gross revenue of her business in 2021 minus the business expenses that she testified to at trial. Notably, in its general findings of fact on the parties' "income and expenses" the district court observed that Borrero's "gross earnings after business expenses in 2021 were approximately $350,920." This is significantly more than the $189,724 used by the district court to calculate child support.

However, the record as a whole persuades us that the

district court did not clearly err in determining Borrero's income for child-support purposes. As Borrero notes, the district court used the most recent full year of taxable income, whereas the $350,920 figure was based on an exhibit showing the gross revenue of the business that was prepared by Borrero—rather than reflecting information from tax documents—and her testimony about business expenses. Additionally, Borrero's income varies as she is now self-employed.[13] Prior to 2021, her prior three years of income were approximately $190,000; $160,000; and $131,000, with the district court selecting the highest level of income from the prior three years. And the revenue figure of $350,920 in 2021, which included her gross revenue of $385, 920 minus certain expenses, was an outlier from her recent earning history. Based on this record, we conclude that the district court did not abuse its discretion in opting to use Borrero's most recent full year of taxable income when calculating her child-support obligation.

**\*12** The record also supports the district court's determination that Rzeczkowski was capable of earning $100,000 per year, or $8,333 per month. As discussed above, the district court did not err in determining that Rzeczkowski was voluntarily unemployed. When such a finding is made, a district court "must" determine potential income based on one of three calculations, including "the parent's probable earnings level based on employment potential, recent work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community." Minn. Stat. § 518A.32, subd. 2 (2022). Here, the district court determined that Rzeczkowski's potential income was $100,000 per year based on the testimony and evidence presented by Borrero's vocational expert. This evidence included a "labor market survey" that analyzed Rzeczkowski's employment history, educational qualifications, and employment opportunities in the area, and testimony on the same topics. Thus, the vocational expert's opinion, which the district court credited and relied on in computing Rzeczkowski's potential income, was based on the appropriate statutory factors. We therefore discern no clear error in the district court's imputation of income to Rzeczkowski.

**IV. We must remand to the district court to make additional findings on Rzeczkowski's request for need-based attorney fees.**

Finally, Rzeczkowski challenges the denial of his request for need-based attorney fees. We review an award of need-based attorney fees for an abuse of discretion. *See*

*Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999).

In a marriage-dissolution action, a district court "*shall* award attorney fees, costs, and disbursements in an amount necessary to enable a party to carry on or contest the proceeding," provided that the district court finds:

> (1) that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;

> (2) that the party from whom fees, costs, and disbursements are sought has the means to pay them; and

> (3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.

Minn. Stat. § 518.14, subd. 1 (2022) (emphasis added).

Here, the district court found that the second and third statutory requirements were satisfied—Borrero has the ability to pay attorney fees and Rzeczkowski does not. But the district court declined to award Rzeczkowski need-based attorney fees based on the determination that an award of such fees was "not necessary for the good-faith assertion of [Rzeczkowski's] rights as [Rzeczkowski] has acted in bad faith during these dissolution proceedings." In doing so, the district court reiterated its findings from the order enforcing the DLMP that the district court "does not find [Rzeczkowski's] statements to be credible because he has given this Court reason to believe that he would mislead the Court or distort facts in a self-serving manner" and that Rzeczkowski's "statements lack reliability, consistency with other facts, and are permeated with [Rzeczkowski's] self-interest to use the economic divorce when it suits him and disavow it when it does not."

We first note that the district court's finding that Rzeczkowski acted in bad faith is based largely on the district court's assessment of Rzeczkowski's credibility. We defer to the district court's credibility determinations. *Sefkow*, 427 N.W.2d at 210. But we also note that the district court's finding relates solely to Rzeczkowski's assertion of rights regarding the validity and enforcement of the DLMP. As Rzeczkowski observes, that was not the only assertion of rights at issue during the proceedings. For example, the parties were unable to reach an agreement on legal custody of the children and argued that issue to the district court. The parties presented their own testimony and argument, participated in a custody evaluation, and the custody evaluator and an expert retained by Borrero also testified on the issue. Borrero

Rzeczkowski v. Borrero, Not Reported in N.W. Rptr. (2023)

argued that she should be granted sole legal custody of the children; Rzeczkowski requested joint legal custody. The district court ultimately agreed with Rzeczkowski and awarded the parties joint legal custody. Thus, some of the claimed attorney fees relate to assertions of rights that were made in good faith.

**\*13** On this record, we must remand to the district court to make additional findings on Rzeczkowski's request for need-based attorney fees. As discussed above, a district court *shall* award need-based attorney fees if the three statutory criteria are met. Minn. Stat. § 518.14, subd. 1. The two criteria relating to ability to pay are met here; the only criterion at issue is whether "the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding." *Id.* Because the district court's finding that Rzeczkowski acted in bad faith relates solely to his assertion of rights regarding the Colombian documents, we must remand for additional

findings addressing whether an award of need-based attorney fees is necessary for Rzeczkowski's assertion of other rights that were made in good faith.

On remand, the district court may, in its discretion, reopen the record on either or both issues—whether the DLMP violates the public policy against unconscionable agreements and whether Rzeczkowski is entitled to an award of need-based attorney fees for the assertion of other rights that were made in good faith.

**Affirmed in part, reversed in part, and remanded.**

**All Citations**

Not Reported in N.W. Rptr., 2023 WL 2762442

Footnotes

1    Rzeczkowski's parents lived near Atlanta in Newnan, Georgia where Rzeczkowski was living when he met Borrero.

2    Borrero argues in the alternative that the principles of comity apply even if the DLMP is characterized as a foreign contract and not a judgment. The district court agreed. We do not, however, address this alternative argument because we conclude that the district court did not err in treating the DLMP as a foreign judgment.

3    This and the following quotes are from the official translation of the response to Borrero's petition to the notary office. The record also contains the original in Spanish that is signed by the notary.

4    While Rzeczkowski presented an affidavit from his own Colombian law expert opining that the DLMP is not valid because the parties signed the document before their marriage, the district court credited Borrero's experts. See *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) (stating that "[d]eference must be given to the opportunity of the trial court to assess the credibility of the witnesses"); *see also Straus v. Straus*, 94 N.W.2d 679, 680 (Minn. 1959) (stating that "[c]onflicts in the evidence, even though the presentation is upon affidavits, are to be resolved by the trial court"); *Knapp v. Knapp*, 883 N.W.2d 833, 837-38 (Minn. App. 2016) (citing this aspect of *Straus*).

5    We note that Rzeczkowski argues also that the DLMP is not enforceable because the DLMP does not comport with the procedural requirements of Minnesota's postnuptial contract statute set out in Minn. Stat. § 519.11. The district court, however, concluded that, because the DLMP is being enforced under the principles of comity as a foreign judgment, such failure does not of itself render the DLMP unenforceable if it was in compliance with the procedures required under Colombian law. We agree. See *Ramsey County v. Lee*, 770 N.W.2d 572, 576 (Minn. App. 2009) ("The general rule is that things done in one sovereignty in pursuance of the laws of that sovereignty are regarded as valid and binding everywhere." (quotation omitted)).

6    Under Minnesota precedent, "[a] contract is unconscionable if it is such as no [person] in [their] senses and not under delusion

would make on the one hand, and as no honest and fair [person] would accept on the other." *In re Est. of Hoffbeck*, 415 N.W.2d 447, 449 (Minn. App. 1987) (quotation omitted), *rev. denied* (Minn. Jan. 28, 1988).

7     While this and other cases cited in this opinion refer to "antenuptial" agreements and the DLMP is a stipulated postnuptial document, the distinction is not material for the purposes for which the cases are cited.

8     In citing Minn. Stat. § 519.11, we are not implying that the statute governs whether the DLMP should be enforced. Under the principles of comity, the DLMP is enforceable, subject only to the exceptions to the application of that doctrine, such as the public-policy exception. We cite Minn. Stat. § 519.11 only as an example of an expression of Minnesota's public policy. *See Holland*, 122 N.W. at 3 ("Constitutions and statutes are evidence of the general policy of a state; but when confronted with questions of general public policy ... the courts go beyond express legislation and look to the whole body of the law—statutory, common, and judicial decisions.").

9     We caution that, in recognizing the existence of a public policy against unconscionable postnuptial provisions in this context, we do not intend to accord courts with free rein to reject the clearly stated intentions of the parties. We note in this regard that "Minnesota has long recognized the validity of antenuptial agreements which altered statutory schemes regulating the disposition of marital property." *McKee-Johnson v. Johnson*, 444 N.W.2d 259, 265 (Minn. 1989), *overruled in part by Kremer v. Kremer*, 912 N.W.2d 617, 626 (Minn. 2018). The supreme court has cautioned that the mere fact that an agreement may divide marital property differently than the property-division statutes, does not render an agreement substantively unfair. *McKee-Johnson, 444 N.W.2d at 268 n.8*. "Indeed, one of the goals, if not the primary purpose, of an antenuptial agreement is to alter state-prescribed property rights which would otherwise arise on dissolution of marriage." *Id.* Thus, the fact that an agreement may result in a different or less favorable outcome than would otherwise have occurred in the absence of the agreement does not necessarily lead to the conclusion that the agreement is unconscionable.

10     Rzeczkowski made no request for permanent spousal maintenance.

11     Borrero also offered to pay to furnish Rzeczkowski's new living space.

12     Borrero's vocational expert also testified that an active job search typically involves applying for three to five positions per week, compared to Rzeczkowski's search that involved an average of about three applications per month. Additionally, the expert testified that many of the positions Rzeczkowski applied for were too high level given the gaps in Rzeczkowski's employment history. Rzeczkowski presented no vocational expert testimony.

13     The calculation of income for child-support purposes for individuals who are self-employed is generally governed by Minn. Stat. § 518A.30 (2022). Under that statute, a self-employed individual's income for child-support purposes "is defined as gross receipts minus costs of goods sold minus ordinary and necessary expenses required for self-employment or business operation." Minn. Stat. § 518A.30. Neither the district court nor the parties cite to this statute, and we decline to consider it on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts do not address questions not previously presented to and considered by the district court). In doing so, we note that Borrero was recently self-employed at the time of the district court proceedings and that the record contains only basic estimates of her business's revenue and expenses, rather than the more thorough documentation contemplated by the statute.

Rzeczkowski v. Borrero, Not Reported in N.W. Rptr. (2023)

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 4

27-FA-19-6324

Filed in District Court
State of Minnesota
5/14/2025 5:19 PM

STATE OF MINNESOTA

COUNTY OF HENNEPIN

--------------------------------------------

DISTRICT COURT

FOURTH JUDICIAL DISTRICT
Family Court Division
Court File No. 27-FA-19-6324

In Re the Marriage of:

Pawel Dominik Rzeczkowski,

        Petitioner,

and

Carolina Uribe Borrero,

        Respondent.

--------------------------------------------

**AFFIDAVIT OF COUNSEL**

    I, **ROBERT W. DUE,** after first being duly sworn upon oath, respectfully declare to the Court as follows:

    1.    I am an attorney at law licensed to practice in Minnesota and New York and a partner in the firm of DeWitt LLP, with offices at 901 Marquette Avenue, Suite 2100, in Minneapolis. I have been the attorney who represented Petitioner in this proceeding since February of 2021, through trial and on two appeals.

    2.    I am making this affidavit, in compliance with this Court's Order dated April 22, 2025, in support of Petitioner's request for an award of need-based attorney fees and pursuant to the specific instructions from the Court of Appeals on remand in its Opinion issued on December 2, 2024.

    3.    As a reminder to the Court, I graduated from Carleton College with honors in 1978 and from the University of Minnesota Law School with honors in 1981. I have been licensed to practice law in the State of Minnesota since October 30, 1981. Following my graduation from law school, I worked as a law clerk for a District Court Judge for one year and then entered private practice. Since 1982, the vast majority of my practice has been in the area of family law. I am

Filed in District Court
State of Minnesota
5/14/2025 5:19 PM

presently a member of the Minnesota Chapter of the American Academy of Matrimonial Lawyers.

I have been named a Super Lawyer by *Minnesota Law & Politics* every year since 2002 and have

been included in *Best Lawyers of America*. My partner, James R. Todd, who also worked on this

case, received his bachelor's degree from the College of William & Mary in 2007 and received his

law degree and MBA from the University of St. Thomas in 2014.

4.    Petitioner has been billed at my normal hourly rate of $495 and at an hourly rate of

$395 for James Todd. Whenever possible, paralegal support was used at the hourly rates of $240

and $265.

### Need-Based Fees Incurred in the District Court

5.    Attached as **Exhibit A** is an updated summary of the attorney fees charged to

Petitioner by DeWitt LLP from August 9, 2021 through March 22, 2022 ("**Part 1 of 2**"). This

summary **excludes** all of the fees and costs associated with the district court litigation over the

enforceability of the Colombian documents, all of which litigation occurred prior to August 9,

2021. The total sum of **$99,472.95** represents the true and correct fees for legal services performed

for the benefit of Petitioner in connection with his representation in the district court proceeding

as to the issues of custody, spousal maintenance, child support, and attorney's fees. (The all-

inclusive amount of fees and costs owed by Petitioner to DeWitt LLP as of the date of this affidavit,

including and yet billed, is $296,391.81, which includes $13,093.36 of disbursements.)[1] I am also

---

[1] I have personally reviewed the work in process in this case. To the best of my knowledge the
work performed above was actually performed and required for the benefit of, and the proper
representation of, the client. All unnecessary or duplicative work has been eliminated. The hourly
rates charged are reasonable in view of the nature of the work actually performed and the prevailing
hourly rates charged by similarly experienced lawyers and paralegals in the local area for similar
work. Likewise, the requested fees are reasonable in light of the billing practices of other similarly
experienced lawyers and paralegals in the local area for similar work.

Filed in District Court
State of Minnesota
5/14/2025 5:19 PM

attaching all of the invoices which support the updated summary of the attorney's fees charged to Petitioner, both at the district court and appellate court levels.

6.    I want to underscore that the total of **$99,472.95** of ***district court*** fees I am requesting on Petitioner's behalf has absolutely nothing to do with the issue of the validity and enforceability of the Colombian documents (the prenuptial agreement and the "dissolution and liquidation of marital partnership" agreement). Despite the district court's finding in its Amended Judgment and Decree dated July 24, 2023, in support of its now-reversed denial of Petitioner's request for need-based fees, that "[t]he bulk of the court filings since commencement, **both to this Court** and to the appellate court, have attempted to invalidate contracts that are valid and enforceable under Minnesota law" (*id.* at 12, emphasis added), I excluded **all** fees relating to the Columbian documents. *See* Affidavit of Counsel dated April 21, 2023 (Doc. 195); *see also* **Exhibit A, "Part 1 of 2,"** attached hereto. The period for claimed fees incurred at the district court level of $99,472.95 was from August 9, 2021 (after the district court had issued its final order on the Colombian documents on August 7, 2021) through March 22, 2022 – the period which included preparation for and representation at a three-day trial on the issues of legal custody and spousal maintenance held on January 5, 6, and 7, 2022, and the submission of proposed findings and final written arguments. **The issue of the validity and enforceability of the Colombian documents was not presented, argued, or submitted at all during trial.**[2]

---

[2] Notwithstanding Petitioner's exclusion of the fees associated with that issue from his request for an award of need-based fees at the district court level, the issue **was** argued in good faith, as the district court itself previously found. *See, e.g.,* Order on Request for Need-Based Attorney Fees dated January 12, 2021 at 4:

> First, this Court considers whether the fees are necessary for the good faith assertion of Father's rights in the proceedings and will not contribute unnecessarily to the length and expense of the proceedings. Here, the Court finds that attorney fees are

27-FA-19-5324

Filed in District Court
State of Minnesota
5/14/2025 5:19 PM

7. The amount of $99,472.95 relates to the trial issues of joint legal custody, spousal maintenance, child support, and attorney's fees. In my updated summary of the attorney fees charged to Petitioner by DeWitt LLP from August 9, 2021 through March 22, 2022 ("**Part 1 of 2**" of **Exhibit A**, attached hereto), I have allocated the fees incurred for each billable entry between time spent on the issue of custody and time spent on the issues of maintenance, child support, and attorney fees. Of the $99,472.95, I have estimated that $49,575.98 was incurred relative to the custody issue, while $49,896.98 was incurred relative to the financial issues presented and argued at trial. Of the billable entries which are not otherwise specifically attributable to a particular issue (such as "preparing for trial" or "drafting post-trial submissions"), I estimate that 50 percent of the time was spent on the custody issue, while 50 percent of the time was related to financial issues (excluding the issue of the enforceability of the Colombian agreements). This 50/50 estimated fee allocation per billable entry (not otherwise attributable to a particular issue) is supported by the record.

---

necessary for Father's good faith assertion in these proceedings. The matter of the economic divorce will continue to be litigated and has been the central issue throughout these proceedings. To be sure, Mother does not agree with Father's position on the matter. But that does not mean that Father's assertion is not in good faith.

**His assertion of those arguments [that the Columbian agreements should be invalidated] will not contribute unnecessarily to the length and expense of the proceedings. On the contrary, it is necessary that the Court resolve that issue in order to proceed with the dissolution.** The Court would be unable to proceed without a determination on the parties' marital property.

*Id* (with my emphasis and bracketed clarifications added). Not only was the issue of the validity and enforceability of the Colombian agreements argued in good faith, the Court of Appeals credited Petitioner's argument that the district court should have analyzed whether the postnuptial agreement was unconscionable in its enforcement under Minnesota law and remanded to the district court for consideration of that very issue. *See Rzeczkowski*, 2023 WL 2762442 at *8.

4

Filed in District Court
State of Minnesota
5/14/2025 5:19 PM

8.      For example, the trial transcript is 598 pages long. Of that, 467 pages consisted of

witness testimony. Of that, 232 pages were devoted to custody, while 235 pages were devoted to

financial issues (excluding the issue of the enforceability of the Colombian agreements, which was

not argued or presented at trial). Petitioner's trial memorandum was 23 pages long, Petitioner's

proposed findings were 35 pages long, and Petitioner's final argument was 39 pages long.  As can

be observed by reviewing the documents themselves, roughly half of each document was devoted

to the custody issue and roughly half of each document focused on the financial issues of spousal

maintenance, child support, and need-based attorney fees.

9.      The Court of Appeals has now definitively concluded that Petitioner's legal custody

claim was made in good faith and has noted that Petitioner's claim for fees arising from other

issues (including spousal maintenance) does not depend on Petitioner's success on those issues:

> Put differently, we recognized that the district court had already found that
> Rzeczkowski met both the second and third statutory requirements and that, on the
> first requirement, part of the claimed fees has arisen from the good-faith assertion
> of rights. It was in this context that we directed the district court to determine
> "whether Rzeczkowski is entitled to an award of need-based attorney fees for the
> assertion of other rights that were made in good faith." [*Rzeczkowski v. Borrero*,
> 2023 WL 2762442 at *13 (Minn. Ct. App. Apr. 3, 2023)] In other words, the district
> court was tasked with determining the **amount** of need-based attorney fees
> Rzeczkowski is entitled to receive based on his good-faith child-custody claims and
> any "other rights" that he asserted in good faith.

