UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

Carolina Uribe Borrero,                                    Case No. 26-40008-KAC

Debtor.

## JOINT OBJECTION OF PAWEL RZECZKOWSKI AND DEWITT LLP TO CONFIRMATION OF DEBTOR'S PROPOSED CHAPTER 13 PLAN

Pawel Rzeczkowski ("Pawel"), through his undersigned counsel DeWitt LLP ("DeWitt"), and DeWitt, through its undersigned counsel David A. Orenstein, do hereby object to confirmation of the proposed Chapter 13 Plan, dated and filed January 2, 2026 (the "Plan"), filed by Carolina Uribe Borrero (the "Debtor"), on the following grounds:

1.      Pawel Rzeczkowski is the former husband of the Debtor.  Pawel and the Debtor have two minor children.

2.      Pawel and the Debtor were married in 2011 in Columbia.  At that time, in Columbia, they signed a pre-nuptial agreement and a post-nuptial agreement (the "Columbian Documents"), the purpose of which was to keep their assets and obligations separate.

3.      In September of 2019, Pawel commenced marriage dissolution proceedings, entitled *In Re Marriage of Pawel Dominik Rzeczkowski and Carolina Uribe Borrero*, Hennepin County District Court File No. 27-FA-19-6324.

4.      In April of 2020, Pawel moved for temporary relief in the dissolution proceedings, seeking, among other things, an order directing the Debtor to pay, during the pendency of the proceedings, monthly financial support payments to Pawel and to cover various expenses relating to the parties' home, vehicles and other items.

5.      On August 12, 2020, the district court ruled on Pawel's motion, signing and filing its Findings of Fact, Conclusions, and Order on Temporary Relief (the "Temporary Relief Order.")

1

(A copy of the Temporary Relief Order is attached hereto as Exhibit 1).  The district court found that "[t]he financial disparity between the parties is large" and that Debtor had "substantial income" and "significant financial assets."  (Temporary Relief Order ¶¶ 22-23, 81).  By contrast, Pawel generally remained unemployed (Temporary Relief Order ¶13) and had limited financial assets (¶82).

6.      Based on these financial findings, the district court ordered the Debtor to pay Pawel $2,500 per month in financial support, to pay the mortgage, insurance, and other costs of the homestead, and to pay the loans and insurance for their vehicles, along with their mobile phone bills, among other expenses. (Temporary Relief Order ¶86)

7.      During the dissolution proceedings, the Debtor brought a motion to enforce the Columbian Documents, under which the vast majority of assets acquired during the parties' marriage were her non-marital assets.  Pawel moved the district court to declare the Columbian Documents invalid.  The district court ruled that the Columbian Documents were valid and enforceable.

8.      Subsequently, in January of 2022, the district court conducted a three-day trial on the remaining contested issues in the proceedings:  child custody, spousal maintenance, child support, and need-based attorneys' fees.  Specifically, the Debtor sought sole legal custody of the children and Pawel sought joint legal custody.  Pawel sought temporary spousal maintenance and child support from the Debtor and an award of need-based attorneys' fees in the amount of $111,542.

9.      In June of 2022, the district court entered its Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment and Decree (the "Judgment and Decree") dissolving the parties marriage and dividing the parties' marital estate, assets, debts and financial resources in

2

accordance with the Columbian Documents.  (A copy of the Judgment and Decree is attached hereto as Exhibit 2).

10.     In the Judgment and Decree, the district court found in favor of Pawel on the child custody issue, determining that "joint legal custody is in the best interests of the children."  (¶37). The district court denied Pawel's request for spousal maintenance (¶47) and ordered the Debtor to pay child support to Pawel of $241 per month (¶42).

