**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

Carolina Uribe Borrero,

Case No. 26-40008
Chapter 13 Case

Debtor.

### NOTICE OF HEARING AND MOTION OBJECTING TO CLAIM OF DEWITT, LLP AND PAWEL RZECZKOWSKI AND MEMORANDUM OF LAW

TO: Pawel Rzeczkowski, DeWitt, LLP and other entities specified in the applicable Federal Rules of Bankruptcy Procedure.

The debtor, by and through her undersigned counsel, moves the Court for the relief requested below and gives notice of hearing.

1.      The Court will hold a hearing on this motion on **Wednesday, April 29, 2026 at 10:00 a.m.,** in Courtroom No. 8 West, 300 South Fourth Street, Minneapolis, MN 55415.

2.      Any response to the hearing must be filed and served not later than **Wednesday, April 22, 2026**, which is seven (7) days before the time set for the hearing (including Saturdays, Sundays, and holidays). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT A HEARING.**

3.      This court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005 and Local Rule 1070-1. The petition commencing this chapter 13 case was filed on January 2, 2026. This proceeding is a core proceeding. This case is now pending before this court.

4.      This motion arises under 11 U.S.C. § 502, Fed. R. Bankr. P. 3007, 9013 and 9014 and Local Rules 9006-1, 9013-1 and 9013-2.

5.      The law firm of DeWitt, LLP and Pawel Rzeczkowski (the "Claimants") filed proof of claim no. 9 (the "Claim"). Mr. Rzeczkowski is the Debtor's ex-husband. The DeWitt firm represented Mr. Rzeczkowski in the divorce proceedings with the Debtor.  The Claim sets forth a priority claim in the amount $154,141.00, under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  The Claim is pursuant to an order awarding attorneys' fees to Mr. Rzeczkowski in the State of Minnesota, County of Hennepin, Case No. 27-FA-19-6324 (the "Family Court").  A copy of subject order is attached as Exhibit A.

6.      The Debtor objects to the priority nature of the Claim and requests that it be allowed as a general unsecured claim and that the Claim be dischargeable.

7.      The Debtor and Mr. Rzeczkowski share two minor children who are currently 11 years old.

8.      The divorce decree, dated June 24, 2022, established, in relevant part:

    A.  Joint custody of the minor children.

    B.  That Mr. Rzeczkowski is responsible for 35% of all medical and dental costs for the children not covered by insurance.

    C.  That the Debtor pay child support to Mr. Rzeczkowski of $410.00 per month, which was reduced to $241.00 per month after accounting for Mr. Rzeczkowski's share of medical and dental insurance reimbursements paid by the Debtor.

    D.  That the Debtor and Mr. Rzeczkowski each pay 50% of any fees or costs associated with the children's extracurricular activities.

A copy of the relevant pages of the decree is attached as Exhibit B.

9.      In August 2022, Mr. Rzeczkowski abruptly left Minnesota to reside in Georgia,

without notifying the Debtor, the children, or the Family Court.  He has not seen his children since. By choice, he has had only limited electronic communication with the children and refused to exercise any of his court ordered parenting time since August 2022. In a subsequent order granting the Debtor sole legal custody of the parties' son, the court found Mr. Rzeczkowski had, "removed himself from the children's lives since August of 2022," during which time he was found to "selfishly refuse to provide care for the children," and to have been "steadfast in his refusal to engage with the children." A copy of the relevant pages of such order is attached as Exhibit C.

10. Since August 2022, the Debtor has paid all expenses related to raising the children. Mr. Rzeczkowski has not contributed one dollar of his own to the children's expenses since the divorce proceedings started.  This includes his refusal to pay his court ordered thirty-five percent of the children's uninsured medical expenses, and fifty percent of extracurricular activities, over nearly twenty-nine months, which amounts to approximately $293.08 per month.

11. From September 2022 through April 2024, the Debtor paid child support to Mr. Rzeczkowski in the amount of $241 per month, for a total of $4,614.00, even though he never saw the children during that time.  Rather than using this money for the children, he used it for his personal consumption. Mr. Rzeczkowski also took the Debtor's Nissan Rogue that was on loan to him from the Debtor for the sole purpose of transporting the children.  He took the vehicle to Georgia, without the permission of the Debtor and never returned it.

