g.      *Willingness and ability of each parent to care for the minor children.*

Since August 2022 only Mother has demonstrated a willingness to provide hands-on care for the minor children. The issue here is ability in view of everything that has occurred, rather than willingness. Father remains able to provide care, he just selfishly refuses to do so.  After a consideration of this factor, it weighs in favor of denying Mother's motion which would make permanent Father's unilateral and volunatry removal of himself from the children's lives.

h.      *Effect on the children's well-being and development to changes in care.*

The biggest change in the children's lives occurred in August 2022 when Father moved to Georgia and remained there. Since that time, the children have resided with Mother and their lives have been focused on school and activities. The record, including testimony by Weverka, suggests that the children deeply miss Father and want him back. The children have been through a lot and they remember it. After a consideration of this factor, it weighs in favor of denying Mother's motion because it would make permanent Father's unilateral and voluntary removal of himself from the children's lives.

i.      *Effect of sole physical custody on the ongoing relationships between the children and each parent, and other significant family members.*

The record establishes that the children are positioned primarily with Mother and she satisfies their needs, generally. If the Court grants Mother's motion, it would extinguish Father's ability to re-create a role for himself in the day-to-day care of the minor children which the children deeply crave.  Perhaps that will not always be the case, but it is now. The children, at age 9, deeply miss Father and want him to be present. After a consideration of this factor, it weighs in favor of denying Mother's motion as to physical custody, and a parenting time schedule that allows for four weeks of parenting time in the summer for Father and two predictable evening calls each week, plus an alternating school break schedule so that Father can enjoy parenting time during the school year on extended breaks. Further, 10-days' notice by Father to Mother should Father want additional reasonable parenting time in Minnesota to see the children during the school year provided it does not interfere with the holiday parenting time schedule ordered below.

j.      *The benefit to the children of maximizing engagement by both parents in their day-to-day care.*

As stated elsewhere, Father appears steadfast in his refusal to engage with the children. By creating a four-week summer parenting time opportunity and several other opportunities during the academic year, the Court is hopeful that Father will engage at least marginally. By denying Mother's motion, the Court leaves the door open for Father to return to Minnesota and be present for the minor children. He states in Exhibit 3: "However, my unwavering desire to reunite with my children is evident in my continued connection to my Minneapolis dentist, doctor, and the financial hardship I face due to our separation." Exh. 3, at 23-24.

Exhibit C

What the children need more of is Father physically present in their lives – not less; this is clear from Weverka's BFA. The Court finds no benefit to the children in granting Mother's motion with respect to physical custody and exclusive parenting time. Such a schedule would endorse Father's unilateral and voluntary removal of himself, and put the children at greater risk of anxiety and sadness. For the past two years, these children have benefited from the stability, continuity and predictability of their Mother's care, but it is obvious that they feel their Father's absence every single day. After a consideration of this factor, it weighs in favor of denying Mother's motion.

> k.      *Disposition of each parent to support the children's relationship with the other parent.*

As stated by Weverka, "Conflict exists between these parents, ad nauseum." Exh. 101, at 8.  This dynamic is undisputed. What is not clear is whether the conflict requires special parenting time arrangements, and there is little evidence that it does. After a consideration of this factor, it weighs in favor of denying Mother's motion.

> l.      *Willingness and ability of parents to cooperate in the day-to-day care and rearing of their children.*

Since August 2022, Father has removed himself from his children's lives.  This is the one factor that weighs in favor of Mother's motion because of this singular, unilateral act by Father that prevents him from helping with the day-to-day care of ▮▮▮▮▮▮▮▮▮▮ While he lives out his days at his mother's house in Georgia, the children are deprived of his care and concern – his hugs and engagement.  It is a sad situation.

After a consideration of the best interest factors, only one weighs in favor of sole physical custody to Mother and so her motion should be denied. The Court need not engage in additional analysis because the motion fails on the best interests element.

16.   **Child Support.** Mother's motion asked for a modification of child support. *See* Motion filed December 27, 2023, at 1. The Court suspended Mother's child support obligation pending the evidentiary hearing because Father's departure from Minnesota was undisputed. At the hearing on September 11, 2024, and in response to a question asked by her attorney, Mother withdrew her request that the Court impose a child support obligation on Father. However, Mother's exhibits include messages the parties exchanged as to tax dependency allocations, Exh. 119, and she requests the ability to claim both minor children.

17.   The Court may award tax dependency exemptions pursuant to the Minnesota Child Support statutes. Minn. Stat. Sec. 518A.38, Subd. 7(a). Because Mother is doing all of the caretaking of the minor children, including bearing the entire cost of their care and childcare, and arranging for all of their appointments, services, and activities, the Court finds that the equitable approach is to award Mother the ability to claim both minor children as dependents on her tax returns starting with Tax Year 2024, until the minor children can no longer be claimed or further order of the Court.

13

Exhibit C