# EXHIBIT 1

State of Minne:
8/12/2020 5:14

STATE OF MINNESOTA                                    DISTRICT COURT
COUNTY OF HENNEPIN                              FOURTH JUDICIAL DISTRICT

---

In the Marriage of:                                  Case No. 27-FA-19-6324

Pawel Dominik Rzeczkowski,                     **Findings of Fact, Conclusions
                                                of Law, and Order on Temporary Relief**

      Petitioner,

and

Carolina Uribe Borrero,

      Respondent.

---

This matter came before the Honorable Michael E. Burns, Judge of District Court, on a Motion Hearing on May 14, 2020 by Zoom.

Petitioner Pawel Dominik Rzeczkowski ("Father") appeared and was represented by Valerie A. Arnold, Esq. and Micaela Wattenbarger, Esq.

Respondent Carolina Uribe Borrero ("Mother") appeared and was represented by Brittany Stephens Pearson, Esq.

Based upon the files, proceedings and records herein, the Court makes the following:

### Findings of Fact

1. The parties were married on October 1, 2011 in the City of Cali in the Republic of Colombia.

2. The parties are the parents of the following joint minor children (the "children"): ████ ██████████ born ██████████ and ██████████ born ██████████.

3. Petitioner initiated this case with service of the Summons and Petition served on Respondent on September 20, 2019, and filed with the Court on September 20, 2019. Respondent filed an Answer and Counterpetition on February 13, 2020.

4. On April 24, 2020, Father filed a Notice of Motion and Motion for Temporary Relief. In his motion, he requested that the Court order the following relief:

   a. Award Father temporary primary physical residence of the children, with parenting time for Mother every other weekend from Friday at 5:00 p.m. until Monday at

1

State of Minne:
8/12/2020 5:14

9:00 a.m. and one midweek overnight per week (Thursday during the week following her weekend and Tuesday on the week where she does not have weekend time) from 5:00 p.m. until 9:00 a.m. or to Kindercare/Lake Harriet Elementary (or Armatage if children are admitted) subject to conditions in the motion.

b.  Award Father temporary sole occupancy of the homestead. In the alternative, award to the parties temporary joint occupancy of the homestead, with the parties exercising a nesting arrangement as described by Father's motion.

c.  Father shall have exclusive use and possession of the 2017 Toyota minivan. Respondent shall have exclusive use and possession of the 2018 Nissan SUV.

d.  The children's beds in the children's room and Father's bedroom furniture shall remain at the homestead.

e.  Father shall have exclusive use of one of the safes that the couple purchased together in the U.S. Mother shall retain exclusive use of the safe she brought with her from Colombia.

f.  The children's passports shall be held by the Court and shall not be released absent a court order.

g.  Order that Mother pay temporary support to Father in the amount of $2,000 per month, payable in equal installments on the 1st and 15th of each month.

h.  Mother shall continue to pay the household expenses including the mortgage and utility for the homestead, the family's health insurance premiums, the Toyota car payment, car insurance for both vehicles, Kindercare and Polish school payments once re-opened following the COVID-19 stay-at-home order, the parties' cell phone costs without cancellation, as well as any required car maintenance or repairs.

i.  Order Hennepin County Domestic Relations to conduct a custody and parenting time study and make recommendations to the Court.

j.  Order Mother to comply with informal discovery requests and that Mother immediately sign releases for Dr. Feldman and Dr. Schaeffer records.

k.  Order that Mother cease and desist from disparaging Father professionally or personally on social media or via other electronic communication or otherwise interfere with or attempt to sabotage Father's ability to seek employment.

l.  Mother shall pay to Father no later than May 15, 2020 the sum of $24,563.18 for past need-based attorney's fees and costs and granting Father's counsel ten (10) days leave of Court to submit a supplemental affidavit of attorney's fees and costs relative to the present motions and for ongoing attorney's fees and costs; and

m.  For such other relief as the Court deems just, fair, and equitable.

5.  Father filed an Affidavit of Pawel Rzeczkowski on April 24, 2020 ("Affidavit of Petitioner"). He also filed an Affidavit of Sam Hazen and Affidavit of Attorney.

6.  On May 4, 2020, Father filed a Notice of Responsive Motion and Responsive Motion. In his motion, he requested that the Court order the following relief:

a.  Grant Father's motion filed on April 24, 2020 in its entirety;

b.  Deny Mother's request for temporary exclusive use of the Homestead;

c.  Deny Mother's request for sole authority to decide when to sell the Homestead;

2

State of Minne:
8/12/2020 5:14

d.   Grant Mother's request that the Court reserve the issue of temporary custody designations;

e.   Deny Mother's requested temporary parenting time schedule;

f.   Deny Mother's requested temporary holiday, vacation, and travel schedule;

g.   Grant Mother's request for a right of first refusal, but order that it apply if a parent is unable to care for the minor children for any amount of time;

h.   Grant Mother's request on parenting time exchanges;

i.   Grant Mother's request that the off-duty parent have FaceTime calls with the children;

j.   Grant Mother's request to communicate by Our Family Wizard;

k.   Grant Mother's request to pay for the mortgage payment, property taxes, homeowners' insurance, utilities for the Homestead, vehicle payments, vehicle insurance, mobile phone service for the parties, and her life insurance premiums;

l.   Deny Mother's request that Father be ordered to pay the cost of his own temporary housing, groceries, gasoline, and other spending;

m.   Grant Mother's request that Father engage in a good faith effort to become employed and earn an income;

n.   Grant Mother's request that she pay the family's health insurance;

o.   Deny Mother's request that the parties arrange and pay for child care;

p.   Deny Mother's request for temporary use and possession of the 2017 Toyota Sienna;

q.   Grant Mother's request that she be awarded temporary exclusive possession of her premarital dog;

r.   Deny Mother's request for permission to amend her Answer and Counter-Petition;

s.   Grant Mother's request that both parties be prohibited from harassing vilifying, mistreating, molesting, disturbing the peace, or restraining the liberty of the other party;

t.   Grant Father's request for need-based attorney's fees; and

u.   For such other relief as the Court deems just, fair and equitable.

7.   Father filed a Responsive Affidavit of Pawel Rzeczkowski on May 4, 2020 ("Second Affidavit of Petitioner"). He also filed a Memorandum of Law, an Affidavit of Jessica Fuller, and an Affidavit of Translation.

