# EXHIBIT 2

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT
FAMILY COURT DIVISION

In Re the Marriage of:

Pawel Dominik Rzeczkowski,

Petitioner,

and

Carolina Uribe Borrero,

Respondent.

Case Type: Dissolution without Children
Court File No. 27-FA-19-6324

FINDINGS OF FACT, CONCLUSIONS
OF LAW, ORDER FOR JUDGMENT,
AND JUDGMENT AND DECREE

The above-entitled matter came before the Honorable Michael E. Burns, Judge of District Court, for an Evidentiary Hearing held on January 5, 2022, January 6, 2022, and January 7, 2022, remotely by Zoom.

Petitioner Pawel Dominik Rzeczkowski appeared and is represented by Robert W. Due, Esq. and James R. Todd, Esq., of DEWITT LLP.

Respondent Carolina Uribe Borrero appeared and is represented by John "Jack" DeWalt, of DEWALT, CHAWLA, & SAKSENA, LLC.

Based upon the testimony heard, the evidence received, arguments of counsel or pro-se parties, and upon all the files, records and proceedings herein, the Court makes the following:

## FINDINGS OF FACT

1. The parties were married on October 1, 2011, in the City of Cali, Department of Valle del Cauca in the Republic of Columbia, and since that time have been and now are husband and wife.

2. Prior to the marriage, the parties entered into a prenuptial agreement dated September 30, 2011, in accordance with Colombian law and immediately after the parties' marriage, the parties entered into a "Disolucion y Liquicidacion de la Sociedad Conyugal" which under Columbian law, dissolved and liquidated their marital estate, thereby separating their respective property rights, with the intent to assure the parties' assets, debts, and financial

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

resources remained separate. An order was issued on August 7, 2021 stating these documents shall be effective in this proceeding.

3. These proceedings were initiated by Petitioner with service of the Summons and Petitioner on, or around, September 20, 2019. Respondent files an Answer and Counter-Petition for Dissolution of Marriage on, or around, February 13, 2020.

4. **Valuation Date**. The Court held an Initial Case Management Conference on November 13 2019, which is the valuation date for this matter.

5. **Parties**. The true and correct names, former names, addresses, and dates of birth of Petitioner and Respondent are as follows:

> Petitioner:    Pawel Dominik Rzeczkowski
> Prior Names: None
> 3131 Excelsior Blvd., Apt. 210
> Minneapolis, MN 55416
> Date of Birth: December 9, 1970
>
> Respondent:    Carolina Uribe Borrero
> Prior names: None
> 4105 Upton Ave. South, Unit 1
> Minneapolis, MN 55410
> Date of Birth: ███████████

The Petitioner is also referred to as "Father" and the Respondent is also referred to as "Mother" in this decree.

The Social Security numbers of the parties have been filed as confidential information.

6. **Representation**. Husband is represented in this proceeding by Robert W. Due, Attorney at Law, and James R. Todd, Attorney at Law, of DEWITT LLP, 2100 AT&T Tower, 901 Marquette Avenue, Minneapolis, MN 55402. Wife is represented in this proceeding by John "Jack" DeWalt, Attorney at Law, of DEWALT, CHAWLA + SAKSENA, LLC, 330 Second Ave. South, Suite 760, Minneapolis, MN 55401.

7. **Irretrievable Breakdown**. There has been an irretrievable breakdown of the marriage relationship of the parties hereto pursuant to Minn. Stat. §518.06, as amended.

8. **Jurisdiction**. For more than 180 days immediately preceding the commencement of the within proceeding, Petitioner has been and now is a resident of the State of Minnesota. Petitioner is a resident of Hennepin County. Respondent's current residency is unknown.

9. **Military Service**. Neither party was, at the time of the service of the Summons and Petition, nor is a member of the United States armed forces and neither party is entitled to any relief under the Servicemembers Civil Relief Act.

---

Court File No. 27-FA-20-5933                Judgment and Decree                Page 2

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

10. **No Separate Proceeding.** No separate proceeding for dissolution of the parties' marriage, legal separation, or custody is pending in any Court in this state or elsewhere.

11. **Order for Protection.** There are no Orders for Protection that govern the parties under Minn. Stat. Chapter 518B.

12. **Minor Children.** The parties are the parents to two joint minor children, namely, ███████ born ████████ ("████"), and ███████ born ████████ ("████"), both age 7. There are no other minor children or dependent children affected by this proceeding. The minor children are not under the jurisdiction of a juvenile court.

13. **Pregnancy.** Mother is not now pregnant.

14. **Public Assistance.** Mother does not receive public assistance. Father receives SNAP benefits through the State of Minnesota.

15. **Income and Expenses.** Father is currently unemployed. Mother is self-employed full time as the owner of Growth Possibilities, LLC, a consulting business. Mother's gross earnings after businesses expenses in 2021 were approximately $350,920.

16. **Name Change.** Neither party is seeking a name change.

17. **Estate, Assets, Debts, and Financial Resources.** The parties' marriage estate, assets, debts, and financial resources shall be divided according to the parties' prenuptial agreement and "Disolucion y Liquicidacion de la Sociedad Conyugal".

18. **Custody and Parenting Time.** The parties engaged in a Custody and Parenting Time Evaluation conducted by Mr. Zak Chesson. The parties agree to share joint physical custody of the minor children and to exercise an equal 5-2-2-5 parenting time schedule, as recommended in their custody evaluation. The Court finds this agreement to be in the best interests of the children. The parties do not have an agreement on legal custody of the children. This issue will be evaluated and ordered by the Court below.

