# EXHIBIT 5

2024 WL 4926223
Only the Westlaw citation is currently available.

NOTICE: THIS DECISION IS NONPRECEDENTIAL EXCEPT AS PROVIDED BY MINN. R. CIV. APP. P. 136.01(1)(C) AND MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.

In re the Marriage of: Pawel Dominik RZECZKOWSKI, petitioner, Appellant,
v.
Carolina Uribe BORRERO, Respondent.

A24-0059
|
Filed December 2, 2024
|
Denied February 26, 2025

Hennepin County District Court, File No. 27-FA-19-6324

**Attorneys and Law Firms**

Robert W. Due, James R. Todd, DeWitt LLP, Minneapolis, Minnesota (for appellant)

John DeWalt, Melissa Chawla, DeWalt, Chawla + Saksena, LLC, Minneapolis, Minnesota (for respondent)

Considered and decided by Schmidt, Presiding Judge; Ross, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

ROSS, Judge

**\*1** Pawel Rzeczkowski and Carolina Borrero executed a postnuptial agreement in Colombia in 2011 and divorced in Minnesota in 2019. In this appeal from the judgment and decree after remand, Rzeczkowski argues that the postnuptial agreement is unconscionable and therefore unenforceable because it leaves Borrero with a disproportionate amount of the couple's wealth. He also maintains that he is entitled to need-based attorney fees. We hold that the district court's evidentially supported fact findings support its decision that the postnuptial agreement is not unconscionable. But we conclude that the district court abused its discretion by refusing to award Rzeczkowski any attorney fees incurred pursuing good-faith claims in district court and on appeal. We therefore affirm in part, reverse in part, and remand to the district court for further findings on the issue of attorney fees.

**FACTS**

Pawel Rzeczkowski and Carolina Borrero married in Colombia in October 2011. Two days after they wed, they executed a dissolution and liquidation of marital partnership agreement (DLMP), which is a valid postnuptial agreement under Colombian law. The DLMP was designed to keep Rzeczkowski's and Borrero's finances and property separate during the marriage by dissolving and liquidating their marital estate immediately upon execution of the DLMP.

Rzeczkowski consulted with attorneys to ensure that the agreement would be enforceable in the United States before moving with Borrero to New York in 2013. They later moved to Atlanta, where Borrero gave birth to twins in 2015, and they eventually moved to Minnesota.

Both parties had substantial earning capacity, but only Borrero engaged in steady employment throughout the marriage. Borrero worked for Pfizer, Coca-Cola, and Cargill, earning a substantial income and acquiring considerable assets. By contrast, Rzeczkowski generally remained unemployed or obtained intermittent employment at startup companies. An exception occurred during a six-month period after they moved to Minnesota, where Rzeczkowski worked for Thrivent Financial and earned about $130,000.

Rzeczkowski petitioned for marriage dissolution in September 2019. Borrero sought to enforce the DLMP. Rzeczkowski countered, arguing that the DLMP is unenforceable. The district court concluded that the DLMP constitutes an enforceable agreement and denied Rzeczkowski's request for need-based attorney fees.

Rzeczkowski appealed to this court, arguing, among other things, that the DLMP is unenforceable and that he is entitled to need-based attorney fees. *Rzeczkowski v. Borrero*, No. A22-0954, 2023 WL 2762442, at *3–4

(Minn. App. Apr. 3, 2023). We held that the DLMP is a foreign judgment entitled to enforcement as a matter of comity so long as it does not violate Minnesota's public policy against enforcing unconscionable postnuptial agreements. *Id.* at *6–8. We remanded the case to the district court to determine whether enforcement of the DLMP would be unconscionable. *Id.* at *8. Regarding attorney fees, we held that Rzeczkowski had satisfied two of the three requirements of the controlling statute, Minnesota Statutes section 518.14, subdivision 1 (2022), because the district court had already found that he did not have the means to pay his attorney fees and that Borrero did. *Id.* at *12–13. We remanded the case for additional findings on the third requirement, under which the court must assess whether "the fees are necessary for the good faith assertion of the party's rights in the proceeding." *Id.* at *13 (quoting Minn. Stat. § 518.14, subd. 1 (1)). We also issued a separate order instructing the district court to consider Rzeczkowski's request for attorney fees incurred on appeal.

