Re: Case No. 26-40008

Please file the enclosed Statement Regarding Material Inconsistencies
in the Factual Record Relevant to Confirmation of the Modified Chapter
13 Plan, submitted for the Court's consideration in advance of the July
16, 2026 confirmation hearing.

Kindly return a file-stamped copy in the enclosed self-addressed
stamped envelope.

RECEIVED BY MAIL

JUL 09 2026

TIME: _____
CLERK, U.S. BANKRUPTCY COURT
MINNEAPOLIS, MINNESOTA

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Carolina Uribe Borrero.

Debtor.

Case No. 26-40008

Chapter 13

# STATEMENT REGARDING MATERIAL INCONSISTENCIES IN THE FACTUAL RECORD RELEVANT TO CONFIRMATION OF THE MODIFIED CHAPTER 13 PLAN

## INTRODUCTION

1. Pawel Rzeczkowski ("Claimant"), appearing pro se, respectfully submits this Statement regarding material factual inconsistencies relevant to confirmation of the Debtor's Modified Chapter 13 Plan.

2. This submission is not intended to relitigate the parties' divorce proceedings, revisit custody determinations, or ask this Court to resolve disputed issues of family law. Rather, it is directed to a narrower question before the Court.

RECEIVED BY MAIL

1

JUL 09 2026

TIME: _____
CLERK, U.S. BANKRUPTCY COURT
MINNEAPOLIS, MINNESOTA

3. The Debtor's bankruptcy filings, including her Motion Objecting to Claim (Doc. 31) and the subsequently filed Modified Chapter 13 Plan, present a factual narrative concerning Claimant's employment, relationship with the parties' children, and the causes of the Debtor's financial condition.

4. Those factual assertions form an important part of the narrative upon which the Debtor seeks bankruptcy relief.

5. Claimant respectfully submits that several of those factual assertions are difficult to reconcile with objective documentary evidence already contained within the existing judicial record. The issue presented by this submission is not whether this Court should revisit the underlying family court proceedings. Rather, it is whether the factual narrative supporting confirmation of the Modified Chapter 13 Plan remains internally consistent when viewed against the objective evidence already before the courts.

6. Accordingly, Claimant respectfully identifies three material inconsistencies that bear directly upon the reliability of the factual narrative presented in support of the Debtor's requested relief.

| Debtor's Narrative (Doc. 31) | Existing Judicial Record | Exhibit |
|---|---|---|
| Claimant was readily capable of obtaining high-paying employment and was voluntarily unemployed. | Social Security Administration earnings history reflects no sustained employment following completion of Claimant's MBA in 2008 (other than one brief period of employment in 2018), spanning approximately fourteen years before the 2022 dissolution. | Exhibit 1 |
| Claimant abandoned the children, leaving the Debtor solely responsible for their care and expenses. | June 10, 2026 Motion to Enforce Summer Parenting Time documents Claimant's ongoing efforts to exercise court-ordered parenting time and continuing litigation concerning parent-child communication and implementation of parenting orders. | Exhibit 2 |
| Claimant's conduct caused the Debtor's financial hardship. | Debtor's own filings acknowledge approximately $750,000 in discretionary litigation expenditures, while subsequent filings continue to document substantial ongoing legal expenditures during the bankruptcy proceedings. | Exhibit 3 |

7.    The sections that follow explain why each of these narratives is difficult to reconcile with the existing judicial record and why those inconsistencies are relevant to confirmation of the Modified Chapter 13 Plan.

## I. Employment and Earning Capacity

8.    In her Motion Objecting to Claim (Doc. 31), the Debtor repeatedly characterizes Claimant as voluntarily unemployed and asserts that he was capable of readily obtaining employment earning approximately $100,000 to $125,000 per year. In support of that narrative, the Debtor relies upon findings from the underlying family court proceedings to argue that

Claimant's financial circumstances were the product of his own choices rather than circumstance.

9. That narrative is difficult to reconcile with the objective employment history reflected in Claimant's Social Security earnings record.

10. The Social Security Administration's earnings record reflects no sustained employment since 2008, following completion of Claimant's MBA studies, with the exception of a single brief period of employment in 2018. The earnings history spans approximately fourteen years preceding the dissolution judgment entered in 2022 and provides an objective record of Claimant's employment history during the very period in which the Debtor now asserts Claimant was readily capable of obtaining high-paying employment.

11. The Debtor herself has also acknowledged, in prior recorded statements, that Claimant had not maintained employment for a prolonged period.

12. Claimant does not ask this Court to determine why that employment history exists. Rather, Claimant respectfully submits that the Debtor's characterization of Claimant as someone readily capable of immediately securing substantial employment is difficult to reconcile with the objective employment record spanning the fourteen years preceding the dissolution.

4

13. Accordingly, this inconsistency bears directly upon the factual narrative presented in support of the Debtor's requested bankruptcy relief.

## II. Abandonment Narrative

14. In her Motion Objecting to Claim (Doc. 31), the Debtor repeatedly characterizes Claimant as having "abandoned" the parties' children, stating that Claimant removed himself from their lives, refused parenting time, and ceased participating in their upbringing. Those assertions form a significant component of the Debtor's explanation for her financial condition and the factual narrative supporting confirmation of the Modified Chapter 13 Plan.

15. That characterization is difficult to reconcile with the existing judicial record concerning Claimant's continued efforts to maintain his relationship with the children.

16. On June 10, 2026, shortly before confirmation of the Modified Chapter 13 Plan, Claimant filed a Motion to Enforce Summer Parenting Time and for Expedited Relief in the Hennepin County District Court. In that filing, Claimant documented repeated efforts to exercise the parenting time awarded by the November 19, 2024 Order, repeated requests for implementation of that Order, repeated requests for travel dates, and repeated efforts to maintain direct communication with the children. The filing further documents ongoing disputes concerning telephone parenting

5

time, electronic communication, and implementation of court-ordered parenting provisions.

17.    Claimant does not ask this Court to resolve those parenting disputes or determine which party is ultimately correct. Rather, Claimant respectfully submits that the Debtor's presentation of abandonment as an established and uncontested fact is difficult to reconcile with the existence of contemporaneous court filings documenting continuing efforts to enforce parenting rights, preserve parent-child communication, and obtain implementation of existing court orders.

18.    Accordingly, the factual narrative presented in support of the Debtor's requested bankruptcy relief is difficult to reconcile with the broader judicial record documenting Claimant's continuing efforts to exercise court-ordered parenting rights and the Debtor's continuing expenditure of substantial legal fees opposing those efforts.

19.    An individual actively petitioning a state court to enforce parenting time and preserve communication with his children presents a factual picture that is difficult to reconcile with a narrative of complete abandonment.

### III. Financial Hardship Narrative

20.    In her Motion Objecting to Claim (Doc. 31), the Debtor attributes her financial condition largely to Claimant's conduct, asserting that

Claimant's actions substantially impaired her earning capacity, increased her expenses, and ultimately contributed to the financial circumstances leading to this bankruptcy proceeding. The Debtor further states that she incurred approximately **$750,000** in attorney's fees during the underlying family court litigation.

21.   Claimant does not dispute that the Debtor incurred substantial legal expenses. Rather, Claimant respectfully submits that the narrative presented to this Court is difficult to reconcile with the Debtor's own documented financial decisions and litigation conduct reflected elsewhere in the existing judicial record.

22.   Prior filings in this bankruptcy proceeding documented a long history of sworn financial hardship narratives presented in the dissolution proceedings, including repeated representations of severe monthly budget deficits while simultaneously maintaining substantial discretionary expenditures. Those filings also documented significant inconsistencies concerning mortgage-payment representations during the period of COVID-19 mortgage forbearance, matters that Claimant previously presented to this Court because they bore directly upon the reliability of the Debtor's financial representations.

23.   Following commencement of this Chapter 13 case, the record further reflects continued discretionary financial decisions, including pursuit

of private-school enrollment for the parties' daughter while bankruptcy proceedings were pending, notwithstanding the Debtor's contemporaneous representation that she lacked the financial ability to satisfy existing obligations.

24.    Additionally, subsequent filings by the Debtor's counsel continue to document substantial ongoing litigation activity, reflecting that significant legal expenditures remained a continuing priority during the pendency of this bankruptcy proceeding.

25.    The record further reflects that the litigation proceeded under procedural circumstances recognized by other components of the Minnesota judicial system as atypical. For example, the Minnesota appellate mediation program granted Claimant's request for exemption from appellate mediation pursuant to Rule 310.01(b). Claimant does not present that determination for this Court to review or adopt. Rather, it is another example of the broader judicial record indicating that the extraordinary duration and expense of the litigation cannot be attributed solely to the conduct of one party.

26.    Claimant does not ask this Court to determine whether the Debtor should have made different financial decisions or pursued less litigation. Rather, Claimant respectfully submits that the Debtor's narrative attributing her financial distress principally to Claimant's conduct is difficult to reconcile with the broader record documenting years of substantial

8

discretionary litigation expenditures and other financial choices made by the Debtor herself.

27.    Accordingly, these inconsistencies bear directly upon the factual narrative supporting the Debtor's request for confirmation of the Modified Chapter 13 Plan.

28.    The issue is not whether the Debtor spent substantial sums on litigation. The issue is whether the Court should attribute the resulting financial condition principally to the conduct of the Claimant while disregarding the Debtor's own documented discretionary financial decisions.

## IV. Why These Inconsistencies Matter

29.    The purpose of this submission is not to relitigate the parties' family court proceedings or to ask this Court to resolve disputed issues of custody, parenting time, or employment.

30.    Rather, the issue before this Court is whether the Modified Chapter 13 Plan should be confirmed based upon the factual record presented in support of that relief.

31.    The Bankruptcy Code affords debtors extraordinary protections, including the automatic stay, the restructuring of financial obligations, and, where appropriate, a discharge of debt. Those protections necessarily depend upon the accuracy, completeness, and reliability of the factual representations presented to the Court. The Court's ability to evaluate good

9

faith, feasibility, and the propriety of the requested relief depends upon the integrity of the factual record upon which those determinations are made.

32. For that reason, when material factual assertions offered in support of bankruptcy relief are difficult to reconcile with objective documentary evidence already contained within the existing judicial record, those inconsistencies are properly relevant to the Court's evaluation of the relief requested.

33. Claimant does not ask this Court to determine that the Debtor acted fraudulently, nor to resolve every factual dispute between the parties. Rather, Claimant respectfully submits that the material inconsistencies identified above warrant careful consideration before the Court relies upon the factual narrative presented in support of confirmation of the Modified Chapter 13 Plan.

34. Confirmation of a Chapter 13 plan necessarily rests upon the Court's confidence that the factual narrative presented in support of that relief is sufficiently reliable to warrant the extraordinary protections afforded by the Bankruptcy Code.

### V. Requested Consideration by the Court

35. Claimant respectfully recognizes that the decision whether to confirm the Modified Chapter 13 Plan rests within this Court's discretion under the Bankruptcy Code.

36. Claimant does not request that this Court revisit the parties' dissolution proceedings, resolve disputed questions of custody, or make findings concerning the ultimate truth of every factual disagreement between the parties.

37. Rather, Claimant respectfully requests that, before confirming the Modified Chapter 13 Plan, the Court consider whether the material factual assertions presented by the Debtor in support of that relief can be reconciled with the objective documentary evidence already contained within the existing judicial record.

38. Where the factual narrative supporting confirmation is materially difficult to reconcile with objective evidence, Claimant respectfully submits that those inconsistencies warrant careful consideration before the Court grants relief that necessarily depends upon the reliability of the factual record.

## Conclusion

39. For the foregoing reasons, Claimant respectfully submits that several material factual assertions relied upon by the Debtor in support of the Modified Chapter 13 Plan are difficult to reconcile with objective documentary evidence already contained within the existing judicial record.

40. Claimant respectfully requests that the Court consider these material inconsistencies when evaluating the factual foundation supporting

confirmation of the Modified Chapter 13 Plan and determine whether that record provides a sufficiently reliable factual foundation upon which the Court may confidently confirm the Modified Chapter 13 Plan.

Respectfully submitted,                    Dated: July 8, 2026
Pawel Rzeczkowski

2166 HWY 29 N
Newnan, Ga. 30265
prz.global@gmail.com

**List of Exhibits:**

| | |
|---|---|
| Exhibit 1 (page 13) | **Social Security Administration Earnings Record of Pawel Rzeczkowski**, reflecting annual earnings history through 2025. |
| Exhibit 2 (page 16) | **Affidavit of Pawel Dominik Rzeczkowski in Support of Motion to Enforce Summer Parenting Time and for Expedited Relief**, filed June 11, 2026, Hennepin County District Court, File No. 27-FA-19-6324, with attached exhibits documenting parenting-time implementation efforts and parent-child communication disputes. |
| Exhibit 3 (page 129) | **Affidavit of Jason C. Brown**, filed March 24, 2026, Hennepin County District Court, File No. 27-FA-19-6324, documenting attorney fees, litigation history, and ongoing litigation expenditures. |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

**In re:** Carolina Uribe Borrero
Case No. 26-40008

# EXHIBIT 1

## Social Security Administration Earnings Record of Pawel Rzeczkowski

Original Social Security Administration earnings record previously filed in related proceedings.

Annual earnings history referenced in Section I (Employment and Earning Capacity).

The attached document is reproduced in its original form as filed.

Original pagination has been preserved.

Attached to:

**Statement Regarding Material Inconsistencies in the Factual Record Relevant to Confirmation of the Modified Chapter 13 Plan**

*This cover page has been added solely for organizational purposes. The attached document is reproduced in its original form without substantive alteration.*

Filed in District Court
State of Minnesota
11/22/2023 3:13 PM

 **Your Social Security Statement**

PAWEL D. RZECZKOWSKI

**PETITIONER'S EX.**
No. 27-FA-19-6324

**RFD.18**

June 26, 2023

Important Information That May Affect Your Benefits
The benefit estimates below are based on your earnings that were taxed for Social Security. Your benefits may be reduced if you participate in a retirement plan or receive a pension based on earnings not covered by Social Security. See *Earnings Not Covered by Social Security* box.

### Retirement Benefits
You have earned enough credits to qualify for retirement benefits. To qualify for benefits, you earn credits through your work - up to four each year.
Your full retirement age is **67**, based on your date of birth: December 9, 1970. As shown in the chart, you can start your benefits at any time between **ages 62 and 70. For each month you wait to start your benefits, your monthly benefit will be higher—for the rest of your life.**
These personalized estimates are based on your earnings to date and assume you continue to earn $0 per year until you start your benefits. Learn more at *ssa.gov/benefits/retirement/learn.html* .

### Personalized Monthly Retirement Benefit Estimates (Depending on the Age You Start)



| Age Retirement Benefits Start | Monthly Benefit Amount |
|---|---|
| 62 | $1,106 |
| 63 | $1,178 |
| 64 | $1,256 |
| 65 | $1,361 |
| 66 | $1,466 |
| 67 | $1,571 |
| 68 | $1,581 |
| 69 | $1,707 |
| 70 | $1,948 |

### Disability Benefits
To get benefits if you become disabled right now, you need 31 credits of work, and 20 of these credits had to be earned in the last 10 years. Your record shows you do not have enough credits at this time to receive disability benefits. Learn more at *ssa.gov/disability*.

### Survivors Benefits
You have earned enough credits for your eligible family members to receive survivors benefits. If you die this year, members of your family who may qualify for monthly benefits include:

| | |
|---|---|
| Minor child: | **$1,418** |
| Spouse, if caring for a disabled child or child younger than age 16: | **$1,418** |
| Spouse, if benefits start at full retirement age: | **$1,891** |
| Total family benefits cannot be more than: | **$3,405** |

Your spouse or minor child may be eligible for an additional one-time death benefit of **$255**. Learn more at *ssa.gov/survivors*.

### Medicare
You have enough credits to qualify for Medicare at age 65.
Medicare is the federal health insurance program for people:
* age 65 and older,
* under 65 with certain disabilities, and
* of any age with End-Stage Renal Disease (ESRD) (permanent kidney failure requiring dialysis or a kidney transplant).

Even if you do not retire at age 65, you may need to sign up for Medicare within 3 months of your 65th birthday to **avoid a lifetime late enrollment penalty**. Special rules may apply if you are covered by certain group health plans through work.
For more information about Medicare, visit *medicare.gov* or *ssa.gov/medicare* or call **1-800-MEDICARE (1-800-633-4227) (TTY 1-877-486-2048).**

**EX. RFD.18 - 1**

Filed in District Court
State of Minnesota
11/22/2023 3:13 PM

**Earnings Record**
Review your earnings history below to ensure it is accurate because we base your future benefits on our record of your earnings. There's a limit to the amount of earnings you pay Social Security taxes on each year. Earnings above the limit do not appear on your earnings record. We have combined your earlier years of earnings below, but you can view your complete earnings record online with *my Social Security*. **If you find an error**, view your full earnings record online and call **1-800-772-1213**.

| Work Year | Earnings Taxed for Social Security | Earnings Taxed for Medicare (began 1966) |
|---|---|---|
| 1981-1990 | $96 | $96 |
| 1991-2000 | $136,597 | $141,581 |
| 2001-2005 | $320,355 | $320,355 |
| 2006 | $68,861 | $68,861 |
| 2007 | $74,984 | $74,984 |
| 2008 | $3,887 | $3,887 |
| 2009 | $0 | $0 |
| 2010 | $0 | $0 |
| 2011 | $0 | $0 |
| 2012 | $0 | $0 |
| 2013 | $0 | $0 |
| 2014 | $0 | $0 |
| 2015 | $0 | $0 |
| 2016 | $0 | $0 |
| 2017 | $0 | $0 |
| 2018 | $127,800 | $127,800 |
| 2019 | $0 | $0 |
| 2020 | $0 | $0 |
| 2021 | $0 | $0 |
| 2022 | Not yet recorded | Not yet recorded |

**Taxes Paid**
Total estimated Social Security and Medicare taxes paid over your working career based on your Earnings Record:

**Social Security taxes**
You paid: $45,410
Employer(s): $45,410

**Medicare taxes**
You paid: $10,687
Employer(s): $10,687

**Earnings Not Covered by Social Security**
**You may also have earnings from work not covered by Social Security, where you did not pay Social Security taxes.** This work might have been for federal, state, or local government or in a foreign country. If you participate in a retirement plan or receive a pension from this work, your Social Security benefits may be affected by:
**Windfall Elimination Provision (WEP)** - Your retirement or disability benefit may be reduced, but not eliminated, by the WEP. The reduction amount, if any, depends on the number of years and the amount earned in jobs in which you paid Social Security taxes, and the year you turn age 62 or become disabled. To estimate the WEP's effect on your Social Security benefit, visit *ssa.gov/WEP-CHART*. In 2023, the maximum monthly reduction is $557.50. Learn more at *ssa.gov/WEP*.
**Government Pension Offset (GPO)** - If you qualify for benefits as a current or former spouse, widow, or widower, the GPO may reduce or eliminate your benefits. If the GPO applies, your Social Security benefit will be reduced by an amount equal to two-thirds of your government pension, and could be reduced to zero. Even if your benefit is reduced to zero, you will be eligible for Medicare at age 65 on your spouse's record. Learn more at *ssa.gov/GPO*.

I was the trailing spouse.
My ex-wife was making money.
We moved for her jobs.

EX. RFD.18 - 2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re: Carolina Uribe Borrero
Case No. 26-40008

# EXHIBIT 2

## Affidavit of Pawel Dominik Rzeczkowski (June 11, 2026)

Originally filed in Hennepin County District Court, File No. 27-FA-19-6324.

Referenced in Section II (Abandonment Narrative).

The attached document is reproduced in its original form.

Original pagination has been preserved.

Attached to:

**Statement Regarding Material Inconsistencies in the Factual Record
Relevant to Confirmation of the Modified Chapter 13 Plan**

*This cover page has been added solely for organizational purposes. The attached
document is reproduced in its original form without substantive alteration.*

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

STATE OF MINNESOTA
COUNTY OF HENNEPIN

DISTRICT COURT
FOURTH JUDICIAL DISTRICT
FAMILY COURT DIVISION

In Re the Marriage of:

Pawel Dominik Rzeczkowski,

Petitioner,

and

Carolina Uribe Borrero,

Respondent.

Court File No. 27-FA-19-6324

**AFFIDAVIT OF**
**PAWEL DOMINIK RZECZKOWSKI**

I, Pawel Dominik Rzeczkowski, respectfully declare to the court as follows:

1. I am the Petitioner in the above-entitled matter.

2. I submit this Affidavit in support of my Motion to Enforce Summer Parenting Time and for Expedited Relief.

3. Unless otherwise stated, the facts set forth herein are based upon my personal knowledge and review of the records maintained in this matter.

4. I submit this Affidavit to assist the Court in determining issues relating to implementation of the November 19, 2024 parenting-time order and the approaching 2026 summer parenting-time period.

## I. INTRODUCTION

5. This motion concerns implementation of the Court's November 19, 2024 Order regarding summer parenting time.

17

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

6.   The November 19, 2024 Order grants Father four consecutive weeks of summer parenting time beginning the second full week after school recesses in spring and expressly permits Father to exercise that parenting time in Georgia. Exhibit SUM26-A1 at 16.

7.   The Court issued that Order with full knowledge that Father resided in Georgia, and that in-person parenting time had not occurred for an extended period. The Court nonetheless adopted findings that the children missed Father, desired in-person parenting time, and would benefit from opportunities to maintain and strengthen their relationship with him. See Exhibit SUM26-A1 at 10.

8.   On April 11, 2026, Father contacted Respondent to coordinate travel arrangements and implementation of the Court's summer parenting time schedule. Father advised that he would exercise the parenting time awarded by the Court, would arrange transportation through Delta's Unaccompanied Minor Program, and would bear the travel costs as required by the Order. See Exhibit SUM26-B1.

9.   Respondent did not provide dates for implementation of the Court's Order. Instead, Respondent referred the matter to her counsel. Thereafter, Father repeatedly requested confirmation of travel dates so arrangements could be finalized. Rather than coordinate implementation of the existing Order, Respondent, through counsel, proposed parenting arrangements materially different from those ordered by the Court, including a graduated reintroduction process, overnight decisions delegated to the children, and future parenting time contingent upon reassessment after an initial visit. Respondent further insisted that the matter proceed through mediation and declined to provide dates for implementation of the Court's existing summer parenting-time order. See Exhibit SUM26-B2.

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

10.    As summer approaches, Father remains unable to finalize travel arrangements or exercise the parenting time awarded by the Court. This motion therefore seeks enforcement and implementation of the existing November 19, 2024 Order. Father does not seek modification of parenting time. Rather, Father seeks the opportunity to exercise the parenting time already granted by the Court and to prevent the loss of that parenting time through continued delay.

11.    Because the summer parenting period is rapidly approaching and travel arrangements require prompt coordination, expedited relief is necessary.

## II. RELEVANT PROCEDURAL HISTORY

12.    On November 19, 2024, the Court issued its Findings of Fact and Order Modifying Custody and Parenting Time. A copy of that Order is attached as Exhibit SUM26-A1.

13.    At the time the Court issued the November 19, 2024 Order, the Court was fully aware that I resided in Newnan, Georgia and that in-person parenting time with the children had not occurred for an extended period. Exhibit SUM26-A1 at 1 and 3.

14.    The Court specifically addressed the impact of my absence from the children's lives and considered evidence regarding the children's relationship with both parents. Exhibit SUM26-A1 at 10.

15.    In the Brief Focused Assessment referenced throughout the Court's Order, the court adopted findings that the children missed their father and desired in-person parenting time. Exhibit SUM26-A1 at 10.

16.    The Court adopted findings that the children "really miss their Father" and that they "long for in-person parenting time." Exhibit SUM26-A1 at 10.

3

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

17.    The Court further found that the largest issue affecting the children was that their father lived across the country, and that the children wanted opportunities for in-person parenting time. Exhibit SUM26-A1 at 10.

18.    After considering those circumstances, the Court denied Respondent's request for sole physical custody and exclusive parenting time. Exhibit SUM26-A1 at 16.

19.    Instead, the Court ordered that I receive four consecutive weeks of summer parenting time each year beginning the second full week after school recesses in spring. Exhibit SUM26-A1 at 16.

20.    The Court further ordered that I bear the costs of transportation and expressly authorized me to exercise that parenting time in Georgia. Exhibit SUM26-A1 at 16.

21.    The Court also ordered that I have one hour of telephone parenting time twice each week. Exhibit SUM26-A1 at 16-17.

22.    The parenting-time provisions contained in the November 19, 2024 Order remain in effect and have not been modified.

### III. IMPLEMENTATION OF THE SUMMER PARENTING-TIME ORDER

23.    On April 11, 2026, I contacted Respondent through Our Family Wizard regarding implementation of my four consecutive weeks of summer parenting time under the November 19, 2024 Order. A copy of that communication is attached as Exhibit SUM26-B1.

24.    In that communication, I advised Respondent that I intended to exercise the summer parenting time awarded by the Court, that I would arrange transportation using Delta Air Lines' Unaccompanied Minor Program, and that I would bear the transportation costs as required by the Court's Order. See Exhibit SUM26-B1.