> Contrary to those instructions, the district court on remand concluded that
> Rzeczkowski is not entitled to any attorney fees for his claims. The district court
> wrote that "[a]ny fees generated by [Rzeczkowski's] claims made in good faith
> were so marginal so as not to warrant an award in light of [Rzeczkowski's] decision
> not to work and generate his own income." It also reasoned that Rzeczkowski's
> affidavit and exhibits submitted to support his attorney-fee request were not
> sufficiently detailed as to the amount of fees Rzeczkowski incurred pursuing his
> joint-legal-custody claim. The district court added that the bulk of Rzeczkowski's
> court filings "have attempted to invalidate contracts that are valid and enforceable
> under Minnesota law." And contrary to the finding we previously credited, it also
> found that "[Rzeczkowski] does have the means to pay" his attorney fees. **Failing
> to follow our instructions resulted in an erroneous analysis.**

5

Filed in District Court
State of Minnesota
5/14/2025 5:19 PM

The district court's error included its failure to properly assess Rzeczkowski's claim to attorney fees. The issue of whether Rzeczkowski had the means to pay was beyond the scope of remand and thus not properly before the district court.[3] *See Sefkow v. Sefkow*, 427 N.W.2d 203, 213 (Minn. 1988) (holding that this court may limit the issues to be considered on remand). And the district court abused its discretion by concluding that the evidence Rzeczkowski's counsel provided was insufficiently specific to calculate an award of attorney fees. For motions seeking an award of attorney fees of at least $1,000, the moving party must submit, among other things, a "detailed itemization" of the fees sought. Minn. R. Gen. Prac. 119. But a district court may award attorney fees based on its own observation and estimate the value of attorney work. *Nelson v. Ninneman*, 373 N.W.2d 373, 377 (Minn. Ct. App. 1985); *Fick v. Fick*, 375 N.W.2d 870, 875 (Minn. Ct. App. 1985). And when a district court is familiar with the history of the case and has access to the parties' financial documents, it need not rely solely on an attorney's affidavit regarding fees. *Gully*, 599 N.W.2d at 826. We appreciate that it is difficult to discern from Rzeczkowski's counsel's affidavit and accompanying exhibits precisely which fees correspond to attorney work on good-faith claims. But the lack of exacting specificity in the affidavit and exhibits should not have led the district court to deny *all* attorney fees. The record provides a means for the district court to estimate reasonable fees. It demonstrates that **much of the trial focused on custody issues, which we previously concluded were matters raised in good faith. Two of the four nonparty witnesses who testified at trial testified about custody. And although Rzeczkowski did not ultimately prevail on his spousal maintenance claim, an award of attorney fees does not depend on his success.** *Phillips v. LaPlante*, 823 N.W.2d 903, 907 (Minn. Ct. App. 2012), *rev. denied* (Minn. Aug. 6, 2013). In sum, the district court improperly found that Rzeczkowski does have the means to pay; it improperly based its fee decision in part on Rzeczkowski's willful unemployment; it improperly deemed too "marginal" Rzeczkowski's fees generated to pursue an issue that **we determined was pursued in good faith and that comprises a substantial part of the record**; and it improperly rejected Rzeczkowski's attorney-fee request without sufficiently attempting to estimate its amount or conduct an evidentiary hearing after it found the supporting affidavits and invoices imprecise. The district court therefore abused its discretion by refusing to award Rzeczkowski any attorney fees incurred in district court. On this remand, the district court must follow our previous remand instructions as refocused in this opinion.

---

3 Also beyond the scope of remand is consideration of any argument that Respondent may offer that she cannot afford to pay the claimed need-based fees at issue on remand. It was already determined that Respondent has the means to pay Petitioner's need-based fees, and that issue – like the issue of Petitioner's inability to pay his fees – cannot properly be considered before this Court on remand.

Filed in District Court
State of Minnesota
5/14/2025 5:19 PM

*Rzeczkowski v. Borrero*, 2024 WL 4926223 at \*4 – 5 (Minn. Ct. App. Dec. 2, 2024), *rev. denied* (Minn. Feb. 26, 2025) (emphasis added).

10.    It is difficult to see how Petitioner's assertion of his claim for continued spousal maintenance could have been in bad faith, where the district court, in rejecting Petitioner's argument that enforcing the Colombian documents would violate Minnesota's public policy against allowing a divorced spouse to become a "public charge" under *Auer v. Scott*, 494 N.W.2d 54, 57 (Minn. Ct. App. 1992), stated that "**a request for spousal maintenance is still available in this case.**" (*See* Findings and Order Enforcing Colombian Documents dated August 7, 2021 at 39.) It is also difficult to see how his claims for guidelines child support (which he was awarded) and need-based attorney's fees (to which the Court of Appeals has determined he is entitled) could have been made in bad faith. That is especially true when the Court of Appeals has definitely concluded that Petitioner raised all three of those issues on appeal in good faith: "[W]e agree with Rzeczkowski that the affidavit and spreadsheet his attorneys provided to the district court were sufficiently specific for the district court to calculate a fee award on **the issues of spousal maintenance, child support, and attorney fees raised in the prior appeal – issues that we now clarify were raised and argued in good faith.**" *Rzeczkowski*, 2024 WL 4926223 at \*6 (emphasis added).

11.    A review of the transcript and exhibits will demonstrate that Petitioner's claim for continued spousal maintenance in a modest amount for a limited period of time was made in good faith and in fact supported by evidence the district court did not analyze. A review of the transcript and exhibits will also demonstrate that Petitioner's claims for child support and need-based attorney's fees were made in good faith and supported by evidence. The fact that Petitioner did not prevail does not disqualify him from claiming need-based attorney fees related to the spousal

7

Filed in District Court
State of Minnesota
5/14/2025 5:19 PM

maintenance issues, as the Court of Appeals specifically noted in its December 2, 2024 Opinion.

An "award of need-based attorney fees does not depend in any way on whether the party seeking

fees is the prevailing party." *Phillips v. LaPlante*, 823 N.W.2d 903, 907 (Minn. Ct. App. 2012).

And it certainly would not preclude Petitioner from his claim related to the issue of guidelines

child support (which he was awarded) and need-based attorney's fees (to which the Court of

Appeals has now definitely held he is entitled).

### Need-Based Fees Incurred on Appeal

12.    In addition to "Part 1 of 2" of the attached **Exhibit A**, I have also included "**Part 2**

**of 2**," which is an updated summary of the **$54,668.75** in attorney fees incurred as part of

Petitioner's first appeal following issuance of the Judgment and Decree. Of the $54,668.75, I have

estimated that $27,571.38 was incurred relative to the Colombian document issue, while

$27,097.38 was incurred relative to the other financial issues presented and argued on appeal. Of

the billable entries which are not otherwise specifically attributable to a particular issue (such as

"continue to draft reply brief" or "prepare for and attend oral argument at the Court of Appeals"),

I have estimated that 50 percent of the time was spent on the Colombian document issue, while 50

percent of the time was related to other financial issues. Again, this 50/50 estimated fee allocation

per billable entry not otherwise attributable to a particular issue is well supported.

13.    For example, of the 60 pages of main text of both Petitioner's principal and reply

briefs on appeal (*i.e.*, excluding the tables of contents and authorities, the statement of legal issues,

and the like), 30 pages were devoted to the Colombian document issue, while the remaining 30

pages were devoted to other financial issues (spousal maintenance, child support, and attorney

fees).

8

Filed in District Court
State of Minnesota
5/14/2025 5:19 PM

14.     As to the issue of the validity and enforceability of the Colombian documents, the

fact that Petitioner was not successful as to all aspects of that issue on appeal should not disqualify

him from need-based fees related to that issue. Petitioner was successful in obtaining a remand of

the issue of whether Minnesota's public-policy exception to the application of the doctrine of

comity to the Colombian postnuptial agreement rendered enforcement of the Colombian

agreement unconscionable – an issue of first impression in Minnesota, as the Court of Appeals

noted in the first appeal:

> Rzeczkowski, however, also argued to the district court—although not articulated
> as clearly as his public-charge argument—that enforcement of the [Colombian
> postnuptial agreement] would be unconscionable. **There is no Minnesota caselaw**
> **addressing whether the public-policy exception to the application of comity**
> **encompasses unconscionability**. Minnesota does, however, have a policy against
> enforcing unconscionable contracts. *See Holland v. Sheehan*, 122 N.W. 1, 3 (Minn.
> 1909) ("Public policy requires of courts of equity protection from unjust and
> unconscionable bargains ...."), *abrogated in part by Maslowski v. Prospect*
> *Fundings Partners LLC*, 944 N.W.2d 235 (Minn. 2020); *see also Kauffman*
> *Stewart, Inc. v. Weinbremer Shoe Co.*, 589 N.W.2d 499, 502 (Minn. App.
> 1999) ("If a court determines that a contract contains an unconscionable clause, it
> may refuse to enforce the contract, enforce it without the offending language, or
> limit application of the unconscionable clause to avoid any unconscionable result."
> (quotation omitted)). And, in the context of antenuptial agreements, our supreme
> court has held that such agreements "must be fair, both procedurally and
> substantively." *Kremer v. Kremer*, 912 N.W.2d 617, 621 (Minn. 2018). The court
> stated that "[t]he common-law standard for substantive fairness is whether an
> agreements' terms are unconscionable or oppressive." *Id.* We also note that the
> legislature has expressed similar standards for postnuptial agreements in
> subdivision 1a of Minn. Stat. § 519.11. That statute provides that to be "valid and
> enforceable," the agreement must be "procedurally and substantively fair and
> equitable." Minn. Stat. § 519.11, subd. 1a.
>
> Consequently, we can presume that there is a clear policy in this state against the
> enforcement of unconscionable postnuptial agreements. And because "[c]omity is
> not a formal rule but rather an informal policy of deference," **we also conclude that**
> **it is valid to consider whether the [Colombian postnuptial agreement] is**
> **unconscionable regardless of whether Colombia would judge the [agreement]**
> **against the same standard.** *Medtronic, Inc. v. Advanced Bionics Corp.*, 630
> N.W.2d 438, 449 (Minn. App. 2001). As such, we conclude that the public-policy
> exception to the application of comity encompasses a prohibition on the

Filed in District Court
State of Minnesota
5/14/2025 5:19 PM

enforcement of unconscionable provisions in postnuptial agreements.

The district court here, however, did not address whether the provisions of the [Colombian agreement] are unconscionable. The district court limited its public-policy analysis to whether enforcement of the [Colombian agreement] would render Rzeczkowski a public charge, which in fairness to the district court was Rzeczkowski's most clearly articulated claim. We conclude that it is therefore appropriate to remand this issue to the district court to determine whether enforcement of the [Colombian postnuptial agreement] would be unconscionable, and we refrain from expressing any opinion on the merits of this question at this time.

*Rzeczkowski*, 2023 WL 2762442 at *7 – 8 (emphasis added).

15.    In other words, Petitioner was successful in obtaining a remand of the issue of the validity and enforceability of the Colombian postnuptial agreement to the district court – and in creating new law. It is hard to see how it could be determined that that issue was argued in bad faith on appeal, irrespective of Petitioner's ultimate success on the merits following remand. The Court of Appeals, in its remand order on the issue of need-based attorney fees incurred on appeal, indicated that "because appellant **obtained some relief** on appeal, it would be improper to characterize the appeal as a whole as having been taken in bad faith." Besides the remand on the issue of need-based attorney fees, the only other relief Petitioner obtained on his first appeal was on the issue of the validity and enforceability of the Colombian postnuptial agreement.

16.    As to the issues of spousal maintenance, child support, and attorney fees that were raised on appeal, the Court of Appeals has now definitely concluded that those issues were raised in good faith:

This court's separate order regarding appellate attorney fees likewise remanded only the issue of whether Rzeczkowski met the good-faith-claim element:

The district court previously determined that appellant lacks the means to pay his own fees and that [respondent] has the means to contribute to fees. We remanded to the district court for consideration of whether an award of need-based fees was necessary

10

Filed in District Court
State of Minnesota
5/14/2025 5:19 PM

to appellant's assertion of rights pursued in good faith in the district court. Similarly, because appellant obtained some relief on appeal, it would be improper to characterize the appeal as a whole as having been taken in bad faith. Accordingly, we conclude it is appropriate for the district court to address the issue of attorney fees on appeal.

The district court must execute an appellate court's "mandate strictly according to its terms" and it "lacks power to alter, amend, or modify that mandate." *Johnson v. Princeton Pub. Utils. Comm'n*, 899 N.W.2d 860, 868 (Minn. Ct. App. 2017) (quotation omitted), *rev. denied* (Minn. Aug. 15, 2017). But on remand here, the district court assessed all three statutory elements and concluded, among other things, that Rzeczkowski failed to prove that he did not have the means to pay attorney fees. The district court's conclusions relating to Rzeczkowski's means again exceeded the scope of our remand instructions.

The district court added that it did "not have a factual basis to apportion any part of the claimed [appellate fees]." But we agree with Rzeczkowski that **the affidavit and spreadsheet his attorneys provided to the district court were sufficiently specific for the district court to calculate a fee award on the issues of spousal maintenance, child support, and attorney fees raised in the prior appeal – issues we now clarify were raised an argued in good faith**. The district court therefore abused its discretion by denying Rzeczkowski any appellate attorney fees.

Because the evidence in the record shows that **a substantial portion of Rzeczkowski's attorney fees incurred in district court and on appeal corresponded to good-faith claims**, we remand to the district court to reopen the record to allow the parties to present further evidence and testimony regarding attorney fees and for the district court to issue fact findings and conclusions of law to resolve the issue.

*Rzeczkowski*, 2024 WL 4926223 at *5 – 6 (emphasis added).

17.     Petitioner has only been able to pay the undersigned's law firm a total of $15,000 toward the substantial fees he has incurred, and of that amount, $13,093.36 has been consumed with costs and disbursements. I fully support Petitioner's request for a substantial award of fees at the district court and appellate levels to help defray his heavy litigation costs. As the Court of Appeals has now unambiguously held, "**a substantial portion of Rzeczkowski's attorney fees incurred in district court and on appeal corresponded to good-faith claims**." *Id.* at *6. As an officer of the Court and a family law attorney for over 40 years, I can personally attest that the fees

Filed in District Court
State of Minnesota
5/14/2025 5:19 PM

incurred by Petitioner were incurred for the good-faith assertion of his rights, are reasonable, and are consistent with fees charged for other clients in matters of this scope and complexity.

18.     With respect to the two claims for need-based fees addressed above, Respondent is foreclosed from arguing that she does not have the ability or means to contribute to Petitioner's attorney fees, as the district court's finding that she indeed has such an ability was affirmed by the Court of Appeals and the determination of her present ability to contribute was expressly excluded from the scope of both the first and second remands. The balance sheet reflecting Respondent's net worth of $1,238,862 was admitted into evidence as Trial Exhibit 16 without objection (see **Exhibit 2**), and the probability is that Respondent's net worth has increased, not decreased, since the valuation date. Any claim by Respondent that her ability to contribute to Petitioner's attorney fees has diminished since the trial would call for an explanation and additional discovery and investigation, which fortunately is not necessary because of the explicit remand instructions from the Court of Appeals. Petitioner preemptively objects to any attempt on the part of Respondent to offer evidence as to her current financial circumstances and ability to pay.

## <u>VERIFICATION</u>

I declare under penalty of perjury that everything I have stated in this document is true and correct.

Dated: May 14, 2025

Signed at: Hennepin County, Minnesota

Robert W. Due

12



| RZECZKOWSKI - URIBE BALANCE SHEET | | | | | |
|---|---|---|---|---|---|
| **Date of Marriage:  10/01/2011** | | | Allocation | | |
| **Valuation Date:  11/13/2019** | **Total Value** | **Carolina** | **Pawel** | **Valuation Date 11/13/2019** | **Source / Notes** |
| **REAL ESTATE** | | | | | |
| Homestead at 4208 Beard Avenue South - sold 9/28/21 | $1,300,000.00 | | | | Settlement Statement |
| Less Wells Fargo mortgage payoff | ($879,245.84) | | | | |
| Less other costs of sale | ($87,827.47) | | | | |
| Net Proceeds to DCS Family Law | $332,926.69 | | | | |
| | | | | | |
| **RETIREMENT/INVESTMENT ACCOUNTS** | | | | | |
| Carolina's Charles Schwab IRA *4752 | $40,386.16 | | | 11/30/19 | Statement 11/30/2019 |
| Carolina's Charles Schwab Roth IRA *0430 | $5,055.88 | | | 11/30/19 | Statement 11/30/2019 |
| Carolina's Proteccion retirement account | $143,101.00 | | | 12/31/19 | 493,451,639 Colombian Pesos (.00029 as of 11/13/19 |
| Carolina Skandia retirement account | $196,811.00 | | | 11/30/19 | 678,657,229 Colombian Pesos (.00029 as of 11/13/19) |
| Carolina's Oasis 401(k) | $8,591.52 | | | 12/31/17 | Statement 12/31/2017 |
| Carolina's Vanguard Cargill Partnership Plan *1080 | ($1,406.78) | | | 09/30/18 | Statement 9/30/2018; $1,406.78 withdrawn |
| Carolina's Fidelity Brambles USA 401(k) | $32,160.93 | | | 12/31/17 | Statement 12/31/2017; $31,334.48 withdrawn as of statement 5/01/2020 |
| **RETIREMENT SUBTOTAL** | $424,699.71 | | | | |
| **AMOUNT TO EQUALIZE RETIREMENT** | | | | | |
| **Retirement Subtotal after equalizer** | | | | | |
| | | | | | |
| **BANK AND INVESTMENT ACCOUNTS** | | | | | |
| Carolina's Delta Community Credit Union checking account *8885 & svgs | $95.41 | | | 11/1/2019 | Statement 11/30/2019 |
| Carolina's Wells Fargo portfolio checking account *1594 | $240.88 | | | 11/1/2019 | Statement 11/30/2019 |
| Joint Wells Fargo everyday checking account *8914 | $7,254.82 | | | 11/1/2019 | Statement 11/30/2019 |
| Carolina's Wells Fargo platinum savings account *1166 | $2,562.00 | | | 11/13/2019 | Statement 11/30/2019 (Excludes $14,000 deposited 11/15/19 from Growth Poss *5957) |
| Carolina's Wells Fargo Growth Possibilities ckg *5957 | $18,006.40 | | | 11/13/2019 | Statement 11/30/2019 |
| Joint Charles Schwab investment account *0782 | $87.90 | | | 11/1/2019 | Statement 11/30/2019 |
| Carolina's Charles Schwab investment account *3338 | $434,326.49 | | | 11/1/2019 | Statement 11/30/2019 |
| Total Bank and Investment Accounts | $462,573.90 | | | | |
| | | | | | |
| **AUTOMOBILES** | | | | | |
| 2017 Toyota Sienna | $25,125.00 | | | | KBB printout |

| | | | | | |
|---|---|---|---|---|---|
| Less loan *3887 | ($13,989.85) | | | 11/01/19 | Statement dated 11/1/2019 |
| 2018 Nissan Rogue | $15,297.00 | | | | KBB printout |
| | $26,432.15 | | | | |
| | | | | | |
| **LIFE INSURANCE** | | | | | |
| Liberty Mutual term life insurance policy on Carolina's life | | | | | Death benefit of $1,000,000 - no cash value |
| Liberty Mutual term life insurance policy on Pawel's life | | | | | Death benefit of $1,000,000 - no cash value |
| | | | | | |
| **BUSINESS INTERESTS** | | | | | |
| Growth Possibilities, LLC (C) | | | | | |
| | | | | | |
| | | | | | |
| **MISC** | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **ASSET SUBTOTAL (excluding retirement)** | $1,246,632.45 | | | | |
| | | | | | |
| **DEBTS AND LIABILITIES** | | | | | |
| Pawel's premarital student loan - bal. 12/2/21 - ($48,616) | | | | | Printout 12/2/21 |
| Pawel's Visa 0090 - balance 11/30/21: ($7,810) | | | | | Printout 11/30/21 |
| Carolina's Delta Community Credit Union Visa *0090 | ($2,083.74) | | | 11/20/19 | Statement 11/20/19 |
| American Express *3002 (used by both parties) | ($5,686.98) | | | 11/06/19 | Statement 11/6/2019 |
| | | | | | |
| **DEBT SUBTOTAL** | ($7,770.72) | | | | |
| | | | | | |
| **SUBTOTAL:** | $1,238,861.73 | | | | |
| | | | | | |
| | | | | | |
| **TOTAL DIVISION OF ASSETS** | | | | | |
| | | | | | |
| **Excludes children's accounts:** | | | | | |
| 529 Account (Sebastian) *0387 (Carolina POA North Rock Partners) | $164,077.59 | | | 12/31/19 | Statement 12/31/2019 |
| 529 Account (Aurora) *0388 (Carolina POA North Rock Partners) | $164,077.59 | | | 12/31/19 | Statement 12/31/2019 |