11.     As to Pawel's request for need-based attorney's fees, the district court found that "Father does not currently have the means to pay the attorney's fees due to his unemployment and lack of assets." (Conclusions of Law, No. 51).  The district court found that, in 2021, the Debtor's gross income, after business expenses, was approximately $350,920 (Findings of Fact, No. 15) and that she "does have the ability to pay need-based attorney's fees." (COL, No. 52).  However, the district court denied Pawel's request for need-based fees finding that "the attorney's fees were not necessary for the good-faith assertion of Father's rights." (COL, No. 53).

12.     Pawel appealed the judgment entered pursuant to the Judgment and Decree, challenging, among other things, the district court's denial of his request for need-based attorney fees. *Rzeczkowski v. Borrero*, WL 2762442 (Minn. App. April 3, 2023) (unpublished) (copy attached as Exhibit 3).  The Court of Appeals reversed the district court's ruling denying need-based attorney fees and remanded the case for additional findings.

13.     In so ruling, the Court of Appeals noted that the district court found that Pawel established the financial requirements for an award of need-based attorney fees (the financial disparity between Pawel and the Debtor) and that the district court's finding of lack of good faith related solely to Pawlek's assertion of rights regarding the validity and enforcement of the Columbian Documents. *Rzeczkowski v. Borrero*, *supra* at *12.  The Court of Appeals noted that

3

Pawel had asserted other rights – such as the right to legal custody of the children, on which he prevailed – and that "[b]ecause the district court's finding that Rzeczkowski acted in bad faith relates solely to his assertion of rights regarding the Columbian documents, we must remand for additional findings addressing whether an award of need-based attorney fees is necessary for Rzeczkowski's assertion of other rights that were made in good faith." *Rzeczkowski v. Borrero*, *supra* at \*13.

14.     By separate order, the Court of Appeals further instructed the district court to consider Pawel's request for attorney fees that he incurred on appeal.

15.     On remand, lead counsel for Pawel, Robert W. Due of DeWitt, submitted an Affidavit of Counsel documenting and quantifying the fees that Pawel incurred for legal services in the dissolution proceedings relating solely to the issues of child custody, spousal maintenance, child support, and attorney fees.  That amount was $99,472.95.  The amount **excluded** all services relating to the issue of the validity and enforceability of the Columbian Documents.  (A copy of the Affidavit of Counsel is attached hereto as Exhibit 4.)

16.     The Affidavit of Counsel also quantifies the fees that Pawel incurred on appeal of the Judgment and Decree – $54,668.75 – of which counsel estimated $27,571.38 related to the Colombian Documents issue and the remaining $27,097.38 related to the other issues that Pawel pursued on appeal.

17.     The district court again completely denied Pawel's request for an award of need-based attorney fees.  Pawel again appealed the ruling.  *Rzeczkowski v. Borrero*, WL 4926223 (Minn. App. Ct. Dec. 2, 2024) (unpublished) (attached as Exhibit 5).  The Court of Appeals found that "the district court was tasked with determining the amount of need-based attorney fees Rzeczkowski is entitled to receive" and that by refusing to award any fees whatsoever, the district

4

court abused its discretion. *Rzeczkowski v. Borrero*, supra at \*5-\*6. The Court of Appeals again remanded the case to the district court to determine the amount of need-based fees to award Pawel.

18.     On remand, the district court issued a Subsequent Order Re:  Need-Based Attorney Fees, dated May 27, 2025 (the "Subsequent Order"), granting Pawel's request for $99,472.95 in need-based fees relating to the district court proceedings, and $54,668.75 in need-based fees relating to the first appeal for a total of $154,141.70.  The district court further ordered the Debtor to  pay the need-based fees directly to Pawel's counsel, DeWitt LLP, "because [Pawel] continues to owe the law firm DeWitt LLP, $296,391.81."  (A copy of the Subsequent Order is attached hereto as Exhibit 6).

19.     Pawel remains liable for the fees that the district court ordered the Debtor to pay to DeWitt under the Subsequent Order.

20.     As of the date that Debtor filed her Chapter 13 case, Debtor had failed to remit to DeWitt any of the fees that the district court ordered her to pay under the Subsequent Order.