12. To the best of the Debtor's knowledge, Mr. Rzeczkowski has been voluntarily unemployed since 2018. The Court of Appeals reviewed and affirmed that he was not in need of spousal maintenance, finding that he was capable of providing for himself.  In their 2023 opinion affirming the denial of spousal maintenance for Mr. Rzeczkowski, the Court of Appeals found:

> The record shows that Rzeczkowski has an impressive educational background, including an MBA from Columbia University and the London Business School.

Rzeczkowski was immediately employable and capable of earning $100,000 to $125,000 per year. This supports the district court's determination that Rzeczkowski is capable of obtaining suitable employment but, because he chooses to apply for only his ideal positions, is voluntarily unemployed.

*Rzeczkowski v. Borrero*, WL 2762442 (Minn. App. April 3, 2023)

13.     Mr. Rzeczkowski's move from Minnesota, total abdication of parenting time and responsibilities, and refusal to pay expenses negatively impaired the Debtor's earning capacity while increasing her expenses as follows:

A. As the sole parent present for the children, the Debtor is no longer able to accept work projects which require travel.

B. The Debtor's ability to work longer days and certain days uninterrupted, required for many lucrative consulting contracts, has been severely limited since Mr. Rzeczkowski abandoned his court ordered parenting days.

C. The Debtor's childcare bill doubled, given she needs to pay for childcare on Mr. Rzeczkowski's parenting days. This equates to roughly an additional $500 per month for a period of 26.7 months or $13,355.

D. The Debtor's groceries and other expenses related to the day-to-day support of the children increased by approximately 30%, which equates to an additional $457.50 per month, for a period of 26.7 months or $12,220.

E. Mr. Rzeczkowski and the DeWitt firm filed two appeals, as well as a petition for review to the Minnesota Supreme Court, which was denied.   Mr. Rzeczkowski filed numerous repetitive motions making false and unsupported allegations of fraud against the Debtor which were denied and for which he was sanctioned and ordered to pay conduct-based fees, which were never paid. The

endless litigation resulted in the Debtor being forced to incur hundreds of thousands of her own legal fees to defend against the frivolous actions and sometimes untruthful pleadings[1]. This further depleted the assets available to the Debtor to support the children.

F. Mr. Rzeczkowski intentionally and repeatedly harassed the Debtor on social media, sending details of their marriage and divorce as well as false allegations of fraud. He sent false information to thousands of email contacts of the Debtor including head-hunters, business contacts and previous and potentially future employers, and to the alumni list for a class the Debtor took at Columbia Business School (with over 1,000 contacts), further hindering her ability to earn income.

14. The relentless pursuit of property and fees from the Debtor, when combined with the mental and emotional toll of six years of litigation and Mr. Rzeczkowski's complete abandonment of his children, has resulted in a calamitous financial impact to the Debtor's assets, ability to work, and to provide for the children.

15. To illustrate the dramatic effect this has had on the Debtor's income, when the Family Court set child support in 2022, it was based on the Debtor's income of $189,720. In 2023, the Debtor's taxable income dropped to $127,855 and $139,223 in 2024. In 2025, the Debtor's taxable income was only $52,274, less than 30% of what it was at the time of the divorce decree.

16. The credit card debt scheduled in the bankruptcy exceeds $120,000.00. It is a direct result of Mr. Rzeczkowski conduct of leaving Minnesota and refusing to pay expenses, and the costs imposed on the Debtor to defend the vast number of legal actions undertaken by the DeWitt

---

[1] By order dated August 7, 2021, the Family court made a finding that "[Mr. Rzeczkowski's] statements appear to be an outright attempt to provide the Court with misleading, if not outright untruthful, statements."

firm and Mr. Rzeczkowski.

17.    The Debtor has aimed to provide stability for the children, both financially and emotionally. Mr. Rzeczkowski's behavior of abruptly leaving the state and refusing to pay for his share of expenses, and the colossal impact his actions have had on the Debtor's asset base and income disrupt the children's stability. This is not in the best interests of the children.