8.   On April 24, 2020, Mother filed Respondent's Notice of Motion and Motion for Temporary Relief. In her motion, she requested that the Court order the following relief:

a.   Commencing not less than 14 days following filing of an order for temporary relief, granting to Respondent temporary exclusive use of the real property located at 4208 Beard Avenue South, Minneapolis, Minnesota 55410, and requiring Petitioner to vacate said property;

b.   In order to preserve assets, authorizing Respondent to solely determine when to sell said real property, and ordering Petitioner to cooperate by signing any and all required documentation to facilitate the sale of the real property, including but not limited to signing requested listing agreements, purchase agreements, and closing documents. In the event that Respondent opts to sell the real property, the net sales

3

State of Minne:
8/12/2020 5:14

proceeds after payment of all costs of sale, mortgages, and any other required expenses to be paid at or before the closing on the sale can be held in escrow or a trust account pending agreement of the parties or order of the court concerning disposition of said proceeds;

c.   Reserving the issue of temporary custody;

d.   Awarding temporary parenting time according to Mother's motion

e.   Awarding the following temporary holiday and vacation parenting time schedule according to Mother's motion;

f.   Ordering that a Right of First Refusal shall apply such that if a party is unavailable to parent overnight during his or her scheduled parenting time, said party shall first offer the parenting time to the other before arranging for a third party to care for the children;

g.   Directing the parenting time exchanges to occur at the children's school or child care, when they are attending, and that the parent whose parenting time is beginning should pick up the children from school, child care, or the other parent's home;

h.   Authorizing the off-duty parent to have FaceTime calls with the children one time each day and additional times at the request of the children;

i.   Directing the parties to communicate via Our Family Wizard except that, in the case of an emergency involving the children, the parties should communicate by phone or text immediately;

j.   Ordering Respondent to pay for the following expenses the mortgage payment, property taxes, homeowners' insurance, utilities for the 4208 Beard Avenue South property, vehicle payment, vehicle insurance, mobile phone service for both parties, and her life insurance premium, in addition to her own groceries, gasoline and other expenses;

k.   Awarding Petitioner temporary family support of $2,500 per month and ordering Petitioner to pay the cost of his own temporary housing, groceries, gasoline and all other spending;

l.   Ordering Petitioner to engage in a good faith effort to become employed and earn income;

m.   Ordering Respondent to pay for the family's COBRA health insurance until the earlier of: further agreement of the parties, order of the court, or expiration of the COBRA policy in August 2020. By the end of July 2020, the parties should be directed to assess whether options for family medical insurance exist through a group policy and shall secure said insurance, if available. If neither party has a group policy available, Petitioner should be ordered to obtain and pay for his own medical insurance and Respondent should be ordered to obtain and pay for medical insurance for herself and the children;

n.   Directing each party to arrange and pay for the cost of a nanny or other child care expenses during his or her own parenting time;

o.   Awarding to Respondent the temporary and exclusive use and possession of the 2017 Toyota Sienna minivan, subject to her responsibility to make payments on the loan encumbering the same; and awarding to Petitioner the temporary and exclusive use and possession of the 2018 Nissan Rogue vehicle, which is unencumbered;

p.   Awarding to Respondent the temporary exclusive possession of her premarital dog;

4

State of Minne:
8/12/2020 5:14

q. Permitting Respondent to amend her Answer and Counter-Petition dated February 13, 2020;

r. Restraining both parties from harassing, vilifying, mistreating, molesting, disturbing the peace, or restraining the liberty of the other party; and

s. For such other and further relief for Respondent as the Court deems just and equitable.

9. Mother filed an Affidavit of Carolina Uribe Borrero on April 24, 2020 ("Affidavit of Respondent").

10. On May 4, 2020, Mother filed Respondent's Responsive Notice of Motion and Motion for Temporary Relief. In her motion, she requested that the Court:

a. Grant Father's request for a custody and parenting time evaluation, but appoint a private evaluator rather than Hennepin County Family Court Services;

b. Grant Father's request that each party shall have temporary exclusive use of a safe;

c. Deny Father's request for need-based attorneys' fees;

d. Deny all other motions set forth in Petitioner's Notice of Motion and Motion for Temporary Relief dated April 24, 2020; and

e. For such other and further relief as the Court deems just and equitable.

11. Mother filed a Responsive Affidavit of Carolina Uribe Borrero on May 4, 2020 ("Second Affidavit of Respondent"). She also filed an Affidavit of Nelly Tatiana Tapia.

**The Parties' Financial Circumstances**

12. The central issue of the parties' motions is the parties' financial circumstances. Father contends that Mother should bear a significant financial burden of supporting him on a temporary basis because he is destitute and Mother is not. The Court reviews the parties' financial circumstances in turn.

<u>Father's Income and Employment History</u>

13. Father is not employed. Father has an Executive MBA from Columbia Business School and London Business School. Father has not had full-time paid employment for several years. His last employment was with Thrivent from July 2018 to December 2018. (<u>Aff. of Resp.</u> at 12.) He earned approximately $130,000 in gross income for his work with Thrivent.

14. At the beginning of the marriage, the parties lived in Colombia. During that time, Mother was employed with Pfizer in Colombia. The parties moved in New York in 2013. Mother continued to work for Pfizer in their New York office. While in New York, Father mainly networked and built contacts for potential job opportunities. Then, Mother lost her job at Pfizer.

5

State of Minne:
8/12/2020 5:14

15. Then, when Mother lost her job with Pfizer, Mother obtained employment at Brambles in Atlanta. (Aff. of Pet. at 24.) Father states that he did not want to move to Atlanta because he "was beginning to become established in New York, and given the overwhelming majority of our professional contacts were in NYC." (Aff. of Pet. at 24.) However, the parties only lived in New York for about one year. So, although uprooting Father may have impacted his career contacts, he did not have a substantial period of time to build a network.

16. Around 2014, the parties moved to Atlanta. The parties lived in Atlanta for about three years. While in Atlanta, Father states that he "developed a professional network around Finance Technology known as FinTech, and became part of the emergent FinTech community." (Aff. of Pet. at 25.) During this time, Father earned some income working for various companies: $36,000 from work with an oil exploration startup in Nigeria, $4,000 for his work as CFO with a healthcare startup, and $6,000 for work grading papers. (Aff. of Pet. at 25–26.) Father worked for other start-ups, but he did not earn an income for that work. (Id. at 25.)

17. In June 2015, Mother lost her job at Brambles. (Aff. of Resp. at 12.) She did consulting work for Coca-Cola in 2016 until the parties moved to Minnesota. (Id.) In 2017, the parties moved to Minnesota because Mother began employment at Cargill.

18. Beginning in 2017 through June 2018, Father worked at Thrivent Financial. Father earned approximately $130,000 in 2018. (Aff. of Pet. at 27–28.) Father believed that he was going to convert that position to a full-time position, but changes in the company's leadership interrupted that pursuit. (Aff. of Pet. at 28.) Father has not been employed since losing that job.