19. **Spousal.** Father is seeking spousal maintenance from Mother. Mother has a temporary spousal maintenance obligation is currently in place in the amount of $2,500 per month. The parties do not have an agreement on spousal maintenance.

20. **Child Support.** The parties do not have an agreement on child support.

21. **Need-Based Attorney's Fees.** Father is seeking need-based attorney's fees from Mother. The parties do not have an agreement on Need-Based Attorney's Fees.

NOW, THEREFORE, based upon the above Findings of Fact, the Court makes the following:

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

## CONCLUSIONS OF LAW

### I.    Custody and Parenting Time

22.    Here, the Petitioner is seeking joint legal custody and Respondent is seeking sole legal custody.

23.    Minnesota Statute § 518.17, subd. 1 requires the Court to evaluate the "best interests of the children" when determining issues of custody and parenting time. Minn. Stat. § 518.17, subd. 1. Further, the Court should presume that it is in the best interests of the children to promote a safe, stable, nurturing relationship with *both* parents; and that the Court should presume that *both* parents have the capacity to develop and sustain such a relationship [emphasis added]. Minn. Stat. § 518.17, subd. 1 (b)(2) and (3). To defeat that presumption, the Court must be provided "substantial reasons to believe otherwise." Minn. Stat. § 518.17, subd. 1 (b)(3). In the evaluation of determining issues of custody and parenting time, the court must consider and evaluate all relevant factors.

24.    *A child's physical, emotional, cultural, spiritual, and other needs, and the effect of the proposed arrangements on the child's needs and development.* Prior to the separation of homes, Mr. Chesson reported that the children had been experiencing "behavioral challenges beyond what is to be expected at their age since the commencement of the divorce proceedings" but that some of these behaviors subsided after the Petitioner moved out of the family home. *Custody Evaluation,* pg. 3. The Court notes that there are some difficulties between parties to come to an agreement on services for the children, but that both parties seem to have a general concern for their children's health and wellbeing. There are no other credible concerns regarding the parties' ability to meet the physical, emotional, cultural, and spiritual or other needs of the children. Mr. Chesson noted that "the children are both in good physical health, and both parents put a priority on celebrating their rich cultural backgrounds. *Id.* The Court considers this factor to weigh in favor of joint custody.

25.    *Any special medical, mental health, or educational needs that the child may have that may require special parenting arrangements or access to recommended services.* The Court finds that there are no credible concerns raised regarding the parties' inability to meet the medical, mental, or educational needs of the children. The children have been enrolled in play therapy, per the recommendations of Mr. Chesson and Sebastian is being screened for ADD/ADHD per the recommendation of his doctor. While the Court notes that the parties were not easily agreeable as to how to move forward, both parties were willing to move forward and seek the necessary care for the children. The Court considers this factor to weigh in favor of joint custody.

26.    *The reasonable preference of the child, if the court deems the child to be of sufficient ability, age, and maturity to express an independent, reliable preference.* The children are not old enough to express an independent, reliable preference, so this factor is neutral regarding legal custody.

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

27. *Whether domestic abuse has occurred in the parents' or either parent's household or relationship; the nature and context of the domestic abuse; and the implications of the domestic abuse for parenting and for the child's safety, well-being, and developmental needs.* The Court notes that domestic abuse has occurred in the shared home, but since separating, no other instances of domestic abuse have occurred. The Court finds that the instances of domestic abuse were situational and were based on rising conflict of the relationship. According to the custody evaluation, Mr. Chesson notes that "little indicates that ongoing physical violence will be a concern" and that he has "no concerns about the children's safety and well-being now that the parties no longer live in the same home". *Custody Evaluation,* pg. 7. The Court does not discredit the seriousness of the domestic violence incident that took place in April of 2019 where Mother struck Father in the head with a lamp while the children were present. The Court recognizes the severe impact an incident of this nature will have on the children, but ultimately finds that the situation does not present a risk for future domestic violence to occur between the parties. The Court finds this factor weighs in favor of joint legal custody.

28. *Any physical, mental, or chemical health issue of a parent that affects the child's safety or developmental needs.* The Court finds that neither parent presents with any physical, mental, or chemical health issue affecting the children's safety or developmental needs. The Court finds this factor weighs in favor of joint legal custody.

29. *The history and nature of each parent's participation in providing care for the child.* The Court adopts Mr. Chesson's statements as it relates to the parties' participation in providing care, stating, "it is abundantly clear that both parents have participated fully in providing care for the children" and "the children have appropriate attachments and bonds to both of their parents". *Custody Evaluation,* pg. 8. Mr. Chesson also noted that he witnessed "genuine warmth, humor, vulnerability, and love displayed between the children and both parents. Pawel and Caroline were able to give both ████ and ████ equal amounts of guidance, nurturing, and encouragement." *Id.* The Court finds that this factor weighs in favor of joint legal custody.

30. *The willingness and ability of each parent to provide ongoing care for the child; to meet the child's ongoing developmental, emotional, spiritual, and cultural needs; and to maintain consistency and follow through with parenting time.* Per testimony from both parents, as well as the opinion of Mr. Chesson, the Court finds that there are no credible concerns about the willingness and ability of each parent to provide ongoing care for the child. This factor weighs in favor of joint legal custody.