**\*2** On remand, the district court accepted written submissions from the parties but did not hold an evidentiary hearing. It issued an amended judgment, concluding that enforcing the DLMP is not unconscionable. It denied Rzeczkowski's request for attorney fees incurred in the earlier district court proceeding and in the prior appeal.

Rzeczkowski appeals.

**DECISION**

Rzeczkowski maintains that the district court erroneously concluded that the DLMP is enforceable because it is not unconscionable. He also argues that the district court abused its discretion by denying his attorney-fee requests. We see no error in the district court's determination that the DLMP is enforceable but agree with Rzeczkowski that the district court abused its discretion when it denied him any attorney fees.

**I**

Rzeczkowski argues that the district court applied the wrong legal standard when it decided that enforcing the DLMP is not unconscionable. The primary question we presented to the district court on remand was whether to enforce the foreign judgment (the DLMP) under the principles of comity or to deem it unenforceable because it violates Minnesota's public policy against unconscionable postnuptial agreements. *Rzeczkowski,* 2023 WL 2762442, at *4, *7–8. "We review a district court's application of the principle of comity for an abuse of discretion." *In re Civ. Commitment of Hand,* 878 N.W.2d 503, 506 (Minn. App. 2016), *rev. denied* (Minn. June 21, 2016). We do not defer to the district court's interpretation of the law concerning unconscionability, but we accept factual findings that are not clearly erroneous. *Kauffman Stewart, Inc. v. Weinbrenner Shoe Co.,* 589 N.W.2d 499, 501 (Minn. App. 1999). We apply this review standard here.

Rzeczkowski contends that the DLMP is unconscionable because it created an "unimaginably harsh result" in the "egregiously disproportionate division of property." A contract, like a marital agreement, is unconscionable if "no man in his senses and not under delusion" would make it and "no honest and fair man" would accept it. *See id.* at 502 (quotation omitted). But a contract is not unconscionable if it is simply an "old-fashioned bad bargain." *Maslowski v. Prospect Funding Partners LLC,* 994 N.W.2d 293, 306 (Minn. 2023) (Moore, III, J., concurring) (quotation omitted). It is not the court's role to save a contracting party from the foreseeable consequences of a contract that ultimately disproportionately favors the other party. The doctrine of unconscionability instead allows courts to render contract provisions unenforceable only when they "are so unfair and one-sided that they shock the conscience." *Id.* (quotation omitted). As we observed in Rzeczkowski's first appeal, the fact that a postnuptial agreement results in a less-favorable division of assets than would have occurred without the agreement does not mean the agreement is unconscionable. *Rzeczkowski,* 2023 WL 2762442, at *7 n.9. Our review of the district court's analysis satisfies us that the district court correctly understood and applied this legal framework.

We first address the factual findings before turning to the district court's legal conclusion. We see no error in the factual findings that the district court relied on in support of its conclusion that the DLMP is not unconscionable. Rzeczkowski does not contest the district court's findings that he was healthy, well-educated, and not under pressure to sign the agreement when he executed it. He also does not challenge the finding that he understood the legal effect of executing the DLMP. And he does not dispute the finding that he took deliberate steps to ensure that the DLMP would be enforceable in the United States before moving here because the agreement benefitted him by protecting his wife's assets from his creditors. These undisputed findings support the district court's broader

Rzeczkowski v. Borrero, Not Reported in N.W. Rptr. (2024)

determination that enforcing the DLMP is fair.

**\*3** Rzeczkowski focuses his challenge mostly on the time of enforcement, asserting that enforcing an agreement that distributes "$1.2 million to [Borrero] and zero to [him]" cannot be fair and is therefore unconscionable. Although the district court's amended order after remand did not expressly compute the parties' distribution disparity, the district court implicitly recognized the disparity by incorporating its earlier findings. It recognized Rzeczkowski's inferior financial situation early in the litigation when it awarded him temporary spousal maintenance. And when the district court calculated child-support obligations in its judgment, it found that Rzeczkowski was intentionally underemployed and had earned little income compared to Borrero. When the district court terminated Borrero's spousal-maintenance obligation, it acknowledged that Rzeczkowski was voluntarily unemployed. Finally, the district court received a balance sheet representing Rzeczkowski's and Borrero's respective assets, which we infer the district court relied on when it assessed the totality of the parties' circumstances at the time it addressed the DLMP's implications.