4

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

25. I requested that Respondent identify a start date for the children's travel to Georgia so that transportation arrangements could be finalized. See Exhibit SUM26-B1.

26. On April 16, 2026, after receiving no response regarding implementation, I sent a follow-up request asking Respondent to confirm the start date for the children's travel. See Exhibit SUM26-B1 at 1.

27. On April 18, 2026, Respondent replied that her attorney, Jason Brown, would contact me regarding the matter. See Exhibit SUM26-B1 at 1.

28. On April 22, 2026, I contacted Mr. Brown and again requested confirmation of the children's travel dates so that transportation arrangements could be completed. See Exhibit SUM26-B2 at 17.

29. Between April 22, 2026 and May 20, 2026, I repeatedly requested implementation of the Court's existing parenting-time order and repeatedly requested dates for the children's travel to Georgia. See Exhibit SUM26-B2.

30. During that same period, Respondent, through counsel, proposed parenting arrangements materially different from those ordered by the Court, including a graduated reintroduction process, overnight decisions delegated to the children, and future parenting time contingent upon reassessment following an initial visit. See Exhibit SUM26-B2 at 12.

31. Respondent, through counsel, repeatedly asserted that the matter should proceed through mediation before implementation of the Court's existing summer parenting-time order and repeatedly declined to provide dates for the children's travel under the existing Order. See Exhibit SUM26-B2 at 4 and 1.

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

32. At no time during these communications did Respondent provide dates for implementation of the four consecutive weeks of summer parenting time ordered by the Court. See Exhibit SUM26-B2.

33. As of the date of this Affidavit, travel arrangements remain incomplete because Respondent has not identified dates for implementation of the Court's Order.

## IV. RESPONDENT'S POSITION

34. Rather than provide dates for implementation of the Court's existing summer parenting-time order, Respondent, through counsel, proposed alternative parenting arrangements. See Exhibit SUM26-B2 at 12 and 6.

35. On May 1, 2026, Respondent, through counsel, proposed that the children travel to Georgia for approximately one week, accompanied by Respondent, with Respondent staying in a nearby Airbnb. See Exhibit SUM26-B2 at 12.

36. Under that proposal, the children would spend their days with me but would initially return to Respondent's Airbnb each evening. Beginning thereafter, the children would determine where they wished to spend each night. See Exhibit SUM26-B2 at 12.

37. Respondent further proposed that future parenting time be reassessed following the initial visit and that extended summer parenting time occur only after the children had an opportunity to reestablish an in-person relationship with me. See Exhibit SUM26-B2 at 12.

38. Respondent later proposed an alternative arrangement in which the children would travel to Georgia for approximately one week accompanied by Tati, the children's caregiver, after which future parenting time would again be reassessed. See Exhibit SUM26-B2 at 6.

6

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

39. Throughout these communications, Respondent did not provide dates for implementation of the four consecutive weeks of summer parenting time awarded by the Court. See Exhibit SUM26-B2.

40. On May 14, 2026, Respondent, through counsel, asserted that the matter should proceed through mediation pursuant to Paragraph 73 of the July 24, 2023 Amended Judgment and Decree. See Exhibit SUM26-B2 at 4.

41. On May 20, 2026, Respondent, through counsel, maintained that the dispute should proceed through mediation pursuant to Paragraph 73 of the July 24, 2023 Amended Judgment and Decree, continued to advocate parenting arrangements materially different from those ordered by the Court, and again declined to provide dates for implementation of the existing summer parenting-time schedule. See Exhibit SUM26-B2 at 1.

## V. THIS MOTION SEEKS ENFORCEMENT OF AN EXISTING ORDER

42. I am not requesting modification of the Court's November 19, 2024 Order.

43. I am requesting implementation of the parenting-time provisions already ordered by the Court.

44. Since April 11, 2026, I have consistently sought only to coordinate and implement the four consecutive weeks of summer parenting time awarded by the Court. See Exhibits SUM26-B1 and SUM26-B2.

45. I have remained flexible regarding scheduling logistics, including the specific start date of the children's travel, provided that the four consecutive weeks of summer parenting time ordered by the Court are implemented. See Exhibits SUM26-B1 and SUM26-B2.

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

46. I have not requested changes to the duration of parenting time, travel provisions, telephone parenting time, holiday parenting time, or any other parenting-time provisions contained in the November 19, 2024 Order.

47. Respondent, through counsel, has proposed parenting arrangements materially different from those ordered by the Court, including a graduated reintroduction process, overnight decisions delegated to the children, and future parenting time contingent upon reassessment following an initial visit. See Exhibit SUM26-B2 at 12 and 6.

48. Those proposals differ substantially from the parenting-time schedule currently ordered by the Court.

49. If Respondent believes modification of the November 19, 2024 Order is necessary, Respondent may seek appropriate relief from the Court.

50. Unless and until the Court modifies its existing Order, the parenting-time provisions contained in the November 19, 2024 Order remain in effect.

51. This motion seeks implementation of those existing parenting-time provisions and does not seek modification of them.

## VI. RESPONDENT'S COMMUNICATION HISTORY IS INCONSISTENT WITH HER ASSERTED SUPPORT FOR THE FATHER-CHILD RELATIONSHIP

52. Throughout the communications attached as Exhibit SUM26-B2, Respondent, through counsel, repeatedly asserted that Respondent supports the children's relationship with their father.

53. Because Respondent's current position relies heavily upon that assertion, I believe it is important to provide the Court with context regarding the parties' recent history of disputes concerning parent-child communication.

8

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

54.     The communications attached as Exhibits SUM26-B0 and Exhibits SUM26-C1 through SUM26-C8 document a recurring pattern of disputes regarding my ability to communicate directly and consistently with the children.

55.     In July 2025, I documented concerns regarding interruptions during scheduled parenting calls and Respondent's participation in those calls after I had repeatedly requested that the children be permitted to communicate privately during parenting-call time. See Exhibit SUM26-B0.

56.     Thereafter, disputes shifted from interruptions during parenting calls to disputes concerning device access, contact information, communication permissions, notifications, and other barriers affecting direct parent-child communication. See Exhibits SUM26-C1 through SUM26-C6.

57.     Between July 2025 and March 2026, I repeatedly requested that my contact information be added to or preserved on the children's devices and repeatedly raised concerns regarding communication barriers that affected calls, messages, notifications, and other direct communication with the children. See Exhibits SUM26-C2 through SUM26-C6.

58.     On March 3, 2026, communications between the parties reflected that adjustments had been made to the children's contact information and that communication functionality had improved. See Exhibit SUM26-C6.

59.     Thereafter, disputes regarding communication shifted from device-access concerns to disputes regarding the duration and structure of parenting calls. See Exhibits SUM26-C7 and SUM26-C8.

60.     On March 17, 2026, Respondent advised that the children would call "30 minutes each." See Exhibit SUM26-C7 at 4.

9

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

61. On April 8, 2026, Respondent stated that the children were available for "up to one hour total" and that the time had been divided into "30 minutes per child." See Exhibit SUM26-C7 at 3.

62. On April 18, 2026, I documented that Aurora began a scheduled call by setting a thirty-minute timer and that a third party later entered to ask whether she was ready to move on after the timer sounded. See Exhibit SUM26-C7.

63. On June 6, 2026, I documented another instance in which a timer was initiated during a call and the remaining time became part of the conversation itself. See Exhibit SUM26-C8.

64. I do not present these communications to relitigate prior disputes. I present them because Respondent's current request to alter the Court's existing summer parenting-time order is premised, in part, on assertions regarding support for the father-child relationship.

65. The communications contained in Exhibits SUM26-C1 through SUM26-C8 provide relevant context regarding the parties' ongoing disputes concerning direct communication between Father and the children.

## VII. MEDIATION

66. Respondent, through counsel, has repeatedly asserted that this matter should proceed through mediation pursuant to Paragraph 73 of the July 24, 2023 Amended Judgment and Decree. See Exhibit SUM26-B2 at 4 and 1.

67. I acknowledge the existence of Paragraph 73 and Respondent's position regarding mediation.

68. However, the issue presently before the Court is implementation of an existing parenting-time order, not negotiation of a new parenting-time arrangement.

10

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

69. Since April 11, 2026, I have consistently requested only implementation of the four consecutive weeks of summer parenting time awarded by the Court and have repeatedly requested travel dates necessary to coordinate transportation. See Exhibits SUM26-B1 and SUM26-B2.

70. Respondent has not provided dates for implementation of the existing Order. Instead, Respondent has proposed alternative parenting arrangements materially different from those ordered by the Court and has requested mediation as a means of resolving the dispute. See Exhibit SUM26-B2 at 12 and 6.

71. On January 24, 2025, the Minnesota appellate mediation program granted my request for exemption from appellate mediation in this family matter. A copy of that communication is attached as Exhibit SUM26-D1.

72. I do not present Exhibit SUM26-D1 to relitigate prior issues. I present it because Respondent has repeatedly asserted that mediation is a necessary prerequisite to Court involvement, while a Minnesota court-related mediation program previously granted my request for exemption from mediation in this matter. See Exhibit SUM26-D1.

73. The summer parenting-time period is now underway. Travel arrangements remain incomplete, and implementation of the Court's existing parenting-time order remains unresolved.

74. Under these circumstances, I respectfully submit that prompt Court intervention is necessary to determine implementation of the existing Order and to prevent further delay in the exercise of the parenting time already awarded by the Court.

## VIII. EXPEDITED RELIEF IS NECESSARY

75. The summer parenting-time period established by the Court's November 19, 2024 Order is now under way. The children's school year has just ended.

11

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

76. Implementation of the Court's Order requires coordination of travel arrangements, including transportation of the children from Minnesota to Georgia.

77. Since April 11, 2026, I have repeatedly requested travel dates so that those arrangements could be finalized. See Exhibits SUM26-B1 and SUM26-B2.

78. As of the date of this Affidavit, no dates have been provided for implementation of the Court's existing summer parenting-time order. See Exhibit SUM26-B2.

79. Continued delay reduces the time available to coordinate transportation and meaningfully implement the parenting-time schedule ordered by the Court.

80. Absent prompt Court intervention, the approaching summer parenting-time period may be substantially affected by the parties' inability to finalize travel arrangements.

81. For these reasons, expedited consideration of this motion is appropriate.

## IX. REQUEST FOR RELIEF

82. For the reasons stated above, I respectfully request that the Court:

    a. Enforce the parenting-time provisions of the November 19, 2024 Findings of Fact and Order Modifying Custody and Parenting Time;

    b. Direct immediate implementation of my four consecutive weeks of summer parenting time as ordered by the Court;

    c. Direct Respondent to identify the children's travel dates and exchange all information reasonably necessary to finalize travel arrangements within a time period established by the Court;

    d. Grant expedited consideration of this motion due to the ongoing summer parenting-time period and the need to complete travel arrangements without further delay; and

    e. Grant such other and further relief as the Court deems just and equitable.

12

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

## VERIFICATION

I declare under penalty of perjury that everything I have stated in this document is true and correct to the best of my knowledge.

Dated:  June 10, 2026

Pawel Dominik Rzeczkowski

Signed at:   Coweta County, Georgia

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

# EXHIBIT LIST

**SUM26-A1** (November 19, 2024) ........................................................................................ 15
*Findings of Fact and Order Modifying Custody and Parenting Time*

**SUM26-B0** (July 17, 2025) ............................................................................................. 36
*FaceTime Call Conduct & Summer 2025 Georgia Parenting Time Request*

**SUM26-B1** (April 11–18, 2026) ...................................................................................... 44
*Summer 2026 Parenting Time Coordination with Carolina Uribe Borrero*

**SUM26-B2** (April 22–May 20, 2026) ............................................................................... 46
*Summer 2026 Parenting Time Communications with Attorney Jason Brown*

**SUM26-C1** (July 21, 2025) ............................................................................................ 63
*Children's Electronic Communication and Contact Access*

**SUM26-C2** (November 25, 2025) .................................................................................... 70
*Scheduled Parenting-Time Communication and Device Access*

**SUM26-C3** (December 24, 2025) .................................................................................... 79
*iMessage Communication Issue and Contact Configuration*

**SUM26-C4** (January 10, 2026) ....................................................................................... 85
*Documentation of Communication Disruption During Scheduled Call Time*

**SUM26-C5** (February 21, 2026) ..................................................................................... 93
*Direct Parent–Child Communication and Device Accessibility*

**SUM26-C6** (March 3, 2026) ........................................................................................... 99
*Communication Functionality Following Contact Information Update*

**SUM26-C7** (April 18, 2026) .......................................................................................... 106
*Telephone Parenting Time Duration and Scheduling Communications*

**SUM26-C8** (June 6, 2026) ............................................................................................ 110
*Telephone Parenting Time Timing and Call Duration Documentation*

**SUM26-D1** (January 27, 2025) ...................................................................................... 111
*Order Granting Exemption from Appellate Mediation*

**SUM26-E1** (2025–2026) ............................................................................................... 112
*Chronology of Summer Parenting Time Implementation Efforts*

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

**PETITIONER'S EX.**
No. 27-FA-19-6324

# SUM26-A1

STATE OF MINNESOTA
COUNTY OF HENNEPIN

In the Marriage of:

Pawel Dominik Rzeczkowski,

Petitioner,

and

Carolina Uribe Borrero,
                    Respondent.

Judge Laura M. Thomas
File Number 27-FA-19-6324

**FINDINGS OF FACT AND ORDER
MODIFYING CUSTODY AND PARENTING TIME;
ORDER FOR JUDGMENT**

---

The above-entitled matter came on for an evidentiary hearing on September 11, 2024 on Mother's post-decree motions to modify custody before the Honorable Laura M. Thomas, Judge of District Court.[1]

Petitioner Pawel Rzeczkowski was present and self-represented.

Respondent Carolina Uribe Borrero was represented by John "Jack" DeWalt, of DeWalt, Chawla, & Saksena, LLC.

Based upon the evidence[2] presented and all the files, proceedings and records herein, the Court makes the following:

## FINDINGS OF FACT

1.    The parties' names, addresses, and dates of birth include:

Pawel Dominik Rzeczkowski ("Father")
2166 Highway 29 N.
Newnan, GA 30265
DOB: 12/09/1970 (age 53)

Carolina Uribe Borrero ("Mother")
2814 W. 41st Street
Minneapolis, MN 55410
DOB: 10/10/1975 (age 49)

2.    The parties are the divorced parents of the following minor children:

Aurora Margarita Rzeczkowski-Uribe, born March 2, 2015 (now 9); and
Sebastian Adam Rzeczkowski-Uribe, born March 2, 2015 (now 9).

---

[1] All parties appeared remotely because of Father's relocation to Georgia and subsequent request for a remote evidentiary hearing.
[2] Both parties testified as did Kayleen Weverka, LPCC. The Court received Mother's Exhibits Nos. 101 through 131, and Father's Exhibits 1 (filing from November 17, 2023), 2 (filing from January 10, 2024), and 3 (filing from August 12, 2024, which is titled "Motion to Vacate Orders Due to Fraudulent Conduct and Request for Reconsideration Based on Respondent's Criminal History").

Exhibit A1 - 1

31

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

The parties were divorced by Judgment and Decree entered on June 21, 2022. They stipulated to joint physical custody and agreed to exercise an equal 5-2-2-5 parenting time schedule as recommended in their custody evaluation. The Court decided the issue of legal custody, awarding the parties joint legal custody. The joint legal custody award was against the recommendation of Zak Chesson of Family Mediation and Evaluation who recommended sole legal custody to Mother. In the Judgment and Decree, the Court (Judge Michael Burns, presiding) noted its concerns about parental conflict, inability to effectively co-parent, and delay in care and decision making but decided to elevate the presumption of joint legal custody above those concerns. The Court stated:

> *The Court understands Mr. Chesson's concerns and finds them to be deeply rooted in co-parenting conflicts, rather than individual parenting conflicts. The parties should continue to work towards a healthier co-parenting relationship that is in the best interest of the children.*

Judgment and Decree, at 7. Since entry of judgment, the parties have been involved in near continuous litigation. The procedural history is summarized by Kayleen Weverka, MS, LPCC, in the Brief Focused Assessment ("BFA") at pages 1 and 2, Exh. 101. The Court hereby incorporates her summary. In the BFA, Weverka states:

> *These parents have been in perpetual conflict since the finalization of divorce. It is unique to consider the extreme amount of conflict these parents have despite living (sic) long distance apart. I would be remiss not to acknowledge that the amount of animosity between the parents certainly causes stress to the children. The parties have engaged in litigation consistently since September 2019 when the children were just four and a half years old with no reprieve. To put that into another perspective, for five years, or more than half of these children's lives, their parents have been involved in litigation of one sort or another, with them at the center. Prolonged parental conflict is often linked to poor outcomes for children, and while these children benefit from therapeutic support, and should continue participating in therapy, they would also greatly benefit from a reduction in the conflict.*

Exh. 101, at 9.

3.    Mother's motions filed December 27, 2023, seek a modification of physical custody and parenting time as to both children, and a modification of legal custody. In its Order filed April 3, 2024, the Court found a *prima facie* basis to modify legal custody as to Sebastian only and a *prima facie* basis to modify physical custody as to both children. *See* Findings of Fact and Order; Order for Suspension of Child Support filed April 3, 2024. The Court set the matter on for evidentiary hearing[3] regarding the custody and parenting time issues,

---

[3] *See* Order for Trial filed May 10, 2024.

32

Exhibit A1 - 2

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

and directed Family Mediation and Evaluation to conduct a brief focused assessment on the following issue pursuant to its authority, *see* Minn. Stat. §518.167, Subd. 1:

*How the custody and parenting time arrangements that are in place affect the children's needs and the children's special needs?*

4.  **Brief Focused Assessment.** On August 18, 2024, Weverka authored a 10-page BFA including an opinion that Sebastian's multiple needs are not being met. Exh. 101, at 9. Weverka states, "[T]he current joint decision-making process is fraught with conflict and creating delays in responsiveness and care for the children, particularly Sebastian." *Id.*, at 10. With respect to physical custody and parenting time issues, Weverka is similarly blunt: "[I]n answering the question of how the custody and parenting time arrangements that are in place affect the children's needs and the children's special needs, the answer is more simple than the parents want it to be, and that which would be true for most children is that they miss in-person contact with their father and desire to see that happen again[.]" *Id.*, at 9.

    a.  In authoring the BFA, Weverka considers the pivotal role each parent plays in any child's development. In the end, it comes down to behaviors and actions and what arrangements minor children require in order to continue to grow into physically and emotionally healthy adults. The basis for Weverka's opinions are referred to and cited to throughout this Order. A summary of the facts and multiple sources she considered is set forth in Exh. 101, at 2-3. There is no evidence that Weverka formed her opinions regarding legal and physical custody in anything but good faith. The BFA is thorough and well-founded.

    b.  The BFA is also credible because it complements and is consistent with the testimony and other evidence offered by Mother such as Sebastian's multiple tests and assessments. *See, e.g.*, Exh. 102 (Fraser Testing), Exh. 103 (Monarch Testing), Exh. 104 (Pediatric records), and 105-113 and 115 (two full years of academic records including IEP progress reports for Sebastian).

*MODIFICATION OF LEGAL CUSTODY FOR SEBASTIAN*

5.  To prove an endangerment-based legal custody modification, Mother must establish four elements: 1) a change in the circumstances of the child or custodian; 2) that modification from joint to sole is in the child's best interests; 3) that joint legal custody endangers the child's physical or emotional health or emotional development; and 4) that the harm to the child likely caused by the change (from joint to sole legal to Mother) is outweighed by the advantage of the change. *Abbott v. Abbott*, 481 N.W.2d 863, 868 (Minn. App. 1992); Minn. Stat. Sec. 518.18(d).

6.  **Change of Circumstances.** It is undisputed that in August 2022, just two months after entry of the Judgment and Decree, Father left Minnesota for Newnan, Georgia, to reside with his mother. He has not returned. According to Mother's testimony, Father did not discuss the issue with Mother. Father simply stopped picking up the children from school. Father did not dispute this testimony. Mother's motion regarding legal custody focuses in

Exhibit A1 - 3

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

on the post-judgment reality of her raising two small children largely by herself in Minnesota while Father remains in Georgia.

7. Another change of circumstances is Sebastian's diagnosis of ADHD and PTSD which occurred after the time of the divorce trial (January 2022) and before the Court entered the Judgment and Decree on June 21, 2022. *See* Exh. 102, at 032 (containing Fraser Psychological Testing dated March 3, 2022, with final approval for testing results on April 13, 2022). In Sebastian's pediatric records from February 28, 2023, *see* Exh. 104, at 064, a specific treatment plan was discussed for the minor child including medication. The ADHD diagnosis–and a multi-modal treatment approach, including medication–was confirmed after Sebastian received psychoeducational testing at Monarch Learning and Attention Center on April 23, 2024, *see* Exh. 103, at 056. The evidence shows that Sebastian has ADHD and PTSD. See Exh. 101. Further, multiple professionals including his own pediatrician have recommended that medication be a part of his treatment plan. Exh. 101, at 5. Further, that Sebastian's continued lack of success in school is now having adverse social effects on the child.

8. Mother agrees with the medical and educational professionals who have assessed and evaluated Sebastian. Specifically, Mother wants Sebastian to receive medication as a part of his treatment plan so that his educational and social performance improves. Father disagrees with any approach that includes medication. *See* Exh. 3, at 8. Notably, there may be other issues that Sebastian needs legal custody decisions on as he progresses through school. For example, the exhibits mention possible dyslexia, further neuro-psychological testing, and special education services (Exh. 102, at 034; Exh. 104, at 064). In considering Mother's motion for modification of legal custody, the Court views the motion in the context of Sebastian's primary and secondary education – most of which lies ahead.

9. **Modification to Sole Legal Custody to Mother is in Child's Best Interests**. A review of the factors set forth in Minn. Stat. § 518.17, Subd. 1(a)(1)-(12) is set forth below, and demonstrates that modification and an award of sole legal custody to Mother is in Sebastian's best interests:

   *a.      The child's physical, emotional, cultural, spiritual and other needs, and the effect of the proposed arrangements on the child's needs and development.*

Sebastian is enrolled in Fourth Grade at Emerson Elementary School. Mother describes Sebastian as extremely smart, intelligent, and creative. She talked about how he has benefited from an individual educational program (IEP) and individual therapy at Watercourse Counseling Center, but these methods have not been sufficient to meet his needs. The recommendation of medication was first made in March 2022, and Father has continued to oppose it. Sebastian continues to lag in reading and writing, and this has had negative academic and social effects on the child. Specifically, Mother testified that Sebastian is teased by his peers because he cannot catch up in school. Exh. 101, at 2-3. Weverka states:

> **Exhibit A1 - 4**

34

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

*The educational interventions that have been put into place seem to be helping Sebastian at least some because he has increased his fluency in reading and writing expression skills. However, despite the IEP support and other phonics interventions, Sebastian remains more than two grade levels behind in reading.*

Exh. 101, at 4-5. The medical and academic records show two things: (1) Mother has diligently pursued evaluations and identified services to meet Sebastian's needs; and (2) Sebastian continues to fall behind his peers. *See* Exh. 102 through 111, 113 and 115. This factor weighs in favor of sole legal custody of Sebastian to Mother who will meet the minor child's needs and who will help ensure the minor child secures the medical and academic services he needs to succeed academically and socially.

b.      *Any special medical, mental health, or educational needs of the child.*

Sebastian has special needs, and he has for many years. The Fraser assessment recommends medication as part of Sebastian's multi-modal treatment:

*Research suggests the most efficacious treatment of ADHD is a combination of psychotherapy and medication. It is recommended that the family continue to collaborate with Sebastian's primary care physician to monitor symptoms and assess for appropriateness of medication management to target ADHD symptoms.*

Exh. 102, at 035. In Father's response, he generally opines that medication is inappropriate for Sebastian but provides no credible support for this position, Exh. 3, at 8. At trial, Father testified that he read about a venture capitalist, Chamath Palihapitiya, who chose not to medicate his child for ADHD. That was the extent of Father's testimony on this point. At the same time, Father acknowledges that Sebastian's attention issues pre-date the parties' separation. Records show that Sebastian has struggled with attention issues since December 2017 when he was just two years old. Exh. 103, at 048 (diagnosed with Other Lack of Expected Normal Physiological Development in Childhood in December 2017). Father also acknowledges that Sebastian is suffering socially because of his special needs. *See id.* (Father stating, "The noted deficits in Sebastian's social presentation and understanding of social cues could be tied to the modeling of dysfunctional interpersonal dynamics in the context of domestic violence.")
In sum, Father blames Sebastian's special needs on the parties' divorce and Father's move to Georgia, but he provides no assessment from either a medical or academic professional to corroborate his position opposing medication. Father also fails to point out any weakness in either the Fraser or Monarch evaluations. Consideration of this factor weighs in favor of sole legal custody of Sebastian to Mother who will meet the minor child's special needs and who will help ensure the minor child receives the medical and academic services he needs to succeed academically and socially.

c.      *Reasonable preferences of the child.*

**Exhibit A1 - 5**

35

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

The minor child at issue is too young to express a preference as to legal decision-making so this factor carries no weight.

       d.     *Whether domestic abuse has occurred as defined in Section 518B.01.*

The evidence shows that there is a contentious power dynamic between the parties which has resulted in name-calling, inappropriate behavior alleged by both parents while they continued to reside together while the dissolution was pending, and many court filings. Exh. 102, at 6. The Court does not dismiss or minimize domestic abuse because when it occurs it has lasting and adverse effects on a family dynamic. At the same time, no Court has made a finding of domestic abuse in this case or in any other matter. There have been no civil or criminal orders for protection between the parties. This factor is neutral.

       e.     *Any physical, mental, or chemical health issue of a parent affecting the child.*

This factor invites the Court to examine each of the parents and look for any impediments to joint decision-making. Here, both parents are physically healthy. There is no evidence of any documented mental or chemical health issue on the part of either Father or Mother affecting their behavior. This factor is therefore neutral.

       f.     *History and nature of each parent's participation in caretaking and decisions affecting the minor child.*

This factor looks backwards and requires an examination of the role each parent has played in past decisions. While they resided together and before the dissolution, the parties made joint decisions for Sebastian. Since the entry of the Judgment and Decree and Father's move to Georgia, the parties have experienced near continuous conflict which is referred to elsewhere in this Order. Exh. 117 through 126 contain Our Family Wizard messages between the parties which demonstrate the parties' conflict, and Mother's attempts to engage Father on various issues and decisions that need to be made on behalf of the minor children. Further, since August 2022, Mother has done all of the caretaking of the children, and she has arranged for multiple assessments largely alone because she is the parent observing and responding to the minor child's academic and social struggles. In the last two years, Mother has dealt with all of the children's school issues, doctor's visits, and managed their social interactions. Consideration of this factor weighs in favor of sole legal custody of Sebastian to Mother.

       g.     *Willingness and ability of each parent to participate in care for the minor child and his developmental, emotional, spiritual, and cultural needs moving forward.*

The evidence shows that both parents express a preference to be engaged in their son's development moving forward. However, it is obvious the parents possess very different ideas about what that means in practice. Mother demonstrates her willingness and ability with hands-on management and caretaking. Mother coordinates appointments and brings

<div style="border:1px solid black; display:inline-block; padding:4px;">**Exhibit A1 - 6**</div>

36

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

the child to them. She testified that she arranges all school, medical, therapy, extracurricular activities, social activities, and birthday or special holiday celebrations. Mother has brought the current motion to allow her, specifically, to secure services for Sebastian so that he can succeed academically and socially. On the other hand, Father moved away from Minnesota and has not returned to see the minor children a single time. The Our Family Wizard messages between the parties in Exh. 117 through 125 show Mother repeatedly asking Father to respond to questions she has posed about child-related issues where decisions need to be made. Consideration of this factor weighs in favor of sole legal custody of Sebastian to Mother who is presently demonstrating the ability to participate in Sebastian's care and all of the decisions required for that care.