RZECZKOWSKI ATTORNEY FEES PART 1 OF 2

**Time Detail**

Client/Matter: RZECZKOWSKI, PAWEL (01010700)Dissolution of Marriage (0000)

| Timekeeper | Client/Matter | Transaction Date | To Bill Hours | Billed Amount | Narrative | Percentage Related to Custody/Issue | Percentage Related to financial Issues |
|---|---|---|---|---|---|---|---|
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 8/9/2021 | 0.40 | $96.00 | Revise PFDS; e-mail to and from client; submit to Court and counsel for pretrial conference. | 48.00 | 48.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 8/17/2021 | 0.20 | $48.00 | E-mail to client; letter from opposing counsel. | 24.00 | 24.00 |
| DUE, ROBERT W. (02) | RZECZKOWSKI, PAWEL I | 8/18/2021 | 1.00 | $495.00 | Pretrial conference with Judge Burns | 247.50 | 247.50 |
| DUE, ROBERT W. (02) | RZECZKOWSKI, PAWEL I | 8/18/2021 | 2.00 | $990.00 | Drafting letter and affidavit on school selection issue | 990.00 | |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 8/18/2021 | 2.00 | $480.00 | Review documents from client; conference with Mr. Due; format and print spreadsheet; review notice from opposing counsel; docket deadline; assist with preparing correspondence, affidavit and exhibits. | 480.00 | |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 8/24/2021 | 1.50 | $360.00 | Review e-mail from Mr. Due and client; conference with Mr. Due; review MNCIS for trial dates; prepare submissions and exhibits; e-mail to client. | 360.00 | |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 8/25/2021 | 1.50 | $360.00 | Review e-mail from client; conference with Mr. Due; prepare documents for submission; submit documents to court for e-service and e-filing; e-mail documents to court and counsel. | 360.00 | |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 8/26/2021 | 0.30 | $72.00 | Review e-mail from opposing counsel and respondent's affidavit. | 36.00 | 36.00 |
| DUE, ROBERT W. (02) | RZECZKOWSKI, PAWEL I | 9/27/2021 | 1.00 | $495.00 | Drafting letter to Judge Burns; e-mail exchanges with opposing counsel, client, and client. | 495.00 | |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 9/27/2021 | 0.30 | $72.00 | E-mail from and to opposing counsel; submit correspondence for e-service and e-filing. | 72.00 | |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 9/29/2021 | 0.20 | $48.00 | E-mail to and from Midland Title; e-mail to client. | 48.00 | |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 11/4/2021 | 2.00 | $480.00 | Conference with Mr. Due; trial preparation. | 240.00 | 240.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 11/8/2021 | 2.00 | $480.00 | Trial preparation. | 240.00 | 240.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 11/9/2021 | 2.00 | $480.00 | Trial preparation. | 240.00 | 240.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 11/10/2021 | 1.00 | $240.00 | Review file; e-mail to Mr. Due; trial preparation. | 120.00 | 120.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 11/11/2021 | 0.30 | $72.00 | E-mail from Mr. Due; assemble documents from opposing counsel. | 36.00 | 36.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 11/16/2021 | 0.30 | $72.00 | Review e-mail from opposing counsel; e-mail to client. | 36.00 | 36.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 11/18/2021 | 0.55 | $99.00 | File and document management | 49.50 | 49.50 |
| BACH, NATALIE M. (0) | RZECZKOWSKI, PAWEL I | 11/19/2021 | 0.79 | $142.00 | File and document management | 71.10 | 71.10 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 11/22/2021 | 0.50 | $120.00 | Trial preparation. | 60.00 | 60.00 |
| BACH, NATALIE M. (0) | RZECZKOWSKI, PAWEL I | 11/30/2021 | 0.20 | $48.00 | E-mail from and to client; order for trial. | 24.00 | 24.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 12/1/2021 | 0.25 | $60.00 | Docket trial deadlines. | 30.00 | 30.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 12/2/2021 | 1.50 | $360.00 | E-mail from and to client; assemble information from client; trial preparation. | 180.00 | 180.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 12/6/2021 | 0.40 | $96.00 | Conference with Mr. Due; e-mail to Mr. Due and Mr. Todd. | 48.00 | 48.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 12/7/2021 | 3.00 | $720.00 | E-mail from Mr. Todd; revise trial deadline list; trial preparation. | 360.00 | 360.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 12/8/2021 | 1.50 | $360.00 | Trial preparation; conference with Mr. Due; e-mail to client. | 180.00 | 180.00 |
| TODD, JAMES R. (02) | RZECZKOWSKI, PAWEL I | 12/8/2021 | 2.40 | $948.00 | Review trial order, including deadlines for exhibit filings; confer with RWD re trial exhibits; extensive review of file documents and potential trial exhibits. | 474.00 | 474.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 12/9/2021 | 3.00 | $720.00 | Trial preparation; assist Mr. Todd and Mr. Due; draft Order to Release FCS file; draft letter to opposing counsel; conference with Mr. Todd; review file. | 360.00 | 360.00 |
| KIZMARZICK, LORI J. | RZECZKOWSKI, PAWEL I | 12/9/2021 | 0.30 | $118.50 | Draft letter to Court re custody evaluator; file; draft and send email to RWD with same attached for RWD's final approval. | 118.50 | |
| TODD, JAMES R. (02) | RZECZKOWSKI, PAWEL I | 12/9/2021 | 1.10 | $434.50 | Receive and review email from RWD re client budget; draft and reply email re same; research case file for client budget from previous counsel and previous affidavits re spousal maintenance request; call court clerks and review VWM's; draft and send email to staff email address; call client briefly re budget question. | | 434.50 |
| TODD, JAMES R. (02) | RZECZKOWSKI, PAWEL I | 12/9/2021 | 2.60 | $1,027.00 | Prepare for meeting with client this a.m.; meet with client and work with client on client's MSOL budget and employment history; discuss broad-based strategic issues and trial strategy. | | 1,027.00 |
| KIZMARZICK, PAWEL | RZECZKOWSKI, PAWEL I | 12/13/2021 | 4.50 | $1,080.00 | Trial preparation; telephone call and e-mail to family court services. | 540.00 | 540.00 |
| TODD, JAMES R. (02) | RZECZKOWSKI, PAWEL I | 12/13/2021 | 3.50 | $1,382.50 | Prepare potential trial exhibits; email draft client budget to LK and RWD once complete; print draft budget per RWD. | | 1,382.50 |
| KIZMARZICK, PAWEL | RZECZKOWSKI, PAWEL I | 12/14/2021 | 2.00 | $480.00 | Trial preparation. | 240.00 | 240.00 |
| TODD, JAMES R. (02) | RZECZKOWSKI, PAWEL I | 12/14/2021 | 1.70 | $671.50 | Begin draft trial memorandum. | 335.75 | 335.75 |

EXHIBIT
A
tabbies

1

RZECZKOWSKI ATTORNEY FEES PART 1 OF 2

| Professional | Matter | Date | Hours | Amount / Description | Total | Total |
|---|---|---|---|---|---|---|
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/15/2021 | 0.50 | $197.50 Continue draft trial memorandum. | 98.75 | 98.75 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/15/2021 | 2.10 | $829.50 Continue draft trial memorandum. | 414.75 | 414.75 |
| DUE, ROBERT W. (025 | RZECZKOWSKI, PAWEL | 12/15/2021 | 2.00 | $990.00 Work on exhibits; conference with James. | 495.00 | 495.00 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/16/2021 | 1.20 | $474.00 Continue draft trial memorandum, including file and legal research for same. | 237.00 | 237.00 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/17/2021 | 0.70 | $276.50 Continue draft trial memorandum. | 138.25 | 138.25 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/19/2021 | 10.10 | $3,989.50 Continue draft trial memorandum. | 1,994.75 | 1,994.75 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/20/2021 | 6.00 | $1,440.00 Trial preparation, submit trial memorandum for e-service and e-filing. | 720.00 | 720.00 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 12/20/2021 | 7.90 | $3,120.50 Continue and finalize draft trial memorandum of law; draft and send email to RWD with same attached for RWD's review. | 1,560.25 | 1,560.25 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 12/21/2021 | 5.00 | $1,200.00 Trial preparation. | 600.00 | 600.00 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/21/2021 | 3.30 | $1,303.50 Review trial exhibits and work with LK to finalize same; scan in child support calculation exhibits and exhibits re MSOL. | 651.75 | 651.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 12/22/2021 | 4.50 | $1,080.00 Trial preparation; e-mail trial exhibit list, trial witness list and trial exhibits to opposing counsel; download trial exhibits from opposing counsel. | 540.00 | 540.00 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 12/22/2021 | 0.20 | $79.00 Receive and briefly review exhibits and witness list from OC. | 39.50 | 39.50 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/22/2021 | 1.20 | $474.00 Finalize exhibits; draft and send email to LK re same. | 237.00 | 237.00 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/22/2021 | 2.10 | $829.50 Confer with RWD; finalize exhibits per RWD feedback, print and organize same, and confer with LK re service of same. | 414.75 | 414.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 12/27/2021 | 1.00 | $240.00 Trial preparation; review and arrange for printing of trial exhibits. | 120.00 | 120.00 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 12/27/2021 | 2.00 | $480.00 Trial preparation; e-mail to client; review file. | 240.00 | 240.00 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/28/2021 | 1.40 | $553.00 Thoroughly review OP's trial exhibits and tab same for possible objections per RWD; confer with RWD re same. | 276.50 | 276.50 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 12/28/2021 | 1.50 | $360.00 Trial preparation. | 180.00 | 180.00 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 12/29/2021 | 4.00 | $1,980.00 Trial preparation; drafting letter to Court. | 990.00 | 990.00 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 12/29/2021 | 2.00 | $720.00 Trial preparation; submissions to court; subpoena to Mr. Chesson. | 360.00 | 360.00 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/29/2021 | 0.10 | $39.50 Review RWD draft letter to Court and briefly edit same; return to RWD with comments. | 19.75 | 19.75 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/30/2021 | 3.00 | $720.00 Trial preparation. | 360.00 | 360.00 |
| DUE, ROBERT W. (025 | RZECZKOWSKI, PAWEL | 12/30/2021 | 2.70 | $1,066.50 Receive and review OC's objections to exhibits and motion re same; begin draft letter response to same. | 533.25 | 533.25 |
| DUE, ROBERT W. (025 | RZECZKOWSKI, PAWEL | 12/31/2021 | 5.00 | $2,475.00 Trial preparation. | 1,237.50 | 1,237.50 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/31/2021 | 2.30 | $908.50 Review custody evaluator case file per RWD request in preparation for RWD cross-examination of custody evaluator; draft and send email to RWD summarizing feedback for same. | 908.50 | 908.50 |
| DUE, ROBERT W. (025 | RZECZKOWSKI, PAWEL | 12/31/2021 | 3.30 | $1,303.50 Continue and finalize draft letter responding to OC's objections to trial exhibits; draft and send email with same attached to RWD for RWD's final review. | 651.75 | 651.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 1/3/2022 | 4.00 | $960.00 Trial preparation; e-mail exhibits to court; e-file and e-serve amended exhibit and witness lists; e-mail to opposing counsel. | 480.00 | 480.00 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 12/31/2021 | 9.00 | $4,455.00 Trial preparation. | 2,227.50 | 2,227.50 |
| DUE, ROBERT W. (025 | RZECZKOWSKI, PAWEL | 1/1/2022 | 8.00 | $3,960.00 Trial preparation. | 1,980.00 | 1,980.00 |
| DUE, ROBERT W. (025 | RZECZKOWSKI, PAWEL | 1/2/2022 | 8.00 | $3,960.00 Trial preparation. | 1,980.00 | 1,980.00 |
| DUE, ROBERT W. (025 | RZECZKOWSKI, PAWEL | 1/3/2022 | 8.00 | $3,960.00 Trial preparation; e-mail exhibits to court; e-file and e-serve amended exhibit and witness lists; e-mail to opposing counsel. | 1,980.00 | 1,980.00 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 1/3/2022 | 0.20 | $79.00 Confer with RWD re trial prep questions; research into file, particularly addressing question of joint accounts; deliver Charles Schwab account statement to RWD and briefly confer with RWD re same. | 480.00 | 480.00 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 1/4/2022 | 10.00 | $4,950.00 Trial preparation. | 2,475.00 | 2,475.00 |
| DUE, ROBERT W. (025 | RZECZKOWSKI, PAWEL | 1/4/2022 | 3.00 | $795.00 Trial preparation, file and document management. | 397.50 | 397.50 |
| DUE, ROBERT W. (025 | RZECZKOWSKI, PAWEL | 1/5/2022 | 9.00 | $4,455.00 First day of trial. | 2,227.50 | 2,227.50 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 1/5/2022 | 0.75 | $198.75 Conference with Mr. Due, assist with trial preparation. | 99.38 | 99.38 |
| DUE, ROBERT W. (025 | RZECZKOWSKI, PAWEL | 1/6/2022 | 9.50 | $4,702.50 Second day of trial. | 2,351.25 | 2,351.25 |
| DUE, ROBERT W. (025 | RZECZKOWSKI, PAWEL | 1/7/2022 | 7.00 | $3,465.00 Third day of trial. | 1,732.50 | 1,732.50 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 1/10/2022 | 0.30 | $79.50 E-mail from Mr. Due; arrange to order trial transcripts. | 39.75 | 39.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 1/12/2022 | 0.20 | $53.00 Follow up on transcript requests. | 26.50 | 26.50 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 1/13/2022 | 0.50 | $132.50 E-mail from Mr. Due; e-mail to opposing counsel's office and to court reporter; arrange for transcript. | 66.25 | 66.25 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 1/19/2022 | 0.20 | $53.00 Review correspondence between counsel regarding transcript. | 26.50 | 26.50 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 1/20/2022 | 0.10 | $26.50 Review letter from opposing counsel. | 13.25 | 13.25 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 2/28/2022 | 0.50 | $132.50 E-mail from and to court reporter; assemble trial transcripts. | 66.25 | 66.25 |

**RZECZKOWSKI ATTORNEY FEES PART 1 OF 2**

| | | | | | | |
|---|---|---|---|---|---|---|
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | | | | | 296.25 | 296.25 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 2/28/2022 | 1.50 | $592.50 Begin thorough review of trial transcript and take notes re same for draft J&D; | | 296.25 | 296.25 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 3/3/2022 | 1.50 | $592.50 Meet with RWD to discuss proposed findings and J&D; continue review of transcript and notes re same. | | 296.25 | 296.25 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 3/14/2022 | 9.70 | $3,831.50 Begin draft findings and Judgment and decree; continue thorough review of trial notes and transcript for same. | | 1,915.75 | 1,915.75 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 3/16/2022 | 3.50 | $1,382.50 Continue draft findings. | | 691.25 | 691.25 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 3/17/2022 | 11.40 | $4,503.00 Continue draft findings and J&D. | | 2,251.50 | 2,251.50 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 3/18/2022 | 11.70 | $4,621.50 Continue and finalize draft J&D; draft post-trial closing argument. | | 2,310.75 | 2,310.75 |
| DUE, ROBER W. (02:RZECZKOWSKI, PAWEL) | 3/19/2022 | 4.00 | $1,980.00 Work on proposed findings. | | 990.00 | 990.00 |
| DUE, ROBER W. (02:RZECZKOWSKI, PAWEL) | 3/20/2022 | 13.00 | $6,435.00 Drafting proposed findings and final argument. | | 3,217.50 | 3,217.50 |
| DUE, ROBER W. (02:RZECZKOWSKI, PAWEL) | 3/21/2022 | 1.00 | $495.00 Finalize proposed findings and final argument. | | 247.50 | 247.50 |
| | | | Review and edit Final Argument and Proposed Decree; e-mail to and from Mr. Due; submit final | | | |
| KRZMARZICK, LORI J., RZECZKOWSKI, PAWEL) | 3/21/2022 | 4.50 | $1,192.50 submissions to court and counsel; e-serve and e-file same. | | 596.25 | 596.25 |
| KRZMARZICK, LORI J., RZECZKOWSKI, PAWEL) | 3/22/2022 | 0.20 | $53.00 Conference with Mr. Due; e-mail to client. | | 26.50 | 26.50 |
| **TOTAL** | | | $99,472.95 | | 49,575.98 | 49,896.98 |

3

RZECZKOWSKI ATTORNEY FEES PART 2 OF 2

Time Detail

Client/Matter: RZECZKOWSKI, PAWEL (010107)Dissolution of Marriage (0000)

| Timekeeper | Client/Matter | Transaction Date | To Bill Hours | Billed Amount | Narrative | Percentage Related to Columbian Documents | Percentage Related to Other Financial Issues (Spousal Maintenance/ Child Support/Attorney Fees) |
|---|---|---|---|---|---|---|---|
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 6/27/2022 | 0.30 | $79.50 | Review documents from court and opposing counsel; arrange to obtain certified copy of decree; telephone call to court of appeals. | 39.75 | 39.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 6/29/2022 | 0.20 | $53.00 | Arrange to obtain certified copy of order. | 26.50 | 26.50 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 6/30/2022 | 3.30 | $1,303.50 | Continue statement of case; perform legal research into need-based attorney fees issue. | 651.75 | 651.75 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 6/30/2022 | 4.10 | $1,619.50 | begin draft appellate statement of case. | 809.75 | 809.75 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 7/1/2022 | 4.50 | $1,777.50 | Finalize statement of case; draft and send email to RWD with same attached for RWD's review. | 888.75 | 888.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 7/6/2022 | 0.50 | $265.00 | Conference with Mr. Due; review and revise appellate pleadings. | 132.50 | 132.50 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 7/6/2022 | 0.50 | $197.50 | Receive and review email from RWD re statement of case and review updated copy of the same; emails with RWD re same. | 98.75 | 98.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 7/7/2022 | 1.50 | $397.50 | Assemble documents for appeal; submit to District Court for e-filing and e-service; submit appellate documents to Court of Appeals; review notice of Case filing from court of appeals. | 198.75 | 198.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 7/12/2022 | 1.25 | $331.25 | E-mail from and to court reporter; conference with Mr. Due; prepare and revise appellate mediation forms; e-mail to client; e-mail confidential forms to appellate mediation office. | 165.63 | 165.63 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 7/13/2022 | 0.10 | $26.50 | E-mail from Appellate Mediation Office; e-mail to client. | 13.25 | 13.25 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 7/14/2022 | 0.30 | $79.50 | Review court reporter's filing and transcript submission. | 39.75 | 39.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 7/26/2022 | 0.10 | $26.50 | E-mail from opposing counsel. | 13.25 | 13.25 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 7/27/2022 | 0.20 | $53.00 | Review letter from appellate mediation office. | 26.50 | 26.50 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 8/2/2022 | 0.10 | $26.50 | Letter from opposing counsel. | 13.25 | 13.25 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 8/4/2022 | 0.30 | $79.50 | Conference with Mr. Due; e-mail various documents to Ms. Lauhead and counsel for pre-mediation conference. | 39.75 | 39.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 8/10/2022 | 0.10 | $26.50 | E-mail to opposing counsel's office. | 13.25 | 13.25 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 8/17/2022 | 0.20 | $53.00 | Review e-mail from and to court. | 26.50 | 26.50 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 9/19/2022 | 0.10 | $26.50 | Review notice from court of appeals. | 13.25 | 13.25 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 9/28/2022 | 1.50 | $397.50 | Conference with Mr. Due; review MNCIS information; assist with preparations for appellate brief. | 198.75 | 198.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 10/4/2022 | 1.00 | $265.00 | Appeal preparation. | 132.50 | 132.50 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 10/6/2022 | 6.00 | $1,590.00 | Review pleadings and MNCIS court file documents; assemble pleadings for appeal. | 795.00 | 795.00 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 10/11/2022 | 1.50 | $397.50 | Review court file; retrieve various pleadings; assist with appellate preparation. | 198.75 | 198.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 10/11/2022 | 0.50 | $197.50 | Perform legal research for appellate brief and begin draft memorandum for RWD re same. | 98.75 | 98.75 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 10/12/2022 | 1.00 | $265.00 | Appeal preparation. | 132.50 | 132.50 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 10/12/2022 | 4.00 | $1,580.00 | Continue appellate case law research. | 790.00 | 790.00 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 10/13/2022 | 1.50 | $397.50 | Assist with appellate brief preparation. | 198.75 | 198.75 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 10/13/2022 | 0.20 | $79.00 | Confer with RWD re comity research; review COA opinion and case cited therein re comity issue. | 79.00 | 79.00 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 10/13/2022 | 2.20 | $869.00 | Continue legal appellate case law research and update to memorandum for RWD. | 434.50 | 434.50 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 10/13/2022 | 3.40 | $1,343.00 | Finalize legal research and memorandum to RWD re same. | 671.50 | 671.50 |
| DUE, ROBERT W. (02 | RZECZKOWSKI, PAWEL | 10/14/2022 | 8.00 | $3,960.00 | File review in preparation for drafting appellant's brief. | 1,980.00 | 1,980.00 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 10/14/2022 | 0.80 | $316.00 | Review draft section from trial memorandum to begin providing appellate cites from record for same. | 158.00 | 158.00 |
| DUE, ROBERT W. (02 | RZECZKOWSKI, PAWEL | 10/15/2022 | 6.00 | $2,970.00 | Drafting appellant's brief. | 1,485.00 | 1,485.00 |
| DUE, ROBERT W. (02 | RZECZKOWSKI, PAWEL | 10/16/2022 | 6.00 | $2,970.00 | Drafting appellant's brief. | 1,485.00 | 1,485.00 |
| TODD, JAMES R. (026 | RZECZKOWSKI, PAWEL | 10/17/2022 | 5.00 | $1,975.00 | Thoroughly review RWD draft appellate brief. | 987.50 | 987.50 |
| DUE, ROBERT W. (02 | RZECZKOWSKI, PAWEL | 10/18/2022 | 6.00 | $1,980.00 | Finish drafting appellant's brief. | 990.00 | 990.00 |
| KRZMARZICK, LORI J. | RZECZKOWSKI, PAWEL | 10/18/2022 | 4.50 | $1,192.50 | Assist with preparing appellate brief. | 596.25 | 596.25 |