21.     The Debtor filed her Chapter 13 petition on January 2, 2026.  The Debtor's bankruptcy schedules identify DeWitt as a general unsecured creditor with a disputed claim for $155,000.  Pawel is not listed as a creditor of any kind.

22.     Section 101(10) of the Bankruptcy Code defines the term creditor to mean the holder of a claim.  Section 101(5) defines the term "claim" in include a "right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured[.]"

23.     DeWitt and Pawel have filed a joint Proof of Claim in this case for $154,141.70, characterizing it as an unsecured, priority claim for a domestic support obligation under Section

507(a).  (Proof of Claim No. 9).  (Pawel has an equitable right to payment as a third-party creditor beneficiary of the district court's Subsequent Order).

24.     Pawel initially filed a separate Proof of Claim, but that claim has been withdrawn.

25.     Under Section 1322(a)(2) of the Bankruptcy Code, a Chapter 13 plan "shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 . . ."

26.     Bankruptcy Code Section 507(a)(1) defines as a priority claim "[a]llowed unsecured claims for domestic support obligations that, as of the date of the filing of a petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative . . ."

27.     Bankruptcy Code Section 101(14A) defines a domestic support obligation ("DSO") as a debt that is "owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative . . . that is in the nature of alimony, maintenance, or support . . . without regard to whether such debt is expressly so designated . . . established . . . before, on, or after the date of the order for relief . . . by reason of the applicable provisions of – a separation agreement, divorce decree, or property settlement agreement; [or] an order of a court of record . . ."

28.     The $154,141.70 in attorney fees granted under the Subsequent Order are payable to DeWitt but are awarded to Pawel, satisfying the requirement that a DSO be "owed to" a former spouse.

29.     Even though the fees are "owed" directly to DeWitt, an award of attorney fees that is in the nature of alimony, maintenance or support does not lose its character as such simply because it is owed to the attorney for the former spouse rather than to the former spouse him or

6

herself.  *Holliday v. Kline (In re Kline)*, 65 F.3d 749 (8th Cir. 1995) (Under pre-BAPCPA Section 523(a)(5), excepting from discharge debts "to a spouse, former spouse, or child of the debtor for alimony to, maintenance of, or support of such spouse or child" affirming bankruptcy court ruling that debt for attorney fees is non-dischargeable "even if payable to attorney rather than to a former spouse."); *Phegley v. Phegley (In re Phegley)*, 443 B.R. 154, 158 (8th Cir. BAP 2011) (affirming ruling of bankruptcy court that attorney fee award was in the nature of support and hence a DSO entitled to priority under debtor's Chapter 13 plan, "even if the support obligation is owed directly to a third party."); *Amos v. Carpenter (In re Amos)*, 624 B.R. 657, 662  (8th Cir. BAP 2021) (award of attorney fees in dissolution action payable directly to debtor's former spouse's attorney determined to be a domestic support obligation in debtor's Chapter 13 case and entitled to payment in full).

30.     Attorney fee awards related to enforcing or defending issues involving child custody that are based on the welfare of the child, per se qualify as DSOs.  *Amos v. Carpenter (In re Amos)*, 624 B.R. 657, 662 (8th Cir. BAP 2020) ("A majority of courts agree that attorney fee awards related to enforce or defend issues involving child support, visitation or custody that effect [*sic*] welfare of the children do qualify as domestic support obligations.")

31.     The sum of $49,575.98 of the award of fees in the Subsequent Order was incurred by Pawel in a successful effort to obtain joint legal custody of the children of the marriage.

32.     Additionally, all of the need-based attorney fees that the district court awarded in the Subsequent Order rely on the district court's determination that a large financial disparity existed between the Debtor and Pawel such that Pawel lacked the ability to pay the fees and the Debtor had the means to do so.  As the district court noted in its original J&D, "To award need-based attorney's fees, the Court must find that the fees are necessary for the good-faith assertion

7

of Father's rights, *that Father does not have the means to pay the attorney's fees, and that Mother does have the means to pay the attorney's fees.*"  (emphasis added).  See Minn. Stat. §518.14.