18.    Much of the litigation between the Debtor and Mr. Rzeczkowski involves his many challenges, found by the District Court and affirmed by the Court of Appeals to be in bad faith, attempting to prevent the enforcement of an agreement that permanently separated the parties' assets that the parties executed while they resided in Colombia.  The documents are known as the DLMP, also referred to as "the Colombian Documents," in the plan objection filed by Claimants. While the Claim eliminates some of the fees on this issue, the Claimants acknowledge it still includes $27,571.38 related to the Columbia Documents from the appeal. [ECF 21, ¶ 16].  The fees of $27,581.38 relating to the challenge to the Colombian documents is clearly not in the nature of support and should be not included as a priority claim.

19.    The Debtor intends to appeal the fee order once the award is reduced to a judgment and ripe for appeal.  The Debtor will argue there are duplicate fees, fees related to bad faith claims and that the Family Court did not properly review the fees' reasonableness. When deciding to remand, the Court of Appeals acknowledged that some of the Claimant's fees were reasonable. However, the Family Court awarded all fees sought by the Claimants and failed to analyze which fees were necessary for the good faith assertion of rights as instructed by the Court of Appeals.

20.    If necessary, the Debtor will testify at the hearing on this motion.

**MEMORANDUM OF LAW**

A properly filed proof of claim is prima facie evidence of the validity of the claim. Fed. R. Bankr. P. 3001(f); *In re Consumers Realty & Development Co*., 238 B.R. 418, 422 (8th Cir. B.A.P 1999); *In re Immerfall*, 216 B.R. 269, 272 (Bankr. D. Minn. 1998). If the objecting party brings forth evidence rebutting the claim, then the claimant must produce additional evidence to prove the validity of the claim by a preponderance of the evidence. *Id*.; *see also Oriental Rug Warehouse Club*, 205 BR. 407, 410 (Bankr. D. Minn. 1997).

11 U.S.C. § 523(a)(5) bars the discharge in bankruptcy of any debt "to a spouse, former spouse, or child of the debtor, for ... maintenance or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record." 11 U.S.C. §§ 101(14A) and 523(a)(5). Whether a particular debt constitutes a maintenance or support obligation is an issue of federal, not state law. *See Williams v. Williams (In re Williams),* 703 F.2d 1055, 1056 (8th Cir.1983). Thus, a state law or divorce decree that characterizes a debt as a support obligation is not binding upon bankruptcy courts. *See id.* at 1057 ("bankruptcy courts are not bound by state laws that define an item as [a] maintenance or property settlement, nor are they bound to accept a divorce decree's characterization of an award as maintenance or a property settlement."). In deciding whether to characterize an award as maintenance or support "the crucial issue is the function the award was intended to serve." *Adam v. Zentz*, 963 F.2d 197, 199 (8th Cir. 1992).

Support will generally include obligations to pay attorney's fees incurred in a custody dispute. *See id.* at 882. However, some courts have found exception to this general rule, when unusual circumstances exist.  In *In re Lowther*, that debtor's ability to pay her ex-spouse's attorneys' fees severely impaired her ability to support her children.  The *Lowther* court found:

> Nevertheless, since this rule is fashioned around the best interests of the child, it also follows that the type of unusual circumstances most likely to

warrant exception are those where discharge is in the best interests of the child. To hold that the general rule of nondischargeability should prevail despite adverse effects upon the child would be to ignore the policy considerations behind § 523(a)(5). *In re Lowther,* 266 B.R. 753, 757 (B.A.P. 10th Cir. 2001).

The court in *In Re Manzi, 283 B.R. 103(Bankr.D. Conn. 2002)* found the Lowther rationale persuasive, finding:

To construe the Section 523(a)(5) definition of child "support" otherwise would yield a result at odds with the public policy behind that statutory provision. Specifically, to find a third-party claim to be a nondischargeable debt under Section 523(a)(5) when payment of such claim by the debtor would severely impair the debtor's ability to support the very children whom Section 523(a)(5) was designed to protect would stand that statute on its head. *In re Mazi,* 282 B.R. 103 (Conn Bankr. 2002).