19. Father characterizes himself as a constant seeker of employment, frequently on the cusp of employment. In Father's opinion, he would be gainfully employed but for Mother's sabotage.[1] Father also blames his role as the children's caregiver as a reason for his unemployment. In 2019, when Ms. Tapia left her role as the children's caregiver, Father states that he "took over her role as primary caregiver for the kids." (Aff. of Pet. at 28.) He states that "this new role was a significant time and emotional drain, which hindered [his] job search efforts." (Id.) Father states that Mother has "tr[ied] to sabotage my ongoing job search efforts by requiring me to be available to care for the kids." (Aff. of Pet. at 29.)

20. Father believes that the constant moving "sabotage[ed] [hi]s job search efforts". (Second Aff. of Pet. at 19.) But the record is not replete with a history of employment for Father. Instead, based on the affidavits and evidence presented, Father has been searching for a job for the entirety of the parties' marriage. Perhaps, he has been unable to obtain employment solely because the parties have moved frequently. But it is equally plausible that Father has substantially contributed to his own inability to obtain employment.

---

[1] It does not go unnoticed by the Court that Father requested that the Court order that Mother cease from interfering with or attempting to sabotage Father's ability to seek employment. Given Father's extensive history of unemployment and lack of full-time employment, it is perverse to this Court that Father places the entirety of the responsibility on Mother.

State of Minne:
8/12/2020 5:14

### Mother's History of Income and Employment

21. Mother is not currently employed full-time. She works on consulting projects to earn income. She earned approximately $160,000 in 2019. (Aff. of Resp. at 24.) Mother was previously employed as the Director of Corporate Strategy and Business Development with Cargill, but lost her job in 2018. (Aff. of Resp. at 12.)

22. In contrast to Father, Mother has an extensive history of earning a substantial income. According to Mother's tax returns and W-2s, she has the following history of gross annual income:

> 2014: $281, 527
> 2015: $282,075
> 2016: $229,547
> 2017: $269, 127
> 2018: $130,567

23. In addition to her income, Mother also has access to substantial financial assets. Father contends that Mother has access to "over $700K dollars [sic] in assets." (Aff. of Pet. at 31.)

24. In her affidavit, Mother states that she is willing to pay the following monthly expenses on a temporary basis: the mortgage payment, property taxes for the Homestead, homeowners' insurance, utilities for the Homestead, Toyota Sienna vehicle payment, car insurance for the Toyota and Nissan vehicles, health insurance, mobile phone service, and her life insurance policy premium. (Aff. of Resp. at 29.) Those expenses cost $8,576 per month. (Id.)

25. Mother agreed to pay the initial cost of the custody and parenting time evaluation, but requested that the Court reserve the distribution of cost.

### The Parties' Homestead

26. The parties are owners of a homestead located at 4208 Beard Avenue South, Minneapolis, Minnesota (the "Homestead"). The Homestead is titled solely in Mother's name.

27. The cost of maintaining the Homestead is $5,924 per month. The principal and interest payment on the Homestead is $4,309 per month. (Aff. of Resp., Ex. 5.) Real estate tax are $17,376.28 annually, or $1,448 monthly. (Aff. of Resp., Ex. 6.) Homeowners' insurance costs approximately $167 per month.

28. Since 2018, Mother has tried to sell the Homestead because she does not believe that the parties could afford the house. (Aff. of Resp. at 26–27). However, Mother states that she has been unable to sell the house because Father is uncooperative and combative with the real estate agents. (Aff. of Resp. at 27.)

### School for the Children

7

State of Minne:
8/12/2020 5:14

29.     The children attended KinderCare until Mother withdrew the children in March 2020. Mother chose to withdraw the children because the parties could not afford the KinderCare expenses, which were nearly $3,000 per month. (Aff. of Resp. at 29.)

## Conclusions of Law

30.     As is evident from the voluminous nature of the parties' motions, the parties are essentially requesting a dissolution through a temporary motion. Whereas a court would normally have an opportunity to hear extensive testimony and review evidence on each of these issues prior to making findings for a dissolution, the parties are attempting to shoehorn a lengthy dissolution process into one hearing. So, the Court is cautious about the breadth of the remedy provided in this Order.

31.     Further complicating the issue is the nature of the divorce. Mother contends that the parties are economically divorced—in other words, Father does not have a marital interest in Mother's financial assets. However, the purpose of this motion is not to resolve the issue of the parties' economic divorce. That matter should be determined by the dissolution proceeding—not a temporary motion hearing. Instead, the Court addresses the parties' request for temporary relief.

32.     In a proceeding for dissolution, a party may request by motion and the court may grant a temporary order pending the final disposition of the proceeding. Minn. Stat. § 518.131, subd. 1. Here, the parties have requested the following temporary relief on parenting time, property division, and financial support. The Court addresses each relief in turn.

## I.    Temporary Parenting Time.

33.     To determine a temporary parenting time schedule, the Court evaluates the best interest factors under Minn. Stat. § 518.17.

34.     **Factor 1.** *A child's physical, emotional, cultural, spiritual, and other needs, and the effect of the proposed arrangements on the child's needs and development.* The children's first language is Spanish. (Aff. of Resp. at 13.) The Court notes that Spanish is Ms. Tapia's, the children's nanny, first language and, so, she communicated with the children in Spanish. See (Aff. of Nelly Tatiana Tapia at 4.) The children speak to each of the parents in their native language—Spanish for Mother and Polish for Father. Both parties are able to provide for the children's cultural needs.

35.     Mother suggests that Father is unable to provide for the physical needs of the children. She highlights safety concerns with Father's parenting time with the children. (Aff. of Resp. at 19–20.) She describes Father as an unsanitary person. (Id. at 20.) Mother is concerned that Father's unsanitary habits would be exacerbated by caring for the children by himself with neither Mother nor a caretaker to help. (Aff. of Resp. at 20–21.) Father contends that Mother has an obsession with sanitizers. (Second Aff. of Pet. at 7.)

8

State of Minnes
8/12/2020 5:14

36. Father believes that Mother is unable to meet the children's emotional and spiritual needs. To support this conclusion, Father highlights Mother's interactions *with him* rather than with the children. See (Aff. of Pet. at 6–7.) Father conflates Mother's highly contentious interpersonal relationship with him with her ability to have a healthy relationship with the children.

37. Mother contests Father's characterization. Mother states that she has a close relationship with the children. (Aff. of Resp. at 13.) She states that she provides emotional support to ███████, which leads to ███████ confiding in Mother. (Id. at 15.) ███████ also has a close relationship with Mother and is able to talk openly with Mother. (Id.) Ms. Tapia agrees that Mother is capable of providing emotional and spiritual support for the children. (Aff. of Nelly Tatiana Tapia at 2.)

38. The Court finds that both parties are able to meet the children's emotional and spiritual needs.

39. **Factor 2.** *Any special medical, mental health, or educational needs that the child may have that may require special parenting arrangements or access to recommended services.* The parties do not have any special medical, mental health, or educational needs that require special parenting arrangements or access to recommended services.