31. *The effect on the child's well-being and development of changes to home, school, and the community.* The parties have both expressed their intent to maintain the children's current home and community. Father expressed concern regarding a change to the children's schooling. The parties were required to choose a new school as the one the children were attending was no longer in the school district. The parties disagreed as to which school the children should attend, resulting in the school district ultimately making the choice in favor of Mother's school preference. Father expresses concerns about the children's performance at the current school. Father's concerns centered on ████

---

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

performance in reading and writing English, as well as behavioral problems. The Court notes Father's concerns but feels that behavioral problems were already presently addressed and likely do not directly correlate to the specific school in which the children attend. The Court finds that no other credible concerns exist and that this factor weighs in favor of joint legal custody.

32. *The effect of the proposed arrangements on the ongoing relationships between the child and each parent, siblings, and other significant persons in the child's life.* The parties have agreed to equal parenting time and joint physical custody. The Court finds this factor to be neutral in regard to legal custody.

33. *The benefit to the child in maximizing parenting time with both parents and the detriment to the child in limiting parenting time with either parent.* The parties have agreed to equal parenting time and joint physical custody. The Court finds this factor to be neutral in regard to legal custody.

34. *Except in cases in which domestic abuse as described in clause (4) has occurred, the disposition of each parent to support the child's relationship with the other parent and to encourage and permit frequent and continuing contact between the child and the other parent.* The Court notes that domestic abuse has occurred in this case but agrees with Mr. Chesson's assessment that there is a "low risk of future violence and the parents have greatly benefited from their separation with improved communication and cooperation over daily care of the children." *Custody Evaluation,* pg. 12. The biggest concern to the Court is the apparent difficulties for the parties to develop a healthy co-parenting relationship. The Court acknowledges that both parties have contributed to the conflict and that this conflict has created difficulties in making positive choices for the children. Mr. Chesson noted, "[Mother] was more capable of making sure that the kids' needs were met and was not as caught up in the conflict, not that she didn't participate in it, but that she was able to put their interpersonal conflicts to the side to focus on the children and I thought Father had more difficulty doing that." *TT,* at 88. The Court also notes that throughout these proceedings, care for the children in various aspects has been delayed due to the parties' unwillingness to agree, with issues such as play therapy enrollment and ADD/ADHD screening becoming delayed due specifically to Father's unwillingness to cooperate and efficiently resolve disputes. The Court finds that this factor weighs more favorably for sole legal custody to Mother.

35. *The willingness and ability of parents to cooperate in the rearing of their child; to maximize sharing information and minimize exposure of the child to parental conflict; and to utilize methods for resolving disputes regarding any major decision concerning the life of the child.* The Court has already noted that the difficult relationship between the parties has led to difficulty in the parties' ability to effectively co-parent the children. The Court notes that while this difficulty has presented previous instances of delay in care and decision making, that decisions were ultimately made in each instance of disagreement and that there are no current, pending concerns for the children as it relates to the parties' inability to agree. This concern will decrease dramatically as the parties continue to work

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

towards a healthy co-parenting relationship for the benefit of their children. The Court finds that this factor weighs in favor of joint legal custody.

36. The Court greatly values and considers the input from the Custody and Parenting Time Evaluation and the opinions and findings of Mr. Chesson. The Court acknowledges that a preliminary draft of Mr. Chesson's evaluation called for joint legal custody, where his final draft recommended sole legal custody to Mother, but that this was a "close call". The Court understands Mr. Chesson's concerns and finds them to be deeply rooted in co-parenting conflicts, rather than individual parenting conflicts. The parties should continue to work towards a healthier co-parenting relationship that is in the best interest of the children.

37. In considering the weight of all factors, the Court finds that there are no credible concerns to warrant against the statutory presumption of joint legal custody. The Court finds that joint legal custody is in the best interests of the children.

## II. Child Support

38. Child support laws codified in Minn. Stat. § 518A (2019) are composed of three elements: (1) Basic Child Support; (2) Work-Related or Education- Related Childcare Costs; and (3) Medical and Dental Expenses, including both the premium cost for insurance and the cost of uninsured or unreimbursed medical and dental expenses.

39. **Basic Child Support.** Basic child support is based on Parental Income for Determining Child Support ("PICS"). Mother has a reported monthly income of $15,810. Father is voluntarily underemployed. Father has a potential income of $8,333, based on the lower end of the estimation of Mr. Mark Raderstorf, Mother's vocational expert, that Father could be earning between $100,000 and $125,000 annual based on education, skill, and previous employment. The total monthly PICS income is $24,143. Mother has a PICS percentage of 65% and Father has a PICS percentage of 35%. This results in Mother's basic child support obligation of $410.[1]

40. **Work-Related or Education-Related Childcare Costs.** Mother is the only parent who incurs work-related childcare costs and has expressed her intent to be solely responsible to cover those costs.

41. **Medical and Dental Expenses.** Mother currently pays $443 per month in medical insurance costs for the joint minor children, and $39 per month in dental insurance costs. According to Father's combined PICS percentage of 35%, Father is responsible for reimbursing Mother $169 per month for medical and dental insurance costs for the joint minor children. Mother will be responsible for 65% of all medical and dental costs not covered by insurance, Father will be responsible for 35% of all medical and dental costs not covered by insurance.

---

[1] See attached Minnesota Child Support Guidelines Worksheet.

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

42. **Total Child Support.** Mother's basic child support obligation to Father is $410 per month. Father's obligation to Mother for medical and dental insurance reimbursement is $169 per month. This reduces Mother's total child support obligation to Father to $241 per month.

## III.   Spousal Maintenance

43. Father is requesting temporary, rehabilitative maintenance for a period of five years from the date of entry of this Judgment and Decree, in the amount of $5,000 per month. Mother is requesting that no spousal maintenance be ordered on the basis that Father has the ability to be self-supporting. Mother has acknowledged that $5,000 is below the martial standard of living. Both parties agree that the marriage was not long enough to support a claim of permanent spousal maintenance.