We are not persuaded by Rzeczkowski's contention that the district court erred by failing to apply Minnesota law governing postnuptial agreements and by failing therefore to conclude that the disparity in the parties' wealth is unconscionable. Rzeczkowski maintains that Minnesota Statutes section 519.11 (2022) or *McKee-Johnson v. Johnson*, 444 N.W.2d 259 (Minn. 1989), *overruled in part by Kremer v. Kremer*, 912 N.W.2d 617, 626 (Minn. 2018), govern enforceability of the DLMP. Both sources indicate that, ordinarily, a marital agreement should be assessed for substantive fairness by focusing on the circumstances both at the time of its execution and at the time of its proposed enforcement. But our decision on Rzeczkowski's first appeal observed that, under the unique circumstances of this case, section 519.11 is not the exclusive standard for determining whether the DLMP is enforceable:

> [W]e are not implying that the statute governs whether the DLMP should be enforced. Under the principles of comity, the DLMP is enforceable, subject only to the exceptions to the application of that doctrine, such as the public-policy exception. We cite Minn. Stat. § 519.11 only as an example of an expression of Minnesota's public policy.

*Rzeczkowski*, 2023 WL 2762442, at \*7 n.8. We likewise discussed *McKee-Johnson* without directing the district court to apply its holdings about substantive fairness. *See id.* at \*7 n.9. Rzeczkowski cites no authority to support his proposition that a postnuptial agreement that was validly executed in a foreign country violates Minnesota's public policy against unconscionable postnuptial agreements if, at the time of enforcement, one party benefits substantially more than the other.

And in any event the record informs us that, contrary to Rzeczkowski's contention, the district court did assess the DLMP for substantive fairness at the time of its proposed enforcement. The district court's amended order, which incorporates all the findings of its original judgment, shows that the district court did not limit itself to considering the circumstances of the parties at the time they executed the DLMP. The district court's order on remand begins, "*Enforcement* of the parties' DLMP is not unconscionable." (Emphasis added.) And it concludes, "Considering the totality of the circumstances of these parties and the facts surrounding the execution *and operative effect* of the DLMP, its enforcement in this case is not unconscionable." (Emphasis added.) We are satisfied that the district court properly considered the circumstances that would result from enforcing the DLMP, including the unequal distribution of the parties' wealth.

We add that the district court's findings supporting its conclusion acknowledged some of the circumstances that Rzeczkowski contends the district court failed to adequately address. The district court found, for example, that Rzeczkowski and Borrero had twins who "were not born until 2015," which was almost four years after the parties executed the DLMP. The district court understood that care for the twins had occupied much of each party's time during marriage, based on the findings in the original order that "it is abundantly clear that both parents have participated fully in providing care for the children" and that Rzeczkowski and Borrero "were able to give [the children] equal amounts of guidance, nurturing, and encouragement." Rzeczkowski is correct that the district court made no new findings about several of the parties' geographic moves during marriage. But this court had already detailed those moves in our opinion based on the record developed in district court. *Id.* at \*2. The district court was aware of the effect of the moves and the birth of the twins when it assessed the parties' circumstances related to unconscionability.

**\*4** There is, in short, substantial evidence in the record supporting the district court's conclusion that enforcing the DLMP is not unconscionable. Rzeczkowski signed the agreement with full knowledge of its effect, took steps to ensure it would be enforceable if the parties moved to the United States, and encountered no life changes that the district court considered sufficient to justify invalidating the DLMP. The district court was aware that

Rzeczkowski had previously secured high-earning employment in the United States, and the court was not required or expected to ignore Rzeczkowski's ongoing, willful underemployment as it considered the fairness of holding him to his 2011 agreement to maintain a separate financial life from Borrero. Although the agreement certainly results in a distribution of wealth that significantly favors Borrero, we cannot say that the district court wrongly failed to conclude that it does so unfairly; the record supports the understanding that both parties were capable of gainful, sustained employment resulting in substantial income during the marriage but that only one of them made the effort. The circumstances simply did not require the district court to determine that the result shocks the conscience. We hold that the district court acted within its discretion by concluding that the agreement is enforceable.