> h. *Effect on the child's well-being and development to changes in care and legal decision making.*

The Court did not issue a temporary order granting Mother sole legal custody of Sebastian solely on the assessments by Fraser and Monarch because the Court wanted to review the results of the BFA before modifying the permanent award of joint legal custody contained in the Judgment and Decree. As of the time of trial, Sebastian continues to lag behind in school. He is not doing as well as he could be. This order granting Mother permanent sole legal custody will change the minor child's life in a discernable manner because Mother will be able to secure the medication for Sebastian that multiple professionals have recommended for his treatment. As a parent, Father will still have access to Sebastian's medical and academic records so that he can stay abreast of his son's progress in school and the child's response to the recommended treatment. Minn. Stat. § 518.17, Subd. 3a. Consideration of this factor weighs in favor of sole legal custody of Sebastian to Mother.

> i. *Effect of sole legal custody to Mother on the ongoing relationships between the child and each parent, and other significant family members.*

The Court does not have any evidence that granting Mother's motion for sole legal custody of Sebastian will have any adverse effect on his relationship with Father, or as to any other member of the family. The recommendations in the various records admitted at trial indicate that the minor child's social relationships will improve, across the board, with treatment. Consideration of this factor weighs in favor of sole legal custody of Sebastian to Mother.

> j. *The benefit to the child of maximizing engagement by both parents.*

There is no evidence that maximizing engagement by both parents has benefited Sebastian. In fact, the evidence is that the opposite has occurred: assessments have been delayed, decisions have not been made, and Sebastian suffers as a result. He is now suffering socially as a result of his inability to perform in school. Consideration of this factor weighs in favor of sole legal custody of Sebastian to Mother.

> k. *Disposition of each parent to support the child's relationship with the other parent.*

**Exhibit A1 - 7**

37

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

This is a difficult factor to assess as these parties have been engaged in litigation nearly continuously since 2019. The evidence shows that Mother manifests an understanding that both parents matter as she has repeatedly tried to engage Father in joint decision-making and communication. There is no evidence that she has unilaterally made decisions in an attempt to marginalize Father. Father, on the other hand, has deliberately moved to Georgia while Mother and the minor children reside in Minnesota. This factor weighs in favor of sole legal custody of Sebastian to Mother so that decisions can be made regarding Sebastian's academic and health needs immediately and on an on-going basis so that he can succeed in school.

1. *Willingness and ability of parents to cooperate in the decisions regarding their child.*

The BFA clearly establishes that, since their divorce, these parents have not and cannot make decisions together in service of their son's best interests. The Court adopts the BFA in its entirety as to this factor which weighs in favor of sole legal custody of Sebastian to Mother.

After a consideration of the best interest factors, nine of twelve factors weigh in favor of sole legal custody of Sebastian to Mother. Three of twelve factors are neutral.

10. **Endangerment.** As stated above, the demonstrated inability of the parties to make decisions that are in Sebastian's best interests require that Mother make those decisions alone. Mother is well positioned here in Minnesota with the two children in her care to make decisions that are in Sebastian's best interests. If Sebastian does not receive medication for his ADHD he will continue his significant lack of performance in school, and this will continue to adversely affect his academic performance and his social relationships. The regression noted in the Fraser assessment, Exh. 102, is troubling:

> *Sebastian's teacher, Viky Chavez, completed a Fraser School Questionnaire in March 2022. She identified strengths of the ability to communicate in 3 languages, a strong vocabulary and interested in having interested (sic) conversations. Concerns include not recognizing numbers, not counting, not retaining information, getting off task, feeling afraid when he is not in his comfort zone, or even when he has done a routine. Regarding peer interactions, Ms. Chavez reported that Sebastian is in mid-low range of his grade level peers in find (sic) friends and feels comfortable being by himself or talking to adults. He makes friends just a little. He often refuses to participate in group activities. He does well with adults, although he can sometimes get frustrated and try to hit. He often maintains conversations and shares things of interest, but has some difficulty with reciprocal conversations. He often engages in creative play.*

**Exhibit A1 - 8**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Exh. 102, at 012. It is not in Sebastian's best interests for him to continue to regress which is addressed throughout the reports. The Monarch assessment provides a particularly concerning reference with regard to the child's reading ability:

> *Despite the examiner administering second grade level passages given his reading difficulties, Sebastian read passages at a much slower rate, as at least 95% of the normative sample had a faster reading rate. Sebastian's error rate was also high, as at least 98% of the sample made fewer errors.*

Exh. 103, at 054, 061. The BFA and Mother's multiple exhibits admitted at trial establish this element.

11. **Harm Caused by Change is Not Outweighed by Benefits of Sole Custody**. As stated elsewhere in this Order, Mother is positioned to gather the information about Sebastian's condition and secure the services he needs to flourish academically and socially. Mother has demonstrated her ability to do this, and to actively engage in the decision-making that will secure necessary services and treatment for Sebastian. Mother's motion for permanent sole legal custody should be granted.

*PHYSICAL CUSTODY / PARENTING TIME*

12. Mother's second motion is for sole physical custody of both minor children, and an award of exclusive parenting time. As referred to above, to modify an existing custody order, the Court must find: (1) a change of circumstances; (2) that modification is necessary to serve the best interests of the minor children; and (3) the children have been integrated into Mother's residence with the consent of the other party or endangerment. *See Gunderson v. Preuss*, 336 N.W.2d 546 (Minn. 1983) (reversing a custody modification where the trial court failed to make specific findings as to all elements).

13. **Change of Circumstances.** As mentioned above, Father moved to Georgia in August 2022 and has not returned. This is a change of circumstances since the Judgment and Decree was entered. During the trial Father testified, "I stand before you today as a Father who has been unjustly denied access to his children." Father offered no evidence that his move to Georgia was anything but voluntary. For example, he was not transferred there for work or military service. He was not evicted. There are no facts in the record except the testimony that he now lives with his mother in Newnan, Georgia, and he continues to not be employed despite his educational and professional credentials. His Our Family Wizard messages to Mother on the topic of residing in Georgia are self-serving and entirely vague as to his intentions. Exh. 117 and 118.

14. Father presented no evidence that he intends to move back to Minnesota or that the living situation with his mother is in any way temporary. Father did not present a proposed parenting time schedule, or any suggested modified plan given the geographic divide between Minnesota and Georgia. He did not ask for summer or holiday parenting time. Father did not address what parenting time arrangements he believes would be in the best

Exhibit A1 - 9

39

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

interests of the minor children.

15. **Best Interests**. After a consideration of the entire record and the factors set forth below, the Court is not persuaded that it is in the best interests of the parties' minor children for Mother to receive the label of sole physical custody and exclusive parenting time. The BFA provides the clear opinion, which the Court finds reliable and corroborated by numerous exhibits, that is it not in the children's best interests for Father to have absented himself from their lives. Further, awarding Mother sole physical custody runs the risk of further entrenching Father in his view that the world is set against him and that he has been wronged. This is not in the children's best interest. In addressing the factors, the Court confronts the question: What parenting time arrangement will meet the children's needs despite Father's steadfast refusal to be physically present for his children?

a.     *The children's physical, emotional, cultural, spiritual and other needs.*

Mother smiled while she testified about the children: she obviously loves them. The trial testimony and exhibits offer a glimpse into each child:

    i.     Aurora is a 9-year-old in Fourth Grade at Emerson Elementary. One of her report cards contains the following comment: "It has been a great pleasure to have Aurora in my class! She's a delightful little girl and she has made so much progress in reading, writing, and math. She is reading at grade level and just needs to work on reading a little more smoothly. Great job, Aurora! Remember to keep reading this summer! :)" Exh. 112. Another comment, "Aurora has also consistently shown respect for classmates, teachers and/or materials."

    ii.    Sebastian is a 9-year-old in Fourth Grade at Emerson Elementary. Father lovingly describes him in the Fraser report, Exh. 102, at 015: "Sebastian is very creative, likes to draw stories, and is eager to connect and is very conscious of his sister. [Father] stated that in the summer they make picnics in parks, fly kites, learn to skateboard and play tennis. In the winter, the kids love sledding and learning to ice skate. Sebastian helps setting up the beds at night, bringing out the mattresses from the bedroom, and bringing out the duvets."

The BFA states: "From the children's perspective, in simple terms, they really miss their Father." Exh. 101, at 7. Further, "The largest issue pertaining to the children is that their father lives across the country. It is clear through my investigation that the children miss their father and long for in person parenting time." *Id.*, at 9. After a consideration of this factor, it weighs in favor of denying Mother's motion as to physical custody, and a parenting time schedule that allows for four weeks of parenting time in the summer for Father and two predictable evening calls each week, plus an alternating school break schedule so that Father can enjoy parenting time during the school year on extended breaks. Further, 10-days' notice by Father to Mother should Father want additional parenting time in Minnesota to see the children during the school year.

b.     *Any special medical, mental health, or educational needs.*

<div style="text-align: right;">

**Exhibit A1 - 10**

</div>

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

With respect to special needs that either child may have, and how that affects parenting time, the various exhibits mention the need for predictability and regularity in Sebastian's routines as a child with ADHD. Exh. 101, at 6. No similar concern exists with respect to Aurora. The Court orders telephonic parenting time to occur two nights per week on a regular schedule. If Father cannot exercise his telephonic parenting time on the nights designated (Sunday and Wednesday), the parties shall identify another night when it works better taking into account their schedules and the children's needs. The Court limits Father's telephonic parenting time to two nights because there is no evidence that the children need more electronic contact with their Father. Instead, they need their Father to be physically present in their lives.

> c.     *Reasonable preferences of the children.*

At age 9, the minor children are old enough to both independently and sensibly state a preference that they be able to spend time with both of their parents. Exh. 101, at 7. After a consideration of this factor, it weighs in favor of denying Mother's motion as to physical custody, and a parenting time schedule that allows for four weeks of parenting time in the summer for Father, an alternating school break schedule so that Father can enjoy parenting time during the school year on extended breaks, and allows for additional parenting time for Father in Minnesota with appropriate notice to Mother, and so long as it does not conflict with other parenting time ordered below.

> d.     *Whether domestic abuse has occurred as defined in Section 518B.01.*

Both parties allege aggressive behavior by the other party especially when they were residing together while the divorce was pending. Both have engaged in poor decision-making with respect to how they treat each other. The Court assigns this factor no weight.

> e.     *Physical, mental or chemical health issues of parents that affects the children's safety or developmental needs.*

With respect to either Mother or Father, there is nothing in the record suggesting that these parents have any physical or mental health issue, or any chemical dependency issue that would affect parenting time. This factor is neutral.

> f.     *History and nature of each parent's participation in caring for the minor children.*

Both parents have played a large role in parenting the minor children while they were both in Minnesota. That is undisputed. The parents stipulated to the joint physical custody label, and their agreements reflect a prior recognition that they both have a significant and vital role in their children's development. In the Court's eyes, that has not changed. After a consideration of this factor, it weighs in favor of denying Mother's motion which would make permanent Father's unilateral removal of himself from the children's lives.

Exhibit A1 - 11

41

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

g.      *Willingness and ability of each parent to care for the minor children.*

Since August 2022 only Mother has demonstrated a willingness to provide hands-on care for the minor children. The issue here is ability in view of everything that has occurred, rather than willingness. Father remains able to provide care, he just selfishly refuses to do so. After a consideration of this factor, it weighs in favor of denying Mother's motion which would make permanent Father's unilateral and volunatry removal of himself from the children's lives.

h.      *Effect on the children's well-being and development to changes in care.*

The biggest change in the children's lives occurred in August 2022 when Father moved to Georgia and remained there. Since that time, the children have resided with Mother and their lives have been focused on school and activities. The record, including testimony by Weverka, suggests that the children deeply miss Father and want him back. The children have been through a lot and they remember it. After a consideration of this factor, it weighs in favor of denying Mother's motion because it would make permanent Father's unilateral and voluntary removal of himself from the children's lives.

i.      *Effect of sole physical custody on the ongoing relationships between the children and each parent, and other significant family members.*

The record establishes that the children are positioned primarily with Mother and she satisfies their needs, generally. If the Court grants Mother's motion, it would extinguish Father's ability to re-create a role for himself in the day-to-day care of the minor children which the children deeply crave. Perhaps that will not always be the case, but it is now. The children, at age 9, deeply miss Father and want him to be present. After a consideration of this factor, it weighs in favor of denying Mother's motion as to physical custody, and a parenting time schedule that allows for four weeks of parenting time in the summer for Father and two predictable evening calls each week, plus an alternating school break schedule so that Father can enjoy parenting time during the school year on extended breaks. Further, 10-days' notice by Father to Mother should Father want additional reasonable parenting time in Minnesota to see the children during the school year provided it does not interfere with the holiday parenting time schedule ordered below.

j.      *The benefit to the children of maximizing engagement by both parents in their day-to-day care.*

As stated elsewhere, Father appears steadfast in his refusal to engage with the children. By creating a four-week summer parenting time opportunity and several other opportunities during the academic year, the Court is hopeful that Father will engage at least marginally. By denying Mother's motion, the Court leaves the door open for Father to return to Minnesota and be present for the minor children. He states in Exhibit 3: "However, my unwavering desire to reunite with my children is evident in my continued connection to my Minneapolis dentist, doctor, and the financial hardship I face due to our separation." Exh. 3, at 23-24.

**Exhibit A1 - 12**

42

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

What the children need more of is Father physically present in their lives – not less; this is clear from Weverka's BFA. The Court finds no benefit to the children in granting Mother's motion with respect to physical custody and exclusive parenting time. Such a schedule would endorse Father's unilateral and voluntary removal of himself, and put the children at greater risk of anxiety and sadness. For the past two years, these children have benefited from the stability, continuity and predictability of their Mother's care, but it is obvious that they feel their Father's absence every single day. After a consideration of this factor, it weighs in favor of denying Mother's motion.

   k.    *Disposition of each parent to support the children's relationship with the other parent.*

As stated by Weverka, "Conflict exists between these parents, ad nauseum." Exh. 101, at 8. This dynamic is undisputed. What is not clear is whether the conflict requires special parenting time arrangements, and there is little evidence that it does. After a consideration of this factor, it weighs in favor of denying Mother's motion.

   l.    *Willingness and ability of parents to cooperate in the day-to-day care and rearing of their children.*

Since August 2022, Father has removed himself from his children's lives. This is the one factor that weighs in favor of Mother's motion because of this singular, unilateral act by Father that prevents him from helping with the day-to-day care of Aurora and Sebastian. While he lives out his days at his mother's house in Georgia, the children are deprived of his care and concern – his hugs and engagement. It is a sad situation.

After a consideration of the best interest factors, only one weighs in favor of sole physical custody to Mother and so her motion should be denied. The Court need not engage in additional analysis because the motion fails on the best interests element.

16.  **Child Support.** Mother's motion asked for a modification of child support. *See* Motion filed December 27, 2023, at 1. The Court suspended Mother's child support obligation pending the evidentiary hearing because Father's departure from Minnesota was undisputed. At the hearing on September 11, 2024, and in response to a question asked by her attorney, Mother withdrew her request that the Court impose a child support obligation on Father. However, Mother's exhibits include messages the parties exchanged as to tax dependency allocations, Exh. 119, and she requests the ability to claim both minor children.

17.  The Court may award tax dependency exemptions pursuant to the Minnesota Child Support statutes. Minn. Stat. Sec. 518A.38, Subd. 7(a). Because Mother is doing all of the caretaking of the minor children, including bearing the entire cost of their care and childcare, and arranging for all of their appointments, services, and activities, the Court finds that the equitable approach is to award Mother the ability to claim both minor children as dependents on her tax returns starting with Tax Year 2024, until the minor children can no longer be claimed or further order of the Court.

**Exhibit A1 - 13**

43

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

18. **Passports**. Mother asks for the ability to travel internationally with the minor children without Father's consent or permission. Mother is originally from Colombia, and the minor children have extended family in that country. Mother would like to bring the children to Colombia to visit the children's extended family. The parties' Judgment and Decree contemplates international travel but does not have strict requirements for how the parties are to ensure that it occurs. The Order below requires the parents to engage in the process of document exchange.

19. In her supporting Affidavit, Mother stated:

> *Pawel also refuses to sign the necessary paperwork for me to be able to obtain passports for our children. I brought the topic up of renewing the children's passports with him again through OFW on September 5, 2023 in an effort to allow the kids to see their family in Colombia. His response was "Thank you for your email. At this time, my primary focus and energy are directed towards reuniting with the kids. Given the complexity of our situations, I feel it is necessary: to consult with my lawyer regarding your request for the kids' passports. I will review this matter with my lawyer and provide you with a response by the end of next week". I did not receive a response from him within the timeframe he said he would get back to me so I sent a follow-up message through OFW and his response was "Thank you for your email. I understand that you are eager to receive, an update on the kids' passports. I am still working on the details of my move. I will let you know as soon as possible." See Exhibit 11. As of the date of filing this affidavit, the children's passports have still not been renewed, and Pawel has not given me any concrete answer. Pawel is well aware that my family is extremely important to me, and that they reside in Colombia. There is no restriction in our Judgment and Decree for either of us to travel internationally with the children, or for me to travel with them to Colombia. There is no reason for him not to sign the necessary paperwork for our children's passports to be renewed but he continues to be upset with the outcome of our divorce and continues to use this as a technique to punish me and the children.*

Exh. 130, at 258-259. The OFW messages were admitted into evidence at the trial as well. Exh. 118. The messages make clear that Father does not specifically oppose travel, or the issuance of passports, he simply refuses to engage in the topic in any meaningful way. As a result, nothing happens. Mother raised this issue more than a year ago, and that is long enough to wait for an action that is in the best interests of both minor children.

20. In Father's Exhibit 3 (a 99-page submission), he does not address passport issuance, renewal, or storage. He does not address travel. Father did not address the topic during his testimony on September 11, 2024.

Exhibit A1 - 14

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

21. It is in the best interests of the minor children to have U.S. Passports, and to allow Mother to immediately and without Father's participation apply for issuance. A passport is an essential identification document. Further, using the U.S. Passports, will allow the minor children to benefit from international travel. Both parties were born outside the United States – Father in Poland, and Mother in Columbia. The children are bilingual in school at Emerson Elementary, and are trilingual in their homes. Father speaks Polish with the minor children. The richness of the children's combined family culture is extraordinary, and travel will allow the children to benefit from a deeper understanding of their families of origin, as well as connecting with additional family members who will love them and are invested in their success. Because international travel is in the children's best interests, the Court issues the Order below.

22. Father's motion to vacate and request reconsideration filed August 12, 2024, and admitted by the Court as Exhibit 3, should be denied because Father cites to no legal authority for his requests.

23. The Court finds the following Order to be in the best interests of the minor children.

NOW, THEREFORE, based upon Findings of Fact set forth above, the Court issues the following:

## ORDER

1. **Legal Custody.** Carolina Uribe Borrero is hereby awarded sole legal custody of: Sebastian Adam Rzeczkowski-Uribe, born March 2, 2015. As sole legal custodian of Sebastian Adam Rzeczkowski-Uribe, Carolina Uribe Borrero shall make all medical, educational, and spiritual decisions for him effective immediately. Father still has access to the minor child's records, but he lacks decision-making authority.

The parties continue to have joint legal custody of their minor child: Aurora Margarita Rzeczkowski-Uribe, born March 2, 2015.

As parents, the parties have basic parental rights, Minn. Stat. § 518.17, subd. 3a:

### Notice
**Each Party is Granted the Following Rights:**
1. Right of access to, and to receive copies of, school, medical, dental, religious training, police reports, and other important records and information about the minor children.

2. Right of access to information regarding health or dental insurance available to the minor children.

3. Right to be informed by the other party as to the name and address of the school of attendance of the minor children.

4. Right to be informed by school officials about the children's welfare, educational progress and status, and to attend school and parent-teacher conferences. The school is not required to hold a separate conference for each party, unless attending the same conference would result in violation of a court order prohibiting contact with a party.

**Exhibit A1 - 15**

45

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

5. Right to be notified by the other party of an accident or serious illness of a minor child, including the name of the health care provider and the place of treatment.

6. Right to be notified by the other party if the minor child is the victim of an alleged crime, including the name of the investigating law enforcement officer or agency. There is no duty to notify if the party is the party to be notified is the alleged perpetrator.

7. Right to reasonable access and telephone or other electronic contact with the minor children.

2. **Physical Custody**. Carolina Uribe Borrero's motion for sole physical custody and exclusive parenting time is hereby denied.

3. **Regular Parenting Time**. Effective immediately, Pawel Dominik Rzeczkowski shall have parenting time for four weeks each summer beginning the second full week after school recesses in spring. In 2025, this parenting time begins Sunday, June 15, 2025, and lasts for four weeks following that pattern and into the future until and unless this order is modified.

These provisions shall apply to regular parenting time:
- Father shall bear all costs of travel, and provide Mother with information regarding travel plans as set forth below.
- Father shall administer prescription medication to Sebastian during parenting time.
- Father may exercise the parenting time in Georgia or Minnesota, or he may travel with the minor children.
- Father may have additional reasonable parenting time in Minnesota with 10-days' prior notice to Mother and so long as the additional time does not conflict with other parenting time ordered herein.

Carolina Uribe Borrero shall have all other parenting time, except for the holiday schedule below.

4. **Holiday Parenting Time**. Effective immediately, the parties shall abide by the following holiday parenting time:

| | |
|---|---|
| Thanksgiving: | Every year with Father from Wednesday at 5 PM through Sunday at 5PM; |
| Winter break: | In even-numbered years, Father has winter break; and In odd-numbered years, Mother has winter break. |
| Spring break: | In even-numbered years, Mother has spring break; and In odd-numbered years, Father has spring break. |

- Father shall bear all costs of travel, and provide Mother with information regarding travel plans as set forth below.
- Father shall administer prescription medication to Sebastian during parenting time.
- Father may exercise the parenting time in Georgia or Minnesota, or he may travel with the minor children.

5. **Telephonic Parenting Time**. Pawel Dominik Rzeczkowski shall have one hour of telephone parenting time on Sunday and Wednesday evenings. When the minor children

**Exhibit A1 - 16**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

are with Father during the summer, Mother shall similarly have telephone parenting time on Sunday and Wednesday evenings. The children may also initiate telephone contact with any parent whenever they need it.