1

RZECZKOWSKI ATTORNEY FEES PART 2 OF 2

| Name | Date | Hours | Description | Amount | Amount |
|---|---|---|---|---|---|
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 10/18/2022 | 1.10 | Review draft TOC and insert pagination in conjunction with final review of brief to be filed tomorrow | 217.25 | 217.25 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 10/18/2022 | 6.60 | $434.50 morning. Receive, review, and thoroughly edit RWD draft appellate brief including providing citations throughout $2,607.00 same and work with RWD to edit same. Assist with finalizing appellate brief and addendum; submit same for e-service and e-filing; telephone call to court of appeals; conference with attorneys; letter and e-mail to opposing counsel; e-mail to client; submit | 1,303.50 | 1,303.50 |
| KRZMARZICK, LORI J., RZECZKOWSKI, PAWEL | 10/19/2022 | 2.50 | $662.50 affidavit of service by mail to court of appeals. | 331.25 | 331.25 |
| KRZMARZICK, LORI J., RZECZKOWSKI, PAWEL | 11/21/2022 | 0.20 | $53.00 Download Brief and Appendix from opposing counsel. | 26.50 | 26.50 |
| DUE, ROBERT W. (026:RZECZKOWSKI, PAWEL) | 11/22/2022 | 1.00 | $495.00 Review Respondent's Brief. | 247.50 | 247.50 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 11/23/2022 | 2.50 | Thoroughly review response brief and conduct legal research re same in advance of meeting with RWD this $987.50 morning to outline reply memorandum; meet with RWD to discuss same at length. | 493.75 | 493.75 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 11/27/2022 | 8.10 | $3,199.50 Continue draft reply brief. | 1,599.75 | 1,599.75 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 11/28/2022 | 5.00 | $1,975.00 Continue work on reply brief. | 987.50 | 987.50 |
| DUE, ROBERT W. (026:RZECZKOWSKI, PAWEL) | 11/29/2022 | 6.00 | $2,970.00 Review, revise, and edit Reply Brief. | 1,485.00 | 1,485.00 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 11/29/2022 | 3.50 | $1,382.50 Continue draft appellate reply brief for RWD's review. | 691.25 | 691.25 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 11/29/2022 | 6.40 | $2,528.00 Continue and finalize appellate reply brief; print and deliver to RWD for review. | 1,264.00 | 1,264.00 |
| KRZMARZICK, LORI J., RZECZKOWSKI, PAWEL | 11/30/2022 | 3.00 | $795.00 Conference with Mr. Due; assist with preparing Reply Brief, table of contents and table of authorities. Draft first draft of additional section in reply brief re Peruvian case et al per RWD email; draft and send | 397.50 | 397.50 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 11/30/2022 | 1.00 | $395.00 reply email with proposed footnote language in same. | 395.00 | |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 11/30/2022 | 2.10 | Review and thoroughly edit final reply brief as edited by RWD; draft and send email to RWD re same; $829.50 perform final review and edit edits and edit Table of Contents, exchange emails with RWD re same. | 414.75 | 414.75 |
| KRZMARZICK, LORI J., RZECZKOWSKI, PAWEL | 12/1/2022 | 0.50 | $132.50 Prepare Reply Brief for submission; e-file and e-serve Reply Brief with Court of Appeals. | 66.25 | 66.25 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 12/1/2022 | 0.90 | $355.50 Final review of reply brief; sign, date, and deliver to LK for appellate e-service and e-filing. | 177.75 | 177.75 |
| DUE, ROBERT W. (026:RZECZKOWSKI, PAWEL) | 1/11/2023 | 6.00 | $2,970.00 Prepare for oral argument. | 1,485.00 | 1,485.00 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 1/11/2023 | 0.40 | Conduct brief legal research for RWD in advance of oral argument at COA tomorrow; confer with RWD $158.00 following same. | 79.00 | 79.00 |
| TODD, JAMES R. (026:RZECZKOWSKI, PAWEL) | 1/11/2023 | 1.50 | $592.50 Conduct additional legal research per RWD in advance of oral argument tomorrow a.m. | 296.25 | 296.25 |
| DUE, ROBERT W. (026:RZECZKOWSKI, PAWEL) | 1/12/2023 | 4.00 | $1,980.00 Prepare for and attend oral argument at the Court of Appeals. | 990.00 | 990.00 |
| TOTAL | | | $54,668.75 | 27,571.38 | 27,097.38 |

2

# DeWitt ⫶ Law Firm

TO:    PAWEL RZECZKOWSKI

|  |  |
|---|---|
| Date: | September 7, 2021 |
| Invoice: | 1043448 |
| Client: | 0101070.0000 |

Re: Dissolution of Marriage

## Invoice Summary

| | |
|---|---:|
| **Total Current Fees** | 7,592.00 |
| **Total Current Disbursements** | 0.00 |
| **Total Current Fees & Disbursements** | 7,592.00 |
| **Balance Outstanding as of 09-07-21** | 37,455.59 |
| **Less Amount Applied From Trust** | 0.00 |
| **Total Due, Please Pay This Amount** | 45,047.59 |

# DeWitt :Law :Firm

TO:    PAWEL RZECZKOWSKI

|  |  |
|---|---|
| Date: | September 7, 2021 |
| Invoice: | 1043448 |
| Client: | 0101070.0000 |

Re: Dissolution of Marriage

| | To Professional Services | Rate | Hours | Amount |
|---|---|---|---|---|
| | **ROBERT W. DUE** | | | |
| 08-18-21 | Pretrial conference with Judge Burns | 495.00 | 1.00 | 495.00 |
| 08-18-21 | Drafting letter and affidavit on school selection issue | 495.00 | 2.00 | 990.00 |
| 08-29-21 | Creating first draft of petition for discretionary review. | 495.00 | 6.00 | 2,970.00 |
| | **CATHERINE A. KRISIK** | | | |
| 08-26-21 | Research for petition for discretionary review | 310.00 | 2.20 | 682.00 |
| 08-31-21 | Research, review and supplement petition for discretionary review. | 310.00 | 2.50 | 775.00 |
| | **LORI J. KRZMARZICK: Paralegal** | | | |
| 08-03-21 | Revise parenting financial disclosure statement. | 240.00 | 0.30 | 72.00 |
| 08-04-21 | Review and revise parenting financial disclosure statement. | 240.00 | 0.30 | 72.00 |
| 08-09-21 | Revise PFDS; e-mail to and from client; submit to Court and counsel for pretrial conference. | 240.00 | 0.40 | 96.00 |
| 08-17-21 | E-mail to client; letter from opposing counsel. | 240.00 | 0.20 | 48.00 |
| 08-18-21 | Review documents from client; conference with Mr. Due; format and print spreadsheet; review notice from opposing counsel; docket deadline; assist with preparing correspondence, affidavit and exhibits. | 240.00 | 2.00 | 480.00 |
| 08-24-21 | Review e-mail from Mr. Due and client; conference with Mr. Due; review MNCIS for trial dates; prepare submissions and exhibits; e-mail to client. | 240.00 | 1.50 | 360.00 |
| 08-25-21 | Review e-mail from client; conference with Mr. Due; prepare documents for submission; submit documents to court for e-service and e-filing; e-mail documents to court and counsel. | 240.00 | 1.50 | 360.00 |
| 08-26-21 | Review e-mail from opposing counsel and respondent's affidavit. | 240.00 | 0.30 | 72.00 |
| 08-31-21 | Submit correspondence for e-service and e-filing; e-mail to court and counsel; review rules of appellate procedure; telephone call to court of appeals. | 240.00 | 0.50 | 120.00 |

# DeWitt LLP Law Firm

| | |
|---|---|
| Date: | September 7, 2021 |
| Invoice: | 1043448 |
| Page: | 2 |

| | | |
|---|---|---|
| Total Current Professional Services | 20.70 | 7,592.00 |

| | | |
|---|---|---|
| **Total Current Services and Disbursements** | $ | **7,592.00** |
| **Balance Outstanding on this Matter as of 09-07-21** | | 37,455.59 |
| **TOTAL DUE, PLEASE PAY THIS AMOUNT  RE: Dissolution of Marriage** | $ | **45,047.59** |

## YEAR TO DATE BILLING

| | |
|---|---|
| YTD Fees | 57,220.00 |
| YTD Disbursements | 2,827.59 |
| YTD Total | 60,047.59 |

Professional Services, Current Invoice Summary

| | | |
|---|---|---|
| Total Hours Reflected on Current Invoice | 20.70 | |
| Total Fees Reflected on Current Invoice | | 7,592.00 |
| Total Costs Reflected on Current Invoice | | 0.00 |
| TOTAL CURRENT FEES AND COSTS | | 7,592.00 |

Professional Services, Total Since Inception

# DeWitt .::Law ::Firm

| | |
|---|---|
| Date: | September 7, 2021 |
| Invoice: | 1043448 |
| Page: | 3 |

| | | |
|---|---|---|
| Total Hours Worked Since Inception | 155.25 | |
| Total Fees Billed Since Inception | | 57,220.00 |
| Total Costs Billed Since Inception | | 2,827.59 |
| TOTAL FEES AND COSTS BILLED SINCE INCEPTION | | 60,047.59 |

# DeWitt ∷ Law Firm

Date:      September 7, 2021
Invoice:   1043448
Page:      4

### Summary of Unpaid Balance
### RZECZKOWSKI, PAWEL
Client: 0101070.0000

| Invoice Date | Invoice Number | Invoice Amount | Remaining Balance Due |
|---|---|---|---|
| 04-14-21 | 1030633 | 5,351.50 | 4,016.50 |
| 05-06-21 | 1032461 | 26,037.09 | 26,037.09 |
| 06-09-21 | 1035758 | 7,330.00 | 7,330.00 |
| 08-04-21 | 1040539 | 72.00 | 72.00 |
| 09-07-21 | 1043448 | 7,592.00 | 7,592.00 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT**                    $          45,047.59
**RE: Dissolution of Marriage**



TO:    PAWEL RZECZKOWSKI

| | |
|---|---|
| Date: | October 11, 2021 |
| Invoice: | 1046734 |
| Client: | 0101070.0000 |

Re: Dissolution of Marriage

---

### Invoice Summary

| | |
|---|---|
| **Total Current Fees** | 2,079.00 |
| **Total Current Disbursements** | 643.70 |
| **Total Current Fees & Disbursements** | 2,722.70 |
| **Balance Outstanding as of 10-11-21** | 45,047.59 |
| **Less Amount Applied From Trust** | 0.00 |
| **Total Due, Please Pay This Amount** | 47,770.29 |

# DeWitt :: Law :: Firm

TO:   PAWEL RZECZKOWSKI

| | |
|---|---|
| Date: | October 11, 2021 |
| Invoice: | 1046734 |
| Client: | 0101070.0000 |

Re: Dissolution of Marriage

---

| | To Professional Services | Rate | Hours | Amount |
|---|---|---|---|---|
| | **ROBERT W. DUE** | | | |
| 09-27-21 | Drafting letter to Judge Burns; e-mail exchanges with opposing counsel, closer, and client. | 495.00 | 1.00 | 495.00 |
| | **LORI J. KRZMARZICK: Paralegal** | | | |
| 09-01-21 | Conference with Mr. Due; assist with preparing petition; e-mail from opposing counsel's office. | 240.00 | 0.50 | 120.00 |
| 09-02-21 | Assist with preparation of petition for discretionary review, addendum, proof of filing and certificate of service; submit same for e-service and e-filing with District Court, and with the Minnesota Court of Appeals; review e-mail from court of appeals and filing confirmation notices from District Court. | 240.00 | 3.50 | 840.00 |
| 09-08-21 | Review notice from court of appeals. | 240.00 | 0.20 | 48.00 |
| 09-09-21 | Download and review answer to petition for discretionary review served by opposing counsel. | 240.00 | 0.40 | 96.00 |
| 09-14-21 | Assist with preparing Reply for court of appeals; e-file and e-serve same with District Court and Court of Appeals. | 240.00 | 1.50 | 360.00 |
| 09-27-21 | E-mail from and to opposing counsel; submit correspondence for e-service and e-filing. | 240.00 | 0.30 | 72.00 |
| 09-28-21 | E-mail to and from Midland Title; review order from court of appeals; e-mail to client. | 240.00 | 0.20 | 48.00 |
| | Total Current Professional Services | | 7.60 | 2,079.00 |

| | To Disbursements | | |
|---|---|---|---|
| 08-27-21 | Motion filing fee | | 80.00 |
| 09-02-21 | Court of Appeals filing fee | | 563.70 |

# DeWitt ‥ Law Firm

| | |
|---|---|
| Date: | October 11, 2021 |
| Invoice: | 1046734 |
| Page: | 2 |

---

**To Disbursements**

Total Current Disbursements: 643.70

**Total Current Services and Disbursements** $ **2,722.70**

**Balance Outstanding on this Matter as of 10-11-21** **45,047.59**

**TOTAL DUE, PLEASE PAY THIS AMOUNT  RE: Dissolution of Marriage** $ **47,770.29**

**YEAR TO DATE BILLING**

| | |
|---|---|
| YTD Fees | 59,299.00 |
| YTD Disbursements | 3,471.29 |
| YTD Total | 62,770.29 |

Professional Services, Current Invoice Summary

| | | |
|---|---|---|
| Total Hours Reflected on Current Invoice | 7.60 | |
| Total Fees Reflected on Current Invoice | | 2,079.00 |
| Total Costs Reflected on Current Invoice | | 643.70 |
| TOTAL CURRENT FEES AND COSTS | | 2,722.70 |



| | |
|---|---|
| Date: | October 11, 2021 |
| Invoice: | 1046734 |
| Page: | 3 |

Professional Services, Total Since Inception

| | | |
|---|---|---|
| Total Hours Worked Since Inception | 162.85 | |
| Total Fees Billed Since Inception | | 59,299.00 |
| Total Costs Billed Since Inception | | 3,471.29 |
| TOTAL FEES AND COSTS BILLED SINCE INCEPTION | | 62,770.29 |

# DeWitt LLP Law Firm

| | |
|---|---|
| Date: | October 11, 2021 |
| Invoice: | 1046734 |
| Page: | 4 |

**Summary of Unpaid Balance**
**RZECZKOWSKI, PAWEL**
**Client: 0101070.0000**

| Invoice Date | Invoice Number | Invoice Amount | Remaining Balance Due |
|---|---|---|---|
| 04-14-21 | 1030633 | 5,351.50 | 4,016.50 |
| 05-06-21 | 1032461 | 26,037.09 | 26,037.09 |
| 06-09-21 | 1035758 | 7,330.00 | 7,330.00 |
| 08-04-21 | 1040539 | 72.00 | 72.00 |
| 09-07-21 | 1043448 | 7,592.00 | 7,592.00 |
| 10-11-21 | 1046734 | 2,722.70 | 2,722.70 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT**          $          47,770.29
**RE: Dissolution of Marriage**



TO:    PAWEL RZECZKOWSKI

Date:    November 8, 2021
Invoice:    1048987
Client:    0101070.0000

Re: Dissolution of Marriage

## Invoice Summary

| | |
|---|---|
| **Total Current Fees** | 2,046.00 |
| **Total Current Disbursements** | 0.00 |
| **Total Current Fees & Disbursements** | 2,046.00 |
| **Balance Outstanding as of 11-08-21** | 47,770.29 |
| **Less Amount Applied From Trust** | 0.00 |
| **Total Due, Please Pay This Amount** | 49,816.29 |



TO:   PAWEL RZECZKOWSKI

Date:     November 8, 2021
Invoice:   1048987
Client:    0101070.0000

Re: Dissolution of Marriage

| | **To Professional Services** | Rate | Hours | Amount |
|---|---|---|---|---|
| | **CATHERINE A. KRISIK** | | | |
| 09-09-21 | Research for reply to respondent's answer to the petition for discretionary review. | 310.00 | 1.60 | 496.00 |
| 09-13-21 | Work on reply to respondent's answer to petition for discretionary review. | 310.00 | 2.70 | 837.00 |
| 09-14-21 | Work on reply to respondent's answer to petition for discretionary review. | 310.00 | 2.30 | 713.00 |
| | Total Current Professional Services | | 6.60 | 2,046.00 |

**Total Current Services and Disbursements**                    $    2,046.00

**Balance Outstanding on this Matter as of 11-08-21**                 47,770.29

**TOTAL DUE, PLEASE PAY THIS AMOUNT  RE: Dissolution of Marriage**        $   49,816.29

**YEAR TO DATE BILLING**

YTD Fees          61,345.00

YTD Disbursements      3,471.29

YTD Total         64,816.29



| Date: | November 8, 2021 |
| Invoice: | 1048987 |
| Page: | 2 |

---

<u>Professional Services, Current Invoice Summary</u>

| | | |
|---|---|---|
| Total Hours Reflected on Current Invoice | 6.60 | |
| Total Fees Reflected on Current Invoice | | 2,046.00 |
| Total Costs Reflected on Current Invoice | | 0.00 |
| TOTAL CURRENT FEES AND COSTS | | 2,046.00 |

<u>Professional Services, Total Since Inception</u>

| | | |
|---|---|---|
| Total Hours Worked Since Inception | 169.45 | |
| Total Fees Billed Since Inception | | 61,345.00 |
| Total Costs Billed Since Inception | | 3,471.29 |
| TOTAL FEES AND COSTS BILLED SINCE INCEPTION | | 64,816.29 |



Date:      November 8, 2021
Invoice:   1048987
Page:      3

---

### Summary of Unpaid Balance
### RZECZKOWSKI, PAWEL
Client: 0101070.0000

| Invoice Date | Invoice Number | Invoice Amount | Remaining Balance Due |
|---|---|---|---|
| 04-14-21 | 1030633 | 5,351.50 | 4,016.50 |
| 05-06-21 | 1032461 | 26,037.09 | 26,037.09 |
| 06-09-21 | 1035758 | 7,330.00 | 7,330.00 |
| 08-04-21 | 1040539 | 72.00 | 72.00 |
| 09-07-21 | 1043448 | 7,592.00 | 7,592.00 |
| 10-11-21 | 1046734 | 2,722.70 | 2,722.70 |
| 11-08-21 | 1048987 | 2,046.00 | 2,046.00 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT**     $     49,816.29
**RE: Dissolution of Marriage**



TO:    PAWEL RZECZKOWSKI

Date:      January 13, 2022
Invoice:   1055186
Client:    0101070.0000

Re: Dissolution of Marriage

## Invoice Summary

| | |
|---|---|
| **Total Current Fees** | 68,807.20 |
| **Total Current Disbursements** | 670.89 |
| **Total Current Fees & Disbursements** | 69,478.09 |
| **Balance Outstanding as of 01-13-22** | 49,816.29 |
| **Less Amount Applied From Trust** | 0.00 |
| **Total Due, Please Pay This Amount** | 119,294.38 |



TO:    PAWEL RZECZKOWSKI

Date:        January 13, 2022
Invoice:     1055186
Client:      0101070.0000

Re: Dissolution of Marriage

| | To Professional Services | Rate | Hours | Amount |
|---|---|---|---|---|
| | **ROBERT W. DUE** | | | |
| 12-16-21 | Work on exhibits; conference with James. | 495.00 | 2.00 | 990.00 |
| 12-29-21 | Trial preparation; drafting letter to Court. | 495.00 | 4.00 | 1,980.00 |
| 12-31-21 | Trial preparation. | 495.00 | 5.00 | 2,475.00 |
| 01-01-22 | Trial preparation. | 495.00 | 9.00 | 4,455.00 |
| 01-02-22 | Trial preparation. | 495.00 | 8.00 | 3,960.00 |
| 01-03-22 | Trial preparation. | 495.00 | 8.00 | 3,960.00 |
| 01-04-22 | Trial preparation. | 495.00 | 10.00 | 4,950.00 |
| 01-05-22 | First day of trial. | 495.00 | 9.00 | 4,455.00 |
| 01-06-22 | Second day of trial. | 495.00 | 9.50 | 4,702.50 |
| 01-07-22 | Third day of trial. | 495.00 | 7.00 | 3,465.00 |
| | **JAMES R.  TODD** | | | |
| 12-08-21 | Review trial order, including deadlines for exhibit filings; confer with RWD re trial exhibits; continue extensive review of file documents and potential trial exhibits. | 395.00 | 2.40 | 948.00 |
| 12-09-21 | Prepare for meeting with client this a.m.; meet with client and work with client on client's MSOL budget and employment history; discuss broad-based strategic issues and trial strategy. | 395.00 | 2.60 | 1,027.00 |
| 12-09-21 | Draft letter to Court re custody evaluator file; draft and send email to RWD with same attached for RWD's final approval. | 395.00 | 0.30 | 118.50 |
| 12-09-21 | Receive and review email from RWD re client budget; draft and send reply email re same; research case file for client budget from previous counsel and previous affidavits re spousal maintenance request; call court clerks and review VMM's; draft and send email to staff email address; call client briefly re budget question. | 395.00 | 1.10 | 434.50 |
| 12-13-21 | Prepare potential trial exhibits; email draft client budget to LK and RWD once complete; print draft budget per RWD. | 395.00 | 3.50 | 1,382.50 |
| 12-14-21 | Begin draft trial memorandum. | 395.00 | 1.70 | 671.50 |
| 12-15-21 | Continue draft trial memorandum. | 395.00 | 0.50 | 197.50 |
| 12-15-21 | Continue draft trial memorandum. | 395.00 | 2.10 | 829.50 |