33.  In the J&D, the district court specifically found that "Father does not currently have the means to pay the attorney's fees due to his unemployment and his lack of assets" and that "Mother does have the ability to pay need-based attorney's fees."  The district court initially denied Pawel's request for need-based attorney fees, not based on a lack of financial need, but based on its finding that Pawel did not incur the fees in the good faith assertion of his rights in the proceeding, a finding that the Court of Appeals subsequently reversed.  (J&D COL No. 50).

34.  Where an order awarding fees in a dissolution proceeding is specifically based on "the financial resources of both parties," the award is in the nature of maintenance and support of the former spouse. *Holliday v. Kline (In re Kline)*, 65 F.3d 749, 751 (8th Cir. 1995).  *See In re Phegley*, 443 B.R. 154, 159 (8th Cir. BAP 2011) ("The disparities in the parties' education, training, employment history, and earning capacity all led the bankruptcy court to find that the attorney fee award was made to balance those disparities and was, therefore, intended as support.")

35.  The decisive factor in determining whether a debt is in the nature of alimony, maintenance or support is the function that the award serves.  *In re Kline*, 65 F.3d at 751; *In re Phegley*, 443 B.R. at 157.  Where, as here, the award is based on the financial resources of the parties, the award serves a spousal maintenance function because the spouse in whose favor the fees are awarded, Pawel, would otherwise be required to pay the fees out of his own pocket.  The fee-shifting award frees up the Pawel's judicially-determined limited resources (that would otherwise go to pay attorney fees) to pay his living expenses.  Thus, the fee award functions "in the nature of" spousal maintenance.  *In re Kline*, 65 F.3d at 751.

36. Based on the foregoing, the Debtor's obligation under the Subsequent Order to pay Pawel's attorney fees in the amount of $154,141.70 is a DSO as defined by Bankruptcy Code Section 101(14A).

37. DSOs are entitled to first priority under Bankruptcy Code Section 507(a)(1)(A).

38. Under Section 1322(a)(2), the Plan must provide for payment in full of a DSO.

39. The Plan fails to provide for payment in full of the Debtor's obligation to pay the $154,141.70 to DeWitt and instead treats DeWitt as a general unsecured creditor.

40. Under Section 1325(a)(1), the Plan cannot be confirmed.

41. In the event of a hearing on this Objection, DeWitt and Pawel propose to call Robert W. Due, partner in the firm of DeWitt LLP, to testify as to DeWitt's representation of Pawel in the dissolution proceedings and on appeal, including to all facts set forth in the Affidavit of Counsel attached to this Objection, and Pawel's continuing obligation to DeWitt for attorney fees that Pawel incurred in connection with his dissolution proceedings.

WHEREFORE, DeWitt and Pawel Rzeczkowski request that the Court deny confirmation of the Plan and grant such other and further relief as the Court deems appropriate.

Dated March  6, 2026                    **DEWITT LLP**

By: */s/ David A. Orenstein*
         David A. Orenstein (#121447)
         901 Marquette Avenue, Suite 2100
         Minneapolis, MN 55402
         612-305-1494
         dao@dewittllp.com

Attorneys for Pawel Rzeczkowski

Dated March 6, 2026                     **DEWITT LLP**

By: */s/ David A. Orenstein*
         David A. Orenstein (#121447)
         901 Marquette Avenue, Suite 2100
         Minneapolis, MN 55402
         612-305-1494
         dao@dewittllp.com

Attorney for DeWitt LLP

**VERIFICATION**

I, Robert W. Due, a partner in the law firm of DeWitt LLP, declare under penalty of perjury that the facts set forth in the above Objection are true and correct to the best of my knowledge, information, and belief.

Dated: March 6, 2026                    */s/ Robert W. Due*
                                        Robert W. Due

4899-7177-3581, v.