The unusual circumstances surrounding the Debtor and Mr. Rzeczkowski are similar in nature to circumstances leading to discharge of attorney's fees in other bankruptcy cases. Despite the Family Court ordering joint custody and shared expenses, the Debtor has assumed total responsibility for raising the children, including paying for all expenses. Mr. Rzeczkowski has contributed nothing to the children's expenses since August 2022, including his refusal to pay court ordered thirty-five percent of the children's uninsured medical expenses and fifty percent of activity expenses. As set forth in extensive detail above, Mr. Rzeczkowski has severely impaired the Debtor's ability to meet her income potential, while also causing the Debtor's expenses to increase significantly. Moreover, Mr. Rzeczkowski collected child support from September 2022 through April 2024, despite not seeing the children. Mr. Rzeczkowski and the DeWitt firm's actions have dramatically forced her to deplete her assets on her own attorneys' fees. Paying the Claim is not in the best interest of the children. The Debtor cannot feasibly afford to pay the Claim and pay all the household expenses required in raising two children alone. Given these unusual

circumstances, the bankruptcy court should allow the Claim as a general unsecured claim and find that the Claim is not domestic support.

In *Phegley v. Phegley (In re Phegley)*, 443 B.R. 154, 158 (8th Cir. BAP 2011), the court found attorneys' fees were in the nature of support and aimed to equalize the differences between the parties and based on the spouse's lack of education, earning capacity, and experience.

Here, however, the opposite situation exists. The Court of Appeals affirmed findings that Mr. Rzeczkowski was not in need of support after considering the factors cited by the *Phegley* court (education, experience and earning capacity).  The Court of Appeals found that Rzeczkowski is capable of gaining employment, that no further education or training would be necessary, and that his history of employment supports their position. When the district court terminated Borrero's spousal-maintenance obligation, it acknowledged that Mr. Rzeczkowski was voluntarily unemployed and found that he did not demonstrate a need for spousal maintenance. The financial disparity exists not because Mr. Rzeczkowski lacks earning capability, education, or the work experience necessary to self-support, but simply because Mr. Rzeczkowski has chosen to remain voluntarily unemployed.

<u>**CONCLUSION**</u>

The Debtor has assumed total responsibility for raising the children, including sole financial responsibility.  In stark contract, Mr. Rzeczkowski deliberately violates Family Court orders on shared expenses and has abandoned all parenting time and responsibilities regarding the children.  His conduct has severally impaired the Debtor's earning capacity and increased her expenses.  Allowing the Claim as priority support will only further the disparity caused by Mr. Rzeczkowski and is of no benefit to the children.

**WHEREFORE**, the Debtor requests that the objection to the claim of DeWitt, LLP and Pawel Rzeczkowski, claim no. 9, be sustained and the claim be allowed as a general unsecured claim and be dischargeable.

Dated: March 16, 2026

SIELING LAW, PLLC

By:  *s/ Mary F. Sieling*
Mary F. Sieling, (#389893)
12800 Whitewater Dr, Ste. 100, #3201
Minnetonka, MN  55343
Phone: 612-325-1191
Email: mary@sielinglaw.com

## VERIFICATION

I,  Carolina Uribe Borrero, declare under penalty of perjury that the foregoing information in the motion objecting to claim of DeWitt, LLC and Pawal Rzeczkowski., is true and correct.

Dated: March 16, 2026

By:  *s/ Carolina Uribe Borrero*
Carolina Uribe Borrero, the Debtor

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Case No. 26-40008

Carolina Uribe Borrero,

Chapter 13

Debtor.

**ORDER**

This case is before the court on the Debtor's motion objecting to the claim of DeWitt, LLP and Pawel Rzeczkowski.

Based on the motion and file,

**IT IS ORDERED:** The claim of DeWitt, LLP and Pawel Rzeczkowski, claim no. 9, is allowed as a general unsecured claim. If the Debtor is granted a discharge in this bankruptcy case, the Claim and debt owed to DeWitt, LLP and Pawel Rzeczkowski shall be included in such discharge.

Dated:

_____
Katherine A. Constantine
Chief United States Bankruptcy Judge