40. **Factor 3.** *The reasonable preference of the child, if the court deems the child to be of sufficient ability, age, and maturity to express an independent, reliable preference.* The children are five years old. The Court finds that the children are not of a sufficient age or maturity to express an independent, reliable preference.

41. **Factor 4.** *Whether domestic abuse, as defined in section 518B.01, has occurred in the parents' or either parent's household or relationship; the nature and context of the domestic abuse; and the implications of the domestic abuse for parenting and for the child's safety, well-being, and developmental needs.* To be sure, Father alleges acts of domestic abuse. There is a related domestic abuse file, 27-DA-FA-20-1626. In that file, Father filed a Petition for Order for Protection on March 13, 2020. The Court denied Father's Petition in an Order Denying Petition for *Ex Parte* Order for Protection filed on March 16, 2020.

42. In this file, Father alleges that Mother has committed domestic abuse against him "throughout [the parties'] marriage." (Aff. of Pet. at 8–9.) He states that Mother has hit him several time between 2017 and 2019, including hitting him in the head with a metal lamp. (Id. at 9.)[2] Mother denies hitting Father with a lamp. (Second Aff. of Resp. at 9.) Mother alleges that Father has been the one to escalate conflicts physically. (Id. at 12–13.)

43. There is little doubt that the parties' relationship is one of constant verbal, emotional, and sometimes physical conflict. Father characterizes the relationship as a one-way street of aggression by Mother against him. On the other hand, Mother characterizes the relationship as a two-way street, where the parties "have both been aggressive towards one another." (Second Aff. of Resp. at 11.) Similarly, she admits that she has been "a part of conflicts

---

[2] This incident was the basis of Father's Petition for Order for Protection.

9

State of Minne:
8/12/2020 5:14

that have escalated." (Aff. of Resp. at 4.) The Court finds that it is likely that both parties equally contribute to the highly volatile nature of the parties' conflict.

44. Father again conflates the impact of the high conflict nature of his relationship with Mother with an impact on the children. He suggest that "it hurts [the children] to listen to Ms. Uribe's constant criticisms of me, which I believe is emotionally abusive to them." (Aff. of Pet. at 10.) Although the Court does not doubt that the parties' conflict negatively impacts Father, the Court finds that Father has not shown that the parties' conflict has negatively impacted the children.

45. Even if the parties' conflict does have a negative impact on the children, the impact would be substantially mitigated by separating the parties' living situation. There is no evidence or testimony that shows that Mother is emotionally or verbally abusive to the children. Father only alleges that the children are collaterally impacted when the parties' themselves have a conflict.

46. The Court finds that the alleged domestic abuse does not risk the children's safety, well-being, and development. The temporary parenting time plan ordered below would separate the parties from each other. Based on the affidavit and evidence, the propensity for conflict and escalation of that conflict can be limited by the parties living separately.

47. **Factor 5.** *Any physical, mental, or chemical health issue of a parent that affects the child's safety or developmental needs.* The parties do not have any physical or chemical health issues that affect the children's safety or developmental needs. Each party, however, contends that the other parent has a mental health issue that negatively impacts the children.

48. Father is diagnosed with Attention Deficit Disorder. Mother contends that this diagnosis negatively impacts Father's ability to care for himself. (Second Aff. of Resp. at 18.) The Court finds that Mother's concerns are not substantiated. To be sure, Father must manage his ADD. But there is no evidence that Father's ADD negatively impacts the safety of the children. Instead, Mother bases her fear on speculation. See (Second Aff. of Resp. at 18 ("I would not be surprised to find out that the quantities of his ADD medicine do not fully cover his needs due to this mismanagement of his condition."))

49. Father's claims that Mother's mental health is impacts the children's safety or developmental need does not have support. He believes that Mother has "mood swings, extensive anger, physical and emotional abuse, and need to control." (Aff. of Pet. at 11.) To support this position, Father points to Mother's preference on "washing dishes, folding laundry, raking the yard, or preparing for an interview." (Id.) He further substantiates Mother's mental health issue by *speculating* that Mother's personality is responsible for her frequent changing employment. (Id. at 12.) A review of Father's affidavit suggests that he views Mother's work relationship through the lens of his own personal and volatile experience with Mother. However, he does not have a strong basis for this conclusion.

50. There issue of mental health shows the high conflict nature of the parties' relationship. The parties will zero-in on each other's perceived flaws and characterize that flaw as a danger

State of Minne:
8/12/2020 5:14

to the children. No issue makes that tendency clearer than the parties' assessment of the other parent's mental health.

51. The Court does not believe that either party has a mental health issue that negatively affects the children's safety or development.

52. **Factor 6**. *The history and nature of each parent's participation in providing care for the child.* Traditionally, the children are cared for by a nanny, Nelly Tatiana Tapia. Ms. Tapia worked as their nanny from the children's birth until the end of 2018. (Aff. of Nelly Tatiana Tapia at 1.) During this time, she lived with the parties. (Id.) As a result, Ms. Tapia has had an opportunity to observe the parties with the children "extensively over the last five years." (Id.) Although Ms. Tapia was responsible for "the direct daily child care," Mother also cared for the children when Ms. Tapia "was off of work and not the one doing it." (Id. at 2.)

53. The parties paint different stories about the children's care since Ms. Tapia left in August 2018. Father contends that he is the parent that "has managed the vast majority of care responsibilities." (Aff. of Pet. at 2.) He characterizes himself as "the caregiver and homemaker." (Second Aff. of Pet. at 11.) Both Mother and Ms. Tapia dispute this characterization. Mother states that "[a]side from times of isolated work travel, Pawel provided no more physical care for the children." (Aff. of Resp. at 21.) Mother believes that the parties "equally share daily parenting responsibilities." (Aff. of Resp. at 22.) Ms. Tapia states that Mother—not Father—"has filled the role of many of the things [she] used to do" and "[Mother] is involved with every task for the kids." (Aff. of Nelly Tatiana Tapia at 3.)

54. The Court finds that it is more likely that the parties equally shared the child care responsibilities. For example, Mother is actively involved in scheduling the children's appointments. (Aff. of Resp. at 17.) Father may be responsible for taking the children to those appointments. (Id.) Father admits that Mother is actively involved in the children's life. He stated that Mother "created a home-schooling schedule she has posted on the wall in the family room." (Aff. of Pet. at 4.) The totality of the evidence supports that the parties are equally responsible for the children's care rather than one party being the sole caretaker of the children.

55. Even if Father was the primary caretaker, that role would not carry significant weight because Father's involvement with the children is recent. Father's alleged increased role in the children's day-to-day care coincided with the loss of his job in 2019. (Aff. of Pet. at 6.) Prior to that, Ms. Tapia was the primary day-to-day caretaker of the children. To the extent that each party has participated in the children's daily care since Ms. Tapia left, one parent did not gain a significant amount of experience in the children's daily care compared to the other.