44. In a proceeding for dissolution of marriage or legal separation, the court may grant a maintenance order for either spouse if it finds that the spouse seeking maintenance lacks sufficient property to provide for reasonable needs of the spouse or is unable to provide adequate self-support after considering all relevant factors. Minn. Stat. 518.552.

45. The Court has previously ordered through an Order for Temporary Relief filed on August 12, 2020, that Mother pay Father $2,500 per month in temporary financial support, in addition to Mother paying the mortgage payment on the Homestead, property taxes, homeowner's insurance, utilities for the Homestead, vehicle payments, vehicle insurance, mobile phone service for both parties, and her life insurance premium. In this order, the Court noted it's concern that this temporary relief would encourage "freeloading" and was not intended for Father to live a life of luxury, but rather, to lessen the financial burden while Father became stable in his new living situation. The Court ordered this relief, in part, because Father stated that the constant moving for Mother's employment made it difficult to obtain employment and his assets were limited, but also in part because Mother had agreed to the temporary relief, in addition to agreeing to help furnish his new living space and covering the shared expenses.

46. Since the Order of Temporary Relief, nearly two years have passed. Father remains unemployed. The Court finds that this should have been sufficient time for Father to gain employment, and that Father has not shown credible evidence of his attempts to gain sufficient employment, noting Father had only attended two interviews by the time of trial. The Court finds that Father is capable of gaining employment, that no further education or training would be necessary, and that his history of employment supports this position. The Court would like to emphasize the difference that exists between sufficient employment and Father's preferred employment. Based on this information, the Court finds that Father is voluntarily underemployed.

47. Based on Father's lack of evidence to support that his inability to be self-sufficient was not due to his unwillingness to gain employment, the Court finds that Father has not met his burden of proof and no spousal maintenance will be ordered.

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

## IV.   Need-Based Attorney's Fees

48.   Here, Father is requesting that the Court order Mother to pay Father's need-based attorney's fees in the amount of $111,542. Mother requests that each party be responsible for their own attorney's fees.

49.   Except as provided in section 518.735, the court shall award attorney fees, costs, and disbursements in an amount necessary to enable a party to carry on or contest the proceeding, provided it finds: 1) the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding; 2) that the party from whom the fees, costs, and disbursements are sought has the means to pay them; and 3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them. Minn. Stat. §1518.14, subd. 1.

50.   In the Court's Order on Request for Need-Based Attorney Fees dated January 12, 2021, the Court found that attorney fees were necessary for the good-faith assertion of Petitioner's rights. However, in the Court's Order Enforcing the Colombian Documents dated August 7, 2021, the Court found that "the Court does not find Father's statements to be credible because he has given this Court reason to believe that he would mislead the Court or distort facts in a self-serving manner". *Order Enforcing the Colombian Documents,* pg. 8. Additionally, that "Father's statements lack reliability, consistency with other facts, and are permeated with Father's self-interest to use the economic divorce when it suits him and disavow it when it does not." *Id,* pg. 10. Based on these previous findings, the Court finds that Father's legal proceedings were not necessarily in the furtherance of a good-faith assertion of Petitioner's rights.

51.   The Court recognizes that Father does not currently have the means to pay the attorney's fees due to his unemployment and his lack of assets. However, the Court has already stated that Father's inability to pay the attorney's fees is in part due to Father's unwillingness to gain employment. The Court finds that Father willingly does not have the means to pay the attorney's fees.

52.   The Court has previously addressed in its Order for Need-Based Attorney's fees that Mother did not have the means to pay for Father's attorney's fees. The Court recognizes that Mother's means have increased based on her earned income in 2021, her sale of the Beard Avenue property, and an increase in liquid assets. The Court finds that Mother does have the ability to pay need-based attorney's fees.

53.   To award need-based attorney's fees, the Court must find that the fees are necessary for the good-faith assertion of Father's rights, that Father does not have the means to pay the attorney's fees, and that Mother does have the means to pay the attorney's fees. While Mother does have the means to pay the attorney's fees, and Father does not have the means to pay the attorney's fees, whether due to his own unwillingness, the Court finds that the attorney's fee were not necessary for the good-faith assertion of Father's rights as Father has acted in bad faith during these dissolution proceedings.

54.   Accordingly, the Court finds that both parties with be responsible for their own attorney's fees.

Court File No. 27-FA-20-5933                Judgment and Decree                                Page 9

27-FA-19-6324

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

## ORDER

55. **Dissolution of Marriage.** The bonds of matrimony existing between the parties are hereby dissolved.

56. **Estate, Assets, Debts, and Financial Resources.** Pursuant to the Findings and Order Enforcing the Colombian Documents dates August 7, 2021, the assets and liabilities of the parties are allocated according to the prenuptial agreement and the "Disolucion y Liquicidacion de la Sociedad Conyugal".

57. **Custody.** The parties shall have joint physical and joint legal custody.

   a. **Access to Information.** Under Minn. Stat. §518.17, Subd. 3, each parent has the right of access to, and to receive copies of school, medical, dental, religious training, and other important records and information about the minor children. Each parent has equal rights to access of information regarding the children, and rights to be informed by school and medical officials about the children. Each parent will be responsible for communicating any concerns with a child's wellbeing or any accidents or serious incidents to the other parent. Each parent has the right to reasonable access and telephone contact with the children in the form of at least one FaceTime or telephone call per day. The children may initiate contact with the off-duty parent by telephone at any reasonable time.

   b. Presentation of a copy of the Judgment and Decree to the custodian of records or other information regarding the minor children constitutes sufficient authorization for the release of the record of information to the requesting parent.