## II

Rzeczkowski also contends that the district court erroneously refused to award him need-based attorney fees incurred in the district court and on his prior appeal. We review a district court's attorney-fee determination for an abuse of discretion. *Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999). For the following reasons, we conclude that the district court's attorney-fee analysis reveals an abuse of discretion.

### Attorney Fees Incurred in District Court

We first address the district court's refusal to award need-based attorney fees that Rzeczkowski incurred in the district court proceeding. In a marriage-dissolution action, a district court "shall award attorney fees, costs, and disbursements in an amount necessary to enable a party to carry on or contest the proceeding," as long as the district court finds these three elements:

(1) that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;

(2) that the party from whom fees, costs, and disbursements are sought has the means to pay them; and

(3) that the party to whom fees, costs, and disbursements are awarded does not have the means to

pay them.

Minn. Stat. § 518.14, subd. 1. We remanded the case for the district court to determine attorney fees after we concluded that, based on the district court's findings, Rzeczkowski had already established that he met the second and third statutory elements. *Rzeczkowski*, 2023 WL 2762442, at *13.

We must determine whether the district court properly followed our remand instructions. We framed the remand issue of attorney fees first by recognizing that "the district court [had already] found that the second and third statutory requirements were satisfied—Borrero has the ability to pay attorney fees and Rzeczkowski does not." *Id.* at *12. We then observed that the district court's finding that Rzeczkowski had failed to prove the first statutory requirement (of a good-faith assertion of rights) "relates solely to Rzeczkowski's assertion of rights regarding the validity and enforcement of the DLMP." *Id.* We next pointed out the insufficiency of this finding by highlighting aspects of the case that, in fact, demonstrated that Rzeczkowski had made a good-faith assertion of rights:

> For example, the parties were unable to reach an agreement on legal custody of the children and argued that issue to the district court. The parties presented their own testimony and argument, participated in a custody evaluation, and the custody evaluator and an expert retained by Borrero also testified on the issue. Borrero argued that she should be granted sole legal custody of the children; Rzeczkowski requested joint legal custody. The district court ultimately agreed with Rzeczkowski and awarded the parties joint legal custody. Thus, some of the claimed attorney fees relate to assertions of rights that were made in good faith.

*Id.* Put differently, we recognized that the district court had already found that Rzeczkowski met both the second and third statutory requirements and that, on the first requirement, part of the claimed fees had arisen from the good-faith assertion of rights. It was in this context that we directed the district court to determine "whether Rzeczkowski is entitled to an award of need-based attorney fees for the assertion of other rights that were made in good faith." *Id.* at *13. In other words, the district court was tasked with determining the amount of need-based attorney fees Rzeczkowski is entitled to receive based on his good-faith child-custody claims and any "other rights" that he asserted in good faith.

**\*5** Contrary to those instructions, the district court on remand concluded that Rzeczkowski is not entitled to any attorney fees for any of his claims. The district court wrote that "[a]ny fees generated by [Rzeczkowski's] claims made in good faith were so marginal so as not to

warrant an award in light of [Rzeczkowski's] decision not to work and generate his own income." It also reasoned that Rzeczkowski's affidavit and exhibits submitted to support his attorney-fee request were not sufficiently detailed as to the amount of fees Rzeczkowski incurred pursuing his joint-legal-custody claim. The district court added that the bulk of Rzeczkowski's court filings "have attempted to invalidate contracts that are valid and enforceable under Minnesota law." And contrary to the finding we previously credited, it also found that "[Rzeczkowski] does have the means to pay" his attorney fees. Failing to follow our instructions resulted in an erroneous analysis.