6. Parents are encouraged to attend any activity in which any minor child is involved whether that activity occurs at school or through any church or civic organization.

7. **Tax Dependency Exemptions.** Starting with Tax Year 2024, and for every year forward, Carolina Uribe Borrero shall have the exclusive right to claim Sebastian Adam Rzeczkowski-Uribe, born March 2, 2015, and Aurora Margarita Rzeczkowski-Uribe, born March 2, 2015, as dependents on her State and Federal Income Tax Returns until the children can no longer be claimed, or until further court order.

8. **U.S. Passports.** Carolina Uribe Borrero is hereby authorized to obtain U.S. Passports for the minor children. The Court shall issue a separate (more private) order regarding this authority. If a parent chooses to travel internationally or domestically during their parenting time, they shall provide the travel arrangements to the other parent at least sixty days before the date of departure, including: flight itinerary (including flight numbers, dates, and times of departure and arrival); and contact information (including name of lodging, address, and telephone line if any) for any overnight stay.

   a. MINOR TRAVEL CONSENT FORM: For international travel, the non-traveling parent <u>shall</u> sign the Minor Travel Consent Form, or whatever other document is necessary for the traveling parent to be permitted to leave the U.S. and enter another country with the minor child. The form shall be signed and provided to the traveling parent no less than two (2) full weeks before the day of departure.

   b. The off-duty parent shall have unlimited but reasonable telephonic communication with the minor children during travel.

   c. SCHOOL IS MANDATORY: In no event may either Father or Mother remove the minor children from school for elective international or domestic travel.

   d. PASSPORT STORAGE: Mother shall retain the minor children's passports from the date of this Order until Father travels with the minor children. Thereafter, the parent who most recently travels with the minor children shall retain the minor children's passports until a parent requests the documents for international or domestic travel.

   e. PASSPORT ISSUANCE/RENEWAL: The parents shall evenly divide (50/50) the entire cost of applying for (issuance) and renewing the minor children's passports including processing and photography costs. The parent who incurs the cost shall notify the other parent of the desire to renew, and both parents shall sign whatever documents are needed. Whichever parent has the minor children's passports shall produce them for renewal. Within 30 days of submitting the passport issuance or renewal expense, the paying parent shall be reimbursed one-half of the entire cost by the other parent.

17

**Exhibit A1 - 17**

27-FA-19-6924

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

9.   The motions filed by Pawel Dominik Rzeczkowski on August 12, 2024, are denied.

10.  All prior and consistent orders, not inconsistent with the terms of this Order, remain in full force and effect.

11.  Appendix A is hereby incorporated.

12.  Service of a copy of this order shall be made upon a pro se party by U. S. mail at their last known addresses and upon counsel by e-service.

Having adjudicated all issues, judgment shall be entered pursuant to this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 19, 2024

Thomas, Laura
2024.11.19 09:01:58
-06'00'

Laura M. Thomas
Judge of Fourth District Court

Exhibit A1 - 18

48

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

## APPENDIX A

**NOTICE IS HEREBY GIVEN TO THE PARTIES:**

**I. PAYMENTS TO PUBLIC AGENCY.** According to Minnesota Statutes, section 518A.50, payments ordered for maintenance and support must be paid to the Minnesota child support payment center as long as the person entitled to receive the payments is receiving or has applied for public assistance or has applied for support and maintenance collection services. Parents mail payments to: P.O. Box 64326, St. Paul, MN 55164-0326. Employers mail payments to: P.O. Box 64306, St. Paul, MN 55164.

**II. DEPRIVING ANOTHER OF CUSTODIAL OR PARENTAL RIGHTS -- A FELONY.** A person may be charged with a felony who conceals a minor child or takes, obtains, retains, or fails to return a minor child from or to the child's parent (or person with custodial or parenting time rights), according to Minnesota Statutes, section 609.26. A copy of that section is available from any court administrator.

**III. NONSUPPORT OF A SPOUSE OR CHILD – CRIMINAL PENALTIES.** A person who fails to pay court-ordered child support or maintenance may be charged with a crime, which may include misdemeanor, gross misdemeanor, or felony charges, according to Minnesota Statutes, section 609.375. A copy of that section is available from any district court clerk.

### IV. RULES OF SUPPORT, MAINTENANCE, PARENTING TIME.

A. Payment of support or spousal maintenance is to be as ordered, and the giving of gifts or making purchases of food, clothing, and the like will not fulfill the obligation.

B. Payment of support must be made as it becomes due, and failure to secure or denial of parenting time is NOT an excuse for nonpayment, but the aggrieved party must seek relief through a proper motion filed with the court.

C. Nonpayment of support is not grounds to deny parenting time. The party entitled to receive support may apply for support and collection services, file a contempt motion, or obtain a judgment as provided in Minnesota Statutes, section 548.091.

D. The payment of support or spousal maintenance takes priority over payment of debts and other obligations.

E. A party who accepts additional obligations of support does so with the full knowledge of the party's prior obligation under this proceeding.

F. Child support or maintenance is based on annual income, and it is the responsibility of a person with seasonal employment to budget income so that payments are made throughout the year as ordered.

G. A *Parental Guide to Making Child-Focused Parenting-Time Decisions* is available from any court administrator.

H. The nonpayment of support may be enforced through the denial of student grants; interception of state and federal tax refunds; suspension of driver's, recreational, and occupational licenses; referral to the department of revenue or private collection agencies; seizure of assets, including bank accounts and other assets held by financial institutions; reporting to credit bureaus; interest charging, income withholding, and contempt proceedings; and other enforcement methods allowed by law.

I. The public authority may suspend or resume collection of the amount allocated for child care expenses if the conditions of Minnesota Statutes, section 518A.40, subdivision 4, are met.

J. The public authority may remove or resume a medical support offset if the conditions of section 518A.41, subdivision 16, are met.

### V. MODIFYING CHILD SUPPORT.
If either the obligor or obligee is laid off from employment or receives a pay reduction, child support may be modified, increased, or decreased. Any modification will only take effect when it is ordered by the court, and will only relate back to the time that a motion is filed. Either the obligor or obligee may file a motion to modify child support, and may request the public agency for help. UNTIL A MOTION IS FILED, THE CHILD SUPPORT OBLIGATION WILL CONTINUE AT

**Exhibit A1 - 19**

49

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

THE CURRENT LEVEL.   THE COURT IS NOT PERMITTED TO REDUCE SUPPORT RETROACTIVELY.

**VI.   PARENTAL RIGHTS FROM MINNESOTA STATUTES, SECTION 518.17, SUBDIVISION 3.** UNLESS OTHERWISE PROVIDED BY THE COURT:

A.   Each party has the right of access to, and to receive copies of, school, medical, dental, religious training, police reports, and other important records and information about the minor children. Each party has the right of access to information regarding health or dental insurance available to the minor children. Presentation of a copy of this order to the custodian of a record or other information about the minor children constitutes sufficient authorization for the release of the record or information to the requesting party.

B.   Each party has the right to be informed by the other party as to the name and address of the school of attendance of the minor children. Each party has the right to be informed by school officials about the children's welfare, educational progress and status, and to attend school and parent teacher conferences. The school is not required to hold a separate conference for each party.

C.   Each party has the right to be notified by the other party of an accident or serious illness of a minor child, including the name of the health care provider and the place of treatment.

D.   Each party has the right to be notified by the other party if the minor child is the victim of an alleged crime, including the name of the investigating law enforcement officer or agency. There is no duty to notify if the party to be notified is the alleged perpetrator.

E.   Each party has the right of reasonable access and telephone contact with the minor children.

**VII.   WAGE AND INCOME DEDUCTION OF SUPPORT AND MAINTENANCE.** Child support and / or spousal maintenance may be withheld from income, with or without notice to the person obligated to pay, when the conditions of Minnesota Statutes, section 518A.53, have been met. A copy of that section is available from any court administrator.

**VIII.   CHANGE OF ADDRESS OR RESIDENCE.** Unless otherwise ordered, each party shall notify the other party, the court, and the public authority responsible for collection, if applicable, of the following information within ten days of any change: residential and mailing address, telephone number, driver's license number, social security number, and name, address, and telephone number of the employer.

**IX.   COST OF LIVING INCREASE OF SUPPORT AND MAINTENANCE.** Basic support and / or spousal maintenance may be adjusted every two years based upon a change in the cost of living (using the U.S. Department of Labor, Bureau of Labor Statistics, consumer price index Mpls. St. Paul, for all urban consumers (CPI-U), unless otherwise specified in this order) when the conditions of Minnesota Statutes, section 518A.75, are met. Cost of living increases are compounded. A copy of Minnesota Statutes, section 518A.75, and forms necessary to request or contest a cost of living increase are available from any court administrator.

**X.   JUDGMENTS FOR UNPAID SUPPORT.** If a person fails to make a child support payment, the payment owed becomes a judgment against the person responsible to make the payment by operation of law on or after the date the payment is due, and the person entitled to receive the payment or the public agency may obtain entry and docketing of the judgment **without notice** to the person responsible to make the payment.

**XI.   JUDGMENTS FOR UNPAID MAINTENANCE.**

A.   A judgment for unpaid spousal maintenance may be entered and docketed when the conditions of Minnesota Statutes, section 548.091, are met. A copy of that section is available from any court administrator.

Exhibit A1 - 20

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

B.    The public authority is not responsible for calculating interest on any judgment for unpaid spousal maintenance. When providing services in IV-D cases, as defined in Minnesota Statutes, section 518A.26, subdivision 10, the public authority will only collect interest on spousal maintenance if spousal maintenance is reduced to a sum certain judgment.

**XII. ATTORNEY FEES AND COLLECTION COSTS FOR ENFORCEMENT OF CHILD SUPPORT.** A judgment for attorney fees and other collection costs incurred in enforcing a child support order will be entered against the person responsible to pay support when the conditions of Minnesota Statutes, section 518A.735, are met. A copy of that section and forms necessary to request or contest these attorney fees and collection costs are available from any court administrator.

**XIII. PARENTING TIME EXPEDITOR PROCESS.** On request of either party or on its own motion, the court may appoint a parenting time expeditor to resolve parenting time disputes under Minnesota Statutes, section 518.1751. A copy of that section and a description of the expeditor process is available from any court administrator.

**XIV. PARENTING TIME REMEDIES AND PENALTIES.** Remedies and penalties for wrongful denial of parenting time are available under Minnesota Statutes, section 518.175, subdivision 6. These include compensatory parenting time; civil penalties; bond requirements; contempt; and reversal of custody. A copy of that subdivision and forms for requesting relief are available from any court administrator.

**In addition to the Notices on pages 1 and 2, the following NOTICE applies to all orders addressing custody pursuant to Minn. Stat. § 518.17, subd. 3a.**

**NOTICE**
**EACH PARTY IS GRANTED THE FOLLOWING RIGHTS:**
1. Right of access to, and to receive copies of, school, medical, dental, religious training, police reports, and other important records and information about the minor children.
2. Right of access to information regarding health or dental insurance available to the minor children.
3. Right to be informed by the other party as to the name and address of the school of attendance of the minor children.
4. Right to be informed by school officials about the children's welfare, educational progress and status, and to attend school and parent-teacher conferences. The school is not required to hold a separate conference for each party, unless attending the same conference would result in violation of a court order prohibiting contact with a party.
5. Right to be notified by the other party of an accident or serious illness of a minor child, including the name of the health care provider and the place of treatment.
6. Right to be notified by the other party if the minor child is the victim of an alleged crime, including the name of the investigating law enforcement officer or agency. There is no duty to notify if the party to be notified is the alleged perpetrator.
7. Right to reasonable access and telephone or other electronic contact with the minor children.

**Exhibit A1 - 21**

51

Filed in District Court
State of Minnesota
6/11/2026 11:34 AM

# Message Report

**⟋ OurFamilyWizard**

Generated: 06/06/2026 8:22 PM by Pawel Rzeczkowski

Timezone: America/New_York

Format: mm/dd/yyyy

Parents: Carolina Uribe Borrero, Pawel Rzeczkowski

Child(ren): Aurora Rzeczkowski-Uribe, Sebastian Rzeczkowski-Uribe

Date Range: 07/02/2025 — 07/18/2025

Contains: 1 selected messages

Order: Chronological (oldest first, most recent last)

OurFamilyWizard, LLC.
ourfamilywizard.com
info@ourfamilywizard.com
+1 (866) 755-9991

```
PETITIONER'S EX.
No. 27-FA-19-6324
SUM26-B0
```

---

Message 1 of 1

| | |
|---|---|
| Sent: | 07/18/2025 9:53 AM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 07/18/2025 10:55 AM)* |
| Subject: | Re: FaceTime Call Conduct |

Pawel,
I am very sorry to hear that this is your perspective.
At this time, and as I foresaw and shared with you a few months ago, I am about to declare bankruptcy and do not have the means to send the kids travelling. Even if I did, I think it is important for you to start assuming responsibility for at least the cost of the kids travel to see you, not only because the Courts say so, but because parents are expected to provide the financial needs that the children require.

Best,

Carolina

| | |
|---|---|
| Sent: | 07/17/2025 9:32 AM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 07/18/2025 8:56 AM)* |
| Subject: | Re: FaceTime Call Conduct |

Signed copy attached.

**See Attachments:** 20250717_Collaboration_1.pdf (93.6 KB)

**Exhibit B0 - 1**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Thursday July 17, 2025

From: **Paweł Rzeczkowski**
2166 HWY 29N
Newnan, GA 30265

To: **Carolina Uribe Borrero**
2814 W. 4151 Street
Minneapolis, MN 55410

**Re:** FaceTime Call Conduct

Dear Carolina,

You've asked for collaboration—"the action of working with someone to produce or create something." I agree entirely that collaboration is essential. But it's also earned, not declared.

Collaboration requires certain baseline conditions:

- **Trustworthiness** – the belief that collaborators will follow through, respect boundaries, and act in good faith.

- **Psychological safety** – the freedom to engage without fear of retaliation, coercion, or humiliation.

- **Mutual respect** – seeing the other as an equal, not as someone to manipulate or control.

From your first affidavit in 2020 to your most recent filings, you have repeatedly made false representations to the court. These actions have created a system of control and coercion that has resulted in my forced separation from the children. Your actions also endanger the children by shielding your history of aggression from scrutiny.

If you want collaboration, the first step would be a good-faith acknowledgment to the court of your misconduct and join in the effort to correct the record. Should you initiate that effort, I will consider reciprocating—once the equitable remedies have been exhausted.

**Exhibit B0 - 2**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Thursday July 17, 2025

In the meantime, I again ask that you allow the children to visit me in Georgia. On April 25, I wrote:

> *"A dignified and feasible alternative exists: the children should travel to Georgia for summer parenting time with me and their grandmother in a secure, family-centered environment. Delta Air Lines offers a vetted and reliable Unaccompanied Minor Program which facilitates safe travel for children across state lines. This is not a novel approach; it is a well-established solution that preserves their well-being during judicial review."*

I confirmed then that I would be available to pick them up from the airport. You have not responded. Since you suggested August, I remain open and ready to receive the children at that time.

Please confirm if you are willing to arrange the trip and share the flight details. I will ensure the children are picked up safely from the airport.

Sincerely,

Paweł Rzeczkowski

**Exhibit B0 - 3**

54

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Sent:        07/17/2025 8:52 AM

From:        Pawel Rzeczkowski

To:          Carolina Uribe Borrero *(First Viewed: 07/18/2025 8:56 AM)*

Subject:     Re: FaceTime Call Conduct

Carolina,
Please see the attached response regarding your recent request and the matter of summer parenting time. I've outlined my position clearly. I hope this opens the door to meaningful cooperation.

Best,
Pawel

**See Attachments:** 20250717_Collaboration.pdf (73.4 KB)

Sent:        07/12/2025 11:52 AM

From:        Carolina Uribe Borrero

To:          Pawel Rzeczkowski *(First Viewed: 07/12/2025 11:52 AM)*

Subject:     Re: FaceTime Call Conduct

Pawel,
Please remove your recent posts from social media. I invite you to foster a spirit of collaboration.
Best,

Sent:        07/09/2025 10:15 AM

From:        Pawel Rzeczkowski

To:          Carolina Uribe Borrero *(First Viewed: 07/09/2025 10:58 AM)*

Subject:     Re: FaceTime Call Conduct

Carolina,

Saturday morning from 6:00 AM works for me.

I'm happy to have the children call anytime that morning when it works best for them, but I do ask that we aim for a consistent time window each week so they know what to expect. That kind of structure helps support their sense of stability and routine.

Thanks,
Pawel

Exhibit BO - 4

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Sent:        07/08/2025 8:50 PM

From:        Carolina Uribe Borrero

To:          Pawel Rzeczkowski *(First Viewed: 07/09/2025 10:00 AM)*

Subject:     Re: FaceTime Call Conduct

Pawel,
I want top propose what I think is a win-win solution.
Why don't we shift the Tuesday call to Saturday morning, when the kids can speak with you more time. Sebastian has karate at 9am, and he is usually up since 6am. Aurora has even more free time.
Please let me know if you agree.
Best,
Carolina

Sent:        07/08/2025 7:24 PM

From:        Carolina Uribe Borrero

To:          Pawel Rzeczkowski *(First Viewed: 07/08/2025 7:33 PM)*

Subject:     Re: FaceTime Call Conduct

Pawel,
I am very supportive of the kids having the calls with you twice a week, and I always remind them to call you, even when they don't want to.
As my prior email pressed, I need collaboration from you ending the calls in a timely manner so that they can continue with their bed time routine. If they want more calls with you, they know they can call you.
Thank you in advance for your collaboration.

Sent:        07/08/2025 9:17 AM

From:        Pawel Rzeczkowski

To:          Carolina Uribe Borrero *(First Viewed: 07/08/2025 10:38 AM)*

Subject:     Re: FaceTime Call Conduct

Carolina,

Thank you for your response.

Regardless of how you justify your interventions, your presence during the calls—either on camera or in the room—has a visibly disruptive effect on the children.

As I've stated, these calls are the only parenting time currently afforded to me due to an ongoing custody situation rooted in contested findings. Given that context, these moments are vital and must be protected from disruption.

**Exhibit B0 - 5**

Please ensure the children have uninterrupted privacy during our scheduled time going forward.

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Thank you,
Pawel


| | |
|---|---|
| Sent: | 07/03/2025 10:50 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 07/03/2025 11:08 PM)* |
| Subject: | Re: FaceTime Call Conduct |

Pawel,
I never interfere in the calls the children have with you, and I even ask them to take them in private from their bedrooms. When the call is running overtime and they need to hang up is the only moment when I come in to remind them of that. I ask for your collaboration in ending the calls when the they meed to continue with their bedtime routine (which is always after they have had at least the time stipulated with you, if not more).
Thank you in advance for your collaboration.


| | |
|---|---|
| Sent: | 07/02/2025 9:11 AM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 07/03/2025 10:42 PM)* |
| Subject: | FaceTime Call Conduct |

Dear Carolina,

Please see the attached communication regarding the children's scheduled FaceTime calls. These calls currently represent the only consistent parenting time I am afforded, and it's essential that they be free of interference so the children can experience uninterrupted connection with me.

Thank you,
Pawel

**See Attachments:** 20250701_CUB_coercive_manipulation_1.pdf (44.2 KB)


**Exhibit B0 - 6**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

July 1, 2025

**Subject: Notice Regarding Interference During Video Calls with the Children**

Dear Carolina Uribe Borrero,

I'm writing to formally raise concern about a recurring pattern during my scheduled FaceTime calls with the children. On multiple occasions, you have appeared on camera— either by entering the room or positioning yourself visibly in the background and or foreground—with the intention to end the call. This has a visible impact on kids, who appear tense, distracted, and uncomfortable. It also disrupts the children's ability to bond with me and communicate freely during their scheduled time with me.

From a clinical perspective, such behavior is known as coercive manipulation—a dynamic where one parent asserts control over a child's emotional space with the other parent— **exactly what your visible presence during these calls is doing**. Even a passive physical presence, when visible to the child, can feel like surveillance. It teaches them to censor their thoughts and to "perform" rather than connect. This is unhealthy and undermines their psychological development and their attachment to both parents.

I am asking you clearly and respectfully to **refrain from appearing on camera during my scheduled video calls with the children—whether by entering the room or positioning yourself where you are visible on screen**. If there are concerns about safety or supervision, those should be addressed through the court, not by silently disrupting our time together.

This is not a gray area. If this continues, it may become necessary to raise the issue with the court as a matter of parenting interference. I will document each occurrence, and I will assume silence or refusal to change the behavior reflects unwillingness to support the children's right to a secure relationship with both parents.

Supporting the children's emotional well-being includes allowing them to have uninterrupted, relaxed time with both parents. Please confirm that you will honor this boundary going forward.

**Respectfully,**

**Pawel Dominik Rzeczkowski**

Exhibit B0 - 7

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

**⊚ threads**

eternalspring › **#CoerciveControl** 07/10/25

Coercive interruption of FaceTime: ex-spouse physically intrudes on call, smirks, and commands child to end the conversation—parental alienation in action. #CoerciveControl #FamilyCourtFails #ChildWelfare  1/3



♡  ◯2  ↻  ▷

eternalspring › **#CoerciveControl** 07/10/25
When a co-parent repeatedly sits in on your FaceTime calls with your child and shortens the conversation by their presence... it's not 'co-parenting.' It's surveillance. It's boundary violation. Kids deserve peaceful space with both parents. . #CoerciveControl #FamilyCourtFails #ChildWelfare  2/3



♡  💬1  ↻  ▷

eternalspring › **#CoerciveControl** 07/10/25
If you insert yourself into our child's video call to interfere again, I will continue to document it and share it, anonymizing the child's face. #CoerciveControl #FamilyCourtFails #ChildWelfare  3/3



♡  ◯  ↻  ▷

**Exhibit B0 - 8**

# Message Report

Filed in District Court
State of Minnesota
6/11/2026 11:34 AM

**Generated:** 06/06/2026 5:12 PM by Pawel Rzeczkowski

**Timezone:** America/New_York

**Format:** mm/dd/yyyy

**Parents:** Carolina Uribe Borrero, Pawel Rzeczkowski

**Child(ren):** Aurora Rzeczkowski-Uribe, Sebastian Rzeczkowski-Uribe

**Date Range:** 04/11/2026 — 04/18/2026

**Contains:** 1 selected messages

**Order:** Chronological (oldest first, most recent last)

## OurFamilyWizard

OurFamilyWizard, LLC.
ourfamilywizard.com
info@ourfamilywizard.com
+1 (866) 755-9991

**PETITIONER'S EX.**
No. 27-FA-19-6324

# SUM26-B1

---

Message 1 of 1

| | |
|---|---|
| Sent: | 04/18/2026 4:25 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 04/18/2026 4:32 PM)* |
| Subject: | Re: Summer parenting time – travel coordination |

Hi Pawel,
My lawyer, Jason Brown, will reach out to you next week to discuss.
Best,

| | |
|---|---|
| Sent: | 04/16/2026 7:45 AM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 04/17/2026 8:28 AM)* |
| Subject: | Re: Summer parenting time – travel coordination |

Carolina

1.   Following up on my April 11 message regarding summer parenting time.
2.   Please confirm the start date for the children's travel to Georgia for four consecutive weeks.
3.   Thank you.

Pawel

**Exhibit B1 - 1**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Sent:       04/11/2026 6:09 AM

From:      Pawel Rzeczkowski

To:         Carolina Uribe Borrero *(First Viewed: 04/11/2026 7:48 AM)*

Subject:    Summer parenting time – travel coordination

Carolina,

I will be exercising my four weeks of summer parenting time in Georgia, consistent with the order, beginning no earlier than June 15, 2026.

Please confirm the start date for the children's travel to Georgia for four consecutive weeks within that timeframe.

I will arrange travel for the children using Delta's unaccompanied minor program and will arrange and cover the travel costs as required.

For Delta UM travel, an adult must accompany the children to check-in, provide identification, and remain at the gate until departure. At check-in, you will need to provide:
- Photo ID
- Address
- Contact phone number
- Name, address, and phone number of the adult meeting the children at destination

Arrival contact details:
Pawel Rzeczkowski
2166 Hwy 29 N
Newnan, GA 30265
Phone: 646-657-9180

Pawel

**Exhibit B1 - 2**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

 Gmail

Pawel RZECZKOWSKI

**PETITIONER'S EX.**
No. 27-FA-19-6324

# SUM26-B2

Mr. Rzeczkowski,

The concern here is not about preventing or reducing your parenting time, but about how to best support the children in 2026, after an additional year and a half without i person parenting time beyond what the 2024 order contemplated, in addition to the period of absence prior to the November 2024 order.

Given the length of time involved, we believe it is important to carefully consider how sudden four-week continuous visit and major change in environment may affect the children at this stage, particularly after such a long period of living in one home and following one routine. The alternative proposals are intended to support the children's well-being while still allowing you meaningful and substantial parenting time this summer, including options that exceed the amount of time that the current order provides.