Date: January 13, 2022
Invoice: 1055186
Page: 2

---

**To Professional Services**

| Date | Description | Rate | Hours | Amount |
|---|---|---|---|---|
| 12-16-21 | Continue draft trial memorandum, including file and legal research for same. | 395.00 | 1.20 | 474.00 |
| 12-17-21 | Continue draft trial memorandum. | 395.00 | 0.70 | 276.50 |
| 12-19-21 | Continue draft trial memorandum. | 395.00 | 10.10 | 3,989.50 |
| 12-20-21 | Continue and finalize draft trial memorandum of law; draft and send email to RWD with same attached for RWD's review. | 395.00 | 7.90 | 3,120.50 |
| 12-21-21 | Review trial exhibits and work with LK to finalize same; scan in child support calculation exhibits and exhibits re MSOL. | 395.00 | 3.30 | 1,303.50 |
| 12-22-21 | Finalize exhibits; draft and send email to LK re same. | 395.00 | 1.20 | 474.00 |
| 12-22-21 | Confer with RWD; finalize exhibits per RWD feedback, print and organize same, and confer with LK re service of same. | 395.00 | 2.10 | 829.50 |
| 12-22-21 | Receive and briefly review exhibits and witness list from OC. | 395.00 | 0.20 | 79.00 |
| 12-27-21 | Thoroughly review OP's trial exhibits and tab same for possible objections per RWD; confer with RWD re same. | 395.00 | 1.40 | 553.00 |
| 12-29-21 | Review RWD draft letter to Court and slightly edit same; return to RWD with comments. | 395.00 | 0.10 | 39.50 |
| 12-30-21 | Receive and review OC's objections to exhibits and motion re same; begin draft letter response to same. | 395.00 | 2.70 | 1,066.50 |
| 12-31-21 | Continue and finalize draft letter responding to OC's objections to trial exhibits; draft and send email with same attached to RWD for RWD's final review. | 395.00 | 3.30 | 1,303.50 |
| 12-31-21 | Review custody evaluator case file per RWD request in preparation for RWD cross-examination of custody evaluator; draft and send email to RWD summarizing feedback for same. | 395.00 | 2.30 | 908.50 |
| 01-03-22 | Confer with RWD re trial prep questions; research into file, particularly addressing question of joint accounts; deliver Charles Schwab account statement to RWD and briefly confer with RWD re same. | 395.00 | 0.20 | 79.00 |

**NATALIE M. BACH: Paralegal**

| Date | Description | Rate | Hours | Amount |
|---|---|---|---|---|
| 11-18-21 | File and document management | 180.00 | 0.55 | 99.00 |
| 11-19-21 | File and document management | 180.00 | 0.79 | 142.20 |

---



| | Date: | January 13, 2022 |
| | Invoice: | 1055186 |
| | Page: | 3 |

**To Professional Services**

**LORI J. M. KRZMARZICK: Paralegal**

| | | Rate | Hours | Amount |
|---|---|---|---|---|
| 11-04-21 | Conference with Mr. Due; trial preparation. | 240.00 | 2.00 | 480.00 |
| 11-08-21 | Trial preparation. | 240.00 | 2.00 | 480.00 |
| 11-09-21 | Trial preparation. | 240.00 | 2.00 | 480.00 |
| 11-10-21 | Review file; e-mail to Mr. Due; trial preparation. | 240.00 | 1.00 | 240.00 |
| 11-11-21 | E-mail from Mr. Due; assemble documents from opposing counsel. | 240.00 | 0.30 | 72.00 |
| 11-16-21 | Review e-mail from opposing counsel; e-mail to client. | 240.00 | 0.30 | 72.00 |
| 11-22-21 | Trial preparation. | 240.00 | 0.50 | 120.00 |
| 11-30-21 | E-mail from and to client; order for trial. | 240.00 | 0.20 | 48.00 |
| 12-01-21 | Docket trial deadlines. | 240.00 | 0.25 | 60.00 |
| 12-02-21 | E-mail from and to client; assemble information from client; trial preparation. | 240.00 | 1.50 | 360.00 |
| 12-06-21 | Conference with Mr. Due; e-mail to Mr. Due and Mr. Todd. | 240.00 | 0.40 | 96.00 |
| 12-07-21 | E-mail from Mr. Todd; revise trial deadline list; trial preparation. | 240.00 | 3.00 | 720.00 |
| 12-08-21 | Trial preparation; conference with Mr. Due; e-mail to client. | 240.00 | 1.50 | 360.00 |
| 12-09-21 | Trial preparation; assist Mr. Todd and Mr. Due; draft Order to Release FCS file; draft letter to opposing counsel; conference with Mr. Todd; review file. | 240.00 | 3.00 | 720.00 |
| 12-13-21 | Trial preparation; telephone call and e-mail to family court services. | 240.00 | 4.50 | 1,080.00 |
| 12-14-21 | Trial preparation. | 240.00 | 2.00 | 480.00 |
| 12-20-21 | Trial preparation; submit trial memorandum for e-service and e-filing. | 240.00 | 6.00 | 1,440.00 |
| 12-21-21 | Trial preparation. | 240.00 | 5.00 | 1,200.00 |
| 12-22-21 | Trial preparation; e-mail trial exhibit list, trial witness list and trial exhibits to opposing counsel; download trial exhibits from opposing counsel. | 240.00 | 4.50 | 1,080.00 |
| 12-23-21 | Trial preparation; review and arrange for printing of trial exhibits. | 240.00 | 1.00 | 240.00 |
| 12-27-21 | Trial preparation; e-mail to client; review file. | 240.00 | 2.00 | 480.00 |
| 12-28-21 | Trial preparation. | 240.00 | 1.50 | 360.00 |
| 12-29-21 | Trial preparation; submissions to court; subpoena to Mr. Chesson. | 240.00 | 3.00 | 720.00 |
| 12-30-21 | Trial preparation. | 240.00 | 3.00 | 720.00 |
| 01-03-22 | Trial preparation; e-mail exhibits to court; e-file and e-serve amended exhibit and witness lists; e-mail to opposing counsel. | 240.00 | 4.00 | 960.00 |



Date:       January 13, 2022
Invoice:    1055186
Page:       4

| | | |
|---|---:|---:|
| Total Current Professional Services | 178.19 | 68,807.20 |

**To Disbursements**

| | | | |
|---|---|---:|---:|
| 12-29-21 | Zak Chesson--Witness fee | 20.00 | |
| 12-31-21 | Xact Data Discovery--Copying trial exhibits | 365.27 | |
| 12-31-21 | Xact Data Discovery--Copying trial exhibits | 285.62 | |
| | Total Current Disbursements: | | 670.89 |

| | | |
|---|---|---:|
| **Total Current Services and Disbursements** | $ | **69,478.09** |
| **Balance Outstanding on this Matter as of 01-13-22** | | **49,816.29** |
| **TOTAL DUE, PLEASE PAY THIS AMOUNT  RE: Dissolution of Marriage** | $ | **119,294.38** |

## YEAR TO DATE BILLING

| | |
|---|---:|
| YTD Fees | 68,807.20 |
| YTD Disbursements | 670.89 |
| YTD Total | 69,478.09 |



| | |
|---|---|
| Date: | January 13, 2022 |
| Invoice: | 1055186 |
| Page: | 5 |

---

Professional Services, Current Invoice Summary

| | | |
|---|---|---|
| Total Hours Reflected on Current Invoice | 178.19 | |
| Total Fees Reflected on Current Invoice | | 68,807.20 |
| Total Costs Reflected on Current Invoice | | 670.89 |
| TOTAL CURRENT FEES AND COSTS | | 69,478.09 |

Professional Services, Total Since Inception

| | | |
|---|---|---|
| Total Hours Worked Since Inception | 347.64 | |
| Total Fees Billed Since Inception | | 130,152.20 |
| Total Costs Billed Since Inception | | 4,142.18 |
| TOTAL FEES AND COSTS BILLED SINCE INCEPTION | | 134,294.38 |



Date:      January 13, 2022
Invoice:   1055186
Page:      6

**Summary of Unpaid Balance**
**RZECZKOWSKI, PAWEL**
**Client: 0101070.0000**

| Invoice Date | Invoice Number | Invoice Amount | Remaining Balance Due |
|---|---|---|---|
| 04-14-21 | 1030633 | 5,351.50 | 4,016.50 |
| 05-06-21 | 1032461 | 26,037.09 | 26,037.09 |
| 06-09-21 | 1035758 | 7,330.00 | 7,330.00 |
| 08-04-21 | 1040539 | 72.00 | 72.00 |
| 09-07-21 | 1043448 | 7,592.00 | 7,592.00 |
| 10-11-21 | 1046734 | 2,722.70 | 2,722.70 |
| 11-08-21 | 1048987 | 2,046.00 | 2,046.00 |
| 01-13-22 | 1055186 | 69,478.09 | 69,478.09 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT**          $      119,294.38
**RE: Dissolution of Marriage**



TO:   PAWEL RZECZKOWSKI

Date:     February 4, 2022
Invoice:  1057075
Client:   0101070.0000

Re: Dissolution of Marriage

### Invoice Summary

| | |
|---|---|
| **Total Current Fees** | 1,391.25 |
| **Total Current Disbursements** | 2,625.00 |
| **Total Current Fees & Disbursements** | 4,016.25 |
| **Balance Outstanding as of 02-04-22** | 119,294.38 |
| **Less Amount Applied From Trust** | 0.00 |
| **Total Due, Please Pay This Amount** | 123,310.63 |



TO:   PAWEL RZECZKOWSKI

Date:      February 4, 2022
Invoice:   1057075
Client:    0101070.0000

Re: Dissolution of Marriage

**To Professional Services**

| | | Rate | Hours | Amount |
|---|---|---|---|---|
| | **LORI J. KRZMARZICK: Paralegal** | | | |
| 01-04-22 | Trial preparation; file and document management. | 265.00 | 3.00 | 795.00 |
| 01-05-22 | Conference with Mr. Due; assist with trial preparation. | 265.00 | 0.75 | 198.75 |
| 01-06-22 | Telephone call from and e-mail to Mr. Hiley; e-mail to Mr. Due. | 265.00 | 0.20 | 53.00 |
| 01-10-22 | E-mail from Mr. Due; arrange to order trial transcripts. | 265.00 | 0.30 | 79.50 |
| 01-12-22 | Follow up on transcript requests. | 265.00 | 0.20 | 53.00 |
| 01-13-22 | E-mail from Mr. Due; e-mail to opposing counsel's office and to court reporter; arrange for transcript. | 265.00 | 0.50 | 132.50 |
| 01-19-22 | Review correspondence between counsel regarding transcript. | 265.00 | 0.20 | 53.00 |
| 01-20-22 | Review letter from opposing counsel. | 265.00 | 0.10 | 26.50 |
| | Total Current Professional Services | | 5.25 | 1,391.25 |

**To Disbursements**

| | | | |
|---|---|---|---|
| 01-13-22 | Mindy Anderson--Court Reporter services for Trial Transcripts | 2,625.00 | |
| | Total Current Disbursements: | | 2,625.00 |

**Total Current Services and Disbursements**  $  **4,016.25**

**Balance Outstanding on this Matter as of 02-04-22**  119,294.38

**TOTAL DUE, PLEASE PAY THIS AMOUNT  RE: Dissolution of Marriage**  $  **123,310.63**

**DeWitt** LLP : Law : Firm

Date:       February 4, 2022
Invoice:    1057075
Page:       2

**YEAR TO DATE BILLING**

YTD Fees                      70,198.45

YTD Disbursements              3,295.89

YTD Total                     73,494.34

Professional Services, Current Invoice Summary

| | | |
|---|---|---|
| Total Hours Reflected on Current Invoice | 5.25 | |
| Total Fees Reflected on Current Invoice | | 1,391.25 |
| Total Costs Reflected on Current Invoice | | 2,625.00 |
| TOTAL CURRENT FEES AND COSTS | | 4,016.25 |

Professional Services, Total Since Inception

| | | |
|---|---|---|
| Total Hours Worked Since Inception | 352.89 | |
| Total Fees Billed Since Inception | | 131,543.45 |
| Total Costs Billed Since Inception | | 6,767.18 |
| TOTAL FEES AND COSTS BILLED SINCE INCEPTION | | 138,310.63 |



| | |
|---|---|
| Date: | February 4, 2022 |
| Invoice: | 1057075 |
| Page: | 3 |

**Summary of Unpaid Balance**
**RZECZKOWSKI, PAWEL**
**Client: 0101070.0000**

| Invoice Date | Invoice Number | Invoice Amount | Remaining Balance Due |
|---|---|---|---|
| 04-14-21 | 1030633 | 5,351.50 | 4,016.50 |
| 05-06-21 | 1032461 | 26,037.09 | 26,037.09 |
| 06-09-21 | 1035758 | 7,330.00 | 7,330.00 |
| 08-04-21 | 1040539 | 72.00 | 72.00 |
| 09-07-21 | 1043448 | 7,592.00 | 7,592.00 |
| 10-11-21 | 1046734 | 2,722.70 | 2,722.70 |
| 11-08-21 | 1048987 | 2,046.00 | 2,046.00 |
| 01-13-22 | 1055186 | 69,478.09 | 69,478.09 |
| 02-04-22 | 1057075 | 4,016.25 | 4,016.25 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT**          $          123,310.63
**RE: Dissolution of Marriage**



TO:    PAWEL RZECZKOWSKI

Date:      March 6, 2022
Invoice:   1059910
Client:    0101070.0000

Re: Dissolution of Marriage

## Invoice Summary

| | |
|---|---|
| **Total Current Fees** | 1,317.50 |
| **Total Current Disbursements** | 598.50 |
| **Total Current Fees & Disbursements** | 1,916.00 |
| **Balance Outstanding as of 03-06-22** | 123,310.63 |
| **Less Amount Applied From Trust** | 0.00 |
| **Total Due, Please Pay This Amount** | 125,226.63 |



TO:    PAWEL RZECZKOWSKI

| | |
|---|---|
| Date: | March 6, 2022 |
| Invoice: | 1059910 |
| Client: | 0101070.0000 |

Re: Dissolution of Marriage

| | To Professional Services | Rate | Hours | Amount |
|---|---|---|---|---|
| | **JAMES R. TODD** | | | |
| 02-28-22 | Begin thorough review of trial transcript and take notes re same for draft J&D; | 395.00 | 1.50 | 592.50 |
| 03-03-22 | Meet with RWD to discuss proposed findings and J&D; continue review of transcript and notes re same. | 395.00 | 1.50 | 592.50 |
| | **LORI J. R. KRZMARZICK: Paralegal** | | | |
| 02-28-22 | E-mail from and to court reporter; assemble trial transcripts. | 265.00 | 0.50 | 132.50 |
| | Total Current Professional Services | | 3.50 | 1,317.50 |

| | To Disbursements | | | |
|---|---|---|---|---|
| 01-31-22 | Abdo - Report and services | | 598.50 | |
| 02-11-22 | Cancellation of: Zak Chesson--Witness fee | | -20.00 | |
| 02-11-22 | Hennepin County Treasurer - Zak Chesson witness fee | | 20.00 | |
| | Total Current Disbursements: | | 598.50 | |

**Total Current Services and Disbursements**                              $    1,916.00

**Balance Outstanding on this Matter as of 03-06-22**                          123,310.63



| | |
|---|---|
| Date: | March 6, 2022 |
| Invoice: | 1059910 |
| Page: | 2 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT  RE: Dissolution of Marriage**   $   125,226.63

**YEAR TO DATE BILLING**

YTD Fees                     71,515.95

YTD Disbursements          3,894.39

YTD Total                    75,410.34

Professional Services, Current Invoice Summary

| | | |
|---|---|---|
| Total Hours Reflected on Current Invoice | 3.50 | |
| Total Fees Reflected on Current Invoice | | 1,317.50 |
| Total Costs Reflected on Current Invoice | | 598.50 |
| TOTAL CURRENT FEES AND COSTS | | 1,916.00 |

Professional Services, Total Since Inception

| | | |
|---|---|---|
| Total Hours Worked Since Inception | 356.39 | |
| Total Fees Billed Since Inception | | 132,860.95 |
| Total Costs Billed Since Inception | | 7,365.68 |
| TOTAL FEES AND COSTS BILLED SINCE INCEPTION | | 140,226.63 |



| Date: | March 6, 2022 |
|---|---|
| Invoice: | 1059910 |
| Page: | 3 |

**Summary of Unpaid Balance**
**RZECZKOWSKI, PAWEL**
**Client: 0101070.0000**

| Invoice Date | Invoice Number | Invoice Amount | Remaining Balance Due |
|---|---|---|---|
| 04-14-21 | 1030633 | 5,351.50 | 4,016.50 |
| 05-06-21 | 1032461 | 26,037.09 | 26,037.09 |
| 06-09-21 | 1035758 | 7,330.00 | 7,330.00 |
| 08-04-21 | 1040539 | 72.00 | 72.00 |
| 09-07-21 | 1043448 | 7,592.00 | 7,592.00 |
| 10-11-21 | 1046734 | 2,722.70 | 2,722.70 |
| 11-08-21 | 1048987 | 2,046.00 | 2,046.00 |
| 01-13-22 | 1055186 | 69,478.09 | 69,478.09 |
| 02-04-22 | 1057075 | 4,016.25 | 4,016.25 |
| 03-06-22 | 1059910 | 1,916.00 | 1,916.00 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT**          $          125,226.63
**RE: Dissolution of Marriage**



TO:   PAWEL RZECZKOWSKI

Date:     April 13, 2022
Invoice:  1063749
Client:   0101070.0000

Re: Dissolution of Marriage

## Invoice Summary

| | |
|---|---|
| **Total Current Fees** | 24,494.00 |
| **Total Current Disbursements** | 0.00 |
| **Total Current Fees & Disbursements** | 24,494.00 |
| **Balance Outstanding as of 04-13-22** | 125,226.63 |
| **Less Amount Applied From Trust** | 0.00 |
| **Total Due, Please Pay This Amount** | 149,720.63 |



TO: PAWEL RZECZKOWSKI

Date: April 13, 2022
Invoice: 1063749
Client: 0101070.0000

Re: Dissolution of Marriage

| To Professional Services | Rate | Hours | Amount |
|---|---|---|---|
| **ROBERT W. DUE** | | | |
| 03-19-22 Work on proposed findings. | 495.00 | 4.00 | 1,980.00 |
| 03-20-22 Drafting proposed findings and final argument. | 495.00 | 13.00 | 6,435.00 |
| 03-21-22 Finalize proposed findings and final argument. | 495.00 | 1.00 | 495.00 |
| **JAMES R. TODD** | | | |
| 03-14-22 Begin draft findings and judgment and decree; continue thorough review of trial notes and transcript for same. | 395.00 | 9.70 | 3,831.50 |
| 03-16-22 Continue draft findings. | 395.00 | 3.50 | 1,382.50 |
| 03-17-22 Continue draft findings and J&D. | 395.00 | 11.40 | 4,503.00 |
| 03-18-22 Continue and finalize draft J&D; draft post-trial closing argument. | 395.00 | 11.70 | 4,621.50 |
| **LORI J. R. KRZMARZICK: Paralegal** | | | |
| 03-21-22 Review and edit Final Argument and Proposed Decree; e-mail to and from Mr. Due; submit final submissions to court and counsel; e-serve and e-file same. | 265.00 | 4.50 | 1,192.50 |
| 03-22-22 Conference with Mr. Due; e-mail to client. | 265.00 | 0.20 | 53.00 |
| Total Current Professional Services | | 59.00 | 24.494.00 |