56. Furthermore, it appears that Mother—not Father—is responsible for managing the big picture decisions in the children's lives. Mother states that she "maintain[s] a routine for the children" and is "the parent who organizes their lives and handles all of the management

State of Minne:
8/12/2020 5:14

of their lives." (Aff. of Resp. at 15–16.) Ms. Tapia agrees with this assessment. She states that Mother is "the *batuta* for the children's lives, which is a Spanish word for a conductor's baton." (Aff. of Nelly Tatiana Tapia at 2.) In other words, Mother is responsible for enrolling the children in school or planning extracurricular activities for the children.

57. **Factor 7**. *The willingness and ability of each parent to provide ongoing care for the child; to meet the child's ongoing developmental, emotional, spiritual, and cultural needs; and to maintain consistency and follow through with parenting time.* Both parents are willing to provide for the ongoing care of the children and meet the children's ongoing developmental, emotional, spiritual, and cultural needs. There is no evidence or testimony to suggest that the parties cannot maintain consistency or follow through with parenting time. The Court finds that the parties are able to follow a temporary parenting time schedule as ordered below.

58. **Factor 8**. *The effect on the child's well-being and development of changes to home, school, and community.* The temporary parenting schedule outlined below, in combination with the award of temporary possession of the Homestead, will limit the changes to the children's home, school and community. The children will continue to live primarily in the Homestead. As a result, the children's school district and community will not change.

59. The Court notes that the parties disagree about the children's kindergarten school. The issue of legal custody—which implicates the parties' decision-making for the children's education—is reserved pending the custody and parenting time evaluation. Similarly, the Court is not ordering the children to attend any particular kindergarten school. The Court hopes that the parties will be able place the children's best interest first and cooperate on selecting the children's school.

60. **Factor 9**. *The effect of the proposed arrangements on the ongoing relationships between the child and each parent, siblings, and other significant persons in the child's life.* The temporary parenting time arrangement will improve the children's relationship with each of the parents. The primary source of conflict between the parties is their proximity to each other in the residence. By separating the parties, conflict between the parties should decrease. As a result, the children will be exposed to less parental conflict.

61. Under the arrangement, both the parties and the children will be able to continue to build a relationship with Ms. Tapia. Recently, Ms. Tapia assisted Father with childcare of the children. (Second Aff. of Resp. at 29.) Both parties are supportive of Ms. Tapia's involvement in the children's lives.

62. **Factor 10**. *The benefit to the child in maximizing parenting time with both parents and the detriment to the child in limiting parenting time with either parent.* The parenting time arrangement below balances maximizing parenting time with both parents against providing a stable environment for the children. The children should primarily reside in the Homestead with Mother. Father's parenting time will allow him to still spend time with the children. It is important that the parties are able to spend time with the children, even if they are separated. Each party will have the children on alternating weekends. Father

State of Minne:
8/12/2020 5:14

will have the children every Monday and Tuesday as well. The off-duty parent will also have access to the children via FaceTime. The Court finds that the temporary parenting time arrangement will allow the children to benefit from parenting time with each party.

63. **Factor 11.** *Except in cases in which domestic abuse as described in clause (4) has occurred, the disposition of each parent to support the child's relationship with the other parent and to encourage and permit frequent and continuing contact between the child and the other parent.* Both parties state that they are supportive of their children's relationship with the other parent. However, Father states that Mother is often disparaging of him in front of the children. He also suggests that Mother is attempting to influence the children to her side of the dissolution. Both parties, however, agree that the off-duty parent should be able to contact the children via FaceTime. The Court is hopeful that the parties will be able to be more supportive of the other parent during their separation.

64. **Factor 12.** *The willingness and ability of parents to cooperate in the rearing of their child; to maximize sharing information and minimize exposure of the child to parental conflict; and to utilize methods for resolving disputes regarding any major decision concerning the life of the child.* This case is one of high conflict between the parties. This conflict negatively impacts the parties' ability to cooperate in the rearing of the children, maximize sharing information, and minimize exposure of the children to parental conflict.

65. The parties' ability to cooperate with each other on the rearing of the children is negatively impacted by the toxic nature of the parties' relationship. The parties are unable to state facts to this Court without taking an opportunity to use those facts to attack the other parties' character. This toxic environment is two-sided. This back and forth is not isolated, but instead is numerous and occurs throughout the parties' affidavits.

66. Additionally, the parties are unable to minimize the exposure of the children to parental conflict. Although there is no indication that the children are the target of the parties' conflict, the children are often exposed to the parental conflict. Father states that Mother frequently yells at him in front of the children. See (Aff. of Pet. at 5.) Father characterizes Mother as intentionally pursuing conflict with him in front of the children. As discussed above, the parties' conflict is likely a two-way street. It is highly unlikely that Father's characterization of the parties' relationship is accurate Instead, it is likely that both parties are responsible for exposing the children to parental conflict.

67. The temporary arrangement will minimize the children's exposure to the parental conflict in two ways. First, the parties will have separate living places. So, the risk of conflict in front of the children will be substantially reduced. Second, the parties agree to use Our Family Wizard for communication about the children. The Court hopes that OFW will contribute to deescalating the parties' vitriolic communication pattern.

68. Based upon the totality of the factors discussed above, the Court finds that the parties should be awarded the following temporary parenting time schedule:

13

State of Minne:
8/12/2020 5:14

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|--------|--------|---------|-----------|----------|--------|----------|
| Mother | Father | Father | Mother | Mother | Mother | Father |
| Father | Father | Father | Mother | Mother | Mother | Mother |

Parenting time exchanges shall occur at 9:00 a.m. on days where the parents swap the children. Parenting time exchanges should occur at the children's school or child care if the children are attending, otherwise the exchange should occur at the on-duty parent's residence. The off-duty parent is responsible for picking up the children.

69. Mother shall pay for the family's COBRA health insurance or replacement family health insurance when COBRA health insurance expires. Mother has the financial means to provide the parties and the children with health insurance coverage.

70. Mother requests that this Court set a temporary holiday schedule. The Court finds that the parties should use the parenting time ordered below without an additional holiday schedule. The parties' holiday schedule should be addressed as part of the dissolution proceeding generally instead with temporary relief. Accordingly, the Court finds that Mother's motion for a temporary holiday schedule should be denied.

## II.   Temporary Relief Related to Property.

71. Next, the Court considers the request for temporary relief related to property. As a preliminary matter, the district court has broad discretion in dividing marital property. Servin v. Servin, 345 N.W.2d 754, 758 (Minn. 1984). The contested issues of property at issue in these motions are the Homestead and the parties' vehicles. Other motions on property are granted below.

72. Although the parties do not agree on whether the Homestead is marital property, the Court considers the Homestead as marital property for the purpose of this motion. Whether it should be considered non-marital property may be decided in the proceeding generally, not in this motion. Both parties request exclusive use of the Homestead. They agree that the parties must live separately because of the high conflict nature of their relationship.