58. **Parenting Time.** Parties shall have equal parenting time in the form of a 5-2-2-5 schedule as follows:

| Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|--------|---------|-----------|----------|--------|----------|--------|
| Father | Father | Father/Mother | Mother | Mother | Mother | Mother |
| Mother/Father | Father | Father/Mother | Mother | Mother/Father | Father | Father |

Exchanges shall occur by drop off at school and pickup after school on Mondays, Wednesdays, and alternating Fridays. If there is no school, exchanges shall occur by 9:00am at the on-duty parent's residence with the parent beginning their parenting time responsible for pick-up.

---

Court File No. 27-FA-20-5933      Judgment and Decree      Page 10

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

a.   **Holidays.** Mother and Father shall spend holidays with the minor children as follows:

| Holiday | Odd Years | Even Years | Notes |
|---|---|---|---|
| New Year's | Father | Mother | Includes New Year's Eve and New Year's Day |
| Easter | | | With "on-duty" parent. |
| Mother's Day | Mother | Mother | |
| Memorial Day | | | With "on-duty" parent. |
| Father's Day | Father | Father | |
| Fourth of July | | | With "on-duty" parent. |
| Labor Day | | | With "on-duty" parent. |
| Thanksgiving | Mother | Father | |
| Christmas Eve | Mother | Father | |
| Christmas Day | Mother | Father | |
| Spring Break | Father | Mother | |
| MEA Weekend | | | With "on-duty" parent. |
| Dia De Las Velitas | Mother | Mother | Father shall have compensatory overnight with the children. |
| Winter Break | Mother/Father | Father/Mother | Split in half to accommodate accompanying holiday. |

b.   **Vacations.** Both parties are entitled to up to 14 days per year. If either party is going to travel internationally, that party may use the full fourteen days for one trip. If the travel is domestic, then their vacation may be used in two seven-day blocks. For international travel, the parties will follow United States State Department guidelines regarding travel restrictions.

c.   **Priority.** Holiday time shall take priority over vacation time, which shall take priority over the access schedule.

d.   **Alterations to Parenting Time Schedule.** The parties may mutually alter the parenting time schedule. Neither parent may unilaterally change the parenting schedule. Requests for changes must be made with as much notice as possible. The parents shall not advise the children of any changes or negotiations until the matter is settled.

e.   **Overnight Parent Responsibility.** Unless otherwise agreed upon between the parties, the parent who is scheduled to have the child in his or her care overnight is the parent responsible for the child's care in the event of a school release day not otherwise assigned to either party, or if the child is ill or needs to leave school or child care early.

---

27-FA-19-6324

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

f. **Right of First Refusal.** The parties shall have a right of first refusal is a party is unavailable for their overnight parenting time during their scheduled parenting time. The on-duty parent shall offer the parenting time to the other parent before arranging for a third-party to care for the children.

59. **Extracurricular Activities.** The parties shall communicate and cooperate regarding the child's enrollment and participation in sports and extracurricular activities. If an activity impacts the other parent's schedule, the parent seeking to enroll the child must first obtain the other parent's agreement before enrolling the child in the activity. That agreement shall not be unreasonably withheld. Each parent is welcome at all activities and events and both will respect the other parent's attendance. Each party shall be responsible for 50% of any fees or costs associated with extracurricular activities.

60. **Communication.** In case of emergency regarding the children, the parties will either call or text each other. Otherwise, the parties will continue to utilize Our Family Wizard for child related issues. When either party has a proposal regarding a child related issue, the other party must acknowledge receipt of the message at their first opportunity. A substantive answer must be given within 48 hours. If no response is provided, the parent making the request will be authorized to follow through with their request.

61. **Non-Disparagement of Other Party.** The parties shall refrain from making any derogatory comments, either orally or in writing, about the other party, or allowing their parties to make such comments, in the presence of the minor children.

62. **Residency.** Neither party shall remove the minor children from the State of Minnesota for the purpose of changing their place of residence without the written consent of the other party or until further Order of the Court, so long as either party is a resident of the State of Minnesota for the purpose of changing their place of residence, the provisions of Minn. Stat. §518.175, sub. 3 shall control.

63. **Child Support.** Mother shall have a monthly child support obligation to Father of $241 per month, payable on the 1st of every month. This amount is Mother's basic child support amount, less Father's obligation for health and dental insurance reimbursement. Mother's child support obligation is subject to cost-of-living adjustments as provided for in Minn. Stat. §518A.75. Mother's child support obligation shall continue at the above rate until the minor children attain the age of eighteen (18).

64. **Health Insurance for the Minor Children.** Mother shall maintain health and dental insurance coverage for the joint minor children. Parties will be responsible for their own health and dental coverage and any health and dental expenses.

65. **Dependency Claims.** Each party shall be entitled to claim one of the two minor children as a dependent for state and federal income tax purposes, commencing for the tax year 2022.

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

66. **Spousal Maintenance.** Neither party is awarded any spousal maintenance. The right to spousal maintenance has not been waived.

67. **Attorney's Fees.** Parties shall be responsible for their own separate attorneys' fees.

68. **Name Change.** Neither party is seeking a name change.