The district court's error included its failure to properly assess Rzeczkowski's claim to attorney fees. The issue of whether Rzeczkowski had the means to pay was beyond the scope of remand and thus was not properly before the district court. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 213 (Minn. 1988) (holding that this court may limit the issues to be considered on remand). And the district court abused its discretion by concluding that the evidence Rzeczkowski's counsel provided was insufficiently specific to calculate an award of attorney fees. For motions seeking an award of attorney fees of at least $1,000, the moving party must submit, among other things, a "detailed itemization" of the fees sought. Minn. R. Gen. Prac. 119. But a district court may award attorney fees based on its own observation and estimate of the value of attorney work. *Nelson v. Ninneman*, 373 N.W.2d 373, 377 (Minn. App. 1985); *Fick v. Fick*, 375 N.W.2d 870, 875 (Minn. App. 1985). And when a district court is familiar with the history of the case and has access to the parties' financial documents, it need not rely solely on an attorney's affidavit regarding fees. *Gully*, 599 N.W.2d at 826. We appreciate that it is difficult to discern from Rzeczkowski's counsel's affidavit and accompanying exhibits precisely which fees correspond to attorney work on the good-faith claims. But the lack of exacting specificity in the affidavit and exhibits should not have led the district court to deny *all* attorney fees. The record provides a means for the district court to estimate reasonable fees. It demonstrates that much of the trial focused on custody issues, which we previously concluded were matters raised in good faith. Two of the four nonparty witnesses who testified at trial testified about custody. A significant portion of Rzeczkowski's posttrial submissions concerned custody. And although Rzeczkowski did not ultimately prevail on his spousal-maintenance claim, an award of attorney fees does not depend on his success. *Phillips v. LaPlante*, 823 N.W.2d 903, 907 (Minn. App. 2012), *rev. denied* (Minn. Aug. 6, 2013). In sum, the district court improperly found that Rzeczkowski does have the means to pay; it

improperly based its fee decision in part on Rzeczkowski's willful unemployment; it improperly deemed too "marginal" Rzeczkowski's fees generated to pursue an issue that we determined was pursued in good faith and that comprises a substantial part of the record; and it improperly rejected Rzeczkowski's attorney-fee request without sufficiently attempting to estimate its amount or conduct an evidentiary hearing after it found the supporting affidavits and invoices imprecise. The district court therefore abused its discretion by refusing to award Rzeczkowski any attorney fees incurred in district court. On this remand, the district court must follow our previous remand instructions as refocused in this opinion.

**Attorney Fees Incurred on Appeal**

This court's separate order regarding appellate attorney fees likewise remanded only the issue of whether Rzeczkowski met the good-faith-claim element:

> **\*6** The district court previously determined that appellant lacks the means to pay his own fees and that [respondent] has the means to contribute to fees. We remanded to the district court for consideration of whether an award of need-based fees was necessary to appellant's assertion of rights pursued in good faith in the district court. Similarly, because appellant obtained some relief on appeal, it would be improper to characterize the appeal as a whole as having been taken in bad faith. Accordingly, we conclude it is appropriate for the district court to address the issue of attorney fees on appeal.

The district court must execute an appellate court's "mandate strictly according to its terms" and it "lacks power to alter, amend, or modify that mandate." *Johnson v. Princeton Pub. Utils. Comm'n*, 899 N.W.2d 860, 868 (Minn. App. 2017) (quotation omitted), *rev. denied* (Minn. Aug. 15, 2017). But on remand here, the district court assessed all three statutory elements and concluded, among other things, that Rzeczkowski failed to prove that he did not have the means to pay attorney fees. The district court's conclusions relating to Rzeczkowski's means again exceeded the scope of our remand instructions.

The district court added that it did "not have a factual basis to apportion any part of the claimed [appellate fees]." But we agree with Rzeczkowski that the affidavit and spreadsheet his attorneys provided to the district court were sufficiently specific for the district court to calculate a fee award on the issues of spousal maintenance, child support, and attorney fees raised in the prior

appeal—issues that we now clarify were raised and argued in good faith. The district court therefore abused its discretion by denying Rzeczkowski any appellate attorney fees.

Because the evidence in the record shows that a substantial portion of Rzeczkowski's attorney fees incurred in district court and on appeal corresponded to good-faith claims, we remand to the district court to reopen the record to allow the parties to present further evidence and testimony regarding attorney fees and for the district court to issue fact findings and conclusions of law to resolve the issue.

**Affirmed in part, reversed in part, and remanded.**

**All Citations**

Not Reported in N.W. Rptr., 2024 WL 4926223

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.