Contrary to your email, neither Carolina or you can simply go directly to court. The existing order requires mediation for any unresolved claim or controversy before eithe party seeks court involvement. Whether or not you view the absence of in person visi from 2024 until 2026, and its impact on the children, as a controversy, the court wou almost certainly consider it one. Proceeding directly to court would result in additiona delay, expense, and ultimately result in referral to mediation before any substantive hearing occurs, and would make it difficult to resolve this issue before the summer parenting time period, which certainly would not serve the children well.

Given both parties' circumstances and the limited timeframe before summer, it would be far more productive to work toward a practical compromise that meets the children's needs while also allowing you meaningful time with them. In that spirit, we remain open to discussing your ideas of alternatives that would provide substantial parenting time over the summer while helping ease the transition for the children.

Thank you.

Coon Rap    Minnesota 55433-5894

Exhibit B2 - 1

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

**From:** Pawel Rzeczkowski <przeczkowski08@gmail.com>
**Sent:** Tuesday, May 19, 2026 11:31 AM
**To:** Jason C. Brown <jbrown@bgs.com>
**Cc:** Pam K. Martin <pmartin@bgs.com>
**Subject:** Re: Summer parenting time – coordination

Dear Mr. Brown,

I have not received a response to my May 14 email regarding implementation of the Court's November 19, 2024 Order governing summer parenting time.

At this point, I need a clear answer as to whether your client intends to proceed with implementation of the existing Order so that travel arrangements for the children may be finalized.

Please advise accordingly.

Sincerely,

Pawel Rzeczkowski

Exhibit B2 - 2

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

On May 14, 2026, at 1:57 PM, Pawel Rzeczkowski <przeczkowski08@gmail.com> wrote:

Dear Mr. Brown,

I disagree with your characterization that implementation of the Court's existing summer parenting time order constitutes a controversy requiring renegotiation of the parenting structure itself.

I remain fully willing to coordinate the timing and logistics of the children's summer travel to Georgia and have consistently expressed flexibility regarding scheduling. My request has been limited to implementation of the existing November 19, 2024 Order.

Your proposals materially alter the parenting structure established by the Court, including overnights, duration, supervision, and conditional reassessment of parenting time. If your client believes modification of the existing Order is necessary, she may seek appropriate relief from the Court. Unless and until the Order is modified, I continue to expect compliance with its current terms.

Please advise whether your client intends to proceed with implementation of the existing summer parenting time schedule so that travel arrangements may be finalized.

Sincerely,

Pawel Rzeczkowski

**Exhibit B2 - 3**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

On May 14, 2026, at 11:11 AM, Jason C. Brown <jbrown@bgs.com> wrote:

Mr. Rzeczkowski,

Your emails have yet to address the merits of the points raised in my correspondence to you about your four-year parenting time absence. We have offered a number of proposals focused on addressing the interests of the children, to no avail.

If we at an impasse (it seems we are), we must schedule mediation, pursuant to the terms of the Court's prior order.

Here are five qualified neutrals I propose:

1. Rob Hill
2. Tanja Manrique
3. Kevin McGrath
4. Jason Hutchison
5. James Street

Four of the foregoing mediators are former judicial officers (Manrique; McGrath; Hutchison; Street) and one (Hill) is a family law attorney with approximately 40 years of experience.

You may select any one of them and my office will reach out concerning their availability.

If you have a different neutral in mind, please advise and I will consider.

Thank you,

Jason

Jason C. Brown
**Attorney at Law**
200 Coon Rapids Boulevard, Suite 400
Coon Rapids, Minnesota 55433-5894
Direct: 763-783-5146  Fax: 763-780-1777
Website | Map

**Exhibit B2 - 4**

65

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

**From:** Pawel Rzeczkowski <przeczkowski08@gmail.com>
**Sent:** Monday, May 11, 2026 1:25 PM
**To:** Jason C. Brown <jbrown@bgs.com>
**Cc:** Pam K. Martin <pmartin@bgs.com>
**Subject:** Re: Summer parenting time – coordination


Dear Mr. Brown,

Your proposal is not consistent with the Court's November 19, 2024 Order regarding summer parenting time and is not acceptable.

If your client believes modification of the existing Order is necessary, she may seek appropriate relief from the Court. Unless and until the Order is modified, I intend to exercise the four consecutive weeks of summer parenting time provided by the current Order.

Please provide the start date for the children's travel so I can proceed with arrangements.

Sincerely,

Pawel Rzeczkowski

**Exhibit B2 - 5**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

On May 11, 2026, at 1:22 PM, Jason C. Brown <jbrown@bgs.com> wrote:

Mr. Rzeczkowksi,

Carolina supports your desire to spend meaningful in-person time with the children and wants to establish an arrangement that works not only this year, but consistently for years to come. Consistency and predictability are important for the children. Her concern is that a sudden transition involving extended time away from home, combined with not seeing the parent who has been their primary caregiver for nearly four continuous years, may be emotionally difficult for the children and could also negatively affect the quality of their time with you.

Carolina respects the terms of the 2024 Order, including the provision requiring cooperation with international travel documentation. However, she believes the Order did not contemplate a situation in which none of the awarded parenting time would be exercised for more than eighteen months after entry of the Order.

With those considerations in mind, Carolina would like to clarify and modify her earlier proposal. She proposes bringing the children to Georgia for eight days in late June or early July. She would rent an Airbnb nearby, and the children would spend all daytime hours with you. On the first night the children would sleep with Carolina. From the second night onwards, the children will be able to express their preference regarding where to sleep. On nights the children stay with you, Carolina would have one hour of in-person contact with them. Any nights spent at the Airbnb would not count against your summer parenting time. Following the initial eight-day period, the parties could then assess the timing and structure of the remaining summer parenting time in a manner that balances the intent of the Court's Order with the children's best interests.

Alternatively, Tati could bring the children to Georgia from July 2 through July 9, during which time the children would spend all overnights with you, provided there is a daily 30–60 minute period for Tati to have the children and facilitate telephone communication with Carolina.

Carolina's goal is to resolve this issue in a manner that prioritizes the children's well-being while also supporting meaningful parenting time with you and avoiding an abrupt and extended transition for them.

As you know, the current Order contains a mediation provision stating, "Any claim or controversy arising under this document that cannot be resolved by the parties through direct communication without mediation, shall be promptly submitted to mediation," and further provides that "The above procedure shall be followed before either party may apply to the Court for relief."

Ideally, this matter can be resolved through the kind of meaningful communication contemplated by the Court, without the need for formal mediation.

Recognizing that finances are a concern for both parties, I can speak with Carolina to determine whether she would be willing to cover the children's airfare for this initial trip as a gesture of good faith. This would allow you to use the funds originally budgeted for airfare toward an additional visit later this summer, assuming the initial visit goes well. This proposal would not reduce your parenting time and may, in some respects, provide additional time. It would also occur early enough in the summer to allow for a second visit before the school year begins.

| Exhibit B2 - 6 |

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Please consider this proposal from the perspective of the children's best interests and let us know your thoughts or any alternative ideas you may have so that hopefully this issue can be resolved in a manner that everyone can support.

Jason C. Brown
**Attorney at Law**
200 Coon Rapids Boulevard, Suite 400
Coon Rapids, Minnesota  55433-5894
Direct: 763-783-5146   Fax: 763-780-1777
Website  |  Map

**Exhibit B2 - 7**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

From: Pawel Rzeczkowski <przeczkowski08@gmail.com>
Sent: Friday, May 8, 2026 11:29 AM
To: Jason C. Brown <jbrown@bgs.com>
Cc: Pam K. Martin <pmartin@bgs.com>
Subject: Re: Summer parenting time – coordination

Dear Mr. Brown,

I have not received a response to my May 6 follow-up requesting the start date for the children's four consecutive weeks of summer parenting time under the November 19, 2024 Order.

Please confirm whether your client intends to comply with the Court's order regarding summer parenting time so I can proceed accordingly with travel arrangements.

Sincerely,

Pawel Rzeczkowski

**Exhibit B2 - 8**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

On May 6, 2026, at 1:09 PM, Pawel Rzeczkowski <przeczkowski08@gmail.com> wrote:

Dear Mr. Brown,

Following up. Please provide the start date for the children's four consecutive weeks of summer parenting time so I can proceed with travel arrangements.

Sincerely,

Pawel Rzeczkowski

**Exhibit B2 - 9**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

On May 4, 2026, at 10:14 AM, Jason C. Brown <jbrown@bgs.com> wrote:

Mr. Rzeczkowski,

This conversation might have been unnecessary if your court-ordered parenting time had been exercised over the past four years. That is an important consideration that cannot be overlooked.

I will speak with Carolina and follow up with you soon.

Jason C. Brown
**Attorney at Law**
200 Coon Rapids Boulevard, Suite 400
Coon Rapids, Minnesota 55433-5894
Direct: 763-783-5146   Fax: 763-780-1777
Website  |  Map

**Exhibit B2 - 10**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

**From:** Pawel Rzeczkowski <przeczkowski08@gmail.com>
**Sent:** Saturday, May 2, 2026 7:38 AM
**To:** Jason C. Brown <jbrown@bgs.com>
**Cc:** Pam K. Martin <pmartin@bgs.com>
**Subject:** Re: Summer parenting time – coordination

Dear Mr. Brown,

Your proposal does not reflect the Court's order.

I will be exercising my four consecutive weeks of summer parenting time in Georgia as provided in the November 19, 2024 Order.

Please provide the start date for the children's travel so I can proceed with arrangements.

Sincerely,

Pawel Rzeczkowski

**Exhibit B2 - 11**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

On May 1, 2026, at 2:44 PM, Jason C. Brown <jbrown@bgs.com> wrote:

Mr. Rzeczkowski,

Carolina supports your relationship with the children and your desire to spend time with them. That said, the children have not had any in-person contact with you for approximately four years.

Given their ages and the length of time since they have seen you in person, an immediate four-week out-of-state visit would be a significant, and potentially overwhelming, transition for them.

With the children's best interests in mind, we propose a graduated parenting time plan to reintroduce in-person contact in a way that is comfortable and successful for everyone.

We suggest the children travel with Carolina to Georgia for one week. Carolina will pay for her airfare, with you paying the airfare for the children. Carolina will rent an Airbnb, with time structured dependent upon how the children are doing.

The default arrangement is that the children would spend their days with you and return to stay overnight with Carolina at the Airbnb. Each day, the children may decide whether they would prefer to stay overnight at your home instead of returning to Carolina.

Our goal is to work toward longer blocks of parenting time, including extended summer time, once the children have had an opportunity to reestablish a meaningful in-person relationship with you.

Once the first week has concluded, matters may be reassessed to determine the timing of additional summer visits.

I look forward to hearing from you.

Sincerely,

Jason

Jason C. Brown
**Attorney at Law**
200 Coon Rapids Boulevard, Suite 400
Coon Rapids, Minnesota 55433-5894
Direct: 763-783-5146  Fax: 763-780-1777
Website | Map

Exhibit B2 - 12

73

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

**From:** Pawel Rzeczkowski <przeczkowski08@gmail.com>
**Sent:** Friday, May 1, 2026 8:10 AM
**To:** Jason C. Brown <jbrown@bgs.com>
**Cc:** Pam K. Martin <pmartin@bgs.com>
**Subject:** Re: Summer parenting time – coordination

Dear Mr. Brown,

Following up. Please provide the proposed start date for the children's four consecutive weeks of summer parenting time so I can proceed with travel arrangements.

Pawel

**Exhibit B2 - 13**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

On Apr 28, 2026, at 1:04 PM, Jason C. Brown <jbrown@bgs.com> wrote:

Mr. Rzeczkowzki,

I will speak with Carolina and get back to you shortly.

Jason C. Brown
**Attorney at Law**
200 Coon Rapids Boulevard, Suite 400
Coon Rapids, Minnesota 55433-5894
Direct: 763-783-5146   Fax: 763-780-1777
Website | Map

**Exhibit B2 - 14**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

**From:** Pawel Rzeczkowski <przeczkowski08@gmail.com>
**Sent:** Friday, April 24, 2026 7:05 AM
**To:** Jason C. Brown <jbrown@bgs.com>
**Cc:** Pam K. Martin <pmartin@bgs.com>
**Subject:** Re: Summer parenting time – coordination

Dear Mr. Brown,

Thank you for your response.

I prefer to handle this matter in writing to ensure clarity and an accurate record.

Please provide your client's proposed start date for the children's four consecutive weeks of summer parenting time in Georgia, consistent with the Court's order.

I am prepared to arrange travel promptly upon confirmation.

Sincerely,

Pawel Rzeczkowski

Exhibit B2 - 15

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

On Apr 23, 2026, at 4:59 PM, Jason C. Brown <jbrown@bgs.com> wrote:

Mr. Rzeczkowski,

Thanks for your email. Let's schedule a call to discuss. Would Tuesday morning at 9:00 AM work for you?

Jason C. Brown
**Attorney at Law**
200 Coon Rapids Boulevard, Suite 400
Coon Rapids, Minnesota 55433-5894
Direct: 763-783-5146   Fax: 763-780-1777
Website  |  Map

**Exhibit B2 - 16**

77

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

-----Original Message-----
From: Pawel Rzeczkowski <przeczkowski08@gmail.com>
Sent: Wednesday, April 22, 2026 7:17 AM
To: Jason C. Brown <jbrown@bgs.com>
Subject: Summer parenting time – coordination

Security Notice: This message was sent from outside BGS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear Mr. Brown,

I understand from Carolina's April 18 message that you will be reaching out regarding summer parenting time.

I previously contacted Carolina on April 11 and followed up on April 16 to coordinate the children's travel to Georgia for my four weeks of summer parenting time under the Court's order.

Given the time-sensitive nature of travel arrangements, I am seeking confirmation of the start date so I can finalize logistics.

Please advise when your client intends for the children to travel for four consecutive weeks consistent with the order.

I am prepared to arrange travel promptly.

Sincerely,
Pawel Rzeczkowski

**Exhibit B2 - 17**

# Message Report

**Generated:** 06/06/2026 9:37 PM by Pawel Rzeczkowski

**Timezone:** America/New_York

**Format:** mm/dd/yyyy

**Parents:** Carolina Uribe Borrero, Pawel Rzeczkowski

**Child(ren):** Aurora Rzeczkowski-Uribe, Sebastian Rzeczkowski-Uribe

**Date Range:** 07/18/2025 — 07/21/2025

**Contains:** 1 selected messages

**Order:** Chronological (oldest first, most recent last)



OurFamilyWizard, LLC.
ourfamilywizard.com
info@ourfamilywizard.com
+1 (866) 755-9991

Filed in District Court
State of Minnesota
6/11/2026 11:34 AM

**PETITIONER'S EX.**
No. 27-FA-19-6324

**SUM26-C1**

---

Message 1 of 1

| | |
|---|---|
| Sent: | 07/21/2025 9:11 AM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 07/21/2025 9:11 AM)* |
| Subject: | Re: Children's Electronic Communication – Please Review Attached |

Pawel,
The last thing I want is conflict.
Given the change in practice from the kids using the red shared home iPad to their own seems to be a source of conflict, I will have them use the red shared iPad.
I will not reply to any more messages on the subject (especially when they are full of accusations and disrespect).
Btw - you played with the kids for over 2 hours on Saturday, which I supported.
Best,
Carolina

| | |
|---|---|
| Sent: | 07/21/2025 9:07 AM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 07/21/2025 9:09 AM)* |
| Subject: | Re: Children's Electronic Communication – Please Review Attached |

Received

**Exhibit C1 - 1**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Monday July 21, 2025

**Subject:** Follow-up on Digital Communication Interference

Dear Carolina Uribe Borrero,

My July 18th message was not a request for technical assistance, nor was it an open question. It was a formal notice addressing a pattern of interference—specifically, the use of **Apple's parental control features** to restrict and control my digital communication with our children.

Let me be clear: **Apple Screen Time parental controls function as designed.** They do not malfunction. As Steve Jobs said, "It just works." And in this case, it has worked—exactly as configured by the parent with administrative access. That parent is you.

Your response—"I have not done anything to the children's iPads"—ignores the central fact that **you hold exclusive control over those devices.** You purchased the iPads, set them up, and maintain the Screen Time passcodes. The children do not have the ability to toggle communication settings, and I have no access to their devices. **Only one person can enable or disable communication features on those iPads.**

Let me walk you—and any third party reviewing this—through one specific example:

After I asked Sebastian to add my second contact method to the entry he had already created for me, he attempted to do so. At that point, he was blocked from editing my contact card because the system prompted him for the **Screen Time passcode.** This restriction is governed by a single toggle within:

**Settings > Screen Time > Communication Limits > "Allow Contact Editing".**

When turned OFF—**as it evidently was after Sebastian added me**—the child is locked out of ability to make any further changes to their contact list, including adding a second parent's phone number or email.

This was not a glitch. It was not a dropped connection. It was a configuration decision. One that directly prevented our child from maintaining a complete and accessible connection to his father.

The same pattern occurred with Aurora via Game Center. She successfully initiated a friend request. We confirmed the connection. The next time we attempted to engage, the connection had been severed, and she was unable to re-add me. Why? **Because parental controls settings had been changed**—and the parental control settings blocked her from fixing the problem. Again, these are system-enforced features, not accidents.

**The technology did exactly what it was told to do.** Which means the core issue here is not a misunderstanding or a technical error—it is the **intentional use of digital restrictions to limit my relationship with our children.**

> **Exhibit C1 - 2**

80

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

This behavior constitutes **digital coercive control**, and it aligns with a documented pattern of **parental gatekeeping**. It undermines the children's right to maintain a consistent, loving bond with both parents, and it directly affects their psychological well-being. Any child psychologist, family court judge, or forensic expert would immediately recognize the damage caused by one parent silently erasing or obstructing the other from the child's digital world.

## My Ask

I am not asking for anything extraordinary. I am simply asking that:

1. You **stop using parental control settings** to prevent our children from maintaining a connection with me.
2. You **add and preserve** my complete contact information on both children's iPads.

Here is the contact information that must be present in full on both devices:

**Phone Numbers:**

- 646.657.9180
- 678.462.0500

**Email Addresses:**

- prz.global@gmail.com
- prz.global@me.com
- przeczkowski08@gmail.com

Please confirm once this has been completed.

If this matter is not promptly resolved, I will have no choice but to present this continued interference as part of a documented pattern of coercive behavior, to be reviewed by the court and appropriate professionals.

Sincerely,

**Pawel Dominik Rzeczkowski**
Signed at: Coweta County, Georgia

**Exhibit C1 - 3**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Sent:       07/21/2025 8:13 AM

From:       Pawel Rzeczkowski

To:         Carolina Uribe Borrero *(First Viewed: 07/21/2025 9:03 AM)*

Subject:    Re: Children's Electronic Communication – Please Review Attached

Carolina,

Please review the attached message regarding ongoing restrictions that are limiting the children's ability to communicate with me. The message includes examples and a clear request.

I would appreciate confirmation once the contact information has been updated and functionality has been restored.

Pawel

**See Attachments:** 20250721_Abuse_of_control.pdf (105.4 KB)


Sent:       07/18/2025 9:57 AM

From:       Carolina Uribe Borrero

To:         Pawel Rzeczkowski *(First Viewed: 07/18/2025 10:55 AM)*

Subject:    Re: Children's Electronic Communication – Please Review Attached

Pawel,
I am sorry to hear this is your perspective.
I have not done anything to children's ipads, and the only time I come to them while they are talking to you is when it is time to hang up and they need to continue with their bedtime routine. Hence why I proposed the Saturday calls , which is a reflection of my support of the children's contact and communication with you.
Again, I have no idea what is going on, and I suggest you check the connection on your side.
Best,

Carolina


Sent:       07/18/2025 7:01 AM

From:       Pawel Rzeczkowski

To:         Carolina Uribe Borrero *(First Viewed: 07/18/2025 8:56 AM)*

Subject:    Children's Electronic Communication – Please Review Attached

Hi Carolina,
Please see the attached message regarding the children's electronic communication with me, including Game Center access and contact permissions. I would appreciate your prompt review and response.

**Exhibit C1 - 4**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Thank you,
Pawel

**See Attachments:** 20250718_Request_for_Compliance_and_Correction.pdf (62.5 KB)

Exhibit C1 - 5

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Friday, July 18, 2025

**Subject: Digital Access to Children – Request for Compliance and Correction**

Carolina,

I am writing to address a pattern of interference and control over my electronic communication with the children that has recently escalated. Specifically, the actions described below raise serious concerns about what is clinically referred to as **_coercive control via digital means_**. I ask you to cease such conduct immediately.

As a matter of record:

- **Tuesday, July 8**: Aurora sent me an Apple Game Center friend request so we could play arcade games together. I accepted the request, and we were confirmed friends at that time. We planned to explore game options further during our next call on Thursday. That call was ended by your verbal directive to Aurora that it was "time to hang up," limiting our ability to complete the interaction.

- **Same day (July 8)**: You manually reached over and disconnected my FaceTime call with Sebastian. This action, done without Sebastian's input, was inappropriate and disruptive.

- After the Tuesday call, Aurora informed me that she had proposed moving our calls to Saturdays to allow more time together, and you communicated this proposed change to me via OFW. I agreed. This means our Tuesday calls would now occur on Saturdays.

- **Thursday, July 10**: During our FaceTime call, Aurora and I discovered that we were no longer friends on Apple Game Center. As of that date, my Game Center friend list was empty, and Aurora was unable to send me another invitation, explaining that I was not in her contacts. She attempted to re-add me by email but was blocked by the parental controls. Again, your voice was heard during the call, and you told Aurora that you would "look at this later."

- **Saturday, July 12**: We attempted to reconnect on Game Center, but Aurora still had no access.

> **Exhibit C1 - 6**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Friday, July 18, 2025

These facts lead to the unavoidable conclusion that someone—most likely the parent controlling the iPads' Parental Controls—removed me from the children's Game Center access and subsequently restricted their ability to re-add me.

A similar situation occurred with Sebastian earlier. I could not send messages to his iPad until he manually added my phone number to his contacts. Later, when I asked him to add my email, he told me that the contacts list was now blocked. This suggests that after he added me once, parental controls were modified to prevent further contact management, directly impairing our communication.

These patterns clearly indicate a willful effort to limit or control my digital communication with the children, undermining their emotional well-being and running counter to the principle that children thrive when they maintain a loving relationship with both parents. I therefore respectfully request that you take the following steps:

1. **Restore full and unrestricted electronic communication** between the children and me.

2. **Add my full contact information** (both my phone numbers and both email addresses) to both children's iPad contacts.

3. **Cease actions that could reasonably be interpreted as digital coercive control,** including termination of calls and manipulation of parental controls to limit contact.

Continued interference in the children's digital relationship with their father is not only harmful—it is legally relevant and may constitute a pattern of alienation. I am prepared to document these events in court filings, should that become necessary.

Please confirm when the children's contact lists have been updated and the communication barriers resolved.

Thank you for your cooperation.

Sincerely,

Pawel Rzeczkowski

**Exhibit C1 - 7**

2
85

Filed in District Court
State of Minnesota
6/11/2026 11:34 AM

# Message Report

 **OurFamilyWizard**

**Generated:** 06/06/2026 10:22 PM by Pawel Rzeczkowski

**Timezone:** America/New_York

**Format:** mm/dd/yyyy

**Parents:** Carolina Uribe Borrero, Pawel Rzeczkowski

**Child(ren):** Aurora Rzeczkowski-Uribe, Sebastian Rzeczkowski-Uribe

**Date Range:** 11/19/2025 — 11/25/2025

**Contains:** 1 selected messages

**Order:** Chronological (oldest first, most recent last)

OurFamilyWizard, LLC.
ourfamilywizard.com
info@ourfamilywizard.com
+1 (866) 755-9991

> **PETITIONER'S EX.**
> No. 27-FA-19-6324
> # SUM26-C2

---

Message 1 of 1

| | |
|---|---|
| Sent: | 11/25/2025 8:03 AM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 11/25/2025 8:03 AM)* |
| Subject: | Re: Awaiting Wednesday Call from the Kids |

Please see pictures from Sebastian's mobile. Aurora's did not have battery, so happy to take the pictures when she is back from school and her phone is charged.
Again, you are NOT blocked.

And again, please call my number if we need a reminder (which these days would be helpful).

Best,

**See Attachments:** IMG_3329.jpg (2.1 MB), IMG_3330.jpg (2.1 MB)

| | |
|---|---|
| Sent: | 11/25/2025 7:01 AM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 11/25/2025 7:02 AM)* |
| Subject: | Re: Awaiting Wednesday Call from the Kids |

Pawel, again, you are not blocked from anything. The kids just don't look at screens much during the week. As always, please call my number to assure we see it.
Again, I have not been well. So if you can call my number, that would be a helpful reminder.
Best,
Carolina

> **Exhibit C2 - 1**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

IMG_3329.jpg (2.1 MB), IMG_3330.jpg (2.1 MB)



**Exhibit C2 - 2**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Sent:       11/25/2025 6:02 AM
From:       Pawel Rzeczkowski
To:         Carolina Uribe Borrero *(First Viewed: 11/25/2025 6:55 AM)*
Subject:    Re: Awaiting Wednesday Call from the Kids

Carolina,

As agreed in your November 21 message, Monday's call was a make-up for the missed Wednesday call. I reiterated this in writing the same day, and you did not dispute that clarification.