**Total Current Services and Disbursements**     $    **24,494.00**

**Balance Outstanding on this Matter as of 04-13-22**     **125,226.63**

**TOTAL DUE, PLEASE PAY THIS AMOUNT RE: Dissolution of Marriage**     $    **149,720.63**

# DeWitt : Law Firm

| | |
|---|---|
| Date: | April 13, 2022 |
| Invoice: | 1063749 |
| Page: | 2 |

## YEAR TO DATE BILLING

| | |
|---|---|
| YTD Fees | 96,009.95 |
| YTD Disbursements | 3,894.39 |
| YTD Total | 99,904.34 |

### Professional Services, Current Invoice Summary

| | | |
|---|---|---|
| Total Hours Reflected on Current Invoice | 59.00 | |
| Total Fees Reflected on Current Invoice | | 24,494.00 |
| Total Costs Reflected on Current Invoice | | 0.00 |
| TOTAL CURRENT FEES AND COSTS | | 24,494.00 |

### Professional Services, Total Since Inception

| | | |
|---|---|---|
| Total Hours Worked Since Inception | 415.39 | |
| Total Fees Billed Since Inception | | 157,354.95 |
| Total Costs Billed Since Inception | | 7,365.68 |
| TOTAL FEES AND COSTS BILLED SINCE INCEPTION | | 164,720.63 |



| | |
|---|---|
| Date: | April 13, 2022 |
| Invoice: | 1063749 |
| Page: | 3 |

**Summary of Unpaid Balance**
**RZECZKOWSKI, PAWEL**
**Client: 0101070.0000**

| Invoice Date | Invoice Number | Invoice Amount | Remaining Balance Due |
|---|---|---|---|
| 04-14-21 | 1030633 | 5,351.50 | 4,016.50 |
| 05-06-21 | 1032461 | 26,037.09 | 26,037.09 |
| 06-09-21 | 1035758 | 7,330.00 | 7,330.00 |
| 08-04-21 | 1040539 | 72.00 | 72.00 |
| 09-07-21 | 1043448 | 7,592.00 | 7,592.00 |
| 10-11-21 | 1046734 | 2,722.70 | 2,722.70 |
| 11-08-21 | 1048987 | 2,046.00 | 2,046.00 |
| 01-13-22 | 1055186 | 69,478.09 | 69,478.09 |
| 02-04-22 | 1057075 | 4,016.25 | 4,016.25 |
| 03-06-22 | 1059910 | 1,916.00 | 1,916.00 |
| 04-13-22 | 1063749 | 24,494.00 | 24,494.00 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT**          $          149,720.63
**RE: Dissolution of Marriage**



TO:    PAWEL RZECZKOWSKI

Date:      July 13, 2022
Invoice:   1071838
Client:    0101070.0000

Re: Dissolution of Marriage

### Invoice Summary

| | |
|---|---:|
| **Total Current Fees** | 6,136.50 |
| **Total Current Disbursements** | 0.00 |
| **Total Current Fees & Disbursements** | 6,136.50 |
| **Balance Outstanding as of 07-13-22** | 149,720.63 |
| **Less Amount Applied From Trust** | 0.00 |
| **Total Due, Please Pay This Amount** | 155,857.13 |



TO:   PAWEL RZECZKOWSKI

|        |            |
|--------|------------|
| Date:  | July 13, 2022 |
| Invoice: | 1071838 |
| Client: | 0101070.0000 |

Re: Dissolution of Marriage

---

**To Professional Services**

|  |  | Rate | Hours | Amount |
|--|--|------|-------|--------|

**JAMES R. TODD**

| Date | Description | Rate | Hours | Amount |
|------|-------------|------|-------|--------|
| 06-30-22 | Begin draft appellate statement of case. | 395.00 | 4.10 | 1,619.50 |
| 06-30-22 | Continue statement of case; perform legal research into need-based attorney fees issue. | 395.00 | 3.30 | 1,303.50 |
| 07-01-22 | Finalize statement of case; draft and send email to RWD with same attached for RWD's review. | 395.00 | 4.50 | 1,777.50 |
| 07-06-22 | Receive and review email from RWD re statement of case and review updated copy of the same; emails with RWD re same. | 395.00 | 0.50 | 197.50 |
| 07-07-22 | Receive and review forwarded emails from RWD re OC's request for hearing on motion for amended findings while appeal is pending; extensive legal research on same; draft and send reply email to RWD with email memorandum re same. | 395.00 | 2.40 | 948.00 |
| 07-08-22 | Receive and review email from RWD re anticipated motion from OC in COA; draft and send lengthy reply email re same in anticipation of COA motions from OP. | 395.00 | 0.40 | 158.00 |

**LORI J. R. KRZMARZICK: Paralegal**

| Date | Description | Rate | Hours | Amount |
|------|-------------|------|-------|--------|
| 06-27-22 | Review documents from court and opposing counsel; arrange to obtain certified copy of decree; telephone call to court of appeals. | 265.00 | 0.30 | 79.50 |
| 06-29-22 | Arrange to obtain certified copy of order. | 265.00 | 0.20 | 53.00 |

|  |  | Hours | Amount |
|--|--|-------|--------|
| | Total Current Professional Services | 15.70 | 6,136.50 |

**Total Current Services and Disbursements**    $    **6,136.50**

**Balance Outstanding on this Matter as of 07-13-22**    **149,720.63**



| | |
|---|---|
| Date: | July 13, 2022 |
| Invoice: | 1071838 |
| Page: | 2 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT  RE: Dissolution of Marriage**　　　　　　　　　$   155,857.13

### YEAR TO DATE BILLING

YTD Fees                102,146.45

YTD Disbursements          3,894.39

YTD Total               106,040.84

Professional Services, Current Invoice Summary

| | | |
|---|---|---|
| Total Hours Reflected on Current Invoice | 15.70 | |
| Total Fees Reflected on Current Invoice | | 6,136.50 |
| Total Costs Reflected on Current Invoice | | 0.00 |
| TOTAL CURRENT FEES AND COSTS | | 6,136.50 |

Professional Services, Total Since Inception

| | | |
|---|---|---|
| Total Hours Worked Since Inception | 431.09 | |
| Total Fees Billed Since Inception | | 163,491.45 |
| Total Costs Billed Since Inception | | 7,365.68 |
| TOTAL FEES AND COSTS BILLED SINCE INCEPTION | | 170,857.13 |



Date: July 13, 2022
Invoice: 1071838
Page: 3

**Summary of Unpaid Balance**
**RZECZKOWSKI, PAWEL**
**Client: 0101070.0000**

| Invoice Date | Invoice Number | Invoice Amount | Remaining Balance Due |
|---|---|---|---|
| 04-14-21 | 1030633 | 5,351.50 | 4,016.50 |
| 05-06-21 | 1032461 | 26,037.09 | 26,037.09 |
| 06-09-21 | 1035758 | 7,330.00 | 7,330.00 |
| 08-04-21 | 1040539 | 72.00 | 72.00 |
| 09-07-21 | 1043448 | 7,592.00 | 7,592.00 |
| 10-11-21 | 1046734 | 2,722.70 | 2,722.70 |
| 11-08-21 | 1048987 | 2,046.00 | 2,046.00 |
| 01-13-22 | 1055186 | 69,478.09 | 69,478.09 |
| 02-04-22 | 1057075 | 4,016.25 | 4,016.25 |
| 03-06-22 | 1059910 | 1,916.00 | 1,916.00 |
| 04-13-22 | 1063749 | 24,494.00 | 24,494.00 |
| 07-13-22 | 1071838 | 6,136.50 | 6,136.50 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT**                    $        155,857.13
**RE: Dissolution of Marriage**



TO:   PAWEL RZECZKOWSKI

|  |  |
|---|---|
| Date: | August 10, 2022 |
| Invoice: | 1074939 |
| Client: | 0101070.0000 |

Re: Dissolution of Marriage

---

### Invoice Summary

| | |
|---|---:|
| **Total Current Fees** | 1,431.00 |
| **Total Current Disbursements** | 718.81 |
| **Total Current Fees & Disbursements** | 2,149.81 |
| **Balance Outstanding as of 08-10-22** | 155,857.13 |
| **Less Amount Applied From Trust** | 0.00 |
| **Total Due, Please Pay This Amount** | 158,006.94 |

---



TO:   PAWEL RZECZKOWSKI

| | |
|---|---|
| Date: | August 10, 2022 |
| Invoice: | 1074939 |
| Client: | 0101070.0000 |

Re: Dissolution of Marriage

---

**To Professional Services**

| | | Rate | Hours | Amount |
|---|---|---|---|---|
| | **LORI J. KRZMARZICK: Paralegal** | | | |
| 07-06-22 | Conference with Mr. Due; review and revise appellate pleadings. | 265.00 | 1.00 | 265.00 |
| 07-07-22 | Assemble documents for appeal; submit to District Court for e-filing and e-service; submit appellate documents to Court of Appeals; review notice of case filing from court of appeals. | 265.00 | 1.50 | 397.50 |
| 07-11-22 | Review correspondence from court of appeals; e-mail and telephone call to court reporter. | 265.00 | 0.25 | 66.25 |
| 07-12-22 | E-mail from and to court reporter; conference with Mr. Due; prepare and revise appellate mediation forms; e-mail to client; e-mail confidential forms to appellate mediation office. | 265.00 | 1.25 | 331.25 |
| 07-13-22 | E-mail from Appellate Mediation Office; e-mail to client. | 265.00 | 0.10 | 26.50 |
| 07-14-22 | Review court reporter's filing and transcript submission. | 265.00 | 0.30 | 79.50 |
| 07-26-22 | E-mail from opposing counsel. | 265.00 | 0.10 | 26.50 |
| 07-27-22 | Review letter from appellate mediation office. | 265.00 | 0.20 | 53.00 |
| 08-02-22 | Letter from opposing counsel. | 265.00 | 0.10 | 26.50 |
| 08-03-22 | Submit correspondence for e-service and e-filing; e-mail to Judge Thomas's chambers; e-mail to client. | 265.00 | 0.30 | 79.50 |
| 08-04-22 | Conference with Mr. Due; e-mail various documents to Ms. Lauhead and counsel for pre-mediation conference. | 265.00 | 0.30 | 79.50 |
| | Total Current Professional Services | | 5.40 | 1,431.00 |

**To Disbursements**

| | | | |
|---|---|---|---|
| 06-27-22 | Certified copy Charge | | 19.00 |
| 06-30-22 | Metro Legal Services, Inc. - Obtain certified copies from Court | | 63.99 |
| 06-30-22 | Metro Legal Services, Inc. - Obtain certified copies from Court | | 73.99 |

---

# DeWitt **LLP** : Law : Firm

| | |
|---|---|
| Date: | August 10, 2022 |
| Invoice: | 1074939 |
| Page: | 2 |

---

**To Disbursements**

| | | |
|---|---|---|
| 07-07-22 | Filing fee | 561.83 |

Total Current Disbursements: 718.81

**Total Current Services and Disbursements**  $ **2,149.81**

**Balance Outstanding on this Matter as of 08-10-22**  **155,857.13**

**TOTAL DUE, PLEASE PAY THIS AMOUNT  RE: Dissolution of Marriage**  $ **158,006.94**

### YEAR TO DATE BILLING

| | |
|---|---|
| YTD Fees | 103,577.45 |
| YTD Disbursements | 4,613.20 |
| YTD Total | 108,190.65 |

Professional Services, Current Invoice Summary

| | | |
|---|---|---|
| Total Hours Reflected on Current Invoice | 5.40 | |
| Total Fees Reflected on Current Invoice | | 1,431.00 |
| Total Costs Reflected on Current Invoice | | 718.81 |
| TOTAL CURRENT FEES AND COSTS | | 2,149.81 |



| | |
|---|---|
| Date: | August 10, 2022 |
| Invoice: | 1074939 |
| Page: | 3 |

**Professional Services, Total Since Inception**

| | | |
|---|---|---|
| Total Hours Worked Since Inception | 436.49 | |
| Total Fees Billed Since Inception | | 164,922.45 |
| Total Costs Billed Since Inception | | 8,084.49 |
| TOTAL FEES AND COSTS BILLED SINCE INCEPTION | | 173,006.94 |

# DeWitt LLP : Law Firm

| Date: | August 10, 2022 |
|-------|-----------------|
| Invoice: | 1074939 |
| Page: | 4 |

**Summary of Unpaid Balance**
**RZECZKOWSKI, PAWEL**
**Client: 0101070.0000**

| Invoice Date | Invoice Number | Invoice Amount | Remaining Balance Due |
|--------------|----------------|----------------|-----------------------|
| 04-14-21 | 1030633 | 5,351.50 | 4,016.50 |
| 05-06-21 | 1032461 | 26,037.09 | 26,037.09 |
| 06-09-21 | 1035758 | 7,330.00 | 7,330.00 |
| 08-04-21 | 1040539 | 72.00 | 72.00 |
| 09-07-21 | 1043448 | 7,592.00 | 7,592.00 |
| 10-11-21 | 1046734 | 2,722.70 | 2,722.70 |
| 11-08-21 | 1048987 | 2,046.00 | 2,046.00 |
| 01-13-22 | 1055186 | 69,478.09 | 69,478.09 |
| 02-04-22 | 1057075 | 4,016.25 | 4,016.25 |
| 03-06-22 | 1059910 | 1,916.00 | 1,916.00 |
| 04-13-22 | 1063749 | 24,494.00 | 24,494.00 |
| 07-13-22 | 1071838 | 6,136.50 | 6,136.50 |
| 08-10-22 | 1074939 | 2,149.81 | 2,149.81 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT**   $   **158,006.94**
**RE: Dissolution of Marriage**



TO:    PAWEL RZECZKOWSKI

Date:      October 12, 2022
Invoice:   1080664
Client:    0101070.0000

Re: Dissolution of Marriage

## Invoice Summary

| | |
|---|---|
| **Total Current Fees** | 754.00 |
| **Total Current Disbursements** | 1,794.38 |
| **Total Current Fees & Disbursements** | 2,548.38 |
| **Balance Outstanding as of 10-12-22** | 158,006.94 |
| **Less Amount Applied From Trust** | 0.00 |
| **Total Due, Please Pay This Amount** | 160,555.32 |



TO:   PAWEL RZECZKOWSKI

| | |
|---|---|
| Date: | October 12, 2022 |
| Invoice: | 1080664 |
| Client: | 0101070.0000 |

Re: Dissolution of Marriage

| To Professional Services | Rate | Hours | Amount |
|---|---|---|---|
| **JAMES R. TODD** | | | |
| 10-11-22   Perform legal research for appellate brief and begin draft memorandum for RWD re same. | 395.00 | 0.50 | 197.50 |
| **LORI J. R. KRZMARZICK: Paralegal** | | | |
| 08-10-22   E-mail to opposing counsel's office. | 265.00 | 0.10 | 26.50 |
| 08-17-22   Review e-mail from and to court. | 265.00 | 0.20 | 53.00 |
| 08-24-22   E-mail regarding motion hearing date. | 265.00 | 0.20 | 53.00 |
| 09-19-22   Review notice from court of appeals. | 265.00 | 0.10 | 26.50 |
| 09-28-22   Conference with Mr. Due; review MNCIS information; assist with preparations for appellate brief. | 265.00 | 1.50 | 397.50 |
| Total Current Professional Services | | 2.60 | 754.00 |

| To Disbursements | | | |
|---|---|---|---|
| 09-12-22   Appellate Mediation with Mary Lauhead OBO Pawel Rzeczkowski | | 1,794.38 | |
| Total Current Disbursements: | | | 1,794.38 |

| | | |
|---|---|---|
| **Total Current Services and Disbursements** | $ | **2,548.38** |
| **Balance Outstanding on this Matter as of 10-12-22** | | **158,006.94** |
| **TOTAL DUE, PLEASE PAY THIS AMOUNT  RE: Dissolution of Marriage** | $ | **160,555.32** |

# DeWitt LLP : Law Firm

| | |
|---|---|
| Date: | October 12, 2022 |
| Invoice: | 1080664 |
| Page: | 2 |

## YEAR TO DATE BILLING

| | |
|---|---|
| YTD Fees | 104,331.45 |
| YTD Disbursements | 6,407.58 |
| YTD Total | 110,739.03 |

Professional Services, Current Invoice Summary

| | | |
|---|---|---|
| Total Hours Reflected on Current Invoice | 2.60 | |
| Total Fees Reflected on Current Invoice | | 754.00 |
| Total Costs Reflected on Current Invoice | | 1,794.38 |
| TOTAL CURRENT FEES AND COSTS | | 2,548.38 |

Professional Services, Total Since Inception

| | | |
|---|---|---|
| Total Hours Worked Since Inception | 439.09 | |
| Total Fees Billed Since Inception | | 165,676.45 |
| Total Costs Billed Since Inception | | 9,878.87 |
| TOTAL FEES AND COSTS BILLED SINCE INCEPTION | | 175,555.32 |



Date:      October 12, 2022
Invoice:   1080664
Page:      3

### Summary of Unpaid Balance
### RZECZKOWSKI, PAWEL
### Client: 0101070.0000

| Invoice Date | Invoice Number | Invoice Amount | Remaining Balance Due |
|---|---|---|---|
| 04-14-21 | 1030633 | 5,351.50 | 4,016.50 |
| 05-06-21 | 1032461 | 26,037.09 | 26,037.09 |
| 06-09-21 | 1035758 | 7,330.00 | 7,330.00 |
| 08-04-21 | 1040539 | 72.00 | 72.00 |
| 09-07-21 | 1043448 | 7,592.00 | 7,592.00 |
| 10-11-21 | 1046734 | 2,722.70 | 2,722.70 |
| 11-08-21 | 1048987 | 2,046.00 | 2,046.00 |
| 01-13-22 | 1055186 | 69,478.09 | 69,478.09 |
| 02-04-22 | 1057075 | 4,016.25 | 4,016.25 |
| 03-06-22 | 1059910 | 1,916.00 | 1,916.00 |
| 04-13-22 | 1063749 | 24,494.00 | 24,494.00 |
| 07-13-22 | 1071838 | 6,136.50 | 6,136.50 |
| 08-10-22 | 1074939 | 2,149.81 | 2,149.81 |
| 10-12-22 | 1080664 | 2,548.38 | 2,548.38 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT**          $          160,555.32
**RE: Dissolution of Marriage**

# DeWitt LLP : Law Firm

TO:    PAWEL RZECZKOWSKI

| | |
|---|---|
| Date: | December 8, 2022 |
| Invoice: | 1085999 |
| Client: | 0101070.0000 |

Re: Dissolution of Marriage

## Invoice Summary

| | |
|---|---|
| **Total Current Fees** | 41,649.00 |
| **Total Current Disbursements** | 600.00 |
| **Total Current Fees & Disbursements** | 42,249.00 |
| **Balance Outstanding as of 12-08-22** | 160,555.32 |
| **Less Amount Applied From Trust** | 0.00 |
| **Total Due, Please Pay This Amount** | 202,804.32 |



TO:    PAWEL RZECZKOWSKI

Date:       December 8, 2022
Invoice:    1085999
Client:     0101070.0000

Re: Dissolution of Marriage

| | To Professional Services | Rate | Hours | Amount |
|---|---|---|---|---|
| | **ROBERT W. DUE** | | | |
| 10-14-22 | File review in preparation for drafting appellant's brief. | 495.00 | 8.00 | 3,960.00 |
| 10-15-22 | Drafting appellant's brief. | 495.00 | 6.00 | 2,970.00 |
| 10-16-22 | Drafting appellant's brief. | 495.00 | 6.00 | 2,970.00 |
| 10-18-22 | Finish drafting appellant's brief. | 495.00 | 4.00 | 1,980.00 |
| 11-22-22 | Review Respondent's Brief. | 495.00 | 1.00 | 495.00 |
| 11-29-22 | Review, revise, and edit Reply Brief. | 495.00 | 6.00 | 2,970.00 |
| | **JAMES R. TODD** | | | |
| 10-12-22 | Continue appellate case law research. | 395.00 | 4.00 | 1,580.00 |
| 10-13-22 | Continue legal appellate case law research and update to memorandum for RWD. | 395.00 | 2.20 | 869.00 |
| 10-13-22 | Finalize legal research and memorandum to RWD re same. | 395.00 | 3.40 | 1,343.00 |
| 10-13-22 | Confer with RWD re comity research; review COA opinion and case cited therein re comity issue. | 395.00 | 0.20 | 79.00 |
| 10-14-22 | Review draft section from trial memorandum to begin providing appellate cites from record for same. | 395.00 | 0.80 | 316.00 |
| 10-17-22 | Thoroughly review RWD draft appellate brief; | 395.00 | 5.00 | 1,975.00 |
| 10-18-22 | Receive, review, and thoroughly edit RWD draft appellate brief including providing citations throughout same and work with RWD to edit same. | 395.00 | 6.60 | 2,607.00 |
| 10-18-22 | Review draft TOC and insert pagination in conjunction with final review of brief to be filed tomorrow morning. | 395.00 | 1.10 | 434.50 |
| 11-23-22 | Thoroughly review response brief and conduct legal research re same in advance of meeting with RWD this morning to outline reply memorandum; meet with RWD to discuss same at length. | 395.00 | 2.50 | 987.50 |
| 11-27-22 | Continue draft reply brief. | 395.00 | 8.10 | 3,199.50 |
| 11-28-22 | Continue work on reply brief. | 395.00 | 5.00 | 1,975.00 |
| 11-29-22 | Continue draft appellate reply brief for RWD's review. | 395.00 | 3.50 | 1,382.50 |