73. Father contends that he should be awarded temporary occupancy of the Homestead because Mother is financially capable of obtaining new housing. Yet, at the same time, he requests $2,500 in temporary financial support while also requesting that Mother pay for the cost of the Homestead if he resides there. Temporary financial support ordered below will ensure that Father will have a place to live. So, the question is solely whether that place should be the Homestead. Mother has extensive experience maintaining the Homestead and managing the associated costs and services. Comparatively, Father has less experience maintaining the Homestead. Furthermore, the Homestead costs about $6,000 per month to maintain. Based on the affidavits and evidence presented, neither party is likely able to afford the Homestead, but Mother is the party who is most able to bear the financial cost of the Homestead.

14

State of Minne:
8/12/2020 5:14

74. Father also suggests that he should be awarded temporary occupancy of the Homestead if he is awarded his parenting time schedule. As discussed above, the Court is not granting Father's parenting time schedule.

75. Next, the Court addresses Father's request to create a "nesting" arrangement. The Court finds that Father's request is inefficient and wasteful. Father's alternative plan would require the parties to pay for a two-bedroom apartment rather than a one-bedroom apartment. Of course, Father expects Mother to bear that cost. The nesting arrangement would also increase the amount of travel required by the parties. It will require the parties to share two living spaces.[3] Both parties would be responsible for the upkeep and cleanliness of both residences. As a result, if one party was to free riding on the cleaning habits of the other, that party would be disproportionately impacted by the arrangement. For those reasons, the Court finds that Father's request in the alternative for a nesting arrangement should be denied.

76. Accordingly, the Court finds that Mother should be awarded temporary sole exclusive use of the marital home.

77. The parties are the owners of two vehicles, a 2018 Nissan Rogue and a 2017 Toyota Sienna. Both vehicles are titled in Mother's name. The Toyota Sienna is "historically the vehicle used to transport the kids." (Aff. of Pet. at 21.) Father claims that the Toyota is his primary vehicle. (Id.) Mother states that the Toyota Sienna would accommodate her dog better than the Nissan. (Aff. of Resp. at 32.) Both parties request that the Court award temporary use and possession of the Toyota Sienna to themselves and award the use of the Nissan Rogue to the other party.

78. The Court finds that Mother should be awarded the temporary use and possession of the 2017 Toyota Sienna and that Father should be awarded the temporary use and possession of the 2018 Nissan Rogue. Mother will reside in the Homestead and will have the children during the majority of the week. So, Mother should be awarded the vehicle that is primarily used to transport the children.

## III.   Temporary Financial Support.

79. The next issue is temporary financial support of Father. Father requests that the Court order Mother to pay $2,000 in temporary financial support and cover the parties' various financial obligations including the mortgage and utilities for the homestead, the family's health insurance premiums, car payments, car insurance payments, the children's school payments, and the parties' cell phone cost. Mother requests that the Court order her to pay $2,500 per month to Father in temporary financial support and have Father cover all of his other costs.

---

[3] Given the COVID-19 pandemic, both of these concerns is reason enough to pause at the idea of a "nesting" arrangement.

State of Minne:
8/12/2020 5:14

80. Because Mother agrees to pay Father $2,500 in temporary financial support, the Court finds that Mother's motion should be granted. The remaining issue is whether Mother should cover the parties' various obligation listed in his motion.

81. The financial disparity between the parties is large. Mother has a history of making a significant amount of money over the last six years. Although Mother does not have full-time employment, the Court finds that Mother is capable of earning an income based on her consulting work in 2019. To be sure, Mother is not guaranteed to obtain additional consulting work, but Mother also has significant financial assets in the event that she is unable to obtain employment.

82. In contrast, Father has not held full-time employment during that period. However, Father has shown some capacity to obtain limited employment based on his education and training. Father also has limited financial assets.

83. However, the Court is concerned that Father's motion for financial support may encourage freeriding. He is requesting temporary financial support, ostensibly because he cannot cover his necessary expenses. At the same time, he is also asking the Court to have Mother cover a significant portion—seemingly all—of his necessary expenses. The Court wonders what Father intends to spend the temporary financial support on.

84. If Father receives $2,500 per month in financial support, it would not be equitable that Mother covers all of Father's requested expenses. Temporary financial support should not be used to permit Father to live a life of luxury. Mother has agreed to pay for the vehicle payments, vehicle insurance, health insurance, and mobile phone service—all payments that Father would otherwise have had to cover. Father can use the temporary financial support to pay for necessary expenses such as housing, groceries, attorney fees, and debt. If Father wants the children to attend Polish school, he can pay the $120 per month to enroll the children with the financial support.

85. Mother also agreed to provide Father with furnishing for his new residence if required. Father would have temporary possession and use of certain bedroom and living room furniture as ordered below.

86. Accordingly, Mother shall pay Father $2,500 per month in temporary financial support. Mother shall also pay the mortgage payment for the Homestead, property taxes, homeowners' insurance, utilities for the Homestead, vehicle payments, vehicle insurance, mobile phone service for both parties, and her life insurance premium.

**IV.    Father's Motion for Needs Based Attorney Fees Should Be Denied.**

87. Minn. Stat. § 518.14 requires that a court award need-based attorney fees if it finds: (1) that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding; (2) that the party from whom fees, costs, and disbursements are sought has the means to pay them;

16

State of Minne:
8/12/2020 5:14

and (3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.

88. To be sure, there is a disparity between the financial capacities of the two parties. However, the requesting party must show a need for attorney fees—and not solely a financial disparity.

89. To show need, Father must show that he does not have the means to pay his attorney fees. The affidavits and evidence presented shows that Father has incurred fees of $24,563.18. (Aff. of Attorney at 2.) However, he has not shown whether those fees are paid or unpaid. Ms. Arnold does not state in her affidavit whether those attorney fees are unpaid either in part or in whole. On the other hand, Father's affidavit and accompanying exhibits suggest that he has been able to pay the fees at least in part. Father states that he has maxed out his credit card to pay his attorney fees and costs. (Aff. of Pet. at 34.) Although Father's April 2020 credit card statement does not show a payment for attorney fees, it shows that Father has spent at least to his $7,500 credit limit. (Aff. of Pet., Ex. 32.)

90. Additionally, Father has received a loan of $10,000 from David Ordman to pay his attorney fees. In the promissory note, Mr. Ordman only asked for the return of the principal $10,000, with no interest. (Aff. of Pet., Ex 33.) Of particular note, Father does not have to make monthly payments on the loan until two days after a divorce settlement or until Father obtains employment.