69. **Resolution of Conflict.** Any claim or controversy arising under this document that cannot be resolved by the parties through direct communication without mediation, shall be promptly submitted to mediation.

   a. Definition of Mediation. Mediation shall be a voluntary process entered into by the parties. In this process, the parties shall continue direct communication but with the assistance of a neutral person who is the mediator, which mediator has no authority to require any concession or agreements. A good faith effort shall be made to resolve any claim or controversy arising between the parties.
   b. Selection of Mediator. The mediator shall be obtained through Hennepin County Family Court Services or an agreed upon mediator.
   c. Duties and Responsibilities of Mediator. The mediator shall have the duty and responsibility to assist the parties in resolving all issues submitted for mediation.
   d. Duties of Parties. Both parties shall cooperate and operate in good faith to resolve the matter(s) in dispute with the assistance of the mediator.
   e. Confidentiality and Privilege. Within the limits of the law, the mediator will accord confidentiality and privilege to all communications with the parties.
   f. Restrictions. The mediator shall not participate as a witness, collateral contact, or attorney in a parenting time study or inquiry involving either party. Further, neither party may ever call the mediator as a witness to testify in any proceeding involving their children or the subject matter of the mediation.
   g. Compromise or Offers to Compromise During Mediation. State statute shall be applicable throughout the entire process of mediation.
   h. Applicability of Dispute Settlement Procedures. The above procedures shall apply to any claims or controversies arising under this document.
   i. Exhaustion of Remedies. The above procedure shall be followed before either party may apply to the Court for relief.

70. **Appendix A.** This document is subject to the provisions of Appendix A, attached hereto and incorporated herein by reference.

71. **Service of Judgment and Decree.** Service of a copy of this order shall be made upon pro-se parties by first class U.S. mail at their last known addresses, or to attorneys by e-service, which shall be due and proper service for all purposes.

72. **Execution and Exchange of Documents.** To implement the terms and provisions contained herein, each of the parties shall make, execute and deliver to the other party instruments of conveyance, assignment and other documents as may be required. In the event either party fails to do so, the Judgment and Decree shall operate as said conveyance.

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

73.   **Retention of Jurisdiction.** If there are assets or income that have not been disclosed and/or divided herein, the Court hereby retains jurisdiction over said income and/or assets for the purpose of making an equitable division thereof. The party failing to disclose said income and/or assets shall pay the reasonable attorneys' fees and costs of the other party incurred in enforcing this provision.

74.   **Waiver of Stay of Judgment.** The thirty day stay of Judgment is hereby waived.

27-FA-19-6324

Filed in District Court
State of Minnesota
6/21/2022 8:20 AM

## ORDER FOR JUDGMENT

### LET JUDGMENT BE ENTERED ACCORDINGLY.

BY THE COURT

Burns, Michael
2022.06.15
11:32:13 -05'00'

*Michael E. Burns*
Judge of District Court

## JUDGMENT

I certify the above *Conclusions of Law* are the Judgment of the Court and Judgment is hereby entered.

Court Administrator

Deputy

Filed in District Court
State of Minnesota
Dated:   Jun 21, 2022 9:01 am

---

Court File No. 27-FA-20-5933            Judgment and Decree            Page 14

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

## APPENDIX A

**NOTICE IS HEREBY GIVEN TO THE PARTIES:**

**I. PAYMENTS TO PUBLIC AGENCY.** According to Minnesota Statutes, section 518A.50, payments ordered for maintenance and support must be paid to the Minnesota child support payment center as long as the person entitled to receive the payments is receiving or has applied for public assistance or has applied for support and maintenance collection services. Parents mail payments to: P.O. Box 64326, St. Paul, MN 55164-0326. Employers mail payments to: P.O. Box 64306, St. Paul, MN 55164.

**II. DEPRIVING ANOTHER OF CUSTODIAL OR PARENTAL RIGHTS -- A FELONY.** A person may be charged with a felony who conceals a minor child or takes, obtains, retains, or fails to return a minor child from or to the child's parent (or person with custodial or parenting time rights), according to Minnesota Statutes, section 609.26. A copy of that section is available from any court administrator.

**III. NONSUPPORT OF A SPOUSE OR CHILD – CRIMINAL PENALTIES.** A person who fails to pay court-ordered child support or maintenance may be charged with a crime, which may include misdemeanor, gross misdemeanor, or felony charges, according to Minnesota Statutes, section 609.375. A copy of that section is available from any district court clerk.

**IV. RULES OF SUPPORT, MAINTENANCE, PARENTING TIME.**

A.      Payment of support or spousal maintenance is to be as ordered, and the giving of gifts or making purchases of food, clothing, and the like will not fulfill the obligation.

B.      Payment of support must be made as it becomes due, and failure to secure or denial of parenting time is NOT an excuse for nonpayment, but the aggrieved party must seek relief through a proper motion filed with the court.

C.      Nonpayment of support is not grounds to deny parenting time. The party entitled to receive support may apply for support and collection services, file a contempt motion, or obtain a judgment as provided in Minnesota Statutes, section 548.091.

D.      The payment of support or spousal maintenance takes priority over payment of debts and other obligations.

E.      A party who accepts additional obligations of support does so with the full knowledge of the party's prior obligation under this proceeding.

F.      Child support or maintenance is based on annual income, and it is the responsibility of a person with seasonal employment to budget income so that payments are made throughout the year as ordered.

G.      A *Parental Guide to Making Child-Focused Parenting-Time Decisions* is available from any court administrator.

H.      The nonpayment of support may be enforced through the denial of student grants; interception of state and federal tax refunds; suspension of driver's, recreational, and occupational licenses; referral to the department of revenue or private collection agencies; seizure of assets, including bank accounts and other assets held by financial institutions; reporting to credit bureaus; interest charging, income withholding, and contempt proceedings; and other enforcement methods allowed by law.