Despite this mutual understanding, I was unable to reach the children on Monday, November 24. I attempted to connect through both calls and texts at reasonable intervals:

- Aurora: Messages sent at 4:17 PM, 4:28 PM, and 6:55 PM; call placed at 6:21 PM. No response.
- Sebastian: Messages sent at 4:18 PM and 6:36 PM; call placed at 6:23 PM. No response.

This was a scheduled, agreed-upon make-up call. There was no attempt from your side to facilitate the connection, nor any communication explaining why it did not occur.

I respectfully ask again: Please do not block my communication with the children. I am requesting that they be allowed to receive and respond to my calls and messages, especially during scheduled call time. The children's relationship with both parents must be supported, not silently obstructed.

Pawel


Sent:       11/21/2025 5:43 PM
From:       Pawel Rzeczkowski
To:         Carolina Uribe Borrero *(First Viewed: 11/21/2025 5:45 PM)*
Subject:    Re: Awaiting Wednesday Call from the Kids

Carolina,

Thank you for confirming that the children will call on Monday to make up for the missed Wednesday call.

Just to be clear: Saturday remains our regular parenting call, and Monday is only a make up for Wednesday, not a replacement. By next Wednesday, we'll be back on our new normal weekly schedule.

Please confirm this understanding so we're aligned.

**Exhibit C2 - 3**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Best regards,
Pawel

| | |
|---|---|
| Sent: | 11/21/2025 5:00 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 11/21/2025 5:33 PM)* |
| Subject: | Re: Awaiting Wednesday Call from the Kids |

Ok, they'll call you on Monday per your request.
As I have told multiple times, there are no restrictions. Please stop trying to generate more conflict where there isn't. I will not respond to any more messages of this kind.

| | |
|---|---|
| Sent: | 11/21/2025 5:43 AM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 11/21/2025 4:58 PM)* |
| Subject: | Re: Awaiting Wednesday Call from the Kids |

Carolina,

Thank you for the message. I did try to initiate contact with the kids on Wednesday/Thursday—both by calling their phones and sending them messages. However, it seems I was blocked from reaching them. This has happened multiple times now, which makes it difficult for me to stay in touch with them despite my efforts.

When communication is restricted on their devices, it is not accurate to suggest I haven't reached out. Please confirm that I will be able to reach the kids via their phones/iPads moving forward without technical barriers.

Please find attached my formal response documenting the recent communication interference. I ask that you review the request carefully and stop obstructing my ability to communicate with the kids.

I look forward to speaking with the kids on Saturday during our regularly scheduled call. Regarding your question about a make-up for the missed Wednesday call: I would prefer we schedule that for Monday rather than Sunday. Back-to-back weekend calls (Saturday and Sunday) tend to reduce the individual significance of each conversation and create unnecessarily long gaps between points of connection, which is not ideal for maintaining continuity. Monday would provide better spacing and support the children's ongoing sense of routine. Please confirm.

That said, the kids are always welcome to call me anytime they wish, including Sunday or any other day.

Best regards,
Pawel

**Exhibit C2 - 4**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

**See Attachments:** 20251121_obstruction_of_parental_communication.pdf (80.1 KB)

| | |
|---|---|
| Sent: | 11/20/2025 11:16 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 11/21/2025 1:09 AM)* |
| Subject: | Re: Awaiting Wednesday Call from the Kids |

Also, remember you are welcomed to also initiate the call.
Best,

| | |
|---|---|
| Sent: | 11/20/2025 11:14 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 11/21/2025 1:09 AM)* |
| Subject: | Re: Awaiting Wednesday Call from the Kids |

Pawel,
I have not been well the past few days.
I forgot to ask the kids to call you. Do you want them to call you tomorrow? Or Sunday?
Best,
Carolina

| | |
|---|---|
| Sent: | 11/19/2025 8:43 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 11/19/2025 8:55 PM)* |
| Subject: | Re: Awaiting Wednesday Call from the Kids |

Pawel, I forgot today Aurora had Girl Scout and Sebastian and I had the church's thanksgiving dinner. Apologies.
They'll call you tomorrow

| | |
|---|---|
| Sent: | 11/19/2025 8:26 PM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 11/19/2025 8:42 PM)* |
| Subject: | Awaiting Wednesday Call from the Kids |

Carolina

1.   It's now 7:22pm and I haven't received a call from the kids yet.
2.   As you confirmed,

**Exhibit C2 - 5**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

a.   Wednesday is now our regular weekly call day in place of Thursdays.

3.   I'm looking forward to speaking with them tonight.

a.   Please make sure they call me as agreed.

b.   Thank you,

Pawel

**Exhibit C2 - 6**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

November 21, 2025

**From:**     Pawel Rzeczkowski
              2166 HWY 29 N
              Newnan, Ga. 30265

**To:**       Carolina Uribe Borrero
              2608 W 45th St,
              Minneapolis, MN 55410

**Via:** OurFamilyWizard

**Subject:** Formal Request to Cease Communication Barriers with Children

Carolina,

This letter serves as a formal continuation of my prior documented requests dated July 1, July 18, July 21, and October 13, 2025, in which I outlined specific patterns of interference with my communication with Aurora and Sebastian. These actions are not isolated mistakes. They form a clear, escalating pattern of **digital coercive control** and **parental alienation**, and they are causing emotional harm to the children and damage to their relationship with their father.

We had a longstanding parenting call schedule: Tuesdays and Thursdays. During the summer, your repeated presence during calls, and verbal directives to the children to end conversations prematurely, caused distress and shortened their time with me. Aurora herself suggested shifting the Tuesday call to Saturday to have longer time together without your interruption. I agreed. As a result, we moved to a Thursday-Saturday schedule.

Since that time, your interference has increased. Specifically, you have:

- Enforced parental control settings on the children's iPads and iPhones to block my messages and FaceTime calls.

- Removed me from Game Center and Apple Contacts.

- Ignored or "forgot" scheduled calls multiple times in a row.

- Responded with pre-scripted or false narratives to explain away your actions.

**Exhibit C2 - 7**

92

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

**Timeline of Recent Interference:**

**Wednesday, November 19:**

- I texted both children at 4:25 PM to remind them of our rescheduled call.

- I attempted to call Aurora at 7:11 PM and Sebastian at 7:14 PM. Both calls failed.

- At 7:26 PM, I sent you a reminder via OFW.

- At 8:43 PM, you responded, claiming you forgot about the call and said the kids would call Thursday.


**Thursday, November 20:**

- I again texted both children at 5:40 PM to remind them.

- I attempted to call Aurora at 6:38 PM and Sebastian at 7:27 PM. No response.

- At 11:14 PM, you again claimed via OFW you "forgot."

- At 11:16 PM, you followed with: "Also, remember you are welcomed to also initiate the call."


This last statement is a direct attempt to create false court records implying I do not initiate contact. It is **dishonest** and **manipulative**, because you have activated parental controls that prevent me from reaching the children. When I do call and text—as shown above—those calls and texts are blocked. You cannot simultaneously block me and then accuse me of not trying.


This pattern has been documented in every formal letter on record:

- July 1: Coercive presence on camera during calls

- July 18: Game Center and iPad communication interference

- July 21: Screen Time restrictions and blocked contact editing

- October 13: Scripted justifications and emotional manipulation


**Exhibit C2 - 8**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

**My Request:**

I am not asking for special treatment. I am asking for you to stop obstructing my communication with the children.

Specifically:

1. **Remove parental controls** that restrict calls or messages.

2. **Add and preserve** my full contact details on both children's devices.

3. **Stop using false excuses** or omissions to create misleading narratives in OFW.

4. **Honor our agreed-upon parenting time** and allow Aurora and Sebastian to call me twice a week without interference.

You do not get to block access and then claim that I am not calling. **That is not co-parenting. It is obstruction.**

If this continues, I will bring this pattern to the attention of the court, custody evaluator, and child welfare professionals. I strongly urge you to correct your behavior immediately and support your children's right to a meaningful relationship with both parents.

Sincerely,

Pawel Dominik Rzeczkowski
Newnan, GA

**Exhibit C2 - 9**

3

# Message Report

**Generated:** 12/24/2025 at 04:07 PM by Pawel Rzeczkowski

**Timezone:** America/New_York

**Format:** mm/dd/yyyy

**Parents:** Carolina Uribe Borrero, Pawel Rzeczkowski

**Child(ren):** Aurora Rzeczkowski-Uribe, Sebastian Rzeczkowski-Uribe

**Date Range:** 12/18/2025 — 12/24/2025

**Contains:** 1 selected messages

**Order:** Chronological (oldest first, most recent last)

OurFamilyWizard, LLC.
ourfamilywizard.com
info@ourfamilywizard.com
(866) 755-9991

Filed in District Court
State of Minnesota
6/11/2026 11:34 AM

PETITIONER'S EX.
No. 27-FA-19-6324

**SUM26-C3**

---

Message 1 of 1

| | |
|---|---|
| **Sent:** | 12/24/2025 at 03:24 PM |
| **From:** | Carolina Uribe Borrero |
| **To:** | Pawel Rzeczkowski *(First Viewed: 12/24/2025 at 03:39 PM)* |
| **Subject:** | Re: iMessage Communication Issue – Request to Restore Unrestricted Messaging with the Children |

I think I figured out what was happening. Your contact info has both your google voice and your mobile number. Aurora just now was trying to send you pictures, unsuccessfully. We tried going directly from your contact info to your mobile number, and it worked.
Just FYI.

| | |
|---|---|
| **Sent:** | 12/23/2025 at 09:24 AM |
| **From:** | Carolina Uribe Borrero |
| **To:** | Pawel Rzeczkowski *(First Viewed: 12/23/2025 at 09:29 AM)* |
| **Subject:** | Re: iMessage Communication Issue – Request to Restore Unrestricted Messaging with the Children |

Hi Pawel,
I do not know why the technical issue you describe occurred. I did not apply any settings or restrictions that would prevent the children from communicating with you.

I checked Sebastian's iPhone and successfully sent test messages to you from his device (you just reacted to one of them, so I am happy it was successful). I did not change any settings, and you have not been blocked.

I support the children's ability to communicate freely with both parents. If the issue occurs

**Exhibit C3 - 1**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

IMG_3551.jpg (2.2 MB)



**Exhibit C3 - 2**

27-FA-19-6324

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

again, I am willing to address it promptly with guidance, as this is beyond my technical expertise.

Best,
Carolina

**See Attachments:** IMG_3551.jpg (2.2 MB)

Sent:      12/23/2025 at 08:10 AM

From:      Pawel Rzeczkowski

To:        Carolina Uribe Borrero *(First Viewed: 12/23/2025 at 08:52 AM)*

Subject:   Re: iMessage Communication Issue – Request to Restore Unrestricted Messaging with the Children

I am following up to confirm whether the iMessage communication restriction has been removed. Please let me know.

Sent:      12/18/2025 at 11:32 PM

From:      Pawel Rzeczkowski

To:        Carolina Uribe Borrero *(First Viewed: 12/23/2025 at 08:49 AM)*

Subject:   iMessage Communication Issue – Request to Restore Unrestricted Messaging with the Children

Carolina,

I am writing to document an ongoing communication issue that arose again this week and to request that it be promptly corrected in the children's best interests.

What occurred (facts only):

On Wednesday, December 17, 2025, during the children's scheduled call time, Sebastian attempted to send me an image from his iPhone. At that time, he believed the issue was lack of internet access, which he mentioned when he called to explain that he was unable to talk that evening due to scheduling conflict that evening.

The following day, Thursday, December 18, while at home and connected to Wi-Fi, he attempted again and discovered that he could send messages and images successfully to other people, but not to me.

When attempting to send an image to me, his iPhone repeatedly displayed the following system error message:

"Cannot Send Message. iMessage needs to be enabled to send this message."

**Exhibit C3 - 3**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

At my request, Sebastian took a screenshot of this error message on his device, which I am preserving for documentation.

Technical clarification:
Because Sebastian is able to send iMessages and images to other contacts without error, this is not a device malfunction, network issue, or Apple server problem. Apple's own diagnostic framework indicates that when iMessage functions normally for other recipients but is disabled for one specific contact, the cause is a contact-level or Screen Time / Family Sharing communication restriction applied to that contact.

In short, this behavior is consistent with a setting applied through Screen Time or Family Sharing, not a random or transient technical error.

Impact on Sebastian:
Sebastian was confused and surprised that he could message others but not me, and he explicitly asked what could be causing this. From a child-development perspective, placing a child in a position where communication with one parent is selectively restricted—without explanation—creates unnecessary confusion and places the child in a loyalty-conflict they should not be navigating.

Reliable, unimpeded communication with both parents is especially important in separated-parent households and is widely recognized as foundational to a child's emotional security and attachment stability

Request:
Please remove any Screen Time, Family Sharing, or contact-level restrictions that prevent the children from freely messaging me via iMessage (including sending images), and confirm once this has been done.

If there is an alternative explanation you believe accounts for this issue, please identify it specifically so it can be addressed promptly.

My goal is simple: that the children be able to communicate with both parents without technical barriers or confusion.

Please note that I am documenting this issue to ensure the children's communication with both parents remains consistent and unobstructed.

Thank you,

Pawel Dominik Rzeczkowski
Newnan, GA

**See Attachments:** 20251218_iMessage_Communication_Issue_1.pdf (88.9 KB)

> **Exhibit C3 - 4**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

December 18, 2025

**From:**   Pawel Rzeczkowski
2166 HWY 29 N
Newnan, Ga. 30265

**To:**   Carolina Uribe Borrero
2608 W 45th St,
Minneapolis, MN 55410

**Via:** OurFamilyWizard

**Subject:** iMessage Communication Issue – Request to Restore Unrestricted Messaging with the Children

Carolina,

I am writing to document an ongoing communication issue that arose again this week and to request that it be promptly corrected in the children's best interests.

**What occurred (facts only):**

On Wednesday, December 17, 2025, during the children's scheduled call time, Sebastian attempted to send me an image from his iPhone. At that time, he believed the issue was lack of internet access, which he mentioned when he called to explain that he was unable to talk that evening due to scheduling conflict that evening.

The following day, Thursday, December 18, while at home and connected to Wi-Fi, he attempted again and discovered that he could send messages and images successfully to other people, but not to me.

When attempting to send an image to me, his iPhone repeatedly displayed the following system error message:

> *"Cannot Send Message. iMessage needs to be enabled to send this message."*

At my request, Sebastian took a screenshot of this error message on his device, which I am preserving for documentation.

**Technical clarification:**

Because Sebastian is able to send iMessages and images to other contacts without error, this is not a device malfunction, network issue, or Apple server problem. Apple's own

**Exhibit C3 - 5**

27-FA-19-6324

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

diagnostic framework indicates that when iMessage functions normally for other recipients but is disabled for one specific contact, the cause is a contact-level or Screen Time / Family Sharing communication restriction applied to that contact.

In short, this behavior is consistent with a setting applied through Screen Time or Family Sharing, not a random or transient technical error.

**Impact on Sebastian:**

Sebastian was confused and surprised that he could message others but not me, and he explicitly asked what could be causing this. From a child-development perspective, placing a child in a position where communication with one parent is selectively restricted—without explanation—creates unnecessary confusion and places the child in a loyalty-conflict they should not be navigating.

Reliable, unimpeded communication with both parents is especially important in separated-parent households and is widely recognized as foundational to a child's emotional security and attachment stability

**Request:**

Please remove any Screen Time, Family Sharing, or contact-level restrictions that prevent the children from freely messaging me via iMessage (including sending images), and confirm once this has been done.

If there is an alternative explanation you believe accounts for this issue, please identify it specifically so it can be addressed promptly.

My goal is simple: that the children be able to communicate with both parents without technical barriers or confusion.

Please note that I am documenting this issue to ensure the children's communication with both parents remains consistent and unobstructed.

Thank you,

Pawel Dominik Rzeczkowski
Newnan, GA

**Exhibit C3 - 6**

2

Filed in District Court
State of Minnesota
6/11/2026 11:34 AM

# Message Report

**Generated:** 06/07/2026 2:42 PM by Pawel Rzeczkowski

**Timezone:** America/New_York

**Format:** mm/dd/yyyy

**Parents:** Carolina Uribe Borrero, Pawel Rzeczkowski

**Child(ren):** Aurora Rzeczkowski-Uribe, Sebastian Rzeczkowski-Uribe

**Date Range:** 01/12/2026 — 01/12/2026

**Contains:** 1 selected messages

**Order:** Chronological (oldest first, most recent last)

## OurFamilyWizard

OurFamilyWizard, LLC.
ourfamilywizard.com
info@ourfamilywizard.com
+1 (866) 755-9991

**PETITIONER'S EX.**
No. 27-FA-19-6324
**SUM26-C4**

---

Message 1 of 1

| | |
|---|---|
| Sent: | 01/12/2026 5:02 PM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 01/12/2026 7:42 PM)* |
| Subject: | Re: Documentation of January 10 Communication Disruption |

Carolina,

Your response does not address the documented outcome.

When I place direct calls or send messages to the children, their devices do not ring or generate notifications, and the children are left waiting. That outcome is occurring regardless of your characterization of device settings and is not caused by anything on my end.

I am not requesting collaborative troubleshooting, mediation, or a call with you. I am requesting normal operation of the children's communication devices, such that my direct calls and messages reach them and generate notifications in real time, without delay or intermediary.

I have made this request clearly. If my direct calls or messages continue not to ring or generate notifications on the children's devices, I will document it accordingly.

Pawel

**Exhibit C4 - 1**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Sent:        01/12/2026 3:14 PM

From:        Carolina Uribe Borrero

To:          Pawel Rzeczkowski *(First Viewed: 01/12/2026 3:14 PM)*

Subject:     Re: Documentation of January 10 Communication Disruption

Pawel,

The answer to "I am again requesting that the children's devices be configured so that my direct calls and messages reach them normally and generate notifications, without delay or intermediary. Please confirm when that has been done." is that it has always been done, because nothing has ever been done to prevent this from happening.

Again, happy to collaborate via a videoconference to figure out what is happening on your side or if anything need to change on our side.

Best,
Carolina

Sent:        01/12/2026 2:49 PM

From:        Pawel Rzeczkowski

To:          Carolina Uribe Borrero *(First Viewed: 01/12/2026 2:50 PM)*

Subject:     Re: Documentation of January 10 Communication Disruption

Carolina,

I am not raising a technical troubleshooting issue, and I am not requesting assistance routing communication through you.

The issue I documented is outcome-based and straightforward: when I attempt to call or message the children directly, their devices do not ring or generate notifications, and the children are left waiting despite my repeated attempts.

Whether this results from device settings, parental controls, Focus modes, or other configurations is not the point. The point is that the outcome is occurring, it is documented, and it places the children in the middle of a communication failure.

A solution that requires me to call you, use your device, or coordinate access through you does not resolve this issue and is not appropriate. Direct parent–child communication should function independently and in real time, without routing through the other parent.

I am again requesting that the children's devices be configured so that my direct calls and messages reach them normally and generate notifications, without delay or intermediary.

Please confirm when that has been done.

Pawel

**Exhibit C4 - 2**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Sent:        01/12/2026 12:48 PM
From:        Carolina Uribe Borrero
To:          Pawel Rzeczkowski *(First Viewed: 01/12/2026 12:50 PM)*
Subject:     Re: Documentation of January 10 Communication Disruption

Pawel,
I'm sorry to hear you experienced technology issues.

To be clear (again), I have never set any parental controls or device settings that prevent contact between you and the children. There are no restrictions on their ability to communicate with you, and I have consistently supported their communication with you since you left in August 2022.

For clarity, my support has included:
- Encouraging you to communicate with the children immediately after your departure, when neither them nor I knew what was going on
- Proposing and implementing a regular twice-weekly call schedule early on to provide more frequent and predictable contact between you and the children
- Suggesting that one of the calls be moved to Saturday to allow for significantly longer conversations than what the Court decree requires
- Regularly lending my personal iPad to the children so they can call you
- Frequently reminding the children to call you on the agreed days

To address any potential technology issues, I have previously offered—and continue to offer—the following solutions:
1. If a call does not work on the children's devices, call me directly, as you did previously when communication primarily occurred through my iPad.
2. If there is a technical issue I am not aware of, I am willing to schedule a video call with you to review device settings together. If there is a configuration issue beyond my technical expertise, I am open to making any appropriate adjustments.

I encourage a solution-focused approach so that communication can continue smoothly.

Again, there are no settings preventing communication between you and the children, and I remain supportive of their ongoing contact with you.

Best,
Carolina


Sent:        01/12/2026 10:25 AM
From:        Pawel Rzeczkowski
To:          Carolina Uribe Borrero *(First Viewed: 01/12/2026 10:37 AM)*
Subject:     Documentation of January 10 Communication Disruption

**Exhibit C4 - 3**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Carolina,

I am documenting a communication issue that occurred on Saturday, January 10, during my call time with the children, and making a clear request going forward.

What occurred (chronology):
- At approximately 8:02 a.m., Aurora called to say she would call me later in the afternoon due to the day's schedule.
- At 4:22 p.m., Aurora called me and we began speaking.
- At 4:28 p.m., the call disconnected.
- At 4:29 p.m., Aurora attempted to call back; the connection was intermittent.
- I told Aurora I would call her back and immediately attempted to do so.

Between 4:28 p.m. and 4:40 p.m., I:
- Placed multiple FaceTime calls to Aurora (at 4:28, 4:29, 4:31, 4:32, twice at 4:36, 4:37, and 4:39)
- Sent multiple text messages beginning at approximately 4:30 p.m.

At 4:40 p.m., Aurora called me and asked why I had not called her back as I said I would. During that call:
- Aurora stated that her device did not ring and showed no indication of incoming calls
- She opened the message thread and confirmed she could see my texts, but said she had not received any notifications
- She indicated her notifications were "off," though on my side I did not see the usual indicator that notifications were silenced

Aurora was visibly confused and waiting for my call.

Technical context (non-speculative):
Based on Apple iOS/iPadOS system behavior, this pattern — multiple FaceTime calls and texts not presenting on the child's device, while messages later appear in the thread — is consistent with device-level communication controls, such as Screen Time communication limits or Focus modes enforced via Family Sharing. These controls can suppress call and message notifications without alerting the child or the calling parent.
I am not asserting intent here. I am documenting outcome and impact.

Impact on Aurora:
Aurora was waiting for me to call her back as agreed. Because my calls did not reach her device, she experienced confusion and believed I had not followed through. This placed her in the middle of a communication failure between parents — something that should not happen.

From a child-development perspective, situations where a child waits for a parent who appears not to respond can undermine the child's sense of reliability and emotional safety, even when the parent is actively attempting contact.

Request (clear and narrow):
Please ensure that no device-level settings, parental controls, Screen Time limits, or Focus modes are used in a way that blocks, suppresses, delays, or interferes with my ability to initiate direct calls or messages to the children.

**Exhibit C4 - 4**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

If any such controls are currently in place, I am asking that they be adjusted so that:
- My calls ring normally on the children's devices
- My messages generate notifications in real time
- The children are not placed in a position of waiting while believing a parent is not responding

This request is solely about ensuring reliable, uninterrupted parent–child communication going forward.

Please confirm that my ability to initiate direct communication with the children will not be restricted by device settings.

_____

Pawel

**See Attachments:** 20260110_Communication_Interference.pdf (58.2 KB)

**Exhibit C4 - 5**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

January 12, 2026

**From:** Pawel Rzeczkowski

2166 HWY 29 N

Newnan, Ga. 30265

**To:**   Carolina Uribe Borrero

2608 W 45th St,

Minneapolis, MN 55410

**Via:** OurFamilyWizard

**Subject: Documentation of January 10 Communication Disruption**

Carolina,

I am documenting a communication issue that occurred on Saturday, January 10, during my call time with the children, and making a clear request going forward.

**What occurred (chronology):**

- At approximately **8:02 a.m.**, Aurora called to say she would call me later in the afternoon due to the day's schedule.

- At **4:22 p.m.**, Aurora called me and we began speaking.

- At **4:28 p.m.**, the call disconnected.

- At **4:29 p.m.**, Aurora attempted to call back; the connection was intermittent.

- I told Aurora I would call her back and immediately attempted to do so.

Between **4:28 p.m. and 4:40 p.m.**, I:

- Placed **multiple FaceTime calls** to Aurora (at 4:28, 4:29, 4:31, 4:32, twice at 4:36, 4:37, and 4:39)

- Sent **multiple text messages** beginning at approximately **4:30 p.m.**

**Exhibit C4 - 6**

106

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

At **4:40 p.m.**, Aurora called me and asked why I had not called her back as I said I would. During that call:

- Aurora stated that **her device did not ring and showed no indication of incoming calls**

- She opened the message thread and confirmed she could **see my texts**, but said **she had not received any notifications**

- She indicated her notifications were "off," though on my side I did not see the usual indicator that notifications were silenced

Aurora was visibly confused and waiting for my call.