# DeWitt ⦂ Law Firm

| | | | |
|---|---|---|---|
| Date: | December 8, 2022 | | |
| Invoice: | 1085999 | | |
| Page: | 2 | | |

**To Professional Services**

| | | Rate | Hours | Amount |
|---|---|---|---|---|
| 11-29-22 | Continue and finalize appellate reply brief; print and deliver to RWD for review. | 395.00 | 6.40 | 2,528.00 |
| 11-30-22 | Draft first draft of additional section in reply brief re Peruvian case et al per RWD email; draft and send reply email with proposed footnote language in same. | 395.00 | 1.00 | 395.00 |
| 11-30-22 | Review and thoroughly edit final reply brief as edited by RWD; draft and send email to RWD re same; perform final review and edits and edit Table of Contents; exchange emails with RWD re same. | 395.00 | 2.10 | 829.50 |

**LORI J. R. KRZMARZICK: Paralegal**

| | | Rate | Hours | Amount |
|---|---|---|---|---|
| 10-04-22 | Appeal preparation. | 265.00 | 1.00 | 265.00 |
| 10-06-22 | Review pleadings and MNCIS court file documents; assemble pleadings for appeal. | 265.00 | 6.00 | 1,590.00 |
| 10-11-22 | Review court file; retrieve various pleadings; assist with appellate preparation. | 265.00 | 1.50 | 397.50 |
| 10-12-22 | Appeal preparation. | 265.00 | 1.00 | 265.00 |
| 10-13-22 | Assist with appellate brief preparation. | 265.00 | 1.50 | 397.50 |
| 10-18-22 | Assist with preparing appellate brief. | 265.00 | 4.50 | 1,192.50 |
| 10-19-22 | Assist with finalizing appellate brief and addendum; submit same for e-service and e-filing; telephone call to court of appeals; conference with attorneys; letter and e-mail to opposing counsel; e-mail to client; submit affidavit of service by mail to court of appeals. | 265.00 | 2.50 | 662.50 |
| 10-20-22 | Check appeal status. | 265.00 | 0.20 | 53.00 |
| 10-26-22 | E-mail mediation materials to Mr. McGrath and opposing counsel. | 265.00 | 0.20 | 53.00 |
| 10-27-22 | E-mail to Dr. Kodalen. | 265.00 | 0.20 | 53.00 |
| 11-09-22 | E-mail from court clerk. | 265.00 | 0.10 | 26.50 |
| 11-21-22 | Download Brief and Appendix from opposing counsel. | 265.00 | 0.20 | 53.00 |
| 11-30-22 | Conference with Mr. Due; assist with preparing Reply Brief, table of contents and table of authorities. | 265.00 | 3.00 | 795.00 |

| | | | Hours | Amount |
|---|---|---|---|---|
| | Total Current Professional Services | | 104.80 | 41,649.00 |

# DeWitt ⸱ Law Firm

| | | |
|---|---|---|
| Date: | December 8, 2022 | |
| Invoice: | 1085999 | |
| Page: | 3 | |

**To Disbursements**

| 10-31-22 | Dispute Resolution | 600.00 |
|---|---|---|
| | Total Current Disbursements: | 600.00 |

| | | |
|---|---|---|
| **Total Current Services and Disbursements** | $ | **42,249.00** |
| **Balance Outstanding on this Matter as of 12-08-22** | | 160,555.32 |
| **TOTAL DUE, PLEASE PAY THIS AMOUNT RE: Dissolution of Marriage** | $ | **202,804.32** |

## YEAR TO DATE BILLING

| | |
|---|---|
| YTD Fees | 145,980.45 |
| YTD Disbursements | 7,007.58 |
| YTD Total | 152,988.03 |

Professional Services, Current Invoice Summary

| | | |
|---|---|---|
| Total Hours Reflected on Current Invoice | 104.80 | |
| Total Fees Reflected on Current Invoice | | 41,649.00 |
| Total Costs Reflected on Current Invoice | | 600.00 |
| TOTAL CURRENT FEES AND COSTS | | 42,249.00 |

# DeWitt ⸬ Law Firm

| | |
|---|---|
| Date: | December 8, 2022 |
| Invoice: | 1085999 |
| Page: | 4 |

---

<u>Professional Services, Total Since Inception</u>

| | | |
|---|---|---|
| Total Hours Worked Since Inception | 543.89 | |
| Total Fees Billed Since Inception | | 207,325.45 |
| Total Costs Billed Since Inception | | 10,478.87 |
| TOTAL FEES AND COSTS BILLED SINCE INCEPTION | | 217,804.32 |

# DeWitt LLP ● Law ● Firm

Date:     December 8, 2022
Invoice:  1085999
Page:     5

---

**Summary of Unpaid Balance**
**RZECZKOWSKI, PAWEL**
**Client: 0101070.0000**

| Invoice Date | Invoice Number | Invoice Amount | Remaining Balance Due |
|---|---|---|---|
| 04-14-21 | 1030633 | 5,351.50 | 4,016.50 |
| 05-06-21 | 1032461 | 26,037.09 | 26,037.09 |
| 06-09-21 | 1035758 | 7,330.00 | 7,330.00 |
| 08-04-21 | 1040539 | 72.00 | 72.00 |
| 09-07-21 | 1043448 | 7,592.00 | 7,592.00 |
| 10-11-21 | 1046734 | 2,722.70 | 2,722.70 |
| 11-08-21 | 1048987 | 2,046.00 | 2,046.00 |
| 01-13-22 | 1055186 | 69,478.09 | 69,478.09 |
| 02-04-22 | 1057075 | 4,016.25 | 4,016.25 |
| 03-06-22 | 1059910 | 1,916.00 | 1,916.00 |
| 04-13-22 | 1063749 | 24,494.00 | 24,494.00 |
| 07-13-22 | 1071838 | 6,136.50 | 6,136.50 |
| 08-10-22 | 1074939 | 2,149.81 | 2,149.81 |
| 10-12-22 | 1080664 | 2,548.38 | 2,548.38 |
| 12-08-22 | 1085999 | 42,249.00 | 42,249.00 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT**          $          202,804.32
**RE: Dissolution of Marriage**



TO:    PAWEL RZECZKOWSKI

Date:      February 7, 2023
Invoice:   1091720
Client:    0101070.0000

Re: Dissolution of Marriage

### Invoice Summary

| | |
|---|---|
| **Total Current Fees** | 13,968.00 |
| **Total Current Disbursements** | 40.00 |
| **Total Current Fees & Disbursements** | 14,008.00 |
| **Balance Outstanding as of 02-07-23** | 202,804.32 |
| **Less Amount Applied From Trust** | 0.00 |
| **Total Due, Please Pay This Amount** | 216,812.32 |

# DeWitt LLP : Law : Firm

TO:    PAWEL RZECZKOWSKI

Date:       February 7, 2023
Invoice:    1091720
Client:     0101070.0000

Re: Dissolution of Marriage

| | To Professional Services | Rate | Hours | Amount |
|---|---|---|---|---|
| | **ROBERT W. DUE** | | | |
| 01-11-23 | Prepare for oral argument. | 495.00 | 6.00 | 2,970.00 |
| 01-12-23 | Prepare for and attend oral argument at the Court of Appeals. | 495.00 | 4.00 | 1,980.00 |
| | **JAMES R. TODD** | | | |
| 12-01-22 | Final review of reply brief; sign, date, and deliver to LK for appellate e-service and e-filing. | 395.00 | 0.90 | 355.50 |
| 12-21-22 | Confer with RWD and LK re filing of certificate of representation in HRO matter; begin thorough review of HRO petition; call client and leave brief VMM re same. | 395.00 | 0.90 | 355.50 |
| 12-21-22 | Brief call with client to discuss minor housekeeping matter and to set up time next week for longer phone conference. | 395.00 | 0.20 | 79.00 |
| 12-28-22 | Thoroughly review petition for HRO and legal research re same (3.6); call client following same and discuss same at length (1.5). | 395.00 | 5.10 | 2,014.50 |
| 01-10-23 | Begin draft memorandum in support of request to deny HRO and conduct legal research for same; print cases and gather case law on legal standard for same. | 395.00 | 1.40 | 553.00 |
| 01-11-23 | Conduct brief legal research for RWD in advance of oral argument at COA tomorrow; confer with RWD following same. | 395.00 | 0.40 | 158.00 |
| 01-11-23 | Conduct additional legal research per RWD in advance of oral argument tomorrow a.m. | 395.00 | 1.50 | 592.50 |
| 01-12-23 | Call client and discuss proposed email to OP. | 395.00 | 0.70 | 276.50 |
| 01-23-23 | Review timeline provided by client of postings; review HRO petition and exhibits likely to be put into evidence by OP; conference with RLF re filing of memorandum and procedural posture of case; brief call with client re same. | 395.00 | 0.60 | 237.00 |
| 01-24-23 | Thoroughly review client timeline and case file and legal research; call client and discuss initial hearing tomorrow and what to expect at length. | 395.00 | 3.60 | 1,422.00 |
| 01-25-23 | Prepare for and attend HRO hearing on behalf of client this a.m.; conference with client following same. | 395.00 | 5.10 | 2,014.50 |



| | Date: | February 7, 2023 |
| | Invoice: | 1091720 |
| | Page: | 2 |

**To Professional Services**

| | | Rate | Hours | Amount |
|---|---|---|---|---|
| 02-02-23 | Receive and review email from RWD forwarded from client; perform brief legal research re ADR ethics; call client to discuss same. | 395.00 | 0.50 | 197.50 |
| 02-06-23 | Receive and review order canceling April 5th motion hearing; draft and send forwarded email to client re same. | 395.00 | 0.30 | 118.50 |

**TARA R. FLOODING**

| | | Rate | Hours | Amount |
|---|---|---|---|---|
| 12-29-22 | review case law and statutes for HRO motion practice timelines for motion to dismiss for JRT. | 275.00 | 0.60 | 165.00 |

**LORI J. R. KRZMARZICK: Paralegal**

| | | Rate | Hours | Amount |
|---|---|---|---|---|
| 12-01-22 | Prepare Reply Brief for submission; e-file and e-serve Reply Brief with Court of Appeals. | 265.00 | 0.50 | 132.50 |
| 12-12-22 | Review Order from Court; e-mail same to client. | 265.00 | 0.20 | 53.00 |
| 12-21-22 | E-mail from Mr. Todd; review HRO pleadings; prepare certificate of representation; submit same for e-filing. | 265.00 | 0.40 | 106.00 |
| 12-22-22 | E-mail from and to Mr. Todd; review e-mail from opposing counsel; review HRO pleadings. | 265.00 | 0.50 | 132.50 |
| 01-11-23 | E-mail from and to Mr. Due. | 275.00 | 0.20 | 55.00 |
| | Total Current Professional Services | | 33.60 | 13,968.00 |

**To Disbursements**

| | | | | |
|---|---|---|---|---|
| 12-29-22 | Certified Copy | | | 40.00 |
| | Total Current Disbursements: | | | 40.00 |

**Total Current Services and Disbursements**        $   **14,008.00**

# DeWitt :: Law Firm

| | |
|---|---|
| Date: | February 7, 2023 |
| Invoice: | 1091720 |
| Page: | 3 |

**Balance Outstanding on this Matter as of 02-07-23**                          202,804.32

**TOTAL DUE, PLEASE PAY THIS AMOUNT  RE: Dissolution of
Marriage**                                                          $   216,812.32

## YEAR TO DATE BILLING

| | |
|---|---|
| YTD Fees | 13,968.00 |
| YTD Disbursements | 40.00 |
| YTD Total | 14,008.00 |

### Professional Services, Current Invoice Summary

| | | |
|---|---|---|
| Total Hours Reflected on Current Invoice | 33.60 | |
| Total Fees Reflected on Current Invoice | | 13,968.00 |
| Total Costs Reflected on Current Invoice | | 40.00 |
| TOTAL CURRENT FEES AND COSTS | | 14,008.00 |

### Professional Services, Total Since Inception

| | | |
|---|---|---|
| Total Hours Worked Since Inception | 577.49 | |
| Total Fees Billed Since Inception | | 221,293.45 |
| Total Costs Billed Since Inception | | 10,518.87 |
| TOTAL FEES AND COSTS BILLED SINCE INCEPTION | | 231,812.32 |



Date:      February 7, 2023
Invoice:   1091720
Page:      4

---

**Summary of Unpaid Balance**
**RZECZKOWSKI, PAWEL**
**Client: 0101070.0000**

| Invoice Date | Invoice Number | Invoice Amount | Remaining Balance Due |
|---|---|---|---|
| 04-14-21 | 1030633 | 5,351.50 | 4,016.50 |
| 05-06-21 | 1032461 | 26,037.09 | 26,037.09 |
| 06-09-21 | 1035758 | 7,330.00 | 7,330.00 |
| 08-04-21 | 1040539 | 72.00 | 72.00 |
| 09-07-21 | 1043448 | 7,592.00 | 7,592.00 |
| 10-11-21 | 1046734 | 2,722.70 | 2,722.70 |
| 11-08-21 | 1048987 | 2,046.00 | 2,046.00 |
| 01-13-22 | 1055186 | 69,478.09 | 69,478.09 |
| 02-04-22 | 1057075 | 4,016.25 | 4,016.25 |
| 03-06-22 | 1059910 | 1,916.00 | 1,916.00 |
| 04-13-22 | 1063749 | 24,494.00 | 24,494.00 |
| 07-13-22 | 1071838 | 6,136.50 | 6,136.50 |
| 08-10-22 | 1074939 | 2,149.81 | 2,149.81 |
| 10-12-22 | 1080664 | 2,548.38 | 2,548.38 |
| 12-08-22 | 1085999 | 42,249.00 | 42,249.00 |
| 02-07-23 | 1091720 | 14,008.00 | 14,008.00 |

**TOTAL DUE, PLEASE PAY THIS AMOUNT**                    $         216,812.32
**RE: Dissolution of Marriage**

# EXHIBIT 5

2024 WL 4926223
Only the Westlaw citation is currently available.

NOTICE: THIS DECISION IS NONPRECEDENTIAL
EXCEPT AS PROVIDED BY MINN. R. CIV. APP. P.
136.01(1)(C) AND MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.

In re the Marriage of: Pawel Dominik
RZECZKOWSKI, petitioner, Appellant,
v.
Carolina Uribe BORRERO, Respondent.

A24-0059
|
Filed December 2, 2024
|
Denied February 26, 2025

Hennepin County District Court, File No. 27-FA-19-6324

**Attorneys and Law Firms**

Robert W. Due, James R. Todd, DeWitt LLP,
Minneapolis, Minnesota (for appellant)

John DeWalt, Melissa Chawla, DeWalt, Chawla +
Saksena, LLC, Minneapolis, Minnesota (for respondent)

Considered and decided by Schmidt, Presiding Judge;
Ross, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

ROSS, Judge

**\*1** Pawel Rzeczkowski and Carolina Borrero executed a
postnuptial agreement in Colombia in 2011 and divorced
in Minnesota in 2019. In this appeal from the judgment
and decree after remand, Rzeczkowski argues that the
postnuptial agreement is unconscionable and therefore
unenforceable because it leaves Borrero with a
disproportionate amount of the couple's wealth. He also
maintains that he is entitled to need-based attorney fees.
We hold that the district court's evidentially supported
fact findings support its decision that the postnuptial
agreement is not unconscionable. But we conclude that
the district court abused its discretion by refusing to
award Rzeczkowski any attorney fees incurred pursuing
good-faith claims in district court and on appeal. We
therefore affirm in part, reverse in part, and remand to the
district court for further findings on the issue of attorney
fees.

**FACTS**

Pawel Rzeczkowski and Carolina Borrero married in
Colombia in October 2011. Two days after they wed, they
executed a dissolution and liquidation of marital
partnership agreement (DLMP), which is a valid
postnuptial agreement under Colombian law. The DLMP
was designed to keep Rzeczkowski's and Borrero's
finances and property separate during the marriage by
dissolving and liquidating their marital estate immediately
upon execution of the DLMP.

Rzeczkowski consulted with attorneys to ensure that the
agreement would be enforceable in the United States
before moving with Borrero to New York in 2013. They
later moved to Atlanta, where Borrero gave birth to twins
in 2015, and they eventually moved to Minnesota.

Both parties had substantial earning capacity, but only
Borrero engaged in steady employment throughout the
marriage. Borrero worked for Pfizer, Coca-Cola, and
Cargill, earning a substantial income and acquiring
considerable assets. By contrast, Rzeczkowski generally
remained unemployed or obtained intermittent
employment at startup companies. An exception occurred
during a six-month period after they moved to Minnesota,
where Rzeczkowski worked for Thrivent Financial and
earned about $130,000.

Rzeczkowski petitioned for marriage dissolution in
September 2019. Borrero sought to enforce the DLMP.
Rzeczkowski countered, arguing that the DLMP is
unenforceable. The district court concluded that the
DLMP constitutes an enforceable agreement and denied
Rzeczkowski's request for need-based attorney fees.

Rzeczkowski appealed to this court, arguing, among other
things, that the DLMP is unenforceable and that he is
entitled to need-based attorney fees. *Rzeczkowski v.
Borrero*, No. A22-0954, 2023 WL 2762442, at \*3–4

(Minn. App. Apr. 3, 2023). We held that the DLMP is a foreign judgment entitled to enforcement as a matter of comity so long as it does not violate Minnesota's public policy against enforcing unconscionable postnuptial agreements. *Id.* at *6–8. We remanded the case to the district court to determine whether enforcement of the DLMP would be unconscionable. *Id.* at *8. Regarding attorney fees, we held that Rzeczkowski had satisfied two of the three requirements of the controlling statute, Minnesota Statutes section 518.14, subdivision 1 (2022), because the district court had already found that he did not have the means to pay his attorney fees and that Borrero did. *Id.* at *12–13. We remanded the case for additional findings on the third requirement, under which the court must assess whether "the fees are necessary for the good faith assertion of the party's rights in the proceeding." *Id.* at *13 (quoting Minn. Stat. § 518.14, subd. 1 (1)). We also issued a separate order instructing the district court to consider Rzeczkowski's request for attorney fees incurred on appeal.

**\*2** On remand, the district court accepted written submissions from the parties but did not hold an evidentiary hearing. It issued an amended judgment, concluding that enforcing the DLMP is not unconscionable. It denied Rzeczkowski's request for attorney fees incurred in the earlier district court proceeding and in the prior appeal.

Rzeczkowski appeals.

## DECISION

Rzeczkowski maintains that the district court erroneously concluded that the DLMP is enforceable because it is not unconscionable. He also argues that the district court abused its discretion by denying his attorney-fee requests. We see no error in the district court's determination that the DLMP is enforceable but agree with Rzeczkowski that the district court abused its discretion when it denied him any attorney fees.

## I

Rzeczkowski argues that the district court applied the wrong legal standard when it decided that enforcing the DLMP is not unconscionable. The primary question we presented to the district court on remand was whether to enforce the foreign judgment (the DLMP) under the

principles of comity or to deem it unenforceable because it violates Minnesota's public policy against unconscionable postnuptial agreements. *Rzeczkowski*, 2023 WL 2762442, at *4, *7–8. "We review a district court's application of the principle of comity for an abuse of discretion." *In re Civ. Commitment of Hand*, 878 N.W.2d 503, 506 (Minn. App. 2016), *rev. denied* (Minn. June 21, 2016). We do not defer to the district court's interpretation of the law concerning unconscionability, but we accept factual findings that are not clearly erroneous. *Kauffman Stewart, Inc. v. Weinbrenner Shoe Co.*, 589 N.W.2d 499, 501 (Minn. App. 1999). We apply this review standard here.