91. Based on the affidavits and evidence presented, it appears that Father has already paid a substantial portion—if not all—of his attorney fees. Even if he has outstanding fees, Father could have the means to pay them with the loan from Mr. Ordman and temporary financial support. This Order awards Father $2,500 per month in temporary financial support. He will spend some of that support on housing, but there is no evidence to support other costs Father may incur. Father did not provide the Court with a monthly budget. Of particular note, Mother agreed to make payments on the insurance for the parties' vehicle and the parties' cell phones. Accordingly, the Court finds that Father has not shown that he would be unable to pay his attorney fees with the addition of that temporary financial support.

92. Accordingly, the Court finds that Father's motion for need based attorney fees should be denied.

NOW, THEREFORE, based upon the files, proceeding herein, the Court makes the following:

## Order

1. The issue of temporary legal and temporary physical custody of the children is **RESERVED**.

2. **Parenting Time**. The parties shall have the following temporary parenting time schedule:

State of Minne:
8/12/2020 5:14

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|--------|--------|---------|-----------|----------|--------|----------|
| Mother | Father | Father | Mother | Mother | Mother | Father |
| Father | Father | Father | Mother | Mother | Mother | Mother |

Parenting time exchanges shall occur at 9:00 a.m. on days where the parents swap the children. Parenting time exchanges should occur at the children's school or child care if the children are attending, otherwise the exchange should occur at the on-duty parent's residence. The off-duty parent is responsible for picking up the children.

3. **Right of First Refusal.** The parties shall have a right of first refusal if a party is unavailable for their overnight parenting time during their schedule parenting time. The on-duty parent shall offer the parenting time to the other parent before arranging for a third-party to care for the children.

4. **FaceTime/Telephone Contact.** The off-duty parent shall have FaceTime or telephone calls with the children one time each day. The parties may agree on additional FaceTime or telephone contact. The children may initiate contact with the off-duty parent by telephone at any reasonable time.

5. **Health Insurance.** Mother shall continue to pay for health insurance coverage for the parties and the children.

6. **Childcare Cost.** Each party shall be responsible for obtaining child care during their parenting time and shall be responsible for the associated cost.

7. **Polish School.** Father's motion to have Mother pay for Polish school is **DENIED**.

8. **The Homestead.** Mother shall be awarded temporary exclusive use and possession of the Homestead. *Neither party shall sell the Homestead unless the parties agree in writing or by further Court order.*

9. **Expenses.** On a temporary basis, Mother shall be responsible for and pay the expenses associated with the Homestead, including mortgage payments, property taxes, homeowners' insurance, and utilities, vehicle insurance for the parties' vehicles, the vehicle payment on the 2017 Toyota Sienna, each party's cell phone services, and her life insurance premium.

10. **Our Family Wizard.** The parties shall use Our Family Wizard to communicate about the children and parenting time-related issues. If there is an emergency involving the children, a party may contact the other party by telephone or text message. The parties shall activate their subscription to Our Family Wizard within fourteen (14) days of this Order. Each party shall be responsible for their own cost of Our Family Wizard.

11. **No Disparaging Comments.** The parties are restrained from harassing, vilifying, mistreating, or disparaging the other party, including in front of the children.

18

State of Minne:
8/12/2020 5:14

12. **Restraint from Destroying Property**. The parties are restrained from removing, destroying or selling marital or personal property of the other party unless the parties agree in writing or by further court order.

13. **Temporary Financial Support**. Beginning August 1, 2020, Mother shall pay Father $2,500 per month in temporary financial support. For August 2020, Mother shall pay Father $2,500 within fourteen (14) days of this Order. For all subsequent months, Mother shall make two payments of $1,250 on the 1st and 15th of each month. The parties may modify the amount or duration of this temporary financial support by written agreement.

14. **Employment**. Both parties shall engage in a good faith effort to become employed and earn income.

15. **Vehicles**. Mother shall have temporary exclusive use of the 2017 Toyota Sienna. Father shall have temporary use and possession of the 2018 Nissan Rogue.

16. **The Dog**. Mother shall be awarded temporary exclusive possession of the dog, Lorenzo.

17. **Safes**. Each party shall have temporary exclusive use of one safe owned by the parties located at the Homestead. Prior to moving out of the Homestead, Father may select one of the safes and Mother shall make it available to him. Mother shall provide Father the code to that safe.

18. **Furniture**. In the event Petitioner's new residence is not furnished, Petitioner is granted temporary possession and use of the bedroom furniture in the guest room where he currently sleeps, the two black sofas and a coffee table in the living room at the entrance of the house, and the dining set in the basement. These furnishings belong to Respondent's parents and shall be returned to Respondent upon further Order of the Court, or two months after Petitioner secures employment, whichever first occurs. Respondent is awarded temporary use and possession of all other furniture located in the parties' home.

19. **Need-Based Attorney Fees**. Father's motion for need-based attorney fees is **DENIED**.

20. **Passports**. Father's motion on the children's passport is **DENIED**.

21. **Informal Discovery**. The parties shall cooperate with regard to the ongoing exchange of discovery.

22. **Amended Counterpetition and Answer**. The issue of whether Mother may amend her Counterpetition and Answer is **RESERVED** pending the parties' Review Hearing on October 28, 2020.

23. **Other Motions**. All motions not specifically addressed in this Order are **DENIED**.

24. All other provisions of prior and consistent orders shall remain in full force and effect.

State of Minne:
8/12/2020 5:14

25.  Appendix A is attached and incorporated herein.

26.  **Attorneys Using E-Filing**. When e-filing into this case, attorneys shall email a courtesy copy to 4thJudgeBurnsStaff@courts.state.mn.us.

27.  **Service**. Service of a copy of this order shall be made upon pro-se parties by first class U.S. mail at their last known addresses, or to attorneys by e-service, which shall be due and proper service for all purposes.

**It is so ordered.**

Burns, Michael
2020.08.12
17:10:43 -05'00'

*Michael E. Burns*
Judge of District Court

20

State of Minne:
8/12/2020 5:14

## APPENDIX A

**NOTICE IS HEREBY GIVEN TO THE PARTIES:**

**I. PAYMENTS TO PUBLIC AGENCY.** According to Minnesota Statutes, section 518A.50, payments ordered for maintenance and support must be paid to the Minnesota child support payment center as long as the person entitled to receive the payments is receiving or has applied for public assistance or has applied for support and maintenance collection services. Parents mail payments to: P.O. Box 64326, St. Paul, MN 55164-0326. Employers mail payments to: P.O. Box 64306, St. Paul, MN 55164.

**II. DEPRIVING ANOTHER OF CUSTODIAL OR PARENTAL RIGHTS -- A FELONY.** A person may be charged with a felony who conceals a minor child or takes, obtains, retains, or fails to return a minor child from or to the child's parent (or person with custodial or parenting time rights), according to Minnesota Statutes, section 609.26. A copy of that section is available from any court administrator.