I.      The public authority may suspend or resume collection of the amount allocated for child care expenses if the conditions of Minnesota Statutes, section 518A.40, subdivision 4, are met.

J.      The public authority may remove or resume a medical support offset if the conditions of section 518A.41, subdivision 16, are met.

K.      The public authority may suspend or resume interest charging on child support judgments if the conditions of section 548.091, subdivision 1a, are met.

---

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

**V.   MODIFYING CHILD SUPPORT.** If either the obligor or obligee is laid off from employment or receives a pay reduction, child support may be modified, increased, or decreased. Any modification will only take effect when it is ordered by the court, and will only relate back to the time that a motion is filed. Either the obligor or obligee may file a motion to modify child support, and may request the public agency for help. UNTIL A MOTION IS FILED, THE CHILD SUPPORT OBLIGATION WILL CONTINUE AT THE CURRENT LEVEL. THE COURT IS NOT PERMITTED TO REDUCE SUPPORT RETROACTIVELY.

**VI.   PARENTAL RIGHTS FROM MINNESOTA STATUTES, SECTION 518.17, SUBDIVISION 3.** UNLESS OTHERWISE PROVIDED BY THE COURT:

A.   Each party has the right of access to, and to receive copies of, school, medical, dental, religious training, police reports, and other important records and information about the minor children. Each party has the right of access to information regarding health or dental insurance available to the minor children. Presentation of a copy of this order to the custodian of a record or other information about the minor children constitutes sufficient authorization for the release of the record or information to the requesting party.

B.   Each party has the right to be informed by the other party as to the name and address of the school of attendance of the minor children. Each party has the right to be informed by school officials about the children's welfare, educational progress and status, and to attend school and parent teacher conferences. The school is not required to hold a separate conference for each party.

C.   Each party has the right to be notified by the other party of an accident or serious illness of a minor child, including the name of the health care provider and the place of treatment.

D.   Each party has the right to be notified by the other party if the minor child is the victim of an alleged crime, including the name of the investigating law enforcement officer or agency. There is no duty to notify if the party to be notified is the alleged perpetrator.

E.   Each party has the right of reasonable access and telephone contact with the minor children.

**VII.   WAGE AND INCOME DEDUCTION OF SUPPORT AND MAINTENANCE.** Child support and / or spousal maintenance may be withheld from income, with or without notice to the person obligated to pay, when the conditions of Minnesota Statutes, section 518A.53, have been met. A copy of that section is available from any court administrator.

**VIII.   CHANGE OF ADDRESS OR RESIDENCE.** Unless otherwise ordered, each party shall notify the other party, the court, and the public authority responsible for collection, if applicable, of the following information within ten days of any change: residential and mailing address, telephone number, driver's license number, social security number, and name, address, and telephone number of the employer.

**IX.   COST OF LIVING INCREASE OF SUPPORT AND MAINTENANCE.** Basic support and / or spousal maintenance may be adjusted every two years based upon a change in the cost of living (using the U.S. Department of Labor, Bureau of Labor Statistics, consumer price index Mpls. St. Paul, for all urban consumers (CPI-U), unless otherwise specified in this order) when the conditions of Minnesota Statutes, section 518A.75, are met. Cost of living increases are compounded. A copy of Minnesota Statutes, section 518A.75, and forms necessary to request or contest a cost of living increase are available from any court administrator.

**X.   JUDGMENTS FOR UNPAID SUPPORT; INTEREST.** According to Minnesota Statutes, section 548.091:

A.   If a person fails to make a child support payment, the payment owed becomes a judgment

---

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

against the person responsible to make the payment by operation of law on or after the date the payment is due, and the person entitled to receive the payment or the public agency may obtain entry and docketing of the judgment **without notice** to the person responsible to make the payment.

B.   Interest begins accruing on a payment or installment of child support whenever the unpaid amount due is greater than the current support due.

**XI.   JUDGMENTS FOR UNPAID MAINTENANCE.** A judgment for unpaid spousal maintenance may be entered and docketed when the conditions of Minnesota Statutes, section 548.091, are met. A copy of that section is available from any court administrator.

**XII.   ATTORNEY FEES AND COLLECTION COSTS FOR ENFORCEMENT OF CHILD SUPPORT.** A judgment for attorney fees and other collection costs incurred in enforcing a child support order will be entered against the person responsible to pay support when the conditions of Minnesota Statutes, section 518A.735, are met. A copy of that section and forms necessary to request or contest these attorney fees and collection costs are available from any court administrator.

**XIII.   PARENTING TIME EXPEDITOR PROCESS.** On request of either party or on its own motion, the court may appoint a parenting time expeditor to resolve parenting time disputes under Minnesota Statutes, section 518.1751. A copy of that section and a description of the expeditor process is available from any court administrator.

**XIV.   PARENTING TIME REMEDIES AND PENALTIES.** Remedies and penalties for wrongful denial of parenting time are available under Minnesota Statutes, section 518.175, subdivision 6. These include compensatory parenting time; civil penalties; bond requirements; contempt; and reversal of custody. A copy of that subdivision and forms for requesting relief are available from any court administrator.