**Technical context (non-speculative):**

Based on Apple iOS/iPadOS system behavior, this pattern — multiple FaceTime calls and texts not presenting on the child's device, while messages later appear in the thread — is **consistent with device-level communication controls**, such as Screen Time communication limits or Focus modes enforced via Family Sharing. These controls can suppress call and message notifications without alerting the child or the calling parent.

I am not asserting intent here. I am documenting outcome and impact.

**Impact on Aurora:**

Aurora was waiting for me to call her back as agreed. Because my calls did not reach her device, she experienced confusion and believed I had not followed through. This placed her in the middle of a communication failure between parents — something that should not happen.

From a child-development perspective, situations where a child waits for a parent who appears not to respond can undermine the child's sense of reliability and emotional safety, even when the parent is actively attempting contact.

**Exhibit C4 - 7**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

**Request (clear and narrow):**

Please ensure that **no device-level settings, parental controls, Screen Time limits, or Focus modes** are used in a way that blocks, suppresses, delays, or interferes with my ability to initiate direct calls or messages to the children.

If any such controls are currently in place, I am asking that they be adjusted so that:

- My calls ring normally on the children's devices

- My messages generate notifications in real time

- The children are not placed in a position of waiting while believing a parent is not responding

This request is solely about ensuring reliable, uninterrupted parent–child communication going forward.

Please confirm that my ability to initiate direct communication with the children will not be restricted by device settings.

Pawel

**Exhibit C4 - 8**

Filed in District Court
State of Minnesota
6/11/2026 11:34 AM

# Message Report

## OurFamilyWizard

OurFamilyWizard, LLC.
ourfamilywizard.com
info@ourfamilywizard.com
+1 (866) 755-9991

**Generated:** 06/07/2026 2:53 PM by Pawel Rzeczkowski

**Timezone:** America/New_York

**Format:** mm/dd/yyyy

**Parents:** Carolina Uribe Borrero, Pawel Rzeczkowski

**Child(ren):** Aurora Rzeczkowski-Uribe, Sebastian Rzeczkowski-Uribe

**Date Range:** 02/21/2026 — 02/22/2026

**Contains:** 1 selected messages

**Order:** Chronological (oldest first, most recent last)

PETITIONER'S EX.
No. 27-FA-19-6324
**SUM26-C5**

---

Message 1 of 1

| | |
|---|---|
| Sent: | 02/22/2026 3:06 PM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 02/22/2026 4:34 PM)* |
| Subject: | Re: Call - Aurora |

Carolina,

Calling or texting you is not a solution to the issue I have been documenting.

The concern is not whether there is some way to reach the children.

The concern is whether my direct calls to Aurora's device function normally and independently.

Parent–child communication should not require routing through the other parent or coordinating through a separate device.

As documented, Aurora's outgoing calls consistently reach me. My outgoing calls to her device do not consistently connect.

That asymmetry is the issue.

I am not seeking a technical discussion by phone. I am simply requesting that Aurora's device be configured so that:

- My calls ring normally
- Notifications appear in real time
- No intermediary contact is required

**Exhibit C5 - 1**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

If her device is functioning normally, then my calls should connect normally.

This is not about conflict. It is about ensuring reliable, direct communication between parent and child.

Pawel

| | |
|---|---|
| Sent: | 02/22/2026 10:25 AM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 02/22/2026 10:26 AM)* |
| Subject: | Re: Call - Aurora |

Pawel,
As I have told you multiple times, you can always call my number or text me if the call is not going through. Up until recently my iPad was the only device the kids used to communicate with you. There is no need to create more conflict when there are alternative means of communication available.

I tried to address the problem from a technical perspective by calling you and try to figure out what is happening, but you hanged up on me, and sent me another email about it. I will reply to that email.
Best,

| | |
|---|---|
| Sent: | 02/21/2026 4:48 PM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 02/21/2026 5:17 PM)* |
| Subject: | Re: Call - Aurora |

Carolina,

Your message this morning does not reflect the actual call history.

For clarity, here is today's communication record:

- 7:28 AM – I called Aurora (no answer)
- 7:48 AM – Sebastian called; we spoke until 8:40 AM, when you called him and instructed him to end the call
- 10:25 AM – Aurora called once; I was unable to answer immediately
- 11:42 AM – I called Aurora (no answer)
- 11:44 AM – I called Aurora (no answer)
- 11:55 AM – I called Aurora (no answer)
- 12:03 PM – I called Aurora (no answer)

Since January 17, the pattern has been consistent:

**Exhibit C5 - 2**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Aurora's outgoing calls reach me.
My incoming calls to Aurora do not ring through or generate response.

We reconnect only when Aurora initiates the call.

This creates an asymmetrical communication dynamic in which my ability to initiate direct contact appears functionally limited.

As I documented in my January 12 communication (see "Documentation of January 10 Communication Disruption" ), the issue is outcome-based:

When I call Aurora directly, the calls do not reliably ring through to her device, and she reports not receiving notifications.

This places Aurora in the position of believing a parent is not responding, when in fact repeated call attempts are being made.

To be clear:

The issue is not Aurora calling me.
The issue is my inability to reliably reach Aurora when I initiate contact.

I am again requesting that no device-level settings, Screen Time limits, Focus modes, or parental controls be configured in a way that suppresses, delays, or interferes with my ability to initiate direct calls to Aurora.

Please confirm that:
• My calls ring normally on Aurora's device
• Notifications are enabled in real time
• No intermediary routing is required

This request is solely about ensuring consistent, uninterrupted parent–child communication.

I am available to speak with Aurora and remain ready to answer her call.

Pawel

**See Attachments:** 20260110_Communication_Interference_1.pdf (58.2 KB), 20260221_Communication_Interference.pdf (49.4 KB)

| | |
|---|---|
| Sent: | 02/21/2026 11:54 AM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 02/21/2026 12:43 PM)* |
| Subject: | Call - Aurora |

**Exhibit C5 - 3**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Hi Pawel,
I have asked Aurora to call you multiple times this mornign, and she tells me she has tried, but you have not picked up. Please call her if you can.
Best,
Carolina

**Exhibit C5 - 4**

20260221_Communication_Interference.pdf (49.4 KB)

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

February 21, 2026

**From:** Pawel Rzeczkowski
2166 HWY 29 N
Newnan, Ga. 30265

**To:** Carolina Uribe Borrero
2608 W 45th St,
Minneapolis, MN 55410

**Via:** OurFamilyWizard

**Subject: Communication Log – February 21**

Carolina,

Your message this morning does not reflect the actual call history.

For clarity, here is today's communication record:

- 7:28 AM – I called Aurora (no answer)
- 7:48 AM – Sebastian called; we spoke until 8:40 AM, when you called him and instructed him to end the call
- 10:25 AM – Aurora called once; I was unable to answer immediately
- 11:42 AM – I called Aurora (no answer)
- 11:44 AM – I called Aurora (no answer)
- 11:55 AM – I called Aurora (no answer)
- 12:03 PM – I called Aurora (no answer)

Since January 17, the pattern has been consistent:

Aurora's outgoing calls reach me.

My incoming calls to Aurora do not consistently ring through or generate response.

**We reconnect only when Aurora initiates the call.**

This creates an **asymmetrical communication dynamic** in which **my ability to initiate direct contact appears functionally limited.**

**Exhibit C5 - 5**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

As I documented in my January 12 communication (see "Documentation of January 10 Communication Disruption" ), the issue is outcome-based:

When I call Aurora directly, the calls do not reliably ring through to her device, and she reports not receiving notifications.

This places Aurora in the position of believing a parent is not responding, when in fact **repeated call attempts are being made.**

To be clear:

The issue is not Aurora calling me.

The issue is my inability to reliably reach Aurora when I initiate contact.

I am again requesting that no device-level settings, Screen Time limits, Focus modes, or parental controls be configured in a way that suppresses, delays, or interferes with my ability to initiate direct calls to Aurora.

Please confirm that:

- My calls ring normally on Aurora's device
- Notifications are enabled in real time
- No intermediary routing is required

This request is solely about ensuring consistent, uninterrupted parent–child communication.

**I am available to speak with Aurora and remain ready to answer her call.**

Pawel

**Exhibit C5 - 6**

Filed in District Court
State of Minnesota
6/11/2026 11:34 AM

# Message Report

**Generated:** 06/07/2026 3:05 PM by Pawel Rzeczkowski

**Timezone:** America/New_York

**Format:** mm/dd/yyyy

**Parents:** Carolina Uribe Borrero, Pawel Rzeczkowski

**Child(ren):** Aurora Rzeczkowski-Uribe, Sebastian Rzeczkowski-Uribe

**Date Range:** 02/21/2026 — 03/03/2026

**Contains:** 1 selected messages

**Order:** Chronological (oldest first, most recent last)

**↗ OurFamilyWizard**

OurFamilyWizard, LLC.
ourfamilywizard.com
info@ourfamilywizard.com
+1 (866) 755-9991

**PETITIONER'S EX.**
No. 27-FA-19-6324

# SUM26-C6

---

Message 1 of 1

| | |
|---|---|
| Sent: | 03/03/2026 6:59 AM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 03/03/2026 7:00 AM)* |
| Subject: | Re: Communication Boundary – February 21 Evening Call |

Pawel, it was not your phone number that was missing, it was one of your multiple email addresses.
Best,

| | |
|---|---|
| Sent: | 03/03/2026 6:28 AM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 03/03/2026 6:58 AM)* |
| Subject: | Re: Communication Boundary – February 21 Evening Call |

Carolina,

Thank you for confirming that the calls are now ringing properly on Aurora's devices.

During our call on February 26, my phone number was added to Aurora's contacts, after which my calls began alerting in real time. I appreciate that this adjustment resolved the prior issue of calls registering only as missed without audible notification.

For clarity of record, I first requested that my full contact information be added to the children's devices on July 18, 2025.

I am glad that the device settings now allow reliable, real-time telephonic communication during our scheduled calls.

**Exhibit C6 - 1**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Pawel

**See Attachments:** 20250718_Request_for_Compliance_and_Correction_1.pdf (65.9 KB)

| | |
|---|---|
| Sent: | 02/26/2026 3:24 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 02/26/2026 3:37 PM)* |
| Subject: | Re: Communication Boundary – February 21 Evening Call |

Pawel,
Yesterday, Aurora, you, and I confirmed that your call went through to her devices and that they rang properly. Her devices are currently set to ring. She manages her volume settings.
Best,
Carolina

| | |
|---|---|
| Sent: | 02/23/2026 7:28 AM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 02/26/2026 3:20 PM)* |
| Subject: | Re: Communication Boundary – February 21 Evening Call |

Carolina,

I am flexible regarding on which days the calls occur, as long as we consistently have two scheduled calls per week.

The concern remains that, during the scheduled call window, the call must function reliably in real time so that the one-hour telephonic parenting time can occur as intended.

Missed-call logs without real-time audible alerting do not allow that to happen.

Please confirm when the device settings have been adjusted to ensure reliable, real-time audible notifications during scheduled call times.

Pawel

| | |
|---|---|
| Sent: | 02/22/2026 8:37 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 02/23/2026 6:45 AM)* |
| Subject: | Re: Communication Boundary – February 21 Evening Call |

**Exhibit C6 - 2**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Pawel, I do not know what else to do.
Our agreement is that the kids call you, so no agreement has been broken. And you can call or text me anytime.

| | |
|---|---|
| Sent: | 02/22/2026 8:20 PM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 02/22/2026 8:36 PM)* |
| Subject: | Re: Communication Boundary – February 21 Evening Call |

Carolina,

I placed multiple test calls as requested. The result remains unchanged: my calls register only as missed calls and do not generate a real-time audible alert for Aurora.

A device that requires manual adjustment (e.g., turning the ringer on at the moment of testing) is not functioning in a manner that allows reliable communication.

Whether the ringer is turned off intentionally or by preference, the outcome is the same: incoming calls are not alerting in real time.

For scheduled parent–child communication to function normally, the device must be configured to reliably generate audible, real-time notifications for my calls without repeated prompting or manual intervention.

Once that condition is met, the issue will be resolved.

Pawel

| | |
|---|---|
| Sent: | 02/22/2026 7:42 PM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 02/22/2026 7:50 PM)* |
| Subject: | Re: Communication Boundary – February 21 Evening Call |

Carolina,

Thank you for arranging the appointment.

Testing confirms the same issue I have been documenting: Aurora's device records my incoming FaceTime calls only as missed calls, and Aurora does not receive a real-time audible alert or notification when I call.

That is not normal call operation and does not allow reliable parent–child communication in real time.

**Exhibit C6 - 3**

27-FA-19-6324

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Please ensure the device is configured so that my calls to Aurora ring and alert in real time, including:

- FaceTime notification settings enabled
- Sound/ringer alerts active
- Focus / Do Not Disturb not silencing calls
- Screen Time communication limits not suppressing alerts

When my calls ring normally and generate real-time notifications on Aurora's device, the issue will be resolved.

Pawel

| | |
|---|---|
| Sent: | 02/22/2026 7:13 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 02/22/2026 7:14 PM)* |
| Subject: | Re: Communication Boundary – February 21 Evening Call |

Pawel,
The Best Buy / Geek Squad technician told me it should now work. I know Aurora asked you to call, and she now sees you call as a missed call.

Best,

Carolina

| | |
|---|---|
| Sent: | 02/22/2026 3:09 PM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 02/22/2026 4:34 PM)* |
| Subject: | Re: Communication Boundary – February 21 Evening Call |

Carolina,

I am willing to participate at 4:00 PM CST for technician-directed testing.

To be clear, I am willing to speak with the technician for the limited purpose of testing call functionality. I am not available for a joint discussion or debate about the issue.

I will not be discussing unrelated matters.

My participation will be limited to:

- Placing a test call to Aurora's device
- Confirming what I observe on my end

**Exhibit C6 - 4**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

If Aurora's device is managed through Screen Time or Family Sharing, the technician may need to review both the child device settings and any parental control settings that affect communication permissions.

Please have the technician call me directly at 646-657-9180.

Pawel

| | |
|---|---|
| Sent: | 02/22/2026 10:34 AM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 02/22/2026 10:34 AM)* |
| Subject: | Re: Communication Boundary – February 21 Evening Call |

Pawel,
You have mentioned the issue of your calls not going through multiple times. I have looked at everything I can think of in the kids' devices, and I cannot find anything wrong.

I tried to better understand and see what was happening when we got home, and after receiving another conflict oriented communication from you. I try to focus on solutions.

To be clear, again, I support your communication with the kids. I have looked into what you describe, and have not been able to find anything wrong. You always have alternative ways to reach the children, the main one being calling me and they can take the call from the "home iPad" as they did for many years until recently. A second alternative is text me and I can ask them to call you back. There is no need to try to create more conflict.

Back to the technical issue, I can only help address it if you collaborate with me in figuring it out. I cannot do it on my own.

Since this is past my technical expertise, I have made an appointment with the GeekSquad at BestBuy for today at 4pm cst.

Are you willing to collaborate and talk with me and a technician at 4pm CST? Complaining and accusing without collaborating to diagnose the technical problem will never solve it.

Please let me know. A simple yes or no will do.

Best,

| | |
|---|---|
| Sent: | 02/21/2026 10:15 PM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 02/22/2026 10:21 AM)* |
| Subject: | Communication Boundary – February 21 Evening Call |

**Exhibit C6 - 5**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Carolina,

At approximately 8:47 PM this evening, I received a FaceTime call from Aurora's device.

When I answered, it was you speaking — not Aurora — and the conversation immediately shifted into discussion about "figuring out" the communication issue.

There was no advance notice that you would be initiating direct communication from Aurora's device.

I ended the call.

Shortly thereafter, Aurora called again. I spoke briefly with her. During that conversation, you entered the frame and attempted to engage in discussion.

I am not willing to conduct adult-to-adult discussions through the children's devices or during my call time with them.

To be clear:

- Please do not initiate direct communication with me using Aurora's device without prior notice.
- Please do not insert yourself into my scheduled conversations with the children.
- Adult logistical discussions should occur through Our Family Wizard.

It is important that the children not be placed in the middle of adult communication issues.

I will speak with Aurora tomorrow morning.

Pawel

**See Attachments:** 20260221_Communication_Boundary.pdf (56.8 KB)

**Exhibit C6 - 6**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

February 21, 2026

**From:** Pawel Rzeczkowski
2166 HWY 29 N
Newnan, Ga. 30265

**To:**   Carolina Uribe Borrero
2608 W 45th St,
Minneapolis, MN 55410

**Via:** OurFamilyWizard

**Subject: Communication Boundary – February 21 Evening Call**

Carolina,

At approximately 8:47 PM this evening, I received a FaceTime call from Aurora's device.

When I answered, it was you speaking — not Aurora — and the conversation immediately shifted into discussion about "figuring out" the communication issue.

There was no advance notice that you would be initiating direct communication from Aurora's device.

I ended the call.

Shortly thereafter, Aurora called again. I spoke briefly with her. During that conversation, you entered the frame and attempted to engage in discussion.

I am not willing to conduct adult-to-adult discussions through the children's devices or during my call time with them.

To be clear:

- Please do not initiate direct communication with me using Aurora's device without prior notice.
- Please do not insert yourself into my scheduled conversations with the children.
- Adult logistical discussions should occur through Our Family Wizard.

It is important that the children not be placed in the middle of adult communication issues.

I will speak with Aurora tomorrow morning.

Pawel

Exhibit C6 - 7

121

# Message Report

Filed in District Court
State of Minnesota
6/11/2026 11:34 AM

## ⋟ OurFamilyWizard™

**Generated:** 06/07/2026 3:20 PM by Pawel Rzeczkowski

**Timezone:** America/New_York

**Format:** mm/dd/yyyy

**Parents:** Carolina Uribe Borrero, Pawel Rzeczkowski

**Child(ren):** Aurora Rzeczkowski-Uribe, Sebastian Rzeczkowski-Uribe

**Date Range:** 03/17/2026 — 04/18/2026

**Contains:** 1 selected messages

**Order:** Chronological (oldest first, most recent last)

OurFamilyWizard, LLC.
ourfamilywizard.com
info@ourfamilywizard.com
+1 (866) 755-9991

> **PETITIONER'S EX.**
> No. 27-FA-19-6324
> # SUM26-C7

---

Message 1 of 1

| | |
|---|---|
| Sent: | 04/18/2026 10:37 AM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 04/18/2026 4:24 PM)* |
| Subject: | Re: Attempted contact – Tuesday |

Carolina

Following up on your April 12 message stating that calls can continue "as long as [the kids] and I want":

1. During today's call with Aurora:
   a. At the start of the call, she set a 30-minute timer using Alexa.
   b. When the timer sounded, a third party (Tati) entered and asked if Aurora was ready to move on.
2. This is consistent with prior instances where:
   a. Calls are time-limited in practice, and
   b. End based on direction from your side.
3. This is not consistent with your statement that calls are not constrained.

Please ensure that the children's calls are not time-limited or interrupted going forward.

Pawel

| | |
|---|---|
| Sent: | 04/12/2026 12:30 PM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 04/13/2026 12:35 PM)* |
| Subject: | Re: Attempted contact – Tuesday |

> **Exhibit C7 - 1**

27-FA-19-6324

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Carolina

1.    My experience with the calls has not been consistent with that characterization.
2.    Calls are often time-limited or end when circumstances change on your end.
3.    Additionally, I have recently been unable to reach the kids when calling on Saturday mornings,
a.    which is a change from prior practice.

Pawel

| | |
|---|---|
| Sent: | 04/12/2026 9:28 AM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 04/12/2026 11:52 AM)* |
| Subject: | Re: Attempted contact – Tuesday |

On days like yesterday you can speak as long as you and the kids want. They also know they can call you whenever they want.
Have a nice Sunday,

| | |
|---|---|
| Sent: | 04/08/2026 11:14 PM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 04/11/2026 7:47 AM)* |
| Subject: | Re: Attempted contact – Tuesday |

Carolina

1.    I do not agree with your interpretation.
2.    The order provides for:
a.    one hour of telephone parenting time on two days per week and
b.    does not authorize limiting that time to "up to" one hour,
c.    dividing it between the children,
d.    or conditioning it on other activities.

Pawel

| | |
|---|---|
| Sent: | 04/08/2026 10:35 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 04/08/2026 10:53 PM)* |
| Subject: | Re: Attempted contact – Tuesday |

Hi Pawel,
We will continue with the current schedule and approach.

**Exhibit C7 - 2**

27-FA-19-6324

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

The kids are available to speak with you on Wednesdays and Saturdays for up to one hour total.
When they do not have other obligations, they may speak longer. When they do have other
obligations, calls will remain within the one-hour total.

Best,
Carolina

| | |
|---|---|
| Sent: | 04/08/2026 10:30 PM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 04/08/2026 10:30 PM)* |
| Subject: | Re: Attempted contact – Tuesday |

Carolina

1.    The order provides for one hour of telephone parenting time on two days per week.
2.    It does not provide for dividing that time between the children or limiting calls based on
other activities.
3.    Please ensure that the children are available for the full hour of parenting time going
forward.

Pawel

| | |
|---|---|
| Sent: | 04/08/2026 8:42 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 04/08/2026 8:43 PM)* |
| Subject: | Re: Attempted contact – Tuesday |

Hi Pawel,
The kids are available to speak with you on Wednesdays and Saturdays for up to one hour total,
consistent with the Court order. We have been dividing that into 30 minutes per child.

When they do not have other obligations, they may speak longer. When they do have other
obligations, we will keep calls within the one-hour total.

Best,
Carolina

| | |
|---|---|
| Sent: | 03/25/2026 10:38 AM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 04/04/2026 12:53 PM)* |
| Subject: | Re: Attempted contact – Tuesday |

**Exhibit C7 - 3**

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

Carolina

1. I want to clarify that the calls are not limited to 30 minutes under the decree.
2. Please ensure that future calls are not time-limited,
a. so the kids and I can speak without interruption.

Pawel

| | |
|---|---|
| Sent: | 03/17/2026 7:25 PM |
| From: | Carolina Uribe Borrero |
| To: | Pawel Rzeczkowski *(First Viewed: 03/17/2026 7:25 PM)* |
| Subject: | Re: Attempted contact – Tuesday |

The kids will call you after S's karate class, approx 7pm, 30 minutes each.

| | |
|---|---|
| Sent: | 03/17/2026 7:21 PM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 03/17/2026 7:24 PM)* |
| Subject: | Attempted contact – Tuesday |

Carolina

1. I have not yet received a time for the call today.
2. I attempted to call and text Aurora and Sebastian this evening and was not able to reach them.
3. Please confirm a time for the call and ensure the kids are available.

Pawel

**Exhibit C7 - 4**

# Message Report

Generated: 06/07/2026 3:29 PM by Pawel Rzeczkowski

Timezone: America/New_York

Format: mm/dd/yyyy

**Parents:** Carolina Uribe Borrero, Pawel Rzeczkowski

**Child(ren):** Aurora Rzeczkowski-Uribe, Sebastian Rzeczkowski-Uribe

**Date Range:** 06/06/2026 — 06/06/2026

**Contains:** 1 selected messages

**Order:** Chronological (oldest first, most recent last)

> **OurFamilyWizard**
>
> OurFamilyWizard, LLC.
> ourfamilywizard.com
> info@ourfamilywizard.com
> +1 (866) 755-9991

Filed in District Court
State of Minnesota
6/11/2026 11:34 AM

PETITIONER'S EX.
No. 27-FA-19-6324
**SUM26-C8**

---

Message 1 of 1

| | |
|---|---|
| Sent: | 06/06/2026 7:59 AM |
| From: | Pawel Rzeczkowski |
| To: | Carolina Uribe Borrero *(First Viewed: 06/06/2026 7:59 AM)* |
| Subject: | FaceTime Call with Aurora – Wednesday, June 3, 2026 |

Carolina,

I would like to document an issue that occurred during my FaceTime call with Aurora on June 3.

During the call, you entered the room and instructed Aurora to start a timer. The call subsequently included discussion regarding the amount of time remaining, and later in the call Aurora indicated there were only a few minutes left before the timer expired. The call then concluded based on that countdown.

As you know, we have previously discussed your position regarding the duration of the children's calls with me. Regardless of our disagreement on that issue, I am documenting that a 30 minute timer was initiated during the call and that the countdown became part of the conversation and its conclusion.

I am also documenting my concern regarding interruptions and third-party involvement during my communications with the children.

Thank you.

Pawel

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

**PETITIONER'S EX.**
No. 27-FA-19-6324

# SUM26-D1

January 24, 2025

Re:   File #A25-0059, *Pawel Dominik Rzeczkowski v. Carolina Uribe Borrero*

We have received and reviewed a family law appellate mediation exemption request. The request has been approved. An order lifting the stay and advising you of the appropriate actions that must be taken and timelines for continuing the appellate process will be forthcoming. If you have any questions, please call 651-296-6739.

Filed in District Court
State of Minnesota
6/11/2026 11:54 AM

## CHRONOLOGY OF SUMMER PARENTING TIME IMPLEMENTATION EFFORTS

**November 19, 2024** - (Exhibit SUM26-A1)
*Court issues Findings of Fact and Order Modifying Custody and Parenting Time, awarding Father four consecutive weeks of summer parenting time in Georgia and one hour of telephone parenting time twice weekly.*

**July 17, 2025** - (Exhibit SUM26-B0)
*Father requests summer parenting time in Georgia.*

**April 11, 2026** - (Exhibit SUM26-B1)
*Father requests implementation of four consecutive weeks of summer parenting time and requests travel dates.*

**April 16, 2026** - (Exhibit SUM26-B1)
*Father sends follow-up request seeking travel dates.*

**April 18, 2026** - (Exhibit SUM26-B1)
*Respondent refers the matter to counsel.*

> **PETITIONER'S EX.**
> No. 27-FA-19-6324
> **SUM26-E1**

**April 22, 2026** - (Exhibit SUM26-B2)
*Father contacts Respondent's counsel and again requests travel dates.*

**May 1, 2026** - (Exhibit SUM26-B2)
*Respondent, through counsel, proposes alternative parenting arrangements including a graduated reintroduction process and reassessment following an initial visit.*

**May 14, 2026** - (Exhibit SUM26-B2)
*Respondent, through counsel, asserts that the matter should proceed through mediation pursuant to Paragraph 73 of the July 24, 2023 Amended Judgment and Decree.*

**May 20, 2026** - (Exhibit SUM26-B2)
*Respondent, through counsel, continues to advocate alternative parenting arrangements, asserts mediation is required, and does not provide dates for implementation of the Court's existing parenting-time order.*

**January 24, 2025** - (Exhibit SUM26-D1)
*Minnesota appellate mediation program grants Father's request for exemption from appellate mediation.*

**June 2026**
*Children's school year concludes and summer parenting-time period begins.*

**As of June 2026**
*No travel dates have been provided for implementation of the four consecutive weeks of summer parenting time awarded by the Court.*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

**In re:** Carolina Uribe Borrero
Case No. 26-40008

# EXHIBIT 3

## Affidavit of Jason C. Brown (March 24, 2026)

Originally filed in Hennepin County District Court, File No. 27-FA-19-6324.

Referenced in Section III (Financial Hardship Narrative).

The attached document is reproduced in its original form.

Original pagination has been preserved.

Attached to:

**Statement Regarding Material Inconsistencies in the Factual Record
Relevant to Confirmation of the Modified Chapter 13 Plan**

*This cover page has been added solely for organizational purposes. The attached
document is reproduced in its original form without substantive alteration.*

Filed in District Court
State of Minnesota
3/24/2026 3:40 PM

STATE OF MINNESOTA

COUNTY OF HENNNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

FAMILY DIVISION

CASE TYPE: DISSOLUTION
WITH CHILDREN

Judicial Officer: Referee Holly Knight
Court File No.: 27-FA-19-6324

---

In Re the Marriage of:

Pawel Dominik Rzeczkowski,

Petitioner,

and

Carolina Uribe Borrero,

Respondent.

---

**RULE 119 AFFIDAVIT
OF JASON C. BROWN**

Jason C. Brown, states as follows:

1. My name is Jason C. Brown.

2. I am an attorney duly licensed to practice law in Minnesota.

3. I was admitted to the Minnesota Bar in 2000.

4. I am a shareholder in the Family Law Department of Barna, Guzy & Steffen, Ltd.

5. I graduated with honors from the William Mitchell College of Law.

6. Following law school, I clerked for the Honorable Timothy R. Bloomquist, former Chief Judge of Minnesota's Tenth Judicial District.

7. I am the former chairperson of the Family Law Section of the Minnesota Trial Lawyer's Association.

1

Filed in District Court
State of Minnesota
3/24/2026 3:40 PM

8. I authored a regular family law column for the Minnesota Lawyer newspaper from 2015 to 2023.

9. I have presented at various continuing legal education seminars, including presentations for the Minnesota Judicial Branch, Minnesota State Bar Association, Tenth Judicial District, Anoka County Bar Association, Hennepin County Bar Association, Ramsey County Bar Association, Washington County Bar Association, Dakota County Bar Association and the Minnesota Family Law Institute.

10. I have served on the roster of approved early neutral evaluations, both social and financial, for many years in Anoka, Hennepin, Sherburne and Wright County.

11. I am routinely hired by counsel, or referred by the judiciary, to mediate and/or arbitrate family law disputes.

12. I have made a number of local and national media appearances concerning family law issues, including the Star Tribune, WCCO Television, WCCO Radio, KARE Television, FOX 9 Television, NBC News, Time Magazine, The Huffington Post, and USA Today.

13. My current hourly rate is $450.00. In 2025 my hourly rate was $425.00.

14. Pamela K. Martin is a paralegal employed by Barna, Guzy & Steffen, Ltd.

15. Ms. Martin has over 20 years of family law experience.

16. Ms. Martin and I have worked together for approximately ten years.

17. Ms. Martin's hourly rate is $225.00. In 2025 her hourly rate was $210.00.

2

Filed in District Court
State of Minnesota
3/24/2026 3:40 PM

18. All reported rates are reasonable and in line with other lawyers, paralegals and firms in this community with similar academic credentials and experience.

19. Attached as **Exhibit 1** is a copy of invoices reflecting costs and work performed by myself and Ms. Martin since September 25, 2025. They reflect the following amounts: (1) $2,757.50 from September 25, 2025 to October 30, 2025; (2) $5,023.00 from November 4, 2025 to December 11, 2025; (3) $3,397.00 ($3,292.00 in billed time; $105.00 in billed costs) from December 17, 2025 to January 14, 2026; (4) $2002.50 from January 26, 2026 to February 13, 2026; and (5) $6,435.00 from February 16, 2026 to March 11, 2026. The fees and costs reflected above total $19,614.50.

20. Between December 31, 2025 and February 11, 2026, work concerning an issue separate from Respondent's Rule 9 motion (an issue surrounding a potential appeal/attorney fee issue) was performed by myself and Ms. Martin. Respondent is not seeking reimbursement for said fees. The time entries and fees associated with that collateral issue are highlighted in bold underline within **Exhibit 1** and total $3,283.50.

21. Therefore, the fees and costs relative to Respondent's Rule 9 motion are $19,614.50 *less* $3,283.50, for a total of **$16,331.00**.

22. I have reviewed the original time records relative to the instant case. The work was actually performed for the benefit of my client and was necessary for our proper representation of her. Charges for any unnecessary or duplicative work have been eliminated.

3

Filed in District Court
State of Minnesota
3/24/2026 3:40 PM

I DECLARE UNDER PENALTY OF PERJURY THAT EVERYTHING THAT I HAVE STATED IN THIS DOCUMENT IS TRUE AND CORRECT. MINN. STAT. § 358.116.

Dated: March 24, 2026                         /s/ Jason C. Brown
                                              Jason C. Brown

4

Filed in District Court
State of Minnesota
3/24/2026 3:40 PM

**Barna, Guzy & Steffen, Ltd.**
400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN  55433-5894
Phone No.: (763) 780-8500
Federal Tax ID: ██████5695
Statement as of: 10/31/2025
Statement No: 303632

**CAROLINA URIBE BORRERO**
**EMAIL TO:** curibe@gmail.com

79025-001: PAWEL DOMINIK RZECZKOWSKI - POST DECREE (PROPERTY)
URIBE BORRERO, CAROLINA

| Professional Fees | | | Hours | Amount |
|---|---|---|---|---|
| 09/25/2025 | JCB | INITIAL CONSULTATION WITH CAROLINE BORRERO RULE 9 MOTION *NO CHARGE*. | 0.50 | No Charge |
| 10/01/2025 | JCB | INITIAL CONSULTATION WITH CAROLINA URIBE RULE 9 MOTION *NO CHARGE*. | 1.50 | No Charge |
| 10/14/2025 | PKM | EMAILS FROM CLIENT. | 0.30 | 63.00 |
| 10/17/2025 | JCB | MEET WITH PARALEGAL. REVIEW PRIOR RULE 9 MOTION MATERIALS. REVIEW FILE MATERIALS. | 1.60 | 680.00 |
| 10/17/2025 | PKM | EMAIL FROM ATTORNEY; EMAIL CLIENT. | 0.10 | 21.00 |
| 10/20/2025 | PKM | EMAILS FROM AND TO CLIENT; CALENDAR PHONE CALL ON CASE CALENDAR FOR ATTORNEY AND CLIENT TO TALK; EMAILS TO AND FROM ATTORNEY; ATTEMPT TO REVIEW AND SAVE DOCUMENTS RECEIVED FROM CLIENT TO FILE; VOICEMAIL MESSAGE FROM AND TO CLIENT. | 0.70 | 147.00 |
| 10/21/2025 | PKM | EMAIL FROM AND TO CLIENT; EMAIL ATTORNEY. | 0.10 | 21.00 |
| 10/22/2025 | JCB | MEET WITH PARALEGAL. | 0.10 | 42.50 |
| 10/22/2025 | PKM | CONFERENCE WITH ATTORNEY; EMAIL FROM CLIENT. | 0.30 | 63.00 |
| 10/24/2025 | JCB | CALL WITH CLIENT. CORRESPONDENCE WITH CLIENT. | 0.50 | 212.50 |
| 10/24/2025 | PKM | EMAIL FROM ATTORNEY. | 0.10 | 21.00 |
| 10/27/2025 | PKM | EMAIL FROM OPPOSING COUNSEL TO THE COURT; EMAIL FROM CLIENT. | 0.10 | 21.00 |
| 10/29/2025 | JCB | DRAFT MOTION PAPERS. REVIEW APPELLATE OPINIONS. REVIEW CASE SUMMARY AND MOTION PAPERS. | 3.30 | 1,402.50 |
| 10/29/2025 | PKM | EMAIL FROM ATTORNEY TO CLIENT. | 0.10 | 21.00 |
| 10/30/2025 | PKM | EMAIL FROM AND TO CLIENT; EMAIL ATTORNEY. | 0.20 | 42.00 |
| | | | Sub-total Fees: | $2,757.50 |



**EXHIBIT**

1

**Barna, Guzy & Steffen, Ltd.**
400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN  55433-5894
Phone No.: (763) 780-8500
Federal Tax ID: ███████5695
Statement as of: 12/15/2025
Statement No: 305222

**CAROLINA URIBE BORRERO**
EMAIL TO: curibe@gmail.com

79025-001: PAWEL DOMINIK RZECZKOWSKI - POST DECREE (PROPERTY)
URIBE BORRERO, CAROLINA

| **Professional Fees** | | | Hours | Amount |
|---|---|---|---|---|
| 11/04/2025 | JCB | REVIEW MOTION PAPERWORK. CORRESPONDENCE WITH CLIENT. | 0.50 | 212.50 |
| 11/06/2025 | JCB | DRAFT AFFIDAVIT. | 1.60 | 680.00 |
| 11/07/2025 | JCB | DRAFT AFFIDAVIT. | 2.70 | 1,147.50 |
| 11/10/2025 | PKM | EMAIL ATTORNEY. | 0.10 | 21.00 |
| 11/11/2025 | PKM | EMAIL FROM ATTORNEY. | 0.10 | 21.00 |
| 11/19/2025 | JCB | FILE REVIEW. | 2.20 | 935.00 |
| 11/20/2025 | JCB | REVIEW AND REVISE AFFIDAVIT. CORRESPONDENCE WITH CLIENT. | 1.30 | 552.50 |
| 11/20/2025 | PKM | EMAIL FROM ATTORNEY TO CLIENT; CALENDAR OPPOSING COUNSEL'S MOTION HEARING ON CASE CALENDAR WITH REMINDERS. | 0.30 | 63.00 |
| 11/21/2025 | PKM | EMAILS FROM CLIENT. | 0.20 | 42.00 |
| 11/22/2025 | PKM | EMAILS FROM CLIENT. | 0.30 | 63.00 |
| 11/24/2025 | PKM | EMAIL ATTORNEY. | 0.20 | 42.00 |
| 11/25/2025 | JCB | REVISIONS TO PLEADINGS. CORRESPONDENCE WITH OPPOSING PARTY. | 0.80 | 340.00 |
| 11/25/2025 | PKM | VOICEMAIL MESSAGE FROM CLIENT; TELEPHONE CALL TO CLIENT; EMAILS TO AND FROM ATTORNEY; PREPARE CERTIFICATE OF REPRESENTATION; REVIEW, REVISE AND FILE NOTICE OF MOTION AND MOTION, CLIENT'S AFFIDAVIT AND CERTIFICATE OF REPRESENTATION WITH THE COURT; EMAIL PROCESS SERVER; EMAIL CLIENT. | 1.40 | 294.00 |
| 11/26/2025 | PKM | EMAIL FROM CLIENT. | 0.10 | 21.00 |
| 11/29/2025 | PKM | EMAIL FROM CLIENT; EMAIL ATTORNEY. | 0.10 | 21.00 |
| 12/02/2025 | JCB | CORRESPONDENCE WITH CLIENT *NO CHARGE*. | 0.60 | No Charge |
| 12/02/2025 | PKM | EMAIL PROCESS SERVER; EMAIL ATTORNEY; CONFERENCE WITH ATTORNEY. | 0.40 | 84.00 |
| 12/03/2025 | PKM | EMAILS FROM AND TO CLIENT; EMAILS TO AND FROM ATTORNEY. | 0.40 | 84.00 |
| 12/04/2025 | PKM | LEFT A VOICEMAIL MESSAGE FOR METRO LEGAL; EMAILS FROM AND TO CLIENT; EMAILS TO ATTORNEY; EMAILS FROM AND TO PROCESS SERVER. | 0.40 | 84.00 |
| 12/05/2025 | PKM | EMAILS FROM AND TO CLIENT; EMAILS FROM | 0.40 | 84.00 |

Filed in District Court
State of Minnesota
3/24/2026 3:40 PM

|  |  | AND TO DAVID CUSCANA; EMAILS TO AND FROM ATTORNEY. |  |  |
|---|---|---|---|---|
| 12/08/2025 | JCB | REVIEW CORRESPONDENCE. | 0.10 | 42.50 |
| 12/08/2025 | PKM | EMAIL PROCESS SERVER; LEFT VOICEMAIL MESSAGE FOR PROCESS SERVER; CONFERENCE WITH ATTORNEY; EMAILS TO AND FROM CLIENT. | 0.40 | 84.00 |
| 12/10/2025 | PKM | EMAIL PROCESS SERVER; EMAIL CLIENT; EMAIL DAVID CUSCANA; EMAIL ATTORNEY. | 0.10 | 21.00 |
| 12/11/2025 | PKM | EMAIL FROM AND TO PROCESS SERVER; EMAILS TO AND FROM CLIENT; EMAILS TO ATTORNEY; EMAILS TO DAVID CUSCANA. | 0.40 | 84.00 |

Sub-total Fees:    $5,023.00

Filed in District Court
State of Minnesota
3/24/2026 3:40 PM

**Barna, Guzy & Steffen, Ltd.**
400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN 55433-5894
Phone No.: (763) 780-8500
Federal Tax ID: █████695
Statement as of: 02/15/2026
Statement No: 307668

**CAROLINA URIBE BORRERO**
**EMAIL TO: curibe@gmail.com**

79025-001: PAWEL DOMINIK RZECZKOWSKI - POST DECREE (PROPERTY)
URIBE BORRERO, CAROLINA

| Professional Fees | | | Hours | Amount |
|---|---|---|---|---|
| 01/26/2026 | PKM | NO CHARGE - BILLING QUESTIONS. | 0.10 | No Charge |
| 01/20/2026 | JCB | FILE REVIEW. | 0.10 | 45.00 |
| 01/21/2026 | JCB | CORRESPONDENCE WITH CLIENT. PHONE CALL TO OPPOSING COUNSEL. | 0.40 | 180.00 |
| 01/21/2026 | PKM | EMAIL FROM ATTORNEY TO CLIENT; EMAIL FROM CLIENT; EMAIL FROM OPPOSING COUNSEL. | 0.30 | 67.50 |
| 01/27/2026 | PKM | CONFERENCE WITH ATTORNEY. | 0.10 | 22.50 |
| 02/02/2026 | JCB | CALL WITH CLIENT. | 0.20 | 90.00 |
| 02/10/2026 | PKM | EMAILS FROM CLIENT. | 0.30 | 67.50 |
| 02/11/2026 | PKM | EMAILS FROM CLIENT. | 0.20 | 45.00 |
| 02/12/2026 | JCB | CALL WITH CLIENT. REVIEW PLEADINGS. DRAFT SUPPLEMENTAL PLEADINGS. RESEARCH INVOLVING SCOPE OF RULE 9. | 2.70 | 1,215.00 |
| 02/12/2026 | PKM | CONFERENCE WITH ATTORNEY; EMAIL CLIENT; EMAIL ATTORNEY. | 0.30 | 67.50 |
| 02/13/2026 | PKM | EMAILS FROM CLIENT; EMAILS TO AND FROM ATTORNEY; EMAILS FROM DAVID CUSCUNA; REVIEW AND SAVE DOCUMENTS RECEIVED FROM CLIENT TO FILE; EMAILS FROM ATTORNEY TO CLIENT. | 0.90 | 202.50 |
| | | | Sub-total Fees: | $2,002.50 |

Filed in District Court
State of Minnesota
3/24/2026 3:40 PM

**Barna, Guzy & Steffen, Ltd.**
400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN 55433-5894
Phone No.: (763) 780-8500
Federal Tax ID: ███████5695
Statement as of: 03/15/2026
Statement No: 308914

**CAROLINA URIBE BORRERO**
**EMAIL TO: curibe@gmail.com**

79025-001: PAWEL DOMINIK RZECZKOWSKI - POST DECREE (PROPERTY)
URIBE BORRERO, CAROLINA

| Professional Fees | | | Hours | Amount |
|---|---|---|---|---|
| 02/16/2026 | JCB | REVISIONS TO PLEADINGS. | 4.20 | 1,890.00 |
| 02/17/2026 | JCB | REVISIONS TO PLEADINGS. | 2.00 | 900.00 |
| 02/17/2026 | PKM | CONFERENCE WITH ATTORNEY; PREPARE EXHIBITS TO CLIENT'S AFFIDAVIT. | 0.50 | 112.50 |
| 02/18/2026 | JCB | REVIEW AND REVISE PLEADINGS. | 1.10 | 495.00 |
| 02/18/2026 | PKM | CONFERENCE WITH ATTORNEY; EMAILS TO AND FROM CLIENT; REVISE AND PREPARE CLIENT'S AFFIDAVIT AND EXHIBITS FOR FILING WITH THE COURT; LEFT VOICEMAIL MESSAGE FOR CLIENT; EMAILS FROM ATTORNEY TO CLIENT; FILE AMENDED NOTICE OF MOTION AND MOTION AND CLIENT'S AFFIDAVIT WITH EXHIBITS WITH THE COURT. | 1.60 | 360.00 |
| 02/19/2026 | PKM | EMAIL FROM CLIENT; REVIEW CORRESPONDENCE FROM THE COURT. | 0.40 | 90.00 |
| 02/24/2026 | JCB | FILE REVIEW. MEET WITH PARALEGAL. | 0.20 | 90.00 |
| 02/24/2026 | PKM | CONFERENCE WITH ATTORNEY. | 0.10 | 22.50 |
| 03/03/2026 | PKM | EMAIL FROM AND TO CLIENT; EMAIL ATTORNEY. | 0.10 | 22.50 |
| 03/05/2026 | PKM | EMAILS TO AND FROM CLIENT; EMAILS TO ATTORNEY; EMAIL FROM DAVID CUSCANA. | 0.50 | 112.50 |
| 03/06/2026 | PKM | EMAILS FROM AND TO DAVID CUSCUNA; EMAILS TO AND FROM CLIENT; EMAILS TO AND FROM ATTORNEY; CALENDAR ZOOM CALL ON CASE CALENDAR FOR ATTORNEY AND CLIENT AND DAVID TO TALK. | 0.40 | 90.00 |
| 03/09/2026 | JCB | PREPARE FOR PHONE CALL WITH CLIENT. REVIEW PLEADINGS. MEETING WITH CLIENT. | 1.80 | 810.00 |
| 03/09/2026 | PKM | EMAILS FROM AND TO CLIENT; EMAIL TO AND FROM ATTORNEY; EMAILS FROM DAVID CUSCANA; REVIEW AND SAVE DOCUMENTS RECEIVED FROM CLIENT TO FILE. | 0.50 | 112.50 |
| 03/10/2026 | PKM | EMAIL FROM AND TO DAVID CUSCANA; EMAIL ATTORNEY; EMAIL CLIENT. | 0.30 | 67.50 |
| 03/11/2026 | JCB | PREPARE FOR HEARING. ATTEND HEARING. MEET WITH CLIENT. | 2.80 | 1,260.00 |
| | | | Sub-total Fees: | $6,435.00 |

Filed in District Court
State of Minnesota
3/24/2026 3:40 PM

**Barna, Guzy & Steffen, Ltd.**
400 Northtown Financial Plaza
200 Coon Rapids Boulevard
Minneapolis, MN 55433-5894
Phone No.: (763) 780-8500
Federal Tax ID: ████5695
Statement as of: 01/15/2026
Statement No: 306485

**CAROLINA URIBE BORRERO**
EMAIL TO: curibe@gmail.com

79025-001: PAWEL DOMINIK RZECZKOWSKI - POST DECREE (PROPERTY)
URIBE BORRERO, CAROLINA

| Professional Fees | | | Hours | Amount |
|---|---|---|---|---|
| 12/17/2025 | PKM | EMAIL FROM ATTORNEY. | 0.10 | 21.00 |
| 12/23/2025 | PKM | EMAIL ATTORNEY; EMAIL CLIENT; EMAIL DAVID CUSCANA. | 0.10 | 21.00 |
| 12/29/2025 | JCB | MEET WITH PARALEGAL. | 0.20 | 85.00 |
| 12/29/2025 | PKM | EMAILS FROM AND TO ATTORNEY; FILE NOTICE OF MOTION AND MOTION; CLIENT'S AFFIDAVIT, AFFIDAVIT OF PERSONAL SERVICE AND CERTIFICATE OF REPRESENTATION WITH THE COURT; EMAILS TO CLIENT; EMAILS TO DAVID CUSCANA; EMAIL TO THE COURT; REVIEW CORRESPONDENCE FROM THE COURT. | 1.10 | 231.00 |
| 12/30/2025 | PKM | EMAILS FROM AND TO THE COURT; EMAILS TO AND FROM CLIENT; EMAILS TO ATTORNEY; REVIEW CORRESPONDENCE FROM THE COURT. | 0.80 | 168.00 |
| 12/31/2025 | PKM | EMAIL FROM CLIENT. | 0.10 | 21.00 |
| 01/02/2026 | PKM | EMAIL FROM ATTORNEY TO CLIENT. | 0.10 | 22.50 |
| 01/05/2026 | JCB | PREPARE FOR PHONE CALL WITH CLIENT. PHONE CALL WITH CLIENT. | 1.40 | 630.00 |
| 01/05/2026 | PKM | EMAILS TO AND FROM THE COURT; EMAILS TO CLIENT; EMAILS TO AND FROM ATTORNEY; EMAIL OPPOSING COUNSEL; CALENDAR COURT DEADLINES ON CASE CALENDAR WITH REMINDERS. | 0.70 | 157.50 |
| 01/08/2026 | JCB | REVIEW APPELLATE RULES. REVIEW MCRO RECORDS. REVIEW SUMMARIES. DRAFT LETTER TO COURT. DRAFT LETTER TO OPPOSING COUNSEL. CORRESPONDENCE WITH CLIENT. | 2.70 | 1,215.00 |
| 01/09/2026 | JCB | REVISIONS TO CORRESPONDENCE. CORRESPONDENCE WITH CLIENT. | 0.30 | 135.00 |
| 01/09/2026 | PKM | EMAILS FROM AND TO CLIENT; EMAILS FROM AND TO DAVID CUSCANA; EMAILS FROM ATTORNEY TO CLIENT; EMAILS FROM AND TO ATTORNEY; FILE LETTER WITH THE COURT; EMAIL OPPOSING COUNSEL. | 0.90 | 202.50 |
| 01/12/2026 | PKM | REVIEW CORRESPONDENCE FROM THE COURT; EMAIL FROM CLIENT. | 0.30 | 67.50 |
| 01/13/2026 | JCB | CORRESPONDENCE WITH CLIENT. | 0.40 | 180.00 |
| 01/13/2026 | PKM | EMAIL FROM CLIENT; EMAIL FROM ATTORNEY TO CLIENT. | 0.30 | 67.50 |
| 01/14/2026 | PKM | EMAIL FROM CLIENT; EMAIL FROM ATTORNEY | 0.30 | 67.50 |

Filed in District Court
State of Minnesota
3/24/2026 3:40 PM

TO CLIENT.

| | Sub-total Fees: | $3,292.00 |
|---|---|---|

| | | Units | Amount |
|---|---|---|---|
| **Expenses** | | | |
| 01/08/2026 | CHECK PAID TO VISA - EFILE/NOTICE OF MOTION AND MOTION 12/29/25. | 1.00 | 105.00 |
| | Sub-total Expenses: | | $105.00 |