Rzeczkowski contends that the DLMP is unconscionable because it created an "unimaginably harsh result" in the "egregiously disproportionate division of property." A contract, like a marital agreement, is unconscionable if "no man in his senses and not under delusion" would make it and "no honest and fair man" would accept it. *See id.* at 502 (quotation omitted). But a contract is not unconscionable if it is simply an "old-fashioned bad bargain." *Maslowski v. Prospect Funding Partners LLC*, 994 N.W.2d 293, 306 (Minn. 2023) (Moore, III, J., concurring) (quotation omitted). It is not the court's role to save a contracting party from the foreseeable consequences of a contract that ultimately disproportionately favors the other party. The doctrine of unconscionability instead allows courts to render contract provisions unenforceable only when they "are so unfair and one-sided that they shock the conscience." *Id.* (quotation omitted). As we observed in Rzeczkowski's first appeal, the fact that a postnuptial agreement results in a less-favorable division of assets than would have occurred without the agreement does not mean the agreement is unconscionable. *Rzeczkowski*, 2023 WL 2762442, at *7 n.9. Our review of the district court's analysis satisfies us that the district court correctly understood and applied this legal framework.

We first address the factual findings before turning to the district court's legal conclusion. We see no error in the factual findings that the district court relied on in support of its conclusion that the DLMP is not unconscionable. Rzeczkowski does not contest the district court's findings that he was healthy, well-educated, and not under pressure to sign the agreement when he executed it. He also does not challenge the finding that he understood the legal effect of executing the DLMP. And he does not dispute the finding that he took deliberate steps to ensure that the DLMP would be enforceable in the United States before moving here because the agreement benefitted him by protecting his wife's assets from his creditors. These undisputed findings support the district court's broader

determination that enforcing the DLMP is fair.

**\*3** Rzeczkowski focuses his challenge mostly on the time of enforcement, asserting that enforcing an agreement that distributes "\$1.2 million to [Borrero] and zero to [him]" cannot be fair and is therefore unconscionable. Although the district court's amended order after remand did not expressly compute the parties' distribution disparity, the district court implicitly recognized the disparity by incorporating its earlier findings. It recognized Rzeczkowski's inferior financial situation early in the litigation when it awarded him temporary spousal maintenance. And when the district court calculated child-support obligations in its judgment, it found that Rzeczkowski was intentionally underemployed and had earned little income compared to Borrero. When the district court terminated Borrero's spousal-maintenance obligation, it acknowledged that Rzeczkowski was voluntarily unemployed. Finally, the district court received a balance sheet representing Rzeczkowski's and Borrero's respective assets, which we infer the district court relied on when it assessed the totality of the parties' circumstances at the time it addressed the DLMP's implications.

We are not persuaded by Rzeczkowski's contention that the district court erred by failing to apply Minnesota law governing postnuptial agreements and by failing therefore to conclude that the disparity in the parties' wealth is unconscionable. Rzeczkowski maintains that Minnesota Statutes section 519.11 (2022) or *McKee-Johnson v. Johnson*, 444 N.W.2d 259 (Minn. 1989), *overruled in part by Kremer v. Kremer*, 912 N.W.2d 617, 626 (Minn. 2018), govern enforceability of the DLMP. Both sources indicate that, ordinarily, a marital agreement should be assessed for substantive fairness by focusing on the circumstances both at the time of its execution and at the time of its proposed enforcement. But our decision on Rzeczkowski's first appeal observed that, under the unique circumstances of this case, section 519.11 is not the exclusive standard for determining whether the DLMP is enforceable:

> [W]e are not implying that the statute governs whether the DLMP should be enforced. Under the principles of comity, the DLMP is enforceable, subject only to the exceptions to the application of that doctrine, such as the public-policy exception. We cite Minn. Stat. § 519.11 only as an example of an expression of Minnesota's public policy.

*Rzeczkowski*, 2023 WL 2762442, at \*7 n.8. We likewise discussed *McKee-Johnson* without directing the district court to apply its holdings about substantive fairness. *See id.* at \*7 n.9. Rzeczkowski cites no authority to support his proposition that a postnuptial agreement that was validly executed in a foreign country violates Minnesota's public policy against unconscionable postnuptial agreements if, at the time of enforcement, one party benefits substantially more than the other.

And in any event the record informs us that, contrary to Rzeczkowski's contention, the district court did assess the DLMP for substantive fairness at the time of its proposed enforcement. The district court's amended order, which incorporates all the findings of its original judgment, shows that the district court did not limit itself to considering the circumstances of the parties at the time they executed the DLMP. The district court's order on remand begins, "*Enforcement* of the parties' DLMP is not unconscionable." (Emphasis added.) And it concludes, "Considering the totality of the circumstances of these parties and the facts surrounding the execution *and operative effect* of the DLMP, its enforcement in this case is not unconscionable." (Emphasis added.) We are satisfied that the district court properly considered the circumstances that would result from enforcing the DLMP, including the unequal distribution of the parties' wealth.

We add that the district court's findings supporting its conclusion acknowledged some of the circumstances that Rzeczkowski contends the district court failed to adequately address. The district court found, for example, that Rzeczkowski and Borrero had twins who "were not born until 2015," which was almost four years after the parties executed the DLMP. The district court understood that care for the twins had occupied much of each party's time during marriage, based on the findings in the original order that "it is abundantly clear that both parents have participated fully in providing care for the children" and that Rzeczkowski and Borrero "were able to give [the children] equal amounts of guidance, nurturing, and encouragement." Rzeczkowski is correct that the district court made no new findings about several of the parties' geographic moves during marriage. But this court had already detailed those moves in our opinion based on the record developed in district court. *Id.* at \*2. The district court was aware of the effect of the moves and the birth of the twins when it assessed the parties' circumstances related to unconscionability.

**\*4** There is, in short, substantial evidence in the record supporting the district court's conclusion that enforcing the DLMP is not unconscionable. Rzeczkowski signed the agreement with full knowledge of its effect, took steps to ensure it would be enforceable if the parties moved to the United States, and encountered no life changes that the district court considered sufficient to justify invalidating the DLMP. The district court was aware that

Rzeczkowski had previously secured high-earning employment in the United States, and the court was not required or expected to ignore Rzeczkowski's ongoing, willful underemployment as it considered the fairness of holding him to his 2011 agreement to maintain a separate financial life from Borrero. Although the agreement certainly results in a distribution of wealth that significantly favors Borrero, we cannot say that the district court wrongly failed to conclude that it does so unfairly; the record supports the understanding that both parties were capable of gainful, sustained employment resulting in substantial income during the marriage but that only one of them made the effort. The circumstances simply did not require the district court to determine that the result shocks the conscience. We hold that the district court acted within its discretion by concluding that the agreement is enforceable.

## II

Rzeczkowski also contends that the district court erroneously refused to award him need-based attorney fees incurred in the district court and on his prior appeal. We review a district court's attorney-fee determination for an abuse of discretion. *Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999). For the following reasons, we conclude that the district court's attorney-fee analysis reveals an abuse of discretion.

### Attorney Fees Incurred in District Court

We first address the district court's refusal to award need-based attorney fees that Rzeczkowski incurred in the district court proceeding. In a marriage-dissolution action, a district court "shall award attorney fees, costs, and disbursements in an amount necessary to enable a party to carry on or contest the proceeding," as long as the district court finds these three elements:

(1) that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;

(2) that the party from whom fees, costs, and disbursements are sought has the means to pay them; and

(3) that the party to whom fees, costs, and disbursements are awarded does not have the means to

pay them.

Minn. Stat. § 518.14, subd. 1. We remanded the case for the district court to determine attorney fees after we concluded that, based on the district court's findings, Rzeczkowski had already established that he met the second and third statutory elements. *Rzeczkowski*, 2023 WL 2762442, at *13.

We must determine whether the district court properly followed our remand instructions. We framed the remand issue of attorney fees first by recognizing that "the district court [had already] found that the second and third statutory requirements were satisfied—Borrero has the ability to pay attorney fees and Rzeczkowski does not." *Id.* at *12. We then observed that the district court's finding that Rzeczkowski had failed to prove the first statutory requirement (of a good-faith assertion of rights) "relates solely to Rzeczkowski's assertion of rights regarding the validity and enforcement of the DLMP." *Id.* We next pointed out the insufficiency of this finding by highlighting aspects of the case that, in fact, demonstrated that Rzeczkowski had made a good-faith assertion of rights:

> For example, the parties were unable to reach an agreement on legal custody of the children and argued that issue to the district court. The parties presented their own testimony and argument, participated in a custody evaluation, and the custody evaluator and an expert retained by Borrero also testified on the issue. Borrero argued that she should be granted sole legal custody of the children; Rzeczkowski requested joint legal custody. The district court ultimately agreed with Rzeczkowski and awarded the parties joint legal custody. Thus, some of the claimed attorney fees relate to assertions of rights that were made in good faith.

*Id.* Put differently, we recognized that the district court had already found that Rzeczkowski met both the second and third statutory requirements and that, on the first requirement, part of the claimed fees had arisen from the good-faith assertion of rights. It was in this context that we directed the district court to determine "whether Rzeczkowski is entitled to an award of need-based attorney fees for the assertion of other rights that were made in good faith." *Id.* at *13. In other words, the district court was tasked with determining the amount of need-based attorney fees Rzeczkowski is entitled to receive based on his good-faith child-custody claims and any "other rights" that he asserted in good faith.

**\*5** Contrary to those instructions, the district court on remand concluded that Rzeczkowski is not entitled to any attorney fees for any of his claims. The district court wrote that "[a]ny fees generated by [Rzeczkowski's] claims made in good faith were so marginal so as not to

warrant an award in light of [Rzeczkowski's] decision not to work and generate his own income." It also reasoned that Rzeczkowski's affidavit and exhibits submitted to support his attorney-fee request were not sufficiently detailed as to the amount of fees Rzeczkowski incurred pursuing his joint-legal-custody claim. The district court added that the bulk of Rzeczkowski's court filings "have attempted to invalidate contracts that are valid and enforceable under Minnesota law." And contrary to the finding we previously credited, it also found that "[Rzeczkowski] does have the means to pay" his attorney fees. Failing to follow our instructions resulted in an erroneous analysis.

The district court's error included its failure to properly assess Rzeczkowski's claim to attorney fees. The issue of whether Rzeczkowski had the means to pay was beyond the scope of remand and thus was not properly before the district court. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 213 (Minn. 1988) (holding that this court may limit the issues to be considered on remand). And the district court abused its discretion by concluding that the evidence Rzeczkowski's counsel provided was insufficiently specific to calculate an award of attorney fees. For motions seeking an award of attorney fees of at least $1,000, the moving party must submit, among other things, a "detailed itemization" of the fees sought. Minn. R. Gen. Prac. 119. But a district court may award attorney fees based on its own observation and estimate of the value of attorney work. *Nelson v. Ninneman*, 373 N.W.2d 373, 377 (Minn. App. 1985); *Fick v. Fick*, 375 N.W.2d 870, 875 (Minn. App. 1985). And when a district court is familiar with the history of the case and has access to the parties' financial documents, it need not rely solely on an attorney's affidavit regarding fees. *Gully*, 599 N.W.2d at 826. We appreciate that it is difficult to discern from Rzeczkowski's counsel's affidavit and accompanying exhibits precisely which fees correspond to attorney work on the good-faith claims. But the lack of exacting specificity in the affidavit and exhibits should not have led the district court to deny *all* attorney fees. The record provides a means for the district court to estimate reasonable fees. It demonstrates that much of the trial focused on custody issues, which we previously concluded were matters raised in good faith. Two of the four nonparty witnesses who testified at trial testified about custody. A significant portion of Rzeczkowski's posttrial submissions concerned custody. And although Rzeczkowski did not ultimately prevail on his spousal-maintenance claim, an award of attorney fees does not depend on his success. *Phillips v. LaPlante*, 823 N.W.2d 903, 907 (Minn. App. 2012), *rev. denied* (Minn. Aug. 6, 2013). In sum, the district court improperly found that Rzeczkowski does have the means to pay; it

improperly based its fee decision in part on Rzeczkowski's willful unemployment; it improperly deemed too "marginal" Rzeczkowski's fees generated to pursue an issue that we determined was pursued in good faith and that comprises a substantial part of the record; and it improperly rejected Rzeczkowski's attorney-fee request without sufficiently attempting to estimate its amount or conduct an evidentiary hearing after it found the supporting affidavits and invoices imprecise. The district court therefore abused its discretion by refusing to award Rzeczkowski any attorney fees incurred in district court. On this remand, the district court must follow our previous remand instructions as refocused in this opinion.

**Attorney Fees Incurred on Appeal**

This court's separate order regarding appellate attorney fees likewise remanded only the issue of whether Rzeczkowski met the good-faith-claim element:

> **\*6** The district court previously determined that appellant lacks the means to pay his own fees and that [respondent] has the means to contribute to fees. We remanded to the district court for consideration of whether an award of need-based fees was necessary to appellant's assertion of rights pursued in good faith in the district court. Similarly, because appellant obtained some relief on appeal, it would be improper to characterize the appeal as a whole as having been taken in bad faith. Accordingly, we conclude it is appropriate for the district court to address the issue of attorney fees on appeal.

The district court must execute an appellate court's "mandate strictly according to its terms" and it "lacks power to alter, amend, or modify that mandate." *Johnson v. Princeton Pub. Utils. Comm'n*, 899 N.W.2d 860, 868 (Minn. App. 2017) (quotation omitted), *rev. denied* (Minn. Aug. 15, 2017). But on remand here, the district court assessed all three statutory elements and concluded, among other things, that Rzeczkowski failed to prove that he did not have the means to pay attorney fees. The district court's conclusions relating to Rzeczkowski's means again exceeded the scope of our remand instructions.

The district court added that it did "not have a factual basis to apportion any part of the claimed [appellate fees]." But we agree with Rzeczkowski that the affidavit and spreadsheet his attorneys provided to the district court were sufficiently specific for the district court to calculate a fee award on the issues of spousal maintenance, child support, and attorney fees raised in the prior

**Rzeczkowski v. Borrero, Not Reported in N.W. Rptr. (2024)**

appeal—issues that we now clarify were raised and argued in good faith. The district court therefore abused its discretion by denying Rzeczkowski any appellate attorney fees.

Because the evidence in the record shows that a substantial portion of Rzeczkowski's attorney fees incurred in district court and on appeal corresponded to good-faith claims, we remand to the district court to reopen the record to allow the parties to present further evidence and testimony regarding attorney fees and for

the district court to issue fact findings and conclusions of law to resolve the issue.

**Affirmed in part, reversed in part, and remanded.**

**All Citations**

Not Reported in N.W. Rptr., 2024 WL 4926223

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

# EXHIBIT 6

Case 26-40008    Doc 21-1    Filed 03/06/26    Entered 03/06/26 14:34:31    Desc
Case 26-40008    Claim 5-1 Part(s) 1 Filed 02/25/26    Desc Attachment 1    Page 1 of 3
Exhibit(s) 1-6    Pages 144 of 146

27-FA-19-6324

Filed in District Court
State of Minnesota
5/27/2025 10:14 AM

STATE OF MINNESOTA                                        DISTRICT COURT

COUNTY OF HENNEPIN                                   FOURTH JUDICIAL DISTRICT
                                                    FAMILY COURT DIVISION

---

In Re the Marriage of:                          Case Type: Dissolution with Children
                                                 Court File No. 27-FA-19-6324
Pawel Dominik Rzeczkowski,

            Petitioner,                    **SUBSEQUENT ORDER RE:  NEED-BASED
                                            ATTORNEY FEES**

and

Carolina Uribe Borrero,

            Respondent.

---

        The above-entitled matter came before the Honorable Laura M. Thomas, Judge of District
Court, when the Minnesota Court of Appeals remanded the matter to the district court with specific
instructions for awarding Petitioner Pawel Dominik Rzeczkowski need-based attorney fees.

        Petitioner Pawel Dominik Rzeczkowski is a self-represented litigant.

        Respondent Carolina Uribe Borrero is a self-represented litigant.

        Petitioner's former counsel, Robert Due and James Todd of DeWitt, LLP, submit evidence
on their own behalf for purposes of the need-based attorney fee issue.

        Based upon the Minnesota Court of Appeals' non-precedential opinion filed December 2,
2024 (Petition for further review denied on February 26, 2025), and all the files, records and
proceedings herein, the Court makes the following:

## FINDINGS OF FACT

1.  Pursuant to the Minnesota Court of Appeals' directions, the Court reopened the record to
    allow the parties to present further evidence and affidavit testimony regarding need-
    based attorney fees (1) incurred by Husband for trial on January 5, 6, and 7, 2022 (Judge
    Michael Burns, presiding); and (2) incurred by Husband on the first appeal (A22-0954).

2.  Husband's jurisdictional objections set forth in correspondence to the Court on May 15
    and 16, 2025, should be overruled because pursuant to Rule 103.03(b) the trial court
    retains jurisdiction as to matters independent of, supplemental to, or collateral to the
    order or judgment appealed from.  Need-based attorney fees incurred at the 2022 trial,
    and the appeal that followed trial, is an issue independent of Husband's pending appeal.

3.  **Need-Based Fees for Trial**.  In its directions to the district court regarding attorney fees
    Husband incurred during the trial, the Court of Appeals refers to custody and spousal
    maintenance as good faith claims pursued by Husband that deserve an award of need-
    based attorney fees.

1

Filed in District Court
State of Minnesota
5/27/2025 10:14 AM

    a.  Husband's former attorneys ask for $99,472.95 in attorney fees which, Husband's former attorneys assert, does not include work related to the issue of the validity and enforceability of the Colombian documents).

    b.  Husband's former attorneys filed an affidavit on May 14, 2025, which the Court herein incorporates in its entirety including all findings of fact required for a valid and enforceable need-based attorney fee award.

    c.  The order below is consistent with directions from the Court of Appeals.

4.  **Need-Based Fees for Appeal.**  In its directives to the district court regarding fees Husband incurred during the first appeal, the Court of Appeals refers to spousal maintenance, child support, and attorney fees as good faith claims pursued by Husband on appeal that deserve an award of need-based attorney fees.

    a.  Husband's former attorneys ask for $54,668.75 in attorney fees for the first appeal A22-0954.

    b.  As stated above, Husband's former attorney's affidavit dated May 14, 2025, is incorporated in its entirety including all findings of fact required for a valid and enforceable need-based attorney fee award.

    c.  The order below is consistent with directions from the Court of Appeals.

5.  Wife opposes any award to Husband for need-based attorney fees and she submits a 28-page analysis of why Husband should not be awarded need-based attorney fees and, if he is, she should be awarded fees against him for various reasons.  Wife's arguments do not acknowledge the narrow task of the district court in this remand which is focused entirely on Husband's need-based attorney fees incurred during the trial of this case, and in his pursuit of the first appeal (A22-0954).

6.  The Court issues the Order below directing Wife to pay Husband's attorneys directly because Husband continues to owe the law firm DeWitt, LLP, $296,391.81, which includes $13,093.36 in disbursements.

Based upon the Findings of Fact set forth above, the Court issues the following:

## ORDER

1.  The objections asserted by Pawel Dominik Rzeczkowski to this Court issuing an order regarding need-based attorney fees he occurred for trial on January 5, 6 and 7, 2022, and appeal A22-0954 are hereby OVERRULED.

2.  Carolina Uribe Borrero shall pay the sum of $99,472.95 to the DeWitt, LLP, law firm within 180 days of the date of filing of this Order as payment for Pawel Dominik Rzeczkowski's need-based attorney fees incurred in the trial of this matter.

Filed In District Court
State of Minnesota
5/27/2025 10:14 AM

3.  Carolina Uribe Borrero shall pay the sum of $54,668.75 to the DeWitt, LLP, law firm within 180 days of the date of filing of this Order as payment for Pawel Dominik Rzeczkowski's need-based attorney fees incurred in the appeal of this matter (A22-0954).

4.  Service of a copy of this Order shall occur through the Odyssey efile and eserve system, with courtesy copies emailed to any self-represented litigant who is not signed up for efile/eserve, and that shall be good and proper notice for all purposes.

**IT IS SO ORDERED.**

Dated:  May 27, 2025                          BY THE COURT,

Thomas, Laura
2025.05.27
09:46:11 -05'00'

Laura M. Thomas
Judge of Fourth District Court