**III. NONSUPPORT OF A SPOUSE OR CHILD – CRIMINAL PENALTIES.** A person who fails to pay court-ordered child support or maintenance may be charged with a crime, which may include misdemeanor, gross misdemeanor, or felony charges, according to Minnesota Statutes, section 609.375. A copy of that section is available from any district court clerk.

**IV. RULES OF SUPPORT, MAINTENANCE, PARENTING TIME.**

A. Payment of support or spousal maintenance is to be as ordered, and the giving of gifts or making purchases of food, clothing, and the like will not fulfill the obligation.

B. Payment of support must be made as it becomes due, and failure to secure or denial of parenting time is NOT an excuse for nonpayment, but the aggrieved party must seek relief through a proper motion filed with the court.

C. Nonpayment of support is not grounds to deny parenting time. The party entitled to receive support may apply for support and collection services, file a contempt motion, or obtain a judgment as provided in Minnesota Statutes, section 548.091.

D. The payment of support or spousal maintenance takes priority over payment of debts and other obligations.

E. A party who accepts additional obligations of support does so with the full knowledge of the party's prior obligation under this proceeding.

F. Child support or maintenance is based on annual income, and it is the responsibility of a person with seasonal employment to budget income so that payments are made throughout the year as ordered.

G. A *Parental Guide to Making Child-Focused Parenting-Time Decisions* is available from any court administrator.

H. The nonpayment of support may be enforced through the denial of student grants; interception of state and federal tax refunds; suspension of driver's, recreational, and occupational licenses; referral to the department of revenue or private collection agencies; seizure of assets, including bank accounts and other assets held by financial institutions; reporting to credit bureaus; interest charging, income withholding, and contempt proceedings; and other enforcement methods allowed by law.

I. The public authority may suspend or resume collection of the amount allocated for child care expenses if the conditions of Minnesota Statutes, section 518A.40, subdivision 4, are met.

J. The public authority may remove or resume a medical support offset if the conditions of section 518A.41, subdivision 16, are met.

K. The public authority may suspend or resume interest charging on child support judgments if the conditions of section 548.091, subdivision 1a, are met.

**V. MODIFYING CHILD SUPPORT.** If either the obligor or obligee is laid off from employment or receives a pay reduction, child support may be modified, increased, or decreased. Any modification will

State of Minne:
8/12/2020 5:14

only take effect when it is ordered by the court, and will only relate back to the time that a motion is filed. Either the obligor or obligee may file a motion to modify child support, and may request the public agency for help. UNTIL A MOTION IS FILED, THE CHILD SUPPORT OBLIGATION WILL CONTINUE AT THE CURRENT LEVEL. THE COURT IS NOT PERMITTED TO REDUCE SUPPORT RETROACTIVELY.

**VI. PARENTAL RIGHTS FROM MINNESOTA STATUTES, SECTION 518.17, SUBDIVISION 3.** UNLESS OTHERWISE PROVIDED BY THE COURT:

A. Each party has the right of access to, and to receive copies of, school, medical, dental, religious training, police reports, and other important records and information about the minor children. Each party has the right of access to information regarding health or dental insurance available to the minor children. Presentation of a copy of this order to the custodian of a record or other information about the minor children constitutes sufficient authorization for the release of the record or information to the requesting party.

B. Each party has the right to be informed by the other party as to the name and address of the school of attendance of the minor children. Each party has the right to be informed by school officials about the children's welfare, educational progress and status, and to attend school and parent teacher conferences. The school is not required to hold a separate conference for each party.

C. Each party has the right to be notified by the other party of an accident or serious illness of a minor child, including the name of the health care provider and the place of treatment.

D. Each party has the right to be notified by the other party if the minor child is the victim of an alleged crime, including the name of the investigating law enforcement officer or agency. There is no duty to notify if the party to be notified is the alleged perpetrator.

E. Each party has the right of reasonable access and telephone contact with the minor children.

**VII. WAGE AND INCOME DEDUCTION OF SUPPORT AND MAINTENANCE.** Child support and / or spousal maintenance may be withheld from income, with or without notice to the person obligated to pay, when the conditions of Minnesota Statutes, section 518A.53, have been met. A copy of that section is available from any court administrator.

**VIII. CHANGE OF ADDRESS OR RESIDENCE.** Unless otherwise ordered, each party shall notify the other party, the court, and the public authority responsible for collection, if applicable, of the following information within ten days of any change: residential and mailing address, telephone number, driver's license number, social security number, and name, address, and telephone number of the employer.

**IX. COST OF LIVING INCREASE OF SUPPORT AND MAINTENANCE.** Basic support and / or spousal maintenance may be adjusted every two years based upon a change in the cost of living (using the U.S. Department of Labor, Bureau of Labor Statistics, consumer price index Mpls. St. Paul, for all urban consumers (CPI-U), unless otherwise specified in this order) when the conditions of Minnesota Statutes, section 518A.75, are met. Cost of living increases are compounded. A copy of Minnesota Statutes, section 518A.75, and forms necessary to request or contest a cost of living increase are available from any court administrator.

**X. JUDGMENTS FOR UNPAID SUPPORT; INTEREST.** According to Minnesota Statutes, section 548.091:

A. If a person fails to make a child support payment, the payment owed becomes a judgment against the person responsible to make the payment by operation of law on or after the date the payment is due, and the person entitled to receive the payment or the public agency may obtain entry and docketing of the judgment **without notice** to the person responsible to make the payment.

B. Interest begins accruing on a payment or installment of child support whenever the unpaid amount due is greater than the current support due.

22

State of Minne:
8/12/2020 5:14

**XI.   JUDGMENTS FOR UNPAID MAINTENANCE.**   A judgment for unpaid spousal maintenance may be entered and docketed when the conditions of Minnesota Statutes, section 548.091, are met.  A copy of that section is available from any court administrator.

**XII.  ATTORNEY FEES AND COLLECTION COSTS FOR ENFORCEMENT OF CHILD SUPPORT.**  A judgment for attorney fees and other collection costs incurred in enforcing a child support order will be entered against the person responsible to pay support when the conditions of Minnesota Statutes, section 518A.735, are met.  A copy of that section and forms necessary to request or contest these attorney fees and collection costs are available from any court administrator.

**XIII.  PARENTING TIME EXPEDITOR PROCESS.**  On request of either party or on its own motion, the court may appoint a parenting time expeditor to resolve parenting time disputes under Minnesota Statutes, section 518.1751.  A copy of that section and a description of the expeditor process is available from any court administrator.

**XIV.  PARENTING TIME REMEDIES AND PENALTIES.**  Remedies and penalties for wrongful denial of parenting time are available under Minnesota Statutes, section 518.175, subdivision 6. These include compensatory parenting time; civil penalties; bond requirements; contempt; and reversal of custody.  A copy of that subdivision and forms for requesting relief are available from any court administrator.