**In addition to the Notices on pages 1 and 2, the following NOTICE applies to all orders addressing custody pursuant to Minn. Stat. § 518.17, subd. 3a.**

**NOTICE**
**EACH PARTY IS GRANTED THE FOLLOWING RIGHTS:**
   a.   Right of access to, and to receive copies of, school, medical, dental, religious training, police reports, and other important records and information about the minor children.
   b.   Right of access to information regarding health or dental insurance available to the minor children.
   c.   Right to be informed by the other party as to the name and address of the school of attendance of the minor children.
   d.   Right to be informed by school officials about the children's welfare, educational progress and status, and to attend school and parent-teacher conferences. The school is not required to hold a separate conference for each party, unless attending the same conference would result in violation of a court order prohibiting contact with a party.
   e.   Right to be notified by the other party of an accident or serious illness of a minor child, including the name of the health care provider and the place of treatment.
   f.   Right to be notified by the other party if the minor child is the victim of an alleged crime, including the name of the investigating law enforcement officer or agency. There is no duty to notify if the party to be notified is the alleged perpetrator.
   g.   Right to reasonable access and telephone or other electronic contact with the minor children.

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

Minnesota Child Support Online       DHS Public Web Site

Glossary

Support Guidelines     Parenting Expense Adjustment     Child Care Obligation     Summary

# Child Support Guidelines Worksheet

[Printable Version]

**Parent A:** Pawel              **IV-D Case Number:** 6324          **Number of Joint Children:** 2
**Parent B:** Carolina          **Court File Number:** 27-FA-19-  **Date:** 6/12/2022 6324

| | | Parent A | Parent B | Combined |
|---|---|---|---|---|
| **Income** | 1a. Monthly Income Received | $0 | $15810 | ---- |
| | 1 b. Child(ren)'s Social SecurityNeterans' Benefits Derived From a Parent's Eligibility | $0 | $0 | ---- |
| | 1c. Potential Income | $8333 | $0 | ---- |
| | 1d. Spousal Maintenance Orders Obligated to be Paid | $0 | $0 | ---- |
| | 1e. Child Support Order(s) Obligated to be Paid for Nonjoint Child(ren) | $0 | $0 | ---- |
| | 1f. Monthly Gross Income (1a+1b+1c-1d-1e) | $8333 | $15810 | ---- |
| **Adjustments** | 2a. Number of Nonjoint Child(ren) in the Home (Maximum number allowed is 2) | 0 | 0 | ---- |
| | 2b. Deduction for Nonjoint Child(ren) in the Home | $0 | $0 | ---- |
| | 3. Parental Income for Determining Child Support (PICS) | $8333 | $15810 | $24143 |
| | 4. Percentage Share of Combined PICS | 35% | 65% | ---- |
| | 5. Combined Basic Support Obligation | ---- | ---- | $2727 |
| | 6. Pro Rata Basic Support Obligation | $954 | $1773 | ---- |
| **Basic Child Support Obligation** | 7. Basic Support Obligation After Parenting Expense Adjustment (if applicable) | | $410 | ---- |
| **Child Care Obligation** | 8. Child Care Support Obligation for Joint Child(ren) | | | ---- |
| **Medical Support Obligation** | 9a. Monthly Cost of Health Care Coverage for Joint Child(ren) | $0 | $443 | ---- |
| | 9b. Pro Rata Share of Health Care Coverage Costs | $155 | $288 | ---- |

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

| | | | | |
|---|---|---|---|---|
| Appropriate Coverage Available | 9c. Contribution to Health Care Coverage | $155 | | ---- |
| | 9d. Monthly Cost of Dental Coverage for Joint Child(ren) | $0 | $39 | ---- |
| | 9e. Pro Rata Share of Dental Coverage Costs | $14 | $25 | ---- |
| | 9f. Contribution to Dental Coverage | $14 | | ---- |
| | 9g. Medical Support Obligation- Appropriate Coverage Available | $169 | | ---- |
| No Appropriate Insurance Available | 10. Medical Support Obligation for Public Coverage | | | ---- |
| Uninsured/Unreimbursed Expenses | 11. Share of Uninsured and/or Unreimbursed Medical Expenses | 35% | 65% | ---- |
| | 12. Net Child Support Obligation | $169 | $410 | ---- |
| Benefits Adjustment | 13. Child(ren)'s Social SecurityNeterans' Benefits Derived from Parent's Eligibility | | | ---- |
| Computing a Final Obligation | 14. Total Child Support Obligation | $169 | $410 | ---- |
| | 15a. Monthly Gross Income | $8333 | $15810 | ---- |
| Ability to Pay Calculation | 15b. Income Available for Support | $6974 | $14451 | ---- |
| | 16. Monthly Child Support Obligation - No Adjustment Necessary | $169 | $410 | ---- |
| | 17. Amount of Reduction | $0 | $0 | ---- |
| Child Support Obligation Adjustment | 18. Medical Support | | | |
| | Original Obligation | | | ---- |
| | Amount of Reduction | | | ---- |
| | New Obligation | | | ---- |
| | 19. Child Care Support | | | |
| | Original Obligation | | | ---- |
| | Amount of Reduction | | | ---- |
| | New Obligation | | | ---- |
| | 20. Basic Support Original | | | |
| | Obligation Amount of | | | ---- |
| | Reduction | | | ---- |
| | New Obligation | | | ---- |
| | 21. Monthly Child Support Obligation After Adjustment | | | ---- |
| Presumptive Minimum Order/Basic Support | 22a. Presumptive Minimum Order for 1 or 2 Joint Children | | | ---- |

Filed in District Court
State of Minnesota
6/22/2022 2:59 PM

| Only | 22b. Presumptive Minimum Order for 3 or 4 Joint Children | | | ----- |
| | 22c. Presumptive Minimum Order for 5 or More Joint Children | | | ----- |

Calculated by the Minnesota Child Support Guidelines Calculator on 6/12/2022 at 9:56 PM

27-FA-19-6324

Filed in District Court
State of Minnesota
6/21/2022 